IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JEFFREY G. WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-533C |
| | ) | (Judge Sweeney) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

Pursuant to Rules 12(b)(6) and 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiff, Jeffrey Walls, for failure to state a claim upon which relief can be granted. Alternatively, pursuant to Rule 52.1, we respectfully request that the Court enter judgment upon the administrative record in favor of the United States. In support of these motions, we rely upon the Amended Complaint and its attached exhibit, this brief, and the administrative record ("AR") filed under separate cover today.[1]

STATEMENT OF THE ISSUES

1. Whether Mr. Wall's amended complaint fails to state a claim upon which relief can be granted because Mr. Walls voluntarily retired from the United States Navy ("Navy") before the period for which he seeks active duty pay and was not hospitalized, nor was there a Medical Evaluation Board ("MEB") report accepted by a Physical Disability Board ("PEB") prior to his retirement date of September 30, 2000.

---

[1] Citations to the 366-page administrative record, filed under separate cover on October 1, 2007, constitutes the evidence considered by the Board of Corrections for Navy Records ("BCNR" or "board") and are referred to as "AR___."

2. If the court determines that Mr. Walls has stated a claim, whether the decision of the BCNR that Mr. Walls was not entitled to back pay for time spent in the hospital after he was retired, was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

## STATEMENT OF THE CASE

### I. Nature Of The Case

Mr. Walls served on active duty in the Navy until September 30, 2000, when he voluntarily retired by requesting to transfer to the Fleet Reserve. After Mr. Walls voluntarily retired, he experienced health problems that resulted in extended medical treatment between October 2001 and May 2001. Mr. Walls now alleges that, despite his voluntary retirement, the Navy negligently transferred him to the Fleet Reserve. Instead, Mr. Walls contends that the Navy should have retained him on active duty from October 2000 through May 2001, the time at which his medical treatment ended. Mr. Walls makes the request now, despite the fact that no Navy medical professional referred Mr. Walls' case to an MEB – the necessary precursor to retention on active duty – and the absence of evidence that Mr. Walls made such a request before his September 30, 2000 retirement.

Mr. Walls filed a complaint in this Court on May 10, 2005. The Government filed a motion to dismiss that complaint on January 24, 2007. Mr. Walls filed an amended complaint on August 10, 2007. His amended complaint seeks an order to correct his naval records, back pay between October 2000 to mid-May 2001, damages and pre-judgment interest, and attorney fees and costs.

II. Statement Of Facts

Mr. Walls began active duty in the Navy on August 31, 1984, and advanced to the paygrade E6. AR 35. On September 30, 2000, Mr. Walls fulfilled 20 years of service.[2] As an enlisted person at paygrade E6, Mr. Walls was subject to "high tenure rules" which required that his active duty end at 20 years. MILPERSMAN 1160-120. See Attachment B. At that time, Mr. Walls had the option simply to separate or to request retirement (which involves a request to transfer to the Fleet Reserve). Mr. Walls does not allege that the Navy selected him for mandatory retirement or that he was otherwise forced to retire; rather, his complaint states that he was scheduled to retire on September 30, 2000 – an event that requires request and approval – at the end of September 2000. Am. Compl. ¶ 39. Mr. Walls was transferred to the Fleet Reserve, and honorably discharged, and thus retired him from active service with retirement pay.[3] AR35.

---

[2] For the current enlistment, Mr. Walls accumulated 16 years and 1 month of active service. AR35. He had prior service totaling 3 years, 11 months, and 29 days. Am. Compl. ¶ 2; AR 172. Pursuant to Operational Navy Instruction ("OPNAVINST") 1150.5C and Military Personnel Manual ("MILPERSMAN") 1160-120, members of the Navy in the paygrade of E6 may not serve beyond 20 years on active duty. See Attachment A.

[3] Mr. Walls' request to transfer to the Fleet Reserve should be contained in his military service record pursuant to the Navy and Marine Corps Records Disposition Manual. See Secretary of the Navy Instruction 5210.1, pg III-1-38. But after a diligent search, the Navy has been unable to locate Mr. Walls' request to transfer and accompanying command endorsement. However, by statute, the Navy may only retire a servicemember upon a request for retirement. 10 U.S.C. § 6330(b). Accordingly, we can assume that the Navy acted upon Mr. Walls' request. It is well settled that "[t]he presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." United States v. Chemical Foundation, 272 U.S. 1, 14-15 (1926); see also U.S. Postal Service v. Gregory, 534 U.S. 1, 10 (2001). Thus, absent clear evidence to the contrary, it must be presumed that Navy officials retired Mr. Walls upon his request. In any event, Mr. Walls concedes in his amended complaint that he intended to retire, Am. Compl. § 39, therefore, the absence of his request is irrelevant to the Court's resolution of this motion to dismiss and motion for judgment upon the administrative record.

At some point in October 2000, Mr. Walls reported to the National Naval Medical Center ("NNMC") in Bethesda, MD, for hospitalization and medical treatment. Am. Compl. ¶ 4. Mr. Walls did not have an MEB report accepted by the Physical Evaluation Board ("PEB") for disability processing prior to his retirement date of September 30, 2000. Am. Compl. ¶ 85-98 at 18-21. Nor is there evidence that one was requested on his behalf.

In 2001, Mr. Walls applied for correction of his military records stating that he "was released from the military with an injury that should have been corrected." AR32. Mr. Walls conceded in this application that he was "retired from the military" but that he was released "without a medical board." AR34. The BCNR denied Mr. Walls' request and his subsequent requests for reconsideration. AR21-22, 26, 28, 43.

On May 10, 2005, Mr. Walls filed a complaint in this Court seeking, among other things, active duty pay for his time spent in the hospital after his retirement date. Upon our motion, the Court remanded the matter to the BCNR. On May 17, 2006, the BCNR issued its remand determination. AR2. The BCNR determined that "the evidence submitted was insufficient to establish the existence of probably material error or injustice." AR3.

Specifically, the board found that Mr. Walls underwent a pre-retirement physical examination, which was required by MILSPERSMAN 1830-30. Id.; see Attachment B at p. 1. During that evaluation, Mr. Walls did not identify any conditions that might have warranted further evaluation or that would have rendered him unfit for transfer to the Fleet Reserve. Id. at 1-2. The board noted that it is common for service members facing mandatory release from active duty to "attempt to remain on active duty . . . by making a last minute claim that they suffer from an unfitting medical condition or a disorder that requires urgent medical care . . . ."

AR3-4. However, as the board determined, because Mr. Walls was not hospitalized on September 30, 2000, and no MEB had been convened by that date, "any action to retain [him] on active duty . . . was invalid." AR4. Therefore, Mr. Walls did not satisfy the narrow exceptions under which service members may remain on active duty. And, in any event, the board determined that Mr. Walls did not perform any military duty after his retirement, id., nor did Mr. Walls lose his entitlement to medical care at Government expense. Id. Finally, even if an MEB had been convened, the board concluded that it was unlikely that Mr. Walls could have rebutted the presumption that he was fit for duty, noting the absence of any "credible evidence that [his] back condition was severe enough to have met the criteria" listed in the relevant Department of Defense ("DOD") instruction. Id. (citing DOD Instr. 1332.38, part 3, para. E.2.d) (discussing what is required to overcome the presumption of fitness). Accordingly, the board denied Mr. Walls' request for correction of his military records.

## ARGUMENT

### I. Standard Of Review

#### A. Motion To Dismiss

When deciding a motion to dismiss based upon either lack of subject matter jurisdiction or failure to state a claim, this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). A complaint should not be dismissed for failure to state a claim if it appears that a plaintiff has provided enough factual matter, taken as true, to provide notice of its claims. Bell Atlantic Corp. v. Twombley, __ U.S. __, 127 S.Ct. 1955, 1967-69 (2007).

B. Judgment Upon The Administrative Record

In reviewing a motion for judgment upon the administrative record pursuant to RCFC 52.1, the trial court reviews the agency's decision to determine whether it was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure. Bannum, Inc. v. United States, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005); Lechliter v. United States, 70 Fed. Cl. 536, 543 (2007); Lewis v. United States, 67 Fed. Cl. 158, 162 (2005).

In military personnel cases, the particular agency to which deference is owed is the service. Friedman v. United States, 159 Ct. Cl. 1, 7, 310 F. 2d 381, 386-87 (1962) ("Congress has entrusted the administrators with a large measure of discretion and has in effect established an executive agency as the primary tribunal for determining whether certain adverse action should be taken against the employee.")

Thus, because the Court of Federal Claims does not sit as a "super correction board," Skinner v. United States, 594 F.2d 824, 829-30 (1979), where reasonable minds might reach differing conclusions on the evidence, the Court of Federal Claims will not substitute its judgment for that of the board's, Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir.), cert. denied, 479 U.S. 853 (1986), or reweigh medical evidence. De Cicco v. United States, 230 Ct. C. 224, 230, 677 F.2d 66, 70 (1982).

II. Mr. Walls' Amended Complaint Should Be Dismissed For Failure To State A Claim

A. Regulatory Framework

Service members subject to high tenure rules must separate from the service when they reach (in Mr. Walls' case) 20 years. MILSPERSMAN 1160-120 at 1. They do so by requesting

retirement or by simply separating from the service. If retirement is requested (which, for enlisted members, generally involves a transfer to the Fleet Reserves), all members must complete a physical examination to permit correction of any minor physical defects or to identify those issues requiring disability processing. Id. Mr. Walls completed this examination, without incident, in June 2000. AR2-3.

Separations due to high tenure rules cannot be delayed unless the member is either hospitalized or a medical board (MEB) report has been "accepted" by the PEB for disability evaluation processing prior to the mandatory retirement date. MILSPERSMAN 1830-030 at p. 2. An MEB will refer a service member to the PEB only if the MEB has found the member's fitness questionable by reason of physical or mental impairment. SECNAVINST 185-.4E, 3201(a). The case must be presented to the PEB with adequate and objective medical data. Notably, the regulations contain many examples of cases not appropriate for PEB review, including referrals requested by the service member himself (as opposed to his physician) and referrals presenting merely the presence of a physical defect. SECNAVINST 1850.4E, 3202(b) and (c).

Here, Mr. Walls does not allege that he was retired. Also, Mr. Walls does not allege that an MEB was convened for him or that an MEB referred Mr. Walls to a PEB before his retirement date. To the extent that Mr. Walls believes that he should have been referred to the PEB, the board's decision denying Mr. Walls' contentions is supported by substantial evidence and in accordance with law.

B. Mr. Walls' Amended Claims Fail As A Matter Of Law

Mr. Walls' amended complaint acknowledges that he intended to retired at the end of September 2000. Am. Compl. ¶ 39 (stating that he informed his medical care provider that he

was scheduled to retire at the end of September, 2000). Service members may not retire unless they specifically request retirement. 10 U.S.C. § 6330(b) (a service may retire a member "upon application"). As an alternative, Mr. Walls could have simply left active duty on September 30, chosen not to transfer to the Fleet Reserve, and thereby received no retirement benefits. Mr. Walls evidently accepted retirement and transfer to the Fleet Reserve as was his stated intent prior to being treated at NNMC.

Ordinarily, if a resignation is voluntary, the Court lacks jurisdiction to review the circumstances of retirement. See Carmichael v. United States, 298 F.3d 1367, 1371 (Fed. Cir. 2002). In Tucker Act terminology, where a discharge is voluntary, there is no entitlement to compensation under the Military Pay Act and, consequently, no money-mandating provision that triggers this Court's jurisdiction. Rigsbee v. United States, 226 F.3d 1376, 1378-79 (Fed. Cir. 2000). Accordingly, Mr. Walls' complaint, on its face, appears not to have properly invoked the jurisdiction of this Court. However, we construe Mr. Walls' complaint to allege at least in part, that, although he intended to retire, he ultimately did not retire voluntarily because he believed he was entitled to stay on active duty pending resolution of his medical troubles. Additionally, we construe Mr. Walls' complaint to allege that he may should have been considered disabled because of his hospitalization. Accordingly, pursuant to Metz v. United States, 466 F.3d 991, 999 (Fed. Cir. 2006) (holding that when voluntariness is at issue, dismissal for lack of jurisdiction is inappropriate), and McHenry v. United States, 367 F.3d 1370, 1377 (2004) (holding that voluntary retirement does not deprive the Court of jurisdiction when a servicemember alleges that the military should have paid him disability), we have framed our motion to dismiss as a motion to dismiss for failure to state a claim, not one for lack of

jurisdiction. We have done so because Mr. Walls' complaint still fails to demonstrate that he satisfies any of the exceptions that would have permitted him to remain on active duty after his mandatory separation date.

Mr. Walls was required to separate on September 30, 2000, regardless of whether he chose to retire or whether he simply separated. Indeed, the record demonstrates that Mr. Walls was retired on September 30, 2000. AR35. Importantly, Mr. Walls does not allege or satisfy any of the regulatory requirements under which that retirement date could have been extended. Pursuant to regulation, the only way that Mr. Walls could have legally been retained on active duty was if he had been hospitalized or a medical board has been accepted by the PEB. Members pending mandatory retirement (transfer to the Fleet Reserve) under high year tenure rules may be retained on active duty only if the member is hospitalized or an MEB report has been accepted by the PEB prior to the mandatory retirement date. MILPERSMAN 1830-030. Furthermore, when delay [retirement] is required, "the commanding officer will advise COMNAVPERSCOM (PERS-82) of member's situation and request modification of retirement date." Id. Mr. Walls does not allege, nor does the record demonstrate that he was hospitalized before his retirement date or that an MEB report was accepted by the PEB and that competent authority requested modification of his retirement date.

Instead, Mr. Walls alleges that his retirement date should have been extended. Specifically, sometime after Mr. Walls' required pre-retirement medical examination but before September 30, 2000 (his separation date), Mr. Walls made several more visits to Navy medical professionals. He alleges that, during one of these meetings, his medical provider "told him that he was not fit to retire due to his injuries. Dr. Collum told [him] that she would recommend to

Dr. Yao, his primary care physician, that he be placed on 'medical hold' . . . Dr. Collum indicated that Dr. Yao would send Petty Officer Walls' MEB Report to the PEB . . . ." Am. Compl. ¶ 39. These allegations do not satisfy the requirement that, to remain on active duty past the mandatory separation date, a service member must either have been hospitalized or referred to a PEB before the date of separation. Even assuming that Dr. Collum informed Mr. Walls that she recommended that an MEB be convened (which, for purposes of a motion to dismiss, we must), there is no evidence that Dr. Collum ever did request that an MEB be convened, or that she requested Mr. Walls' primary care physician to convene an MEB.[4]

More importantly, the decision to request an MEB is fully discretionary and unreviewable. SECNAVINST 1850.4E at 10-2[5] (". . . if the treating physician believes that the service member is unable to perform full military duty or unlikely able to do so within a reasonable period of time, the service member is referred to a Medical Evaluation Board (MEB))." See Attachment C. Mr. Walls is, of course, correct, that once an MEB is convened, the process must follow certain regulations set forth in SECNAVIST 1850.4E. Specifically, once an MEB is convened, it may refer the case to a PEB "when available medical records show that

---

[4] The only arguable evidence that exists appears as a handwritten notation on Dr. Collum's medical notes from an August. AR56. Although the notes are undated, we can assume that they predate Mr. Walls' retirement. Id. (stating "Due to retire September 30" and scheduling a pain management appointment for September 19). The notes discuss Mr. Walls' back problems and, in handwriting that appears not to be Dr. Collum's, states, "To request member he placed on medical hold status until the problem can be corrected." Id. This notation, to the extent that it is in fact Dr. Collum's notation, does not indicate that an MEB was ever requested for Mr. Walls.

[5] Secretary of the Navy Instruction (SECNAVINST) 1850.4E of 30 April 2002 updates SECNAVINST 1850.4D - which is cited by Mr. Walls. In addition to the treating physician's discretion to send a service member to MEB, the MEB's functions regarding referral to the PEB are discretionary based upon its judgment of the member's ability to continue on full duty.

the member's fitness for continues naval service is questionable." Id. at 3201. Then, only if the PEB has "accepted the case," could Mr. Walls ever have been retained on active duty past his retirement date. No MEB was convened, therefore, no PEB could have been convened. Accordingly, Mr. Walls cannot satisfy the regulatory requirements for retention on active duty past one's separation date. In other words, the Navy had no authority to retain Mr. Walls on active duty.

To the extent that Mr. Walls believes that statements made by Dr. Collum extended him on active duty, he is mistaken. First, there is no record evidence whatsoever that Mr. Walls ever tried to retract his request for retirement based. Nor is there any evidence that an MEB was or should have been convened for him. Dr. Collum's statement merely evidences an alleged intention to request that Mr. Walls be placed on medical "hold," although the record does not demonstrate that such a request was ever actually made.

## III. The Board's Determination Is Supported By Substantial Evidence

To the extent that Mr. Walls believes that such a request should have been made, the board's determination that the evidence does not support such a request, is supported by substantial evidence and in accordance with law. Although the record contains evidence of Mr. Walls' back trouble, AR42, 291, 306, 307, 314, as the board stated, "there was no objective evidence of significant spinal pathology in [his] case, or credible evidence of [his] inability to perform military duty," concluding, reasonably, that "there was no basis for initiating a medical board." AR4. Importantly, the record also reflects that Mr. Walls was considered fit for duty as a Maryland State police officer. AR303.

____And, as we have demonstrated, the board correctly determined that, absent acceptance by the PEB, the Navy had no authority to retain Mr. Walls upon active duty status after his mandatory separation date. Mr. Walls could have separated without retirement, or he could have chosen to request retirement. In either event, because Mr. Walls was subject to high tenure rules, on September 30, 2000, he would no longer be an active duty serviceman unless he was hospitalized or had been accepted by a PEB. MILPERSMAN 1830-030. Because he was neither, the board's determination is in accordance with law. Indeed, any other decision would have been directly contrary to the applicable regulations. Mr. Walls' amended complaint merely expresses frustration that, even if certain Navy medical professionals may have recommended that his primary care physician request an MEB, that recommendation never came to fruition, and it most certainly did not result in a request for an MEB and a further acceptance by a PEB, all by September 30, 2000.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss Mr. Walls' complaint for failure to state a claim upon which relief may be granted. In the alternative, we respectfully request that the Court grant our motion for judgment upon the administrative record.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/ Claudia Burke
CLAUDIA BURKE
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9063
Fax: (202) 514-7965

Attorneys for Defendant

OF COUNSEL

JOHN CLADY
Lieutenant
Judge Advocate General's Corps
United States Navy
Office of the Judge Advocate General
General Litigation
Washington, DC 20374

October 1, 2007