## PART 2 - POLICIES CONCERNING REFERRAL OF CASES TO THE PHYSICAL EVALUATION BOARD

### 3201 Criteria For Referral To The Physical Evaluation Board

a. Active Duty Members. As a general rule, an active duty member or a reservist on extended active duty will be referred for disability evaluation only by a medical board that has found the member's fitness for continued naval service questionable by reason of physical or mental impairment. A determination of questionable fitness must be supported by objective medical data displaying the nature and degree of the impairment. In those cases where it is not practicable to have a medical board consider the case; e.g., the member being hospitalized in a non-military hospital, the case may be referred by cognizant authority to the PEB when available medical records show that the member's fitness for continued naval service is questionable. In all cases, Navy and Marine Corps members MEBs must be processed through a Navy MTF with Convening Authority for further referral to the PEB.

b. Inactive-Duty Reservists

(1) Refer per reference (g) for disability evaluation those inactive-duty reservists issued an NOE for disability benefits due to a disability that occurred while serving on active duty or performing inactive duty training.

(2) An inactive duty reservist who has not been given an NOE and who has been determined by the CHBUMED to be "Not Physically Qualified" (NPQ) for active duty or retention will be referred, at the member's request, to the Informal PEB for final determination of physical condition. If the member is then found Unfit by the Informal PEB and assigned the PEB finding of NPQ, the member has the right to demand a Formal PEB. The member will bear all associated travel, lodging, meal, and incidental costs to the Formal PEB site.

(3) Cases of inactive duty reservists without an NOE may be processed into the DES for a FIT/ UNFIT determination by the PEB under the following circumstances:

(a) While serving as an inactive duty reservists, the member is ordered to active duty and serves a period of active duty greater than 30 days; and

(b) The member incurs or aggravates a condition during this period of active duty and his/her medical records contain documentation as to the nature of member's conditions including the approximate date of incurrence/aggravation. A FIT/UNFIT determination will not be made if the PEB cannot determine from the member's records that his/her condition(s) was incurred/aggravated during a period of active duty. In such cases, a Physically Qualified/Not Physically Qualified determination will be made.

Recourse for former inactive duty reservists who incurred or aggravated a condition during a previous period of active-duty, but do not meet the above requirements, is a petition to the Board for Correction of Naval Records.

c. Specified Physical Impairments. A list of physical impairments that are normally cause for referral to the PEB is contained in enclosure (8) to this instruction.

**<u>3202 Circumstances Not Justifying Referral To The Physical Evaluation Board</u>**

a. Lack Of Motivation. Lack of motivation alone for performance of duty does not justify referral to the PEB.

b. Request for referral to the PEB by the service member.

c. Mere Presence Of Physical Defect. The mere presence of disease or injury alone does not justify referral. Referral should take place only when, in the opinion of a medical board, the defect may <u>materially</u> interfere with the member's ability to perform reasonably the duties of his or her office, grade, rank, or rating/MOS on active duty. Also see enclosure (3), part 3.

d. Inability To Meet Initial Enlistment/Appointment Standards. Once enlisted or commissioned, the fact that a member may fall below initial entry or appointment standards, specified in the reference (f) (MANMED), does not require that the case be referred for disability evaluation.

e. Physical Disqualification For Special Duties. Physical disqualification from special duties, such as flying, serving on submarines or in a medical specialty, does not necessarily imply physical unfitness. Referral is appropriate only in cases where the member's ability to reasonably perform active military service is in doubt.

f. Inability to Meet Physical Standards for Specific Assignment or Administrative Requirement. The inability to meet screening criteria for a specific assignment or administrative requirement; i.e., deployment, overseas or sea duty assignment, or participation in PRT/PFT cycle, does not justify referral. Referral is appropriate only in cases where the condition appears to be permanent in nature or of such a degree as to render the member unable to return to naval service within a reasonable period.

g. Members Being Processed For Separation Or Retirement For Reasons Other Than Physical Disability. Do not refer a member for disability evaluation who is being processed for separation or retirement for reasons other than physical disability, unless the member previously was found Unfit but retained on active duty in a Permanent Limited Duty (PLD) status, or the member's physical condition reasonably prompts doubt that he or she is Fit to continue to perform the duties of office, grade, rank or rating/MOS.

**3203 Rejection Of Cases**

a. President, PEB may reject any case, which lacks necessary or required information needed to determine fitness, mental competence, eligibility for disability benefits, or an appropriate disability rating. However, in extraordinary cases, with the concurrence of the DIRNCPB, the President, PEB may accept a case and direct evaluation based upon evidence of record.

b. If the President, PEB rejects a case, the MEB will be returned, to include all supporting documents, to the originating facility. Specific deficiencies shall be identified to enable the submitting medical facility, general court-martial authority, or command having cognizance over the member, to provide the required information.

c. The President, PEB may reject any case (medical information submitted as a new Medical Board report, or addendum to a previous board) in which the date of the newly dictated medical information is within 6 months of the date of the PEB's Notification of Decision if, upon review by a medical officer assigned to the Informal PEB, the medical officer advises:

(1) The condition reported does not alter the subject member's previous findings ; or

(2) The condition reported is not a significant deterioration of the previously reported condition; or

(3) The service member's treatment has not significantly changed; or

(4) The service member has required no significant outpatient treatment other than that required for maintenance.

d. If the member is rehospitalized but has had no surgical procedures performed within 6 months of the PEB's issuance of its Notification of Decision of the member's previously evaluated case, the convening authority of the Medical Board, with the advice of the patient administration office, should assess whether the outcome of the rehospitalization as reported in the proposed Medical Board report would alter the previously determined findings of the PEB. The application of this criteria is particularly important when no diagnoses other than those previously reported to, reviewed by, and finally determined by the PEB are identified, or a chronic condition is involved and no objective medical evidence indicates that a significant change in the nature and the degree of severity of the condition has occurred.

e. In all above-noted circumstances, in order to ensure a reliable medical history is preserved, maintain entries in the member's health record to document all medical procedures undergone by the member.

f. The following general rules apply to all Medical Boards:

(1) Timeliness of submission of new medical information is critical to ensure PEB determinations are based on up-to-date, complete and accurate information. A service member's case before the PEB is final when Notification of Decision (en bloc) has been signed and issued to CMC (M&RA) or CHNAVPERS. Accordingly, the PEB normally will reject submission of information after Notification of Decision.

(2) The PEB normally will reject the case of a service member whose physical condition is the same, for which a final decision was issued within the last 6 months, unless after medical review, the condition appears to have substantially changed.

(3) Cases before the PEB normally will not be held in abeyance, continued, or a Notification of Decision canceled because the member alleges a treating physician is submitting a note, letter, or other document allegedly presenting additional information about the service member's condition.

(4) Cases before the PEB normally will not be held in abeyance, continued or a Notification of Decision canceled based on any information other than that officially submitted by or through the MTF (convening authority).

(5) The PEB will reject all cases in which the sole diagnoses involves conditions not constituting a physical disability as defined in paragraph 2016.

(6) The PEB will reject all cases in which the member is being processed for misconduct which could result in the member receiving either a punitive or administrative discharge due to that misconduct.

g. MEBs submitted on members with mandatory/voluntary retirement dates must be received by the PEB 60 days prior to the originally approved retirement date to allow for adequate processing time. President, PEB will verify dates with the appropriate service headquarters. Those MEBs received within the 60-day window will be screened by a Medical Officer of the Informal PEB to ensure serious conditions potentially overcoming PFit are not overlooked. Cases not accepted after medical review will be rejected and returned to the MTF. Service headquarters will be notified of case rejection and to continue processing the member for retirement. Acceptance of cases within this window does not necessarily mean that members will overcome the presumption of fitness rule.

**3204 Suspension Or Termination Of Cases**

a. When the PEB terminates a case for the reasons cited in paragraph 3203, return the MEB report, to include all supporting documents, to the originating MTF for corrective action and resubmission, if warranted. Process as new those cases resubmitted to the PEB after termination. In the case of inactive duty Reservists, the case should be returned to the NOE Issuing Authority.

b. When the PEB suspends a case for the reasons cited in paragraph 3203, hold the case in abeyance pending receipt of required documentation/information.

(1) A case will not be suspended for a period of time in excess of 60 days. After the 60-day period the case will be terminated and returned to the originating MTF.

(2) Cases suspended by the Informal PEB are usually the result of administrative deficiencies; i. e., missing LODI, missing Non-Medical Assessments (NMA), missing MEB physician signatures, etc. Upon receipt of required information, these cases will be inserted back into the process at the point at which the evaluation stopped. Cases will not be suspended for administrative errors or oversights for more than 30 days. Cases will not be suspended for additional medical information in excess of 60 days. Cases that exceed the limits above will be terminated.

(3) Cases suspended at the Formal PEB level are usually the result of substantial issues; i. e., new medical information pending, unplanned surgery or hospitalization, etc.. In those instances, cases will not be suspended for periods of more than 60 days.

c. Once a case has been terminated or rejected, resubmission, if necessary, is not allowed until all actions or information requested by the PEB are complete.

d. All parts of a MEB included as part of a previously terminated or rejected case, to include medical and non-medical information, must be less than 6 months old when received by the PEB. Ensure all interim SF-600 entries and other medical documentation not previously submitted are included in resubmission. A case not meeting these criteria will be rejected.

**3205 Non-Medical Documentation Reports - Current Performance Of Duty**

a. When a member is referred for physical disability evaluation, an assessment of the member's performance of duty by his or her chain of command may provide better evidence of the member's ability to perform his or her duties than a clinical estimate by a physician. Particularly in cases of chronic illness, non-medical documentation may be expected to reflect a member's capacity to perform accurately.

b. Provide non-medical documentation in all Medical Board reports to include:

(1) Except in situations of critical illness or injury or where the member has been declared "Death Imminent", a statement from the member's immediate commanding officer, executive officer, company commander, or command senior enlisted advisor addressing:

(a) Indicators of medical problems or absence of medical problems based on observations of the member while in-duty and off-duty situations;

(b) Description of current job assignment, including an assessment of how the medical problem has or has not affected the member's performance, ability to participate in the Physical Readiness Test (PRT)/Physical Fitness Test (PFT), and ability to deploy;

(c) Recent disciplinary history of the individual, including any disciplinary action pending;

(d) Description of the member's rating/Military Occupational Specialty (MOS), Navy Enlistment Classification Code (NEC), and/or specialty, including an estimation of how the member's condition will affect his or her ability to fulfill occupational requirements in the future; and,

(e) Commanders are also required to complete the non-medical documentation form and submit a narrative assessment on how the service member's medical condition impacts on his/her ability to perform military duties. Enclosure (11) contains the NMA form and an example of a narrative assessment.

(f) When the member has been reassigned for medical purposes, the MTF will obtain this statement from the member's former unit commander.

(2) A copy of the line of duty determination, when required by reference (h).

(3) Official documentation identifying the next-of-kin, court appointed guardian, or trustee in the case of members who are determined incompetent.

(4) Pertinent personnel records; e.g., copies of annual evaluation reports and promotion recommendations, awards, letters of appreciation, letters of commendation, etc., may also be included, but are not required unless specifically requested by the President, PEB.

c. Regardless of the presence of illness or injury, do not consider inadequate performance of duty, by itself, as evidence of Unfitness due to physical disability unless it is established that there is a cause and effect relationship between the two factors. Further, lack of motivation for performance of duty alone does not constitute a basis to award a disability.

**<u>3206 Hospitalization And/Or Surgery Performed After Medical Evaluation Board Report Referral To The PEB</u>**

a. Prior to submission to the PEB, member must complete elective surgical procedures that may affect a member's physical qualification for duty before initiation of a Medical Board. If a MEB or health record entry states that a surgical procedure is scheduled (or contemplated) the MEB should not be submitted until after the surgical procedure is done and an appropriate period of convalescence has occurred. An addendum addressing the results of surgery must be submitted with the MEB or the case will be terminated or rejected.

b. When hospitalization or non-elective, urgent surgery occurs or is contemplated for a service member who has a case before the PEB, the MTF shall notify the PPEB by written statement via FAX or message traffic, information copy to CHNAVPERS/CMC

(M&RA) and CHBUMED, requesting PEB suspend or terminate the case. The statement will include the rationale for the requested action including the urgent nature of the hospitalization or surgery.

(1) When considering a medical procedure for a member whose case has been referred to the PEB for disability evaluation, the MTF should consider whether or not the member will have sufficient time remaining on active duty for appropriate follow-up care and should not assume that the Department of Veterans Affairs (DVA) will accept responsibility for such care unless the member has already been accepted as a DVA beneficiary.

(2) The timeliness and completeness of submission of any new medical information after a case has been referred to the PEB is critical to ensure PEB determinations are based on up-to-date, complete and accurate information.

(3) If PEB is notified before the Notification of Decision (En bloc) has been issued to the service headquarters, the case will be medically reviewed to determine if the case should be suspended, or terminated. If PEB action on the case is suspended, the MTF shall submit an addendum after hospitalization or surgery and an appropriate period of convalescence has been achieved following the procedures outlined in 3204 to ensure up to date documentation is provided to the PEB.

**3207 Periodic Physical Examinations TDRL**

See enclosure (3), part 6 to this instruction. Diagnoses centering on EPTS conditions still are not ratable.

**3208 Member's Access To Medical Board Reports And Counseling**

a. Unless the information contained in the MEB report may, in the judgment of the MEB convening authority, have an adverse effect on the member's mental or physical health, the member shall:

(1) be provided a copy of the MEB report;

(2) be counseled regarding the opinions and recommendations of the medical board;

(3) be afforded the opportunity to discuss opinions and recommendations with each member of the MEB; and

(4) be afforded an opportunity to submit a statement regarding any portion of the MEB report. No precise format is prescribed. The medical board shall attach written comments to the report addressing the statements considered adverse by the member.

b. When the information contained in the MEB report may, in the judgment of the medical board convening authority, have an adverse effect on the member's mental or physical health, or when the member has been determined to be incapable of managing his

or her financial affairs by a board of medical officers convened and constituted in accordance with reference (f) (MANMED), Chapter 18, the member's court appointed legal guardian or the next-of-kin as defined in section 2049 will be counseled (in the above precedence order), provided with a copy of the report, and afforded the opportunity to exercise the member's rights as discussed in paragraph 3208a.

**3209 Waiver of Disability Evaluation Processing**

a. With the approval of the PPEB, acting on behalf of the Secretary of the Navy, a service member may waive entrance into the Disability Evaluation System (DES) under the following circumstances:

(1) When the MEB reflects that the service member's medical condition existed prior to service and was not aggravated by service; or,

(2) Physical disability evaluation requires extension past the date of the member's service agreement, end of active obligated service or approved retirement date, the member does not consent to retention, and the member has no remaining reserve service obligation. Members of a Reserve component on active duty for more than 30 days may continue disability evaluation upon release from active duty provided they maintain a Ready Reserve status. They must, however, sign a waiver declining retention on active duty.

b. Members approved for separation under any program that incurs a Reserve obligation and who have conditions which are cause for referral into the DES are prohibited from waiving physical disability evaluation.

c. Members in Permanent Limited Duty (PLD) status may not waive requirement for DES reevaluation until such time as the PLD period is completed or terminated if the PLD period was in excess of 12 months. Paragraph 6011 applies.

d. A member requesting waiver of disability evaluation processing must complete the waiver memo per enclosure (13). A waiver is not granted until approved by the PPEB.

**3210 - 3299 Reserved**

ENCLOSURE 10: WHAT YOU NEED TO KNOW ABOUT THE PHYSICAL EVALUATION BOARD

**10001 General.**

As the result of career-ending illnesses or injuries, each year the Navy and the Marine Corps separates thousands of Sailors and Marines through its disability evaluation system. This enclosure answers a few general questions about the Department of the Navy's disability evaluation system.

**An Overview of the Department of the Navy Disability System**

The Secretary of the Navy is charged with assuring the fitness of Navy and Marine Corps members, and separating or retiring those who become Unfit to continue naval service because of physical disability. The Secretary's authority is derived from Title 10, U. S. Code, Chapter 61, as supplemented by DoD Directive 1332.18 of 4 November 1996, and this instruction. The law provides benefits for eligible members whose military service is cut short due to a service-related physical disability incurred in the line of duty. The Department of the Navy Physical Evaluation Board manages the Navy's disability evaluation system. The PEB is an administrative board that determines whether a service member's disability prevents his or her continued performance in the Navy or Marine Corps. The PEB is comprised of two levels of boards, which review medical evidence and make determinations of fitness or unfitness to continue naval service. If the PEB determines that a service member is Unfit to continue naval service, and finds that the service member is eligible for disability benefits, the PEB determines the percentage of the service member's disability compensation. Depending on the severity of the illness or injury, the service member receives either medical retirement or disability severance pay. The PEB makes determinations of Fitness to continue naval service or Unfitness to continue naval service, Physically Qualified for continued naval service or Not Physically Qualified for continued naval service, and eligibility for disability severance pay.

**When is a service member Unfit to continue naval service?**

A service member is Unfit to continue naval service when one or more physical and/or mental disabilities prevent him or her from reasonably performing the duties of his or her office, grade, rank, or rating. The PEB makes the decision on Fitness by balancing the extent of a member's disability, as shown through objective medical and performance evidence, against the requirements and duties that the member may reasonably be expected to perform in his or her office, grade, rank, or rating. Typical medical evidence used by the PEB includes a narrative summary written by the Medical Evaluation Board (MEB), history and treatment of the injury or illness, referrals to doctors and sick call, and type and frequency of medication. Performance evidence includes non-medical assessments from the member's command, personnel records, promotions, awards, and adverse personnel actions. See enclosure (3), part 3.

**I've been seriously hurt; what happens next?**

The priority for a service member suffering an illness or injury is to ensure that his or her illness or injury receives proper medical attention. If the service member's condition improves to the point that he/she is able to return to full military duty, he/she is returned to his or her unit. However, if the treating physician believes that the service member is unable to perform full military duty or unlikely to be able to do so within a reasonable period of time, the service member is referred to a Medical Evaluation Board (MEB).

A MEB decides whether a member has an injury or illness and documents the extent of that injury or illness. The MEB then decides if the injury or disease is severe enough to call into question a member's ability to continue on full duty. The MEB does this by relating the nature and degree of the medical impairment of the member to retention standards and the duties that the member may reasonably be expected to perform in his or her office, grade, rank, or rating. If the MEB believes that the member will be able to return to full military duties within a reasonable period of time, then a Temporary Limited Duty (TLD) Board will be written. If the member's physical qualification to continue on full duty remains in doubt or his or her physical limitations preclude his or her return to full duty after the prescribed TLD period, the MEB refers the member's case to the PEB.

The MEB makes the above determinations after performing a complete examination and their report will contain a complete examination including the completion of the Standard Forms (SF) 88 and 93. The MEB documents the member's medical problems, defines the limitations imposed by the resulting medical impairment, and explains how the condition affects the member's ability to perform his or her military duties. See enclosure (3), parts 1, 2 and 3.

**How is the PEB structured?**

The PEB is comprised of two levels of boards. A board is composed of three members, normally a Navy line officer, a Marine Corps officer, and a Medical Corps officer. The presiding officer for an Informal or a Formal PEB will normally be a Navy line or Marine Corps officer in the grade of O-6. The first level is the Informal PEB. The second level is the Formal PEB. If the PEB determines that a member is no longer Fit to continue naval service, and the member is eligible for disability benefits, the PEB then decides the percentage of disability and the appropriate disposition that shall be assigned to the member.

**Informal PEB**

When a medical board report expressing a reasonable doubt of a service member's ability to perform his/her duties is referred to the PEB for a determination of fitness, the medical board report is initially reviewed by the Informal PEB. This board, located in Washington, DC, conducts a review of the service member's record. A member does not appear before the Informal PEB. The findings of this board are forwarded to the service member via a Physical Evaluation Board Liaison Officer (PEBLO) counselor.

If found Fit to continue naval service, the service member may either accept the finding or submit a written request for reconsideration to the Informal PEB. The reconsideration will

using the Veterans Administration Schedule for Rating Disabilities (VASRD ), as modified by enclosure (9). The VASRD lists hundreds of physical and mental disabilities and rates these disabilities using objective medical criteria. Depending on the severity of the illness or injury, the PEB rates a member from zero to 100 percent disability. See enclosure (3), part 8 and enclosure (9).

**How does the PEB decide who receives disability severance pay and who receives medical retirement?**

The severity of the injury determines whether a service member, who is eligible for disability benefits, receives disability retirement or disability severance pay. Service members rated with a zero, 10, or 20 percent disability and with less than 20 years of service will be separated from the service with disability severance pay. Disability severance pay is computed in the following manner:

Monthly Base Pay x 2 x Years of service (not to exceed 12 Years)

Service members with 20 or more years of active military service, or possessing a disability rated at 30 percent or more, receive disability retirement. Disability retirement is either permanent or temporary depending on whether the member's disability is likely to change. Disability retirement pay is computed in the following manner for service members with less than 20 years of active duty military service:

30 percent-50 percent disability rating = 50 percent of basic pay;
50 percent-70 percent disability rating = that percentage of basic pay;
80 percent-100 percent disability rating = 75 percent of basic pay.
See chapter 61 of reference (a).

**I suffer from a condition listed in the VASRD. Does that mean I will be found Unfit and rated by the PEB?**

Just because a service member has a condition which matches a description in the VASRD does not mean that the PEB will find him/her Unfit to continue naval service and discharge him/her with a disability from the Navy or Marine Corps. Before a member is eligible for a disability separation or retirement the member's case must show that he/she is unable to reasonably perform the duties of his or her office, grade, rank, or rating and that this inability to perform is a direct result of a documented disability. See enclosure (3), parts 2 & 3.

**I have more than one diagnosis? If the PEB finds me Unfit as the result of one of my diagnoses, does that mean all of my diagnoses are unfitting and will be rated by the PEB?**

Before the PEB rates a member suffering from multiple diagnoses, the evidence must show that each condition prevents him/her from performing the requirements of his or her office, grade, rank, or rating. For example, in the case of a member suffering from a bad knee and a bad back must be able to show that each condition, independent of the other, prevents him/her from performing his or her military duties. See enclosure (3), part 8. The PEB rates only those conditions that are unfitting.

**I am going before a Formal PEB. What should I do?**

Once a service member is scheduled for a hearing, he/she will usually be contacted by a judge advocate assigned to the Formal PEB where the case will be heard. The military attorney will be available to represent the service member. However, members have the option of obtaining private counsel at their own expense or being represented by a National Service Officer of a National Service Organization. Members using the military counsel normally meet their counsel for the first time a day or so before the formal hearing. This is an opportunity to go over the member's case and discuss any last minute questions.

Immediately after the convening on the record of the Formal PEB proceeding, the Informal PEB findings become null and void. A member may, at any time prior to the convening on the record of the Formal PEB proceeding, withdraw the election for a Formal PEB and accept the Informal PEB findings. Once a Formal PEB proceeding has convened on the record, the member cannot accept the Informal PEB findings under any circumstances.

On the day of the hearing, members report, in the appropriate uniform of the day for the locale, to the presiding officer of the Formal PEB. The Formal PEB panel will inform the member of his or her rights, including the right to make sworn or unsworn statements, rights under the Privacy Act, and the right not to make any statements relating to the origin or aggravation of the injury. If the member whose case is before the PEB chooses not to testify under oath the Formal PEB panel may not question him or her.

During the Formal PEB, service members should anticipate questions relating to how the injury occurred, treatments received, medication, and limitations that the disability imposes. The member will be provided an opportunity to discuss his or her case in detail. At the Formal PEB, the panel will usually have the member's medical records, portions of his or her service record, and statements from the member's command concerning duty performance. To avoid undue delay and any detriment to the service member's case, the service member should obtain, and arrive at the hearing with his or her own personal copies of the above materials, especially those items that will be necessary in the presentation of the service member's case. The Formal PEB uses all of this information in its decision-making process.

Following questioning by the board members and the member's representative, the service member has one last opportunity to address the board members and has the option of making a brief statement. Only the board members are present during deliberations. The Formal PEB will forward their recommendations to the President, PEB for review and final authorization. Recommended findings are subject to administrative and legal review and may not be accepted by the President, PEB. See enclosure (4).

**Can I appeal the decisions of the Formal PEB?**

Service members who are dissatisfied with the decisions of the Formal PEB can appeal, in writing, by filing a Petition For Relief (PFR) with the DIRNCPB. The DIRNCPB can modify the findings of the PEB. However, subsequent to the PFR, the case is finalized and the member is separated or retired. After a service member has been separated or

retired from the naval service, he/she has the right to petition the Board for Correction of Naval Records (BCNR) for relief from any injustice or inequity. See enclosure (5).

**The PEB says my condition existed prior to service. How can this be? I never suffered from this condition before I came into the Navy/Marine Corps.**

Physical or mental disabilities that make a member Unfit may have existed prior to entering the service (EPTS). Causes of EPTS disabilities include hereditary or congenital defects or injuries with an inception before entering service. If a member has less than 8 years active service, they could be separated from the service without disability benefits if the PEB deems a member's injuries to have EPTS and his or her condition has not been permanently worsened by military service.

It is possible for a member to possess a physical or mental disability and never experience a problem until he/she faces the stresses of military life. The physical and emotional stress of military training can cause a latent condition to appear or an old injury to worsen to the point that the member is no longer able to perform his or her military duties.

To appeal a finding of EPTS, a member must either present persuasive medical evidence that the condition did not exist prior to entering the service, or provide medical evidence documenting that military service permanently aggravated a pre-existing condition. See enclosure (3), part 8.

**What is the 8-year rule?**

In the case of a member who is on active duty for more than 30 days whose disability is determined to have been incurred before the member became entitled to basic pay in the member's current period of active duty, the disability shall be deemed to have been incurred while the member was entitled to basic pay and shall be so considered for purposes of determining whether the disability was incurred in the line of duty provided the member has over 8 years of active service. The eight years of active service does not have to be continuous.

**What is the Presumed Fit rule?**

The disability evaluation system compensates members for disabilities when those disabilities cause or contribute to premature career termination. Service members retiring from the Navy/Marine Corps for reasons other than a disability, whose careers have not been interrupted by a physical or mental disability, are usually not eligible for medical retirement. Except for service members previously determined Unfit and continued in a permanent limited duty status, service members who are pending retirement (see paragraph 3305b) at the time they are referred for physical disability evaluation enter the disability evaluation system under a rebuttable presumption that they are physically fit; i.e. Presumed Fit (PFit). Continued performance of duty until a service member is approved for length of service retirement creates a rebuttable presumption that a service member's medical conditions have not caused premature career termination. In that situation, the PEB finds these members to be PFit. A finding of PFit means that the evidence presented to the PEB

establishes that the member's functional impairment did not prevent the member from achieving retirement eligibility. Members found to be PFit have the same rights within the DES as those found Fit. While members found PFit are not eligible for disability retirement, they are still eligible for retirement under other provisions of law, as well as for evaluation by the Department of Veteran's Affairs for disability compensation.

The member can overcome the "Presumption of Fitness " when it can be established by a preponderance of evidence that:

(1) within the presumptive period an acute, grave illness or injury occurs that would prevent the member from performing further duty if he or she were not retiring; or

(2) within the presumptive period, a serious deterioration of a previously diagnosed condition, to include a chronic condition, occurs and the deterioration would preclude further duty if the member were not retiring;

(3) the condition for which the member is referred is a chronic condition and a preponderance of evidence establishes that the member was not performing duties befitting either his or her experience in the office, grade, rank, or rating before entering the presumptive period. Evaluate cases of members in a TLD status on the merits of each case.

The Pfit rule is not overcome when there has been no serious deterioration within the presumptive period. The ability to perform duty in the future as a result of natural progression shall not be a consideration in overcoming PFit.

**<u>10002 Conclusion.</u>**

The above information is only an overview of the disability evaluation system. It is not intended as a comprehensive review of the system. Thousands of Sailors and Marines go through the disability evaluation system each year. The physical disability evaluation process can be confusing. Sailors and Marines going through the system should attempt to educate themselves with the help of their PEBLO counselors. The Secretary of the Navy tasks the PEBLO counselors with the responsibilities of counseling and educating service members, undergoing a hospital medical board, on the PEB process. PEBLO counselors carry out this function through the Disability Transition Assistance Program (DTAP). This program is conducted regularly at medical treatment facilities and attendance of members going through the medical board process is mandatory.