**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JEFFREY G. WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-00533 |
| | ) | (Judge Sweeney) |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS AND MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

**Table of Contents**

INTRODUCTION ....................1

STATEMENT OF THE CASE ....................4

A. Statutory and Regulatory Scheme ....................4

B. Background ....................7

STANDARD OF REVIEW ....................11

A. Standard of Review for a Motion for Judgment on the Administrative Record ....................11

B. Standard of Review for a Motion to Dismiss ....................12

ARGUMENT ....................13

I. The Government Has Waived Arguments Not Raised in its Opening Brief. ....................13

II. The BCNR's Decision Should Be Reversed Because it Was Not in Accordance with Law and Not Supported by Substantial Evidence. ....................15

A. The Navy's Failure to Abide by its Regulations is Subject to Judicial Review and Violated Federal Law ....................15

1. Claims that the Navy Violated its Own Regulations are Subject to Judicial Review. ....................15

2. The Navy Failed to Adhere to its Own Regulations With Respect to Petty Officer Walls. ....................16

B. The BCNR's Decision is Not Supported by Substantial Evidence ....................22

III. The Court Should Deny the Government's Motion to Dismiss ....................23

A. Petty Officer Walls' Amended Complaint States a Claim for Relief. ....................23

B. The Government's Motion Must be Denied Because It Relies on Assertions of Fact that Contradict Petty Officer Walls' Well-pleaded Allegations. ....................24

1. Petty Officer Walls' Health Problems Began Before His Scheduled Retirement Date. ....................25

2. Petty Officer Walls Was on Active Duty Well Beyond His Scheduled Retirement Date ....................25

3. Petty Officer Walls' Retirement Was Not Voluntary. ...............................26

C. The Government's Other "Arguments" are Merely Conclusory Statements that Contradict Controlling Authority....................................................................28

1. The Government Should Not Be Permitted to Penalize Petty Officer Walls for the Navy's Failure to Abide by its Own Regulations. ..........................................................................................28

2. Petty Officer Walls' Hospitalization Triggered His Placement on Medical Hold by Operation of Law. ..........................................................30

CONCLUSION.........................................................................................................................32

**Appendix Table of Contents**

Attachment A – MILPERSMAN 1830-040

Attachment B – SECNAVINST Regulations

## Table of Authorities

**Cases**

Adkins v. United States, 68 F.3d 1317 (Fed. Cir. 1995)................................................ 11, 12, 16

Athey v. United States, 78 Fed. Cl. 157 (2007).............................................................................. 12

Bell Atlantic v. Twombly, 127 S.Ct. 1955 (2007)................................................... 12, 25, 26, 28

Bond v. United States, 47 Fed. Cl. 641 (2000)............................................................................... 11

Canonica v. United States, 41 Fed. Cl. 516 (1998)......................................................................... 27

Catawba Indian Tribe of South Carolina v. United States, 982 F.2d 1564 (Fed. Cir. 1993)........ 12

Chambers v. United States, 417 F.3d 1218...................................................................................... 4

Dixon v. Department of Transportation, 8 F.3d 798 (Fed. Cir. 1993).................................. 22, 23

Dodson v. United States, 988 F.2d 1199 (Fed. Cir. 1993)..................................................... 11, 22

Ferrell v. United States, 23 Cl. Ct. 562 (1991) ........................................................................ passim

Fisher v. United States, 402 F.3d 1167 (Fed. Cir. 2005) ................................................................ 16

Golding v. United States, 48 Fed. Cl. 697 (2001)................................................................... 20, 22

Heisig v. United States, 719 F.2d 1153 (Fed. Cir. 1983)........................................... 12, 22, 23

Henke v. United States, 60 F.3d 795 (Fed. Cir. 1995)............................................... 12, 24, 28

Hernandez v. Dep't of the Air Force, 498 F.3d 1328 (Fed. Cir. 2007) ...................................... 32

Ironclad/EEI v. United States, 78 Fed. Cl. 351 (2007) ................................................................... 14

Kindred v. United States, 41 Fed. Cl. 106 (1998)....................................................... 21, 22, 26

Krauss v. United States, 40 Fed. Cl. 834 (1998)................................................... 19, 21, 29, 30

Lindsay v. United States, 295 F.3d 1252 (Fed. Cir. 2002) ..................................... 11, 15, 22, 30

McHenry v. United States, 367 F.3d 1370 (Fed. Cir. 2004)................................................ 27, 29

Murphy v. United States, 993 F.2d 871 (Fed. Cir. 1993) ...................................................... 11, 12

Norris v. United States, 39 Fed. Cl. 807 (1998) ............................................................................ 27

Novosteel v. United States, 284 F.3d 1261 (Fed. Cir. 2002)................................................ 13, 14

Palmer v. United States, 168 F.3d 1310 (Fed. Cir. 1999) .......... 26

Porter v. United States, 163 F.3d 1304 (Fed. Cir. 1998) .......... 11, 23

Rio Hondo Mem. Hosp. v. United States, 689 F.2d 1025 (Ct. Cl. 1982) .......... 32

Seattle Opera v. N.L.R.B, 292 F.3d 757 (D.C. Cir. 2002) .......... 13

Six v. United States, 71 Fed. Cl. 671 (2006) .......... 12, 22

United States v. Ford Motor Co., 463 F.3d 1267 (Fed. Cir. 2006) .......... 13, 14

Voge v. United States, 844 F.2d 776 (Fed. Cir. 1988) .......... 11, 16

**Statutes**

37 U.S.C. § 204(a) (2006) .......... 6, 17, 18

37 U.S.C. § 402 .......... 6

37 U.S.C. § 403 .......... 6

**Regulations**

MILPERSMAN 1830-030 .......... 32

MILPERSMAN 1830-040 .......... passim

MILPERSMAN 1830-040(5)(d) .......... 6

SECNAVINST 1850.4D .......... 4

SECNAVINST 1850.4D § 1001(m) .......... 5

SECNAVINST 1850.4D § 1003 .......... 4

SECNAVINST 1850.4D § 3102 .......... 5, 18

SECNAVINST 1850.4D § 3102(b) .......... 5, 17

SECNAVINST 1850.4D § 3106 .......... passim

SECNAVINST 1850.4D § 3107 .......... 18

SECNAVINST 1850.4D § 3107(b) .......... 5, 18

SECNAVINST 1850.4D § 3204 .......... 5

SECNAVINST 1850.4D § 8001(a) .......... 4, 17

SECNAVINST 1850.4D § 8002(b) .......... 4

SECNAVINST 1850.4D § 8002(j)(1) .......... 4, 17

SECNAVINST 1850.4D § 8012 .......... 17

SECNAVINST 1850.4D § 8012(m) .......... 4

SECNAVINST 1850.4E .......... 4

SECNAVINST 1850.E § 10002 .......... 15

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JEFFREY G. WALLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-00533 |
| | ) | (Judge Sweeney) |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS AND MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

## INTRODUCTION

It is with more than a little sadness that Petty Officer Walls brings suit against the Government to recover back pay for time that he served in the United States Navy. Petty Officer Walls is a dedicated public servant with a deep loyalty to the Navy and a fond regard for military service. It is hard not to sympathize, therefore, with Petty Officer Walls' dismay and frustration at what amounted to the Navy's abandonment of him in his final days of service. After suffering from an injury sustained while in the line of duty, Petty Officer Walls continued to serve his country, asking only that he be provided with adequate medical treatment for his injuries.

His requests fell largely on deaf ears, and it was not until the waning days of his term of service, and when his medical condition deteriorated to the point where he could hardly work at all, that he found Navy physicians who appreciated the full gravity of his conditions. Shortly

before his scheduled date of retirement, he was diagnosed with several conditions that required his referral into the Navy's compulsory disability evaluation system.

Pursuant to the recommendation of his treating physician, Petty Officer Walls was ordered to report for hospitalization and medical treatment to the National Naval Medical Center, Bethesda ("NNMC"), a Department of Defense authorized Medical Treatment Facility ("MTF"). At the NNMC, Petty Officer Walls underwent intensive medical treatment and palliative care for several months. When his medical condition improved somewhat, he returned to full-time duty at the NNMC, performing administrative functions in the Chaplain's Office, the library, and the mailroom. When his condition improved considerably, he was discharged from the NNMC and he returned home.

While hospitalized at the NNMC, the Navy was required to place Petty Officer Walls on "medical hold" status, which, pursuant to military regulations, holds a service member over from retirement when his medical conditions require treatment past his scheduled date of retirement. The purpose of the medical hold process is twofold: first, it provides a service member appropriate medical care even if his treatment is incomplete by his scheduled date of retirement; second, medical hold is necessary for the military to keep a convalescing service member in the service until his condition is stabilized. Once stabilized, the service member can be assigned a permanent disability rating, if necessary, before final discharge from the service.

Military regulations and statutes provide that a service member on medical hold is retained on active duty and, therefore, is entitled to his basic pay during this time. Federal law also provides that a service member who is no longer on active duty but who is performing full-time duty is entitled to basic pay. Petty Officer Walls was held over from retirement due to his hospitalization at the NNMC and, as a consequence, is entitled to his basic pay for that time. He

did not receive his pay for the time he was hospitalized at the NNMC. Petty Officer Walls also performed full-time duty while he was undergoing treatment at the NNMC. He received no payment for the time he spent on full-time duty.

Petty Officer Walls sought correction of his military records before the Board for Correction of Naval Records ("BCNR") without success. The BCNR gave short shrift to Petty Officer Walls' pro se attempts to explain his situation. While his letters and pleas to the BCNR were far from a model of clarity, the facts they stated warranted more consideration than the BCNR provided.

Petty Officer Walls brought suit before this Court to enforce his right, under federal law, to receive his basic pay for the time he was hospitalized and served at the NNMC. The Government has moved to dismiss Petty Officer Walls' Amended Complaint, or, in the alternative for judgment on the administrative record, arguing against a literal and logical reading of federal law. The Government has argued, without support, that the Navy's actions are beyond judicial review. The Government ignores or glosses over many of the facts and issues Petty Officer Walls' raises in his Amended Complaint. Instead, the Government raises a series of issues irrelevant to the case. Nevertheless, federal law is clear: Petty Officer Walls is entitled to his basic pay and is entitled to enforce this right in the Court of Federal Claims.

Because the Government has failed to show why the Navy is entitled to violate federal law, because it has failed to counter Petty Officer Walls' well-pleaded allegations, and because it has failed to show that the BCNR's actions were supported by substantial evidence, the Government's motions should be denied.

## STATEMENT OF THE CASE

A. Statutory and Regulatory Scheme

The Navy's detailed regulatory system is designed to permit the Navy to evaluate injured service members for the dual purposes of determining their fitness to continue their service and, for those found unfit to serve, assigning a disability rating in order to compensate them. Amend. Compl. ¶ 13. This regulatory framework "assures the rights of the [service] member afforded by law . . . and eases transition to civilian life for those found Unfit for continued naval service." SECNAVINST 1850.4D § 1003; Amend. Compl. ¶ 13.[1]

Among the protections guaranteed by the Navy, a service member's commanding officer, commanding officers MTFs, like the NNMC, and individual medical officers "shall promptly identify for evaluation" by a Medical Evaluation Board ("MEB") and refer to a Physical Evaluation Board ("PEB") "those members presenting for medical care whose physical . . . fitness to continue naval service is questionable." SECNAVINST 1850.4D §§ 1005; 3106; Amend. Compl. ¶ 14. Neither commanding officers nor medical officers have any discretion "to omit or postpone disability evaluation of physical impairment which renders questionable the ability of service members to perform reasonably the duties of office, grade, rank, or rating." SECNAVINST 1850.4D § 3106; Amend. Compl. ¶ 15. Diagnoses of scoliosis, neurological disorders, and knee injuries are all causes for referral to MEBs and PEBs. SECNAVINST 1850.4D §§ 8001(a), 8002(b), 8002(j)(1), 8012(m); Amend. Compl. ¶ 16.

---

1 The Government cites to SECNAVINST 1850.4E throughout its brief although SECNAVINST 1850.4D was in effect at the time of Petty Officer Walls' discharge. The Court must apply the law in effect at the time of the plaintiff's discharge. Chambers v. United States, 417 F.3d 1218, 1227 ("regulations in effect at the time of [plaintiff's] discharge" "rather than current regulations, guide our analysis."). SECNAVINST 1850.4E, which came into force in 2002, was not in effect during any time relevant to Petty Officer Walls' claims. See 1850.4E ¶ 2.

"An individual case is accepted by the PEB when all medical and non-medical information necessary to evaluate the case appropriately has been received by the PEB." SECNAVINST 1850.4D § 3102(b); Amend. Compl. ¶ 17. Together, the medical and non-medical information sent to the PEB is known as the Medical Evaluation Board Report ("MEB Report"). The PEB may not terminate a pending case once it has been accepted without "returning the MEB report, to include all supporting documents, to the originating MTF for corrective action, if warranted." SECNAVINST 1850.4D § 3204; Amend. Compl. ¶ 17.

Once the PEB accepts the required medical documents, it must conduct "a record review of the case. The individual concerned then is notified of the preliminary findings" and given the opportunity to acquiesce in the PEB's preliminary findings. "If the member does not agree with the preliminary findings, the member can request reconsideration of that decision by the same Informal PEB" and demand "a personal appearance before a Formal PEB." SECNAVINST 1850.4D § 3102; Amend. Compl. ¶ 18. "The Formal PEB is the member's opportunity, with the assistance of legal counsel, to present evidence, testimony, and documents in support of his case. The service member is represented by an appointed military lawyer and may appear in person and present evidence pertinent to the case." SECNAVINST 1850.4D § 1001(m); Amend. Compl. ¶ 19. A certified Navy counselor, designated a PEB Liaison Officer, or PEBLO, shall counsel the member about the disability evaluation process, "the significance of action being taken in a case, its probable effect on his or her future, and options available." SECNAVINST 1850.4D § 3107(b); Amend. Compl. ¶ 20.

These regulations not only provide injured service members with the right to be appropriately evaluated for disability, but they also define the procedures guaranteeing the right of injured service members to continue to receive their basic pay. Amend. Compl. ¶ 21. When a

PEB accepts an MEB Report for disability evaluation, the service member's transfer to the Fleet Reserve must be delayed, and he is retained on active duty, pending the outcome of the disability evaluation. MILPERSMAN 1830-040[2]; Amend. Compl. ¶ 22.

Similarly, a service member facing a mandatory transfer to the Fleet Reserve will be retained on active duty if hospitalized. MILPERSMAN 1830-040; Amend. Compl. ¶ 23. The Military Pay Act, 37 U.S.C. § 204(a) (2006), provides that a "member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which [he is] assigned." Amend. Compl. ¶ 24.

Members of the uniformed service who are no longer on active duty are also entitled to their basic pay for work performed while they are participating in full-time duty. The Military Pay Act provides that a "member of the uniformed service" who is participating in "full-time duty" is "entitled to the basic pay of the pay grade to which [he is] assigned." 37 U.S.C. §204; Amend. Compl. ¶ 25. Pursuant to 37 U.S.C. § 402, "each member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for subsistence." Furthermore, 37 U.S.C. § 403 provides that a "member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for housing." Amend. Compl. ¶ 26.

---

2 MILPERSMAN 1830-040, which was in force during the period relevant to this case, was subsequently amended. The relevant language has remained the same. See MILPERSMAN 1830-040(5)(d).

B. Background

Petty Officer Walls had served in the United States Navy for over 20 years when he was retired into the Naval Fleet Reserve. Amend. Compl. ¶ 2. In 1984, he was wounded during flight operations; this injury resulted in chronic pain from which Petty Officer Walls would suffer throughout the remainder of his career with the Navy. Amend. Compl. ¶ 28. On several occasions Petty Officer Walls sought care from the proper medical personnel; each time he was denied effective treatment. Amend. Compl. ¶¶ 32-35. During his visits to Naval medical doctors during his period of service, he was diagnosed not only with his initial back and knee injuries, but also with scoliosis and neurological disorders as well. Amend. Compl. ¶¶ 33, 35, 38; Administrative Record ("AR") at 53; AR at 297, 299. He continues to receive treatment for this pain to this day.

Before his scheduled retirement date, Petty Officer Walls was under the care of several Naval doctors, including Dr. Cullom, the physician that treated him at the NNMC, and Dr. Yao, his primary care physician. Amend. Compl. ¶ 36, 38. Before his scheduled date of retirement, Dr. Cullom informed him that he was not fit to retire due to his medical condition and recommended that he be hospitalized for treatment. Amend. Compl. ¶ 39. Because she recommended that he be hospitalized, she also recommended that he be placed on "medical hold," which, consistent with Navy regulations, would retain him on active duty past his scheduled retirement date so that he could be treated for his injuries prior to his retirement. MILPERSMAN 1830-040; Amend. Compl. ¶ 39; AR at 56. Medical hold status is intended to ensure that the service member's condition is stable at the time of retirement so that a permanent disability rating can be assigned. MILPERSMAN 1840-040 (a service member on medical hold "will be retained until member qualified for disability retirement").

Pursuant to Dr. Cullom's recommendation, Petty Officer Walls was ordered to report to the NNMC for hospitalization. Amend. Compl. ¶¶ 41-42. At the NNMC, Petty Officer Walls was hospitalized and treated on a daily basis for his medical conditions, including steroid injections and pain management care. Amend. Compl. ¶¶ 43, 49.

While at the NNMC, Petty Officer Walls lived in Navy-provided barracks; he was required to sign into and out of his barracks when he entered and left the barracks each day. He was required to abide by a curfew and wear his military uniform while stationed at the NNMC. Petty Officer Walls' room was also subject to regular inspection during this time. Amend. Compl. ¶¶ 44-48.

When the pain of his injuries became more manageable, Petty Officer Walls performed duties at the NNMC. Among his responsibilities, Petty Officer Walls performed administrative duties in the Chaplain's office, in the library, and in the mailroom. During the time that Petty Officer Walls performed these duties, he continued to receive medical care on a regular basis. Amend. Compl. ¶¶ 51-52. As his condition improved, Petty Officer Walls' medical treatment was reduced to twice per week. In the winter of 2001, he moved out of the NNMC barracks. Even after he moved out of the NNMC barracks, he continued to report for duty each day at the NNMC and continued to receive regular medical care. Amend. Compl. ¶¶ 53-54. By April 2001, Petty Officer Walls' condition improved to the point that he was told he would be discharged from the NNMC. He was discharged in May 2001. Amend. Compl. ¶ 55.

On the advice of Dr. Cullom, Petty Officer Walls filled out an application that was sent to the BCNR requesting that he be retained on medical hold status pending the completion of his medical treatment. Amend. Compl. ¶ 57-58; AR at 32. A panel of the BCNR finally denied his claim on May 17, 2006. In denying his claim, the BCNR erroneously failed to consider whether

Petty Officer Walls had been hospitalized, instead relying on an erroneous regulatory interpretation to reject his claim. AR at 4. The BCNR failed to consider the full-time duty Petty Officer Walls performed while he was stationed at the NNMC. AR at 2. The BCNR erroneously failed to consider evidence of Petty Officer Walls' spinal injury. AR. at 4. The BCNR failed to consider evidence that Petty Officer Walls was unable to perform military duty appropriate for his rank and rating. AR. a 4. Finally, the BCNR failed to correct the Navy's violation of federal regulations related to the proper procedures for referral to a PEB. AR at 2-5.

On August 10, 2007, Petty Officer Walls brought suit in this Court to recover his basic pay and associated benefits for the time he served at the NNMC. Count I alleges that Petty Officer Walls was hospitalized pursuant to the recommendation of his Navy physician and remained hospitalized from October 2000 until May 2001. Amend. Compl. ¶¶ 64-79. During this time, because Petty Officer Walls was hospitalized, he was, by operation of law, on medical hold, and therefore entitled to his basic pay and associated benefits. Because the Navy has withheld this payment, it is in violation of federal statutes and regulations. Petty Officer Walls seeks payment pursuant to this federal statutory scheme and correction of his naval records to reflect his proper dates of service. Amend. Compl. ¶¶ 69-72.

Count II alleges that Petty Officer Walls performed full-time duty while he was stationed at the NNMC. Amend. Compl. ¶¶ 77-79. Because he was performing full-time duty, he is entitled to his basic pay and associated benefits pursuant to the Military Pay Act. Amend. Compl. ¶ 75, 80. Because his basic pay and associated benefits were unlawfully withheld, Petty Officer Walls seeks payment pursuant to federal law and correction of his naval records. Amend. Compl. ¶¶ 81-82.

Count III seeks to enforce the procedural and substantive rights guaranteed by military regulations, including the SECNAVINST and the MILPERSMAN regulations. Pursuant to these regulations, the Navy was obligated to provide Petty Officer Walls with an evaluation by a PEB which, by operation of regulation, would have placed him on medical hold while his condition was being evaluated. Amend. Compl. ¶¶ 87-90. While being evaluated, regulations required the PEB to notify him of its evaluation and to furnish him the opportunity, with representation, to contest its findings and conclusions. Amend. Compl. ¶¶ 91-93. Petty Officer Walls was denied these guaranteed rights. Amend. Compl. ¶¶ 96-98. Because he was denied these protections, he was mistakenly denied his basic pay and associated allowances that flow directly from the unlawful denial of his medical hold status. Because his basic pay and associated benefits were unlawfully withheld, Petty Officer Walls seeks payment pursuant to federal law and correction of his naval records. Amend. Compl. ¶¶ 99-100. Finally, Petty Officer Walls seeks his costs and other expenses incurred to prosecute this action, as well as reasonable attorneys' fees and other appropriate relief. Amend. Compl. ¶ 102-104.

On October 1, 2007, the Government moved to dismiss Petty Officer Walls' Amended Complaint, or in the Alternative, for Judgment on the Administrative Record. The Government argues that Petty Officer Walls has failed to state a claim because he voluntarily retired from the military and because he was not hospitalized nor in the Navy's disability evaluation system prior to his originally scheduled retirement date. The Government also argues that the BCNR's decision denying Petty Officer Walls relief was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Gov. Motion at 1-2. The Government does not address Petty Officer Walls' other claims and arguments.

## STANDARD OF REVIEW

A. Standard of Review for a Motion for Judgment on the Administrative Record

"The military no less than any other organ of the government is bound" to "abide by its own procedural regulations." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002). As a result, once a branch of the military has promulgated regulations, the Court of Federal Claims, "may review the [challenged] process for compliance with established procedures." Voge v. United States, 844 F.2d 776, 779 (Fed. Cir. 1988). Judicial review of the military's compliance with its own procedures is appropriate because, by "their nature the procedures limit the military's discretion." Murphy v. United States, 993 F.2d 871, 873 (Fed. Cir. 1993).

On a motion for judgment on the administrative record, this Court reviews the decision of the BCNR to determine whether it is "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Porter v. United States, 163 F.3d 1304, 1311, 1312 (Fed. Cir. 1998). Under this standard, the Government's motion for judgment on the administrative record will be denied when the BCNR decision fails to correct "legal error committed by the military." Dodson v. United States, 988 F.2d 1199, 1204 (Fed. Cir. 1993); Bond v. United States, 47 Fed. Cl. 641, 662-63 (2000).

In order to determine whether the military committed legal error, the court need only compare the military's actions with the standards found in the military's own regulations and procedures. Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995). "In cases in which procedural violations are alleged, the test or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations. In such instances, this court does not improperly exercise any discretion reserved for the military; 'it

merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard.'" Adkins, 68 F.3d at 1323 (quoting Murphy, 993 F.2d at 873).

When reviewing the decision of a BCNR for substantial evidence, "all of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion." Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). As a result, this Court may look outside the Administrative Record to determine whether additional evidence calls into question the correctness of the BCNR's decision. Id. at 1156-57; Six v. United States, 71 Fed. Cl. 671, 679-80 (2006). The government's motion for judgment on the administrative record will be denied if the BCNR failed to correct the Navy's violations of its own procedures and regulations or if the BCNR's decision was not supported by substantial evidence.

B. Standard of Review for a Motion to Dismiss

When passing on a motion to dismiss for failure to state a claim, the court must assume all of the plaintiff's "factual allegations to be true and draw all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (citations omitted); Catawba Indian Tribe of South Carolina v. United States, 982 F.2d 1564, 1568-69 (Fed. Cir. 1993). As the Supreme Court has recently reiterated, "once a claim for relief has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965 (2007); Athey v. United States, 78 Fed. Cl. 157, 161 (2007). Moreover, "once a claim for relief has been stated, a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." Twombly, 127 S.Ct. at 1969. As a result, if the Amended Complaint alleges any set of facts that state a claim for relief, the Government's motion to dismiss must be denied.

## ARGUMENT

I. The Government Has Waived Arguments Not Raised in its Opening Brief.

By failing to address many of the issues raised in the Amended Complaint in its opening brief, the Government has waived its right to address them in its reply brief. Novosteel v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002). It is well-established that raising an "issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief-they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." Id. at 1274. As a result, courts treat arguments raised for the first time in reply as waived. Id.

An issue that is merely raised in a "cursory fashion" will be waived as well. United States v. Ford Motor Co., 463 F.3d 1267, 1277 (Fed. Cir. 2006); Seattle Opera v. N.L.R.B, 292 F.3d 757, 764 n.8 (D.C. Cir. 2002). It is "unfair to consider an argument" raised "in an single three-sentence footnote." Ford, 463 F.3d at 1277. Similarly, a simple assertion of a fact that does not "explain[] the *legal* significance of the fact" will not be considered by the court. Seattle Opera, 292 F.3d at 764 n.8.

The Government has wholesale ignored many of the issues and facts raised in Petty Officer Walls' Amended Complaint. Similarly, the Government has glossed over many of the issues raised without any meaningful argument. For example, the Government has completely ignored Petty Officer Walls' Count II, which alleges and argues that he was on full-time duty while at the NNMC. Amend. Compl. ¶¶ 73-83. The Government does not address the allegations that Petty Officer Walls was ordered to report to the NNMC or that he in fact lived in Navy-provided barracks while at the NNMC. Amend. Compl. ¶¶ 77-78. The Government does not address the allegation that Petty Officer Walls was required to abide by a curfew and wear

his military uniform while stationed at the NNMC. Amend. Compl. ¶78. The Government ignores the facts that Petty Officer Walls was required both to perform duty when he was physically capable and to inform the assigning officer when he was unable to work. Amend. Compl. ¶ 79. The Government does not counter the fact that Petty Officer Walls performed administrative duties in the Chaplain's office, in the library, and in the mailroom at the NNMC. Amend. Compl. ¶79. The Government does not even mention the Military Pay Act, the statute that obligates the Government to pay Petty Officer Walls for his service on full-time duty.

In addition, the Government does not address much of the legal authority cited in the Amended Complaint. The Government did not address the argument that the Navy was obligated to refer Petty Officer Walls for evaluation based on his conditions and grant Petty Officer Walls procedural protections, including an opportunity, with representation, to present evidence, testimony, and documents in support of his case. E.g., Amend. Compl. ¶¶ 35, 88, 89, 92-93.

Moreover, the Government glossed over many other arguments raised in the Amended Complaint. For example, the Government devotes only a few sentences to Count I, the argument that Petty Officer Walls was retained on active duty due to his hospitalization at the NNMC. It is the obligation of the parties to "give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply brief." Novosteel, 284 F.3d at 1274. Because the Government ignored many of the issues raised in Petty Officer Walls' Amended Complaint, and because it addressed many others in a cursory fashion, the government has waived its right to raise these arguments in its reply. Ford Motor Co., 463 F.3d at 1276-77; Novosteel, 284 F.3d at 1273-74; Ironclad/EEI v. United States, 78 Fed. Cl. 351, 357-58 (2007). Because the

Government may not raise new arguments to these issues, the Government's Motions, with respect to Counts I and II at the very least, may be denied on this basis alone.

## II. The BCNR's Decision Should Be Reversed Because it Was Not in Accordance with Law and Not Supported by Substantial Evidence.

### A. The Navy's Failure to Abide by its Regulations is Subject to Judicial Review and Violated Federal Law.

Rather than squarely address the issues raised by the Amended Complaint, the Government erroneously argues that this Court does not have the power to determine whether the Navy violated its own regulations. Because the Navy failed to abide by its own regulations with respect to Petty Officer Walls, its actions were not in accordance with law.

#### 1. Claims that the Navy Violated its Own Regulations are Subject to Judicial Review.

The Government argues that the "decision to request an MEB is fully discretionary and unreviewable." Gov. Motion at 10. This does not address the issue at hand, namely, whether the Navy was required to submit Petty Officer Walls' MEB Report to a PEB, thus triggering the medical hold process.[3] Contrary to the Government's suggestion, the Navy's SECNAVINST regulations themselves provide rules and standards requiring the Navy to submit Petty Officer Walls' MEB Report to a PEB for evaluation. Because the Navy has chosen to promulgate rules, it is bound by them, and their violation is subject to remedy in this Court.

"The military no less than any other organ of the government is bound . . . to abide by its own procedural regulations." Lindsay, 295 F.3d at 1257. Even if "the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge

---

[3] The quotation cited by the Government also does not appear in the SECNAVINST regulations. Rather, it appears in a question-and-answer appendix to the SECNAVINST entitled "What You Need to Know About the Physical Evaluation Board." This appendix specifically states that it is not the operative law, but rather that it is "only an overview of the disability evaluation system. It is not intended as a comprehensive review of the system." SECNAVINST 1850.E § 10002, 10-7.

to the particular *procedure* followed in rendering a military decision" is properly the subject of judicial review. Adkins, 68 F.3d at 1323. As a result, the Court of Federal Claims "may review [a] process" challenged by former servicemen "for compliance with established procedures." Voge, 844 F.2d at 779.

In other words, any discretion that the military possesses over its personnel decisions is limited by the regulations that the military itself has promulgated; the military's "procedures by their nature limit the military's discretion" and, therefore, a "court may decide whether the military has complied with procedures set forth in its own regulations." Fisher v. United States, 402 F.3d 1167, 1177 (Fed. Cir. 2005).

Because the Navy's legal obligations "are inherent in the requirements of the applicable regulation itself," Fisher, 402 F.3d at 1177, the Court need only compare the Navy's binding obligations, found in its regulations, to its treatment of Petty Officer Walls to determine the legality of the Navy's actions.

2. The Navy Failed to Adhere to its Own Regulations With Respect to Petty Officer Walls.

Among the protections guaranteed by the Navy, a service member's commanding officer, commanding officers of the NNMC, and individual medical officers "shall promptly identify for evaluation" and refer to a PEB "those members presenting for medical care whose physical . . . fitness to continue naval service is questionable." SECNAVINST 1850.4D §§ 1005; 3106.

Neither commanding officers nor medical officers have any discretion "to omit or postpone disability evaluation of physical impairment which renders questionable the ability of service members to perform reasonably the duties of office, grade, rank, or rating." SECNAVINST 1850.4D § 3106. Diagnoses of scoliosis, neurological disorders, and knee

injuries are all causes for referral to a PEB. SECNAVINST 1850.4D §§ 8001(a), 8002(b), 8002(j)(1), 8012; Amend. Compl. ¶ 16.

Prior to his retirement, Petty Officer Walls was diagnosed with knee injuries, scoliosis, and a neurological disorder. Am. Compl. ¶¶ 29, 35, 38; AR at 53, 297, 299. His treating physician, Dr. Cullom, told him that he was not fit to retire due to his conditions and that she would also recommended to Dr. Yao, his primary care physician, that he be placed on "medical hold," which, consistent with Navy regulations, would retain him on active duty past his scheduled retirement date. MILPERSMAN 1830-040; Amend. Compl. ¶ 39; AR at 56.

As a result, the Navy was required, by its own regulations, to refer Petty Officer Walls' medical condition to a PEB. SECNAVINST 1850.4D §§ 1005; 3106. It is unclear whether either Dr. Yao or Dr. Cullom ever sent Petty Officer Walls' MEB Report to the PEB as is required by regulation. If they did not, then their failure to do so was in violation of federal law. SECNAVINST 1850.4D §§ 1005; 3106, 8001(a). This violation, in turn, prevented Petty Officer Walls from being placed on medical hold because, as noted, medical hold must be initiated when an MEB Report is submitted to a PEB. MILPERSMAN 1830-040. Because Petty Officer Walls was unlawfully prevented from being placed on medical hold, he was unlawfully denied his basic pay, to which he is entitled by statute. 37 U.S.C. § 204(a).

By contrast, if Dr. Cullom or Dr. Yao did send his MEB Report to the PEB, then Petty Officer Walls should have been automatically placed on medical hold by operation of federal regulations. SECNAVINST 1850.4D §3102(b); MILPERSMAN 1830-040. The failure of the Navy to place Petty Officer Walls on medical hold pending the outcome of his PEB evaluation prevented him from receiving his basic pay.

Furthermore, if a PEB did receive his MEB Report, Petty Officer Walls was never notified of the PEB's review of his case, as is required by SECNAVINST 1850.4D §3102. He was given the opportunity neither to contest the findings of the informal PEB nor to request a formal PEB. SECNAVINST 1850.4D § 3102. He was not permitted to request legal counsel or the advice of a PEBLO. SECNAVINST 1850.4D § 3107. Each of these violations denied him the right to be properly classified as on medical hold and, as a consequence, denied him the right to continue to receive his basic pay and allowances.

In sum, while it is unclear at this time which member or members of the Navy violated the SECNAVINST and MILPERSMAN regulations, it is beyond doubt that these binding regulations were violated. The Navy was required to send Petty Officer Walls' MEB Report to a PEB for review. Once the MEB Report was received, the Navy was required to place Petty Officer Walls on medical hold and provide him with procedural protections pending review of his condition. Whether the Navy failed to send his MEB Report to a PEB or whether it failed to place him on medical hold once the PEB received his MEB is of no moment; in either scenario, the Navy violated its binding regulations. Because it violated these regulations, Petty Officer Walls was unlawfully denied medical hold status and, as a result, his basic pay. 37 U.S.C. § 204(a); SECNAVINST 1850.4D §§ 1005; 3102, 3106, 3107; MILPERSMAN 1830-040.

The Government and the BCNR suggest that Petty Officer Walls' medical claims should be viewed with skepticism because he made a "last minute claim" that he was "suffer[ing] from an unfitting medical condition." Gov. Motion at 4 (citing AR at 3-4). To the contrary, the medical hold process is specifically designed to protect plaintiffs, like Petty Officer Walls, whose medical conditions deteriorate shortly before retirement. Krauss is instructive as to the appropriate procedure under these circumstances. In Krauss v. United States, 40 Fed. Cl. 834

(1998), a Naval officer was informed that the failure of the Navy to select him for promotion "necessitated his release from active duty" and a retirement date was chosen. Id. at 836. Before his retirement date, he reported for his annual physical at which he was diagnosed with sleep apnea which, like scoliosis, neurological disorders and knee injuries, is listed as a cause for referral to a PEB in the SECNAVINST. Id. As a consequence, his physician properly recommended "his retention on active duty beyond his . . . separation date while medical studies and diagnoses" were conducted. Id. at 836. In order to allow for "treatment of his medical conditions," the NNMC further "requested that the plaintiff be extended on active duty for an additional six months." Id. After treatment, the plaintiff's physician deemed him "qualified for retirement." Once fit, the plaintiff was then retired, almost four years after his scheduled retirement date. Id. at 837. Like Krauss, Petty Officer Walls was diagnosed, shortly before his scheduled retirement date, with conditions that required further medical treatment. Like in Krauss, Petty Officer Walls' doctor determined that he was not fit to retire. Unlike in Krauss, however, the Navy failed to properly extend Petty Officer Walls' active duty status while he awaited further medical treatment. This failure, as shown above, was in violation of Navy regulations.

The Court of Federal Claims has redressed similar violations of military regulations on many occasions. In Ferrell v. United States, 23 Cl. Ct. 562 (1991), a serviceman was treated for back problems and other medical conditions shortly before his scheduled retirement date. However, before his recovery was complete, he was discharged, despite the fact that his doctor placed a note on his medical records indicating: "Initiate a medical hold." Id. at 564. The plaintiff argued that the refusal to place him on medical hold denied him guaranteed procedural rights. The government countered that medical hold was not required because the plaintiff was

discharged rather than accepted for evaluation by a PEB. The court found the government's argument unpersuasive: "the very reason a determination of fitness was not made was because of the failure to put [plaintiff's] discharge on medical hold. The Government thus confronts plaintiff with a 'catch 22.' [Plaintiff] has not shown himself to be disabled during service, and yet he was not given the opportunity to prove he was disabled" because his resignation was processed before he could be properly evaluated. The court continued: "Plainly what should have happened to [plaintiff] is that his voluntary discharge should have been put on medical hold" to allow an MEB and PEB. Id. at 569. As a result, the court did not permit the Government to "retreat" into a "a presumption of correctness" of the military's findings. Id. at 570. The Court concluded by holding that it was legally erroneous for the military to discharge the plaintiff without permitting him to remain on medial hold while his condition was evaluated. As a result, the court granted the plaintiff's motion for summary judgment. Id. at 572.

Similarly, in Golding v. United States, 48 Fed. Cl. 697 (2001), Navy medical personnel prepared an MEB Report for the plaintiff, a Naval cadet. Naval regulations provided that the Navy's Chief of Medicine review and sign the plaintiff's MEB Report before he was discharged. Id. at 734. There was no evidence in the administrative record that the Chief of Medicine had reviewed his MEB Report before his discharge. Id. at 734-5. The Government argued that the court should presume that the Chief of Medicine complied with the law because it was "standard procedure" to do so. Id. at 735. The Court was not persuaded by the Government's request for a presumption that it discharged its duty lawfully. Id. Rather, in the absence of evidence that the Chief of Medicine in fact reviewed the plaintiff's MEB Report, the court found that "the Navy violated its own regulations;" consequently, the court granted the plaintiff's motion for summary judgment. Id. at 740.

Finally, in Kindred v. United States, 41 Fed. Cl. 106, 115-116 (1998), the Navy was required by the SECNAVINST to consider five factors when deciding whether to retain a plaintiff facing charges of misconduct. There was “no evidence” that the Navy “considered the factors for retention” before discharging the plaintiff. Id. at 119. The BCNR found that the Navy would have discharged the plaintiff even if it had considered the required factors. Id. Nevertheless, the court held that “the Navy was arbitrary and capricious when it discharged plaintiff without considering” the five required factors. Id. As a result, the court granted summary judgment for the plaintiff.

Taken together, these cases both identify appropriate disability evaluation procedures and highlight the Government’s failures with respect to Petty Officer Walls. The Navy was required to retain Petty Officer Walls on active duty while his medical condition was being evaluated. Krauss, 40 Fed. Cl. at 836; Ferrell, 23 Cl. Ct. at 563. Because Dr. Cullom requested in Petty Officer Walls’ medical report that he be placed on medical hold, Petty Officer Walls should have been retained until his condition was treated. Krauss, 40 Fed. Cl. at 836. Only then would his discharge have been appropriate. Id. The Navy is not permitted to place Petty Officer Walls in the “catch 22” of discharging him without a proper medical evaluation and then denying him medical hold status because he was discharged before he could be evaluated. Ferrell, 23 Cl. Ct. at 563. As a result, it was error for the Navy to refuse medical hold status to Petty Officer Walls before his condition could be evaluated prior to discharge. Krauss, 40 Fed. Cl. at 836; Ferrell, 23 Cl. Ct. at 563, 569. The Government is not entitled to a presumption that the Navy acted in accordance with law because there is no evidence that the Navy did in fact comply with the law with respect to Petty Officer Walls. Kindred, 41 Fed. Cl. at 119; Ferrell, 23 Cl. Ct. at 570. Because the Navy failed to abide by its own regulations and because it has no discretion to do so,

the BCNR's failure to correct the Navy's legal error was contrary to law. Dodson, 988 F.2d at 1204; Golding, 48 Fed. Cl. at 734; Kindred, 41 Fed. Cl. at 119. As a consequence, the Government's Motion for Judgment on the Administrative Record must be denied. Lindsay, 295 F.3d at 1257.

B. The BCNR's Decision is Not Supported by Substantial Evidence.

In addition to failing to correct the Navy's legal errors, the BCNR's decision must be reversed because it is not supported by substantial evidence. Administrative decisions that omit and are otherwise contradicted by the evidence are not supported by substantial evidence. Dixon v. Department of Transportation, 8 F.3d 798, 804 (Fed. Cir. 1993). When reviewing the BCNR's decision for the absence of substantial evidence, "all of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion." Heisig, 719 F.2d at 1156-7. As a result, this Court may look outside the Administrative Record to determine whether additional evidence calls into question the correctness of the BCNR's decision. Id.; Six, 71 Fed. Cl. at 679-80. Because the BCNR's decision omitted pertinent evidence and is contradicted by the evidence, it is not supported by substantial evidence and must be reversed.

First, the BCNR did not consider the full-time duty Petty Officer Walls performed while he was stationed at the NNMC or other indicia of his full-time duty status. AR at 2. Petty Officer Walls lived in Navy-provided barracks and abided by a curfew while stationed at the NNMC. Petty Officer Walls' room was also subject to regular inspection during this time. Amend. Compl. at ¶ 78.

Petty Officer Walls was required to perform limited duty each day he was physically able to do so and, when his health did not permit him to work, he was required to inform the officer

that assigned him work that he was unable to work. Among his responsibilities while at the NNMC, Petty Officer Walls performed administrative duties in the Chaplain's office, in the library, and in the mailroom. Even after his medical treatment was reduced to only two visits per week, and after he moved out of the barracks, Petty Officer Walls reported for duty each day until he was transferred out of the NNMC. Amend. Compl. ¶ 79.

Next, the BCNR erroneously failed to consider evidence of Petty Officer Walls' spinal injury. AR. at 4. Specifically, prior to his scheduled retirement date, Navy doctors diagnosed him with scoliosis. See, e.g., AR at 299, 302, 303. Finally, the BCNR failed to consider evidence that Petty Officer Walls was unable to perform his normal military duties. AR. at 4. Amend. Compl. ¶35. In the last year before his scheduled retirement, Petty Officer Walls was moved from Naval Marine Corps Reserve Center to the Defense Intelligence Agency after he collapsed while on duty. Walls Decl. at ¶10. He was then moved, again, to still more limited duty at the State Department. Walls Decl. at ¶¶ 10-12. At each of these positions he was required to perform decreasingly strenuous activities, reflecting his deteriorating condition.

Because both the Administrative Record and other evidence largely contradict each of the BCNR's major findings and conclusions, and because the BCNR's decision omits discussion of relevant facts and legal principles, the BCNR's decision is not supported by substantial evidence. Dixon, 8 F.3d at 804; Heisig, 719 F.2d at 1156-7. As a result, the BCNR's judgment must be overturned. Porter, 163 F.3d at 1311; Dixon, 8 F.3d at 804.

III. The Court Should Deny the Government's Motion to Dismiss.

A. Petty Officer Walls' Amended Complaint States a Claim for Relief.

Petty Officer Walls' Amended Complaint has properly stated a claim for relief. Count I alleges that Petty Officer Walls was hospitalized pursuant to the recommendation of his Navy

physician and remained hospitalized from October 2000 until May 2001. Amend. Compl. ¶¶ 64-79. During this time, because Petty Officer Walls was hospitalized, he was, by operation of law, on medical hold, and therefore entitled to his basic pay and associated benefits. Amend. Compl. ¶ 69. Count II alleges that Petty Officer Walls performed full-time duty while he was stationed at the NNMC. Amend. Compl. ¶¶ 77-79. Because he was performing full-time duty, he is entitled to his basic pay and associated benefits pursuant to the Military Pay Act. Amend. Compl. ¶ 75. Count III seeks to enforce federal law, including the SECNAVINST and the MILPERSMAN regulations. Pursuant to these regulations, the Navy was obligated to provide Petty Officer Walls with an evaluation by a PEB which, by operation of regulation, would have placed him on medical hold while his condition was being evaluated. Amend. Compl. ¶¶ 87-90. While being evaluated, regulations required the PEB to notify him of the PEB's evaluation and to furnish him the opportunity, with representation, to contest the findings and conclusions of the PEB. Amend. Compl. ¶¶ 91-93. Petty Officer Walls was denied these guaranteed rights. Amend. Compl. ¶¶ 96-98. Because he was denied the protections of federal law, and because he served on full-time duty while at the NNMC, he was mistakenly denied his basic pay and associated allowances. Amend. Compl. ¶¶ 70, 81, 99.

B. The Government's Motion Must be Denied Because It Relies on Assertions of Fact that Contradict Petty Officer Walls' Well-pleaded Allegations.

In response to Petty Officer Walls' well-pleaded allegations, which are sufficient on their face to state a claim for relief, the Government merely provides "facts" that contradict the Amended Complaint. Because the court must assume all of the plaintiff's "factual allegations to be true and draw all reasonable inferences in plaintiff's favor," Henke, 60 F.3d at 797, and because a well-pleaded claim may be supported by showing any set of facts consistent with the

allegations in the complaint," Twombly, 127 S.Ct. at 1969, the Government's motion to dismiss must be denied.

1. Petty Officer Walls' Health Problems Began Before His Scheduled Retirement Date.

For example, the Government asserts that "after Mr. Walls voluntarily retired, he experienced health problems that resulted in extended medical treatment between October 2001 and May 2001." Gov. Motion at 2. This assertion is crucial to the Government's argument that Petty Officer Walls is not entitled to relief. However, the Government's assertion contradicts the Amended Complaint. Petty Officer Walls explicitly alleged that he experienced the health problems that led to his placement on medical hold before his retirement date. E.g., Amend. Compl. ¶¶ 27, 35, 38, 64, 94.

2. Petty Officer Walls Was on Active Duty Well Beyond His Scheduled Retirement Date.

Similarly, the Government asserts that "Mr. Walls was transferred to the Fleet Reserve, and honorably discharged, and thus retired him [sic] from active service with retirement pay" on September 30, 2000. Gov. Motion at 3. The Government cites as a fact a point at issue in this case: whether Petty Officer Walls was on active duty beyond September 30, 2000. Contrary to the Government's unsubstantiated assertion, the Amended Complaint alleges that Petty Officer Walls was on active duty until he was discharged from the NNMC in the Spring of 2001. E.g., Amend. Compl. ¶¶ 62, 76-79.

The Government's citation as a "fact" the contested issue of whether Petty Officer Walls was on active duty beyond September 30, 2000 is particularly troubling because the Government has already admitted that it will be unable to present any evidence to support its position. Buried in a footnote, the Government concedes that "the Navy has been unable to locate" its authorization for Petty Officer Walls' transfer to the Fleet Reserve. Gov. Motion at 3 n.3.

Unable to show when Petty Officer Walls was transferred to the Fleet Reserve, the Government asks the Court to permit it to retreat into a "presumption of regularity" to shield it from its lack of proof. Gov. Motion at 3 n.3. As established, such a presumption is inappropriate in the absence of record evidence that the Navy followed its own procedures. E.g., Kindred, 41 Fed. Cl. at 119.

The Government's inability to locate Petty Officer Walls' transfer documents is especially alarming because military regulations make it clear that Petty Officer Walls cannot be transferred to the Fleet Reserve without this authorization. MILPERSMAN 1830-040 provides, in no uncertain terms, that "Under no circumstances should the member be released from active duty without the final transfer authorization." With the force of this injunction in mind, and the admonition that a presumption of regularity is not appropriate in the absence of any affirmative proof, the Court cannot permit the Government to evade its responsibility to discharge Petty Officer according to proper procedures. Because the Government asserts, with no proof, that it discharged Petty Officer Walls according to regulation, and because this assertion both contests allegations in the Amended Complaint and forms an essential basis for the Government's motion to dismiss, the Government's motion must be denied. Twombly, 127 S.Ct. at 1969; Henke, 60 F.3d at 797; e.g., Amend. Compl. ¶¶ 62, 76-79.

3. Petty Officer Walls' Retirement Was Not Voluntary.

The Government asserts that Petty Officer Walls' retirement was voluntary. E.g., Gov. Motion at 1, 2, 3, 8, 12.[4] The Government's argument is flawed both as matter of fact and as a

[4] It is unclear whether the Government argues that this Court lacks jurisdiction over Petty Officer Walls' claims. To the extent that it does, this argument is without merit. It is well-established that the Court has jurisdiction over claims arising under the Military Pay Act and the SECNAVINST instructions. Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999); Kindred, 41 Fed. Cl. at 115-116. Petty Officer Walls has properly alleged that the government failed to pay him money owed him due to his service in the United States Navy. Am. Compl. ¶¶ 10-12, 60-101. Petty Officer Walls, therefore, has properly invoked this Court's jurisdiction. 28 U.S.C. 1491; Palmer, 168 F.3d at 1313. In any event, after raising, at length, the issue of voluntariness with respect to jurisdiction, the Government appears to abandon any argument based on this issue.

matter of law. First, Petty Officer Walls' retirement was not voluntary. As he alleged in his Amended Complaint, he transferred to the Fleet Reserve because was facing mandatory separation or transfer to the Fleet Reserve due to high year tenure. Amend. Compl. ¶ 23. Indeed, the Government concedes that "Mr. Walls was required to separate on September 30, 2000." Gov. Motion at 9. When a service member facing mandatory retirement due to high year tenure chooses to retire into reserve status, his retirement is not considered voluntary. Canonica v. United States, 41 Fed. Cl. 516, 520 (1998). A service member who is facing high year tenure has no "choice regarding *whether* he would be separated" from the service; he is only "given a choice regarding *how* he could retire." Id. As a consequence, because his retirement was mandatory under the high year tenure rules, Petty Officer Walls' request to be transferred into a reserve unit is not a voluntary retirement. Id.; cf. Norris v. United States, 39 Fed. Cl. 807, 810 (1998) (holding that retirement is voluntary when "Plaintiff was not facing mandatory retirement," but rather separation for misconduct.)

Additionally, the voluntariness doctrine does not apply to claims for money already owed at the time of separation. That doctrine bars "claims for benefits attendant to a promotion that a service member alleges should have occurred." McHenry v. United States, 367 F.3d 1370, 1376-1377 (Fed. Cir. 2004). By contrast, when the right to payment exists "at the time of separation," the right to compensation survives a voluntary retirement. Id. at 1377. Petty Officer Walls is not claiming that he should have been promoted, seeking back pay for constructive service, (i.e., time he should have been allowed to serve). Rather, he is seeking back payment for service already rendered at the "time of separation." Id. at 1376-1377; Amend. Compl. ¶¶ 64-71. As a result, his claims are properly before the Court. For this reason, as well, the court in Ferrell properly held that, when a plaintiff is diagnosed with a condition that is cause for referral to the

PEB, "his voluntary discharge should have been put on medical hold" to allow an MEB and PEB. Ferrell, 23 Cl. Ct. at 569 (emphasis added).

Perhaps the Government's willingness to tie a motion to dismiss to contested facts is rooted in its misunderstanding of the proper standard of review. The Government contends: "this Court must assume that all undisputed facts alleged in the complaint are true." Gov. Motion at 5 (emphasis added). This misstates the law. The correct standard holds that "in deciding the Government's motion to dismiss" the court is "obligated to assume all factual allegations to be true." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995) (emphasis added). As a result, the Government's contradictions of Petty Officer Walls' factual assertions must be disregarded and, on this basis alone, the Government's motion to dismiss must be denied. Twombly, 127 S.Ct. at 1969; Henke, 60 F.3d at 797.

C. The Government's Other "Arguments" are Merely Conclusory Statements that Contradict Controlling Authority.

The Government fails to offer any evidence that the Navy acted consistently with its regulations or any persuasive argument that this failure is not in violation of law. Instead, the Government's conclusory statements contradict the express language of federal regulations.

1. The Government Should Not Be Permitted to Penalize Petty Officer Walls for the Navy's Failure to Abide by its Own Regulations.

Rather than address the issues properly before the Court, the Government raises a number of extraneous issues. First, the Government alleges that there is an "absence of evidence" that Petty Officer Walls requested the referral of his case into the disability evaluation system. Gov. Motion at 2. Contrary to the Government's suggestion, it was the responsibility of the Navy to refer his case to a PEB. As noted above, Petty Officer Walls' Navy physicians had no discretion "to omit or postpone disability evaluation of physical impairment which renders questionable the ability of service members to perform reasonably the duties of office, grade, rank, or rating."

SECNAVINST 1850.4D § 3106. Despite this clear obligation, the Government suggests that it was Petty Officer Walls' responsibility to refer his case to a PEB. A simple counterfactual evinces the illogic of the Government's position: suppose that the Navy wanted to refer Petty Officer Walls' case to a PEB but Petty Officer Walls objected; would the Navy be prevented from referring him because he did not request this referral himself? Clearly, the Navy would be permitted to refer Petty Officer Walls to a PEB even over his objection. As a consequence, the Government's suggestion that it was Petty Officer Walls' obligation to request referral to a PEB is without merit.

The Government further alleges that there is "no record evidence whatsoever that Mr. Walls ever tried to retract his request for retirement." Gov. Motion at 11. Again, the Government's suggestion that Petty Officer Walls was obligated to, or even was permitted to, request that his retirement be postponed is without merit. As noted, Petty Officer Walls' retirement was not voluntary; his retirement was not his choice. McHenry, 367 F.3d at 1376-1377. Further, irrespective of whether Petty Officer Walls was slated for retirement, it is the Navy that is responsible for extensions of active duty to accommodate service members' medical rehabilitation. SECNAVINST 1850.4D §§ 1005; 3106 (the NNMC and individual medical officers "shall promptly identify for evaluation" by an MEB and refer to a PEB "those members presenting for medical care whose physical . . . fitness to continue naval service is questionable."); see, e.g., Krauss, 40 Fed. Cl. at 836 (plaintiff's physician recommended his "retention on active duty beyond his . . . separation date while medical studies and diagnoses" were conducted). As a result, the Government's attempt to shift the onus onto Petty Officer Walls to fulfill the Navy's obligations fails to stand up to scrutiny.

The Government's misunderstanding of the Navy's obligations under the law evinces, above all else, an attempt to penalize Petty Officer Walls for the Navy's failure to abide by its own regulations. The very language of the regulations at issue levy obligations on the Navy; indeed even the few regulations cited by the Government declare the Navy's responsibilities toward Petty Officer Walls. It would pervert the intent of these regulations to declare that the Navy may disregard these obligations, thereby penalizing the very service members these regulations are intended to protect. Such a rule would create precisely the "catch 22" decried in Ferrell and nullify the Federal Circuit's injunction that the "military no less than any other organ of the government is bound" to "abide by its own procedural regulations." Lindsay, 295 F.3d at 1257; Ferrell, 23 Cl. Ct. at 569. Because the Government should not be permitted to penalize Petty Officer Walls for the Navy's failure to abide by its own regulations, the Government's arguments should be rejected and its motions denied.

2. Petty Officer Walls' Hospitalization Triggered His Placement on Medical Hold by Operation of Law.

The Government asserts that Petty Officer Walls' active duty cannot be extended unless he was hospitalized "prior to [his] mandatory retirement date." The Government argues that "because Mr. Walls was not hospitalized on September 30, 2000" he could not be retained on active duty. Gov. Motion at 5, 7.

The Government's argument is unpersuasive for two reasons. First, as noted, the Navy may not first deny a service member hospitalization required by law and then deny him benefits because he was not hospitalized before his discharge date. Ferrell, 23 Cl. Ct. at 563. The Navy was required to hospitalize Petty Officer Walls due to his medical conditions. Krauss, 40 Fed. Cl. at 836; Ferrell, 23 Cl. Ct. at 563. The Navy, therefore, may not deny Petty Officer Walls medical hold status simply by failing to hospitalize him before his scheduled discharge date.

Ferrell, 23 Cl. Ct. at 563. As a consequence, to the extent that the Navy discharged him before his scheduled retirement date, his discharge was invalid.

Second, under MILPERSMAN 1830-040, the operative regulation, there is no requirement that Petty Officer Walls be hospitalized prior to September 30, 2000 in order for his hospitalization to extend his active duty. MILPSERSMAN 1830-040, entitled Transfer to the Fleet Reserve and Release from Active Duty, directly pertains to situations in which a service member has "completed 20 years of active service" and has requested "transfer to the Fleet Reserve" in lieu of separation from the military. MILPERSMAN 1830-040. As the government concedes, "Mr. Walls fulfilled 20 years of service" and had the option to separate or "request to transfer to the Fleet Reserve." Gov. Motion at 3. MILPERSMAN 1830-040 provides that a service member "who has reached high year tenure (HYT), and for whom transfer to the Fleet Reserve is mandatory, may only be deferred if the member is hospitalized or a medical board report has been accepted by the President, PEB." MILPERSMAN 1830-040.

Contrary to the Government's assertion, there is no requirement that this provision applies only if a member has been hospitalized "prior to his mandatory retirement date." The regulations merely require that Petty Officer Walls be "hospitalized."[5] As shown above, Petty Officer Walls was hospitalized at the NNMC pursuant to the recommendation of his treating physician, Dr. Collum. Amend. Compl. ¶¶ 41-42. At the NNMC, Petty Officer Walls was treated for his medical conditions, receiving daily medical treatment for several months, including steroid injections and pain management care. Amend. Compl. ¶¶ 43, 49.

The Government erroneously cites to a different MILPERSMAN provision, 1830-030, entitled Physical Examination in Connection with Retirement, Transfers to Fleet Reserve and as

5 The causal nexus between the hospitalization and Petty Officer Walls' service on active duty is not in dispute.

a Fleet Reservist. It is MILPERSMAN 1830-030, not MILPERSMAN 1830-040 that contains a reference to hospitalization "prior to the mandatory retirement date." Although MILSPERSMAN 1830-30 and 1830-040 somewhat overlap in scope, 1830-030 is a more general provision regarding the physical examination provided by the military prior to separating a service member. As a result, its language is geared towards physical examination procedures and requirements. MILPERSMAN 1830-040, by contrast, is a more specific provision that addresses the transfer to the fleet reserve and release from active duty. It controls situations in which a service member has completed his active duty service and is facing mandatory retirement, like Petty Officer Walls. Because MILPERSMAN 1830-030 is a general provision and MILPERSMAN 1830-040 more specifically addresses Petty Officer Walls' situation, MILPERSMAN 1830-040 is the controlling authority. Hernandez v. Dep't of the Air Force, 498 F.3d 1328, 1332 (Fed. Cir. 2007) ("a specific statute will not be controlled or nullified by a general one."); Rio Hondo Mem. Hosp. v. United States, 689 F.2d 1025, 1030 (Ct. Cl. 1982) ("A basic tenet of statutory construction is that the specific controls over the general."). Therefore, MILPERSMAN 1830-030's requirement that hospitalization occur "prior to retirement date" does not apply.

## CONCLUSION

Petty Officer Walls seeks his basic pay for time served on active duty, or full-time duty, with the United States Navy. After 20 years of service to his country, and after sustaining injury in the line of duty, Petty Officer Walls discovered that the Navy has refused to make good on its obligation to pay him for part of his service. He has found no relief before the BCNR and turns to this Court in a final effort to seek enforcement of the requirements of federal statutes and regulations. The Government has moved to dismiss his claims, or in the alternative for judgment

on the administrative record. Because the Government has failed to show why the Navy is entitled to violate federal law, because it has failed to counter Petty Officer Walls' well-pleaded allegations, and because it has failed to show that the BCNR's actions were supported by substantial evidence, the Government's motions should be denied.

Respectfully submitted,

Date: October 29, 2007

/s/ Evan C. Zoldan
EVAN C. ZOLDAN
Kirkland & Ellis, LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, DC 20005
Tel: (202) 879-5910
Fax: (202) 879-5200

*Attorney for Plaintiff Jeffrey G. Walls*

## Appendix Table of Contents

Attachment A – MILPERSMAN 1830-040

Attachment B – SECNAVINST Regulations