# Appendix Table of Contents

Attachment A – MILPERSMAN 1830-040

Attachment B – SECNAVINST Regulations

# ATTACHMENT A

# MILPERSMAN 1830-040

27 MAR 2000

## Transfer to the Fleet Reserve and Release From Active Duty

| | | | | |
|---|---|---|---|---|
| **Responsible Office** | COMNAVPERSCOM (PERS-823) | Phone: | DSN | 882-3247 |
| | | | COM | (901) 874-3247 |
| | | | FAX | 882-2762 |

**Governing Directives**

10 U.S.C. 6330
SECNAVINST 1811.3M
SECNAVINST 1850.4D

**Policy**

An enlisted member who has completed at least 20 years of active service may, at his or her request, be transferred to the Fleet Reserve (10 U.S.C. 6330). Once submitted, a member's date may be changed only upon member's authorization or due to national security.

**Creditable Service**

Active service is defined as all active duty and active duty for training performed subsequent to 9 August 1956 in the Army, Navy, Air Force, Marine Corps, Coast Guard, or any Reserve component thereof, and all active duty and active duty for training performed subsequent to 9 August 1956 in the Army National Guard or Air National Guard on federal duty.

An enlistment terminated prior to 1 January 1978 within 3 months of the normal expiration of the enlistment or extended enlistment will be credited as the full term of enlistment or extended enlistment. (Constructive service is earned only if the enlistment term is served in an active duty status.)

**Eligibility Requirements**

Approval of a request for transfer to the Fleet Reserve will normally be withheld until the member has completed

- 20 years of active service by the requested date of transfer to the Fleet Reserve.
- current assignment.
- minimum activity tour (MAT).
- current Department of Defense (DOD) assignment area tour.
- 24 months time in grade for pay grades E-7 and above (may be waived up to 12 months) (SECNAVINST 1811.3M).
- applicable tour at ultimate duty station when request is received by Navy Personnel Command following the date of issuance or notification of PCS orders.
  - If member is notified of PCS orders more than 6 months prior to projected rotation date (PRD), member may decline the assignment and request transfer to the Fleet Reserve any time up to and including the normal PRD.
  - If member has not been notified of impending orders, a member may request transfer to the Fleet Reserve no later than the PRD.
- the initial 20-year eligibility requirement for transfer to the Fleet Reserve within 6 months beyond the normal PRD and requests a Fleet Reserve date to coincide with the date of eligibility, a maximum 6 months over tour beyond present PRD may be authorized. The request for over tour in conjunction with transfer to the Fleet Reserve must be received by Commander, Navy Personnel Command (COMNAVPERSCOM) (PERS-823) 6 to18 months prior to the established PRD.

**Members Not Eligible for Fleet Reserve Transfer**

Members are not eligible for transfer to the Fleet Reserve while

- awaiting disciplinary action,
- serving sentence of a court-martial (including time on probation),
- awaiting civil action,
- awaiting family advocacy action,
- awaiting administrative discharge action, or
- serving in a limited duty (LIMDU) status (unless authorized limited duty status to complete 20 years of active service).

Requests received from members in the above categories will be disapproved. Approved Fleet Reserve transfer requests for members who are subsequently placed in one of the above categories will be held pending resolution. Once status is resolved, the command shall notify, by message, COMNAVPERSCOM (PERS-823) of action taken.

**Deferment or Cancellation of Transfer to the Fleet Reserve for Member in Medical Status**

The following is applicable for members in a medical status:

- Member undergoing non-elective medical treatment not involving Physical Evaluation Board (PEB) proceedings or appearance before a medical board requiring departmental action may be retained up to 60 days with authorization from COMNAVPERSCOM (PERS-823). If it appears that the member will require prolonged treatment which could defer transfer to the Fleet Reserve more than 60 days beyond the authorized date, the commanding officer shall make a specific report of the circumstances to COMNAVPERSCOM (PERS-823). When treatment is completed, advise COMNAVPERSCOM (PERS-823) as soon as practical.

- Member who requests or is involved in PEB proceedings or appearance before a medical board requiring departmental action shall not be transferred to the Fleet Reserve until final action is completed and instructions are received from COMNAVPERSCOM (PERS-821). Normally, a member found unfit will be retained until member qualifies for disability retirement subject to the conditions set forth in SECNAVINST 1850.4D. The law requires that member completes at least 20 years of service to be eligible for retirement benefits by reason of physical disability when the disability is ratable at less than 30 percent by the Veterans Administration Schedule for Rating Disabilities. If the member is found fit, advise COMNAVPERSCOM (PERS-823) by message. If limited duty is authorized, the transfer to the Fleet Reserve shall be held in abeyance pending final determination of member's medical status. Advise COMNAVPERSCOM (PERS-823 and PERS-821) for details and estimated reevaluation date. In each instance, a new authorization for an effective date not more than 30 days after the finding of fit for duty will be issued by COMNAVPERSCOM (PERS-823). If the member waives disability benefits, notify by message, COMNAVPERSCOM (PERS-823) with information copy to the President, Central Physical Evaluation Board of the waiver.

- Member who continues to perform duties of his or her office, rank, grade, or rating until commencing processing for non-disability retirement shall be presumed "Fit for Duty" unless it can be overcome by a preponderance of evidence that the member, in fact, was physically unable to perform duties of his or her office, rank, grade, or rating. PEB will make the determination. (See SECNAVINST 1850.4D, article 3305.)

- Member who has reached high year tenure (HYT), and for whom transfer to the Fleet Reserve is mandatory, may only be deferred if the member is hospitalized or a medical board report has been accepted by the President, PEB for processing under SECNAVINST 1850.4D, article 3710.

**Deferment or Cancellation of Transfer to the Fleet Reserve for Member Pending Disciplinary or Administrative Action**

The following is applicable for members pending disciplinary or administrative action:

- Member awaiting disciplinary action, serving sentence of a court-martial (including time on probation), awaiting civil action, awaiting action on an administrative discharge, or undergoing checkage of pay on authorized date of transfer, action on the Fleet Reserve transfer will be withheld and COMNAVPERSCOM (PERS-823) shall be advised, by message, of the circumstances. Under unusual circumstances, Chief of Naval Personnel may direct transfer notwithstanding pending action.

- Once member's case has been resolved, notify COMNAVPERSCOM (PERS-823). A new Fleet Reserve transfer authorization will be issued if the date of the original Fleet Reserve authorization has expired.

**Deferment or Cancellation of Transfer to the Fleet Reserve for Member on Case-by-Case Basis**

Due to the many administrative and planning actions involved on behalf of the member and command, a request for deferral or cancellation of a Fleet Reserve Transfer Authorization will be granted on a selective basis only. A number of factors including command recommendation, past performance, manning levels, availability of relief, and critical skills possessed by the member will be considered.

Approval is contingent upon the member agreeing to remain on active duty for a sufficient time to permit reassignment or completion of a normal tour, whichever is applicable. In certain instances, such as those where manning or other requirements are not stabilized, deferral of an authorized Fleet Reserve date, rather than a cancellation, may be appropriate.

Short term deferrals (1 to 6 months) may be authorized by COMNAVPERSCOM (PERS-823) if the member is serving in an authorized billet and a relief is not on board. Commanding officers may defer transfer to the Fleet Reserve up to 30 days beyond the date authorized only when urgent operational commitments demand the member's service. When deferment is effected for this reason, a full report of the circumstances shall be forwarded by message to COMNAVPERSCOM (PERS-821), with an information copy to the appropriate type commander.

In some instances, where rate manning or other requirements are not stabilized, and action must be taken to provide a qualified relief at the proper time, COMNAVPERSCOM (PERS-823) may offer an alternate date for transfer. In these cases, the member may accept the alternate date or request cancellation of the original date.

**Request Submission**

The following are guidelines for submission of a member's request for transfer to the Fleet Reserve:

- Member should submit the request 6 to18 months prior to the requested Fleet Reserve transfer date.
- Member submits a NAVPERS 1336/3, Special Request/Authorization, via the chain of command.
- Upon the commanding officer's approval, forward the member's request to the Command Career Counselor for appropriate action.
- Forward request to the appropriate personnel office. The personnel office will ensure the request is submitted to COMNAVPERSCOM following the Diary Message Reporting System User's Manual (DMRSMAN) or the Source Data Systems Program Manual (SDSPROMAN) instruction.

---

**Responsibility of COMNAV-PERSCOM (PERS-823)**

Once the request for transfer to the Fleet Reserve has been approved by the detailer, rating assignment officer, and the enlisted community manager, COMNAVPERSCOM (PERS-823) will transmit a message of intent authorizing movement of dependents and/or shipment of household goods (HHG).

Upon issuing the message of intent and within 2 weeks, COMNAVPERSCOM (PERS-823) will mail package containing the Certificate of Appreciation and other retirement information.

COMNAVPERSCOM (PERS-823) will issue the authorization as soon as possible but no later than 120 days prior to the Fleet Reserve transfer date. Under no circumstances should the member be released from active duty without the final transfer authorization.

---

**Responsibility of the Personnel Support Office or the Administrative Office**

Personnel Support or administrative offices must receive a copy of the Fleet Reserve authorization at least 120 days prior to the requested date.

Upon receipt of the authorization, forward a copy to the member, career counselor, and other interested individuals at the command.

Prepare release from active duty orders and the DD 214, Certificate of Release or Discharge From Active Duty, and forward, with transfer authorization, to the appropriate disbursing office.

Close the member's service record and forward to the Naval Reserve Personnel Center, New Orleans, LA 70149, ensuring a copy of the member's Fleet Reserve transfer authorization is filed in the closed-out service record.

**Responsibilities of Disbursing Office**

Prepare the second endorsement on the Fleet Reserve transfer authorization message.

Complete the disbursing data entries on the DD 214.

**Responsibilities of the Fleet Reservist**

The Fleet Reservist is required to comply with the following:

- Maintain readiness for active service in the event of war or national emergency.
- Keep Commanding Officer, Naval Reserve Personnel Center, New Orleans, LA informed of home address.
- Inform Commanding Officer, Naval Reserve Personnel Center, New Orleans, LA of travel or residency outside the United States for a period in excess of 30 days.
- Promptly respond to all letters addressed to them by proper authority.
- Inform Commanding Officer, Naval Reserve Personnel Center, New Orleans, LA of any change in health which might prevent service in time of war.

Fleet Reservists are subject at all times to the laws, regulations, and orders governing the Armed Forces. In time of peace, the Fleet Reservist may be required to perform not more than 2 months of active service in each 4-year period. They may wear their uniform from place of release to home within 3 months after the date of release and subsequently on occasions of ceremony as prescribed in NAVPERS 15665I, U.S. Navy Uniform Regulations.

# ATTACHMENT B

## TABLE OF CONTENTS/DON DISABILITY EVALUATION SYSTEM (DES) SUMMARY

**1001** **Summary Of Changes**. References (b) through (d) have required extensive revisions throughout this instruction. **Read it entirely.** Major changes are:

a. Non-Medical Documentation. When a member is referred for physical disability evaluation, the commanding officer's assessment of the member's performance of duty may provide better evidence of the member's ability to perform duties than a clinical estimate by a physician. Particularly in cases of chronic illness and cases where objective evidence is minimal or lacking altogether, documents such as letters from the chain of command, annual evaluations, credential reports or personal testimony may reflect more accurately a member's capacity to perform. Include Non-Medical Assessments from the service member's commanding officer in all medical boards (except in cases of critical illness or injury in which return to duty is not expected). If the member has been reassigned for medical purposes; i.e., to Medical Holding Unit or Transient Personnel Unit, MTF will obtain this Non-Medical Assessment (NMA) from the member's previous commanding officer. See enclosure (11) for the NMA questionnaire form and a sample of a well-written narrative summary.

b. Complete Physicals Required. This requirement now extends to TDRL periodic evaluations and to Reserve component physical exams. Specifically, note known medical waivers in the narrative.

c. Death Determinations. Death determinations shall be made in accordance with accepted medical standards and the laws of the State where the member is located, or military medical standards when the member is outside the United States. In cases where Imminent Death Processing is desired, refer to applicable State standards in Medical Board reports. Do not forward to the PEB for evaluation Imminent Death Medical Board reports for members who, by State standards, have died.

d. Medical Board Evaluations. A member may be removed from full military duty for up to 30 days of light duty for the purpose of evaluation or treatment of a medical condition. If the member is unable to return to full military duty at the end of 30 days of light duty, the member will be placed in MTF Medical Hold for up to 30 additional days, pending evaluation by a Medical Board for the purpose of placement on TLD or referral to the PEB.

e. Temporary Limited Duty (TLD)

(1) For members of the Navy and Marine Corps, the period of TLD shall not exceed 16 months before the member either is referred to the PEB for evaluation or is returned to full military duty.

(2) If TLD originally is granted for 8 months, and extension or renewal is desired, the MTF shall submit the request to BUPERS (Pers-821) or CMC (MMSR-4), as appropriate,

based on a medical evaluation that additional TLD months likely will be sufficient to restore the member to full military duty.

f. Temporary Disability Retired List (TDRL) Periodic Physical Examinations and PEB Reevaluation. In addition to addressing those conditions for which the member was placed on TDRL, TDRL physical examinations and PEB reevaluation shall address all medical impairments diagnosed since member was placed on TDRL, to include whether the new diagnosis was caused either by the condition for which the member was placed on the TDRL, or the treatment received for such a condition.

(1) TDRL members determined Fit shall be entitled to a Formal PEB because removal from the TDRL represents a change in military status.

(2) Members on the TDRL shall be rated under the Veteran Administration Schedule of Rating Disability (VASRD) criteria in effect at the time of the member's final reevaluation.

g. Prior Service Impairments. Any medical condition incurred or aggravated during one period of service or authorized training in any of the Armed Forces that recurs or is aggravated during later service or authorized training, regardless of the time between, normally should be presumed incurred or aggravated in the line of duty, provided the condition or subsequent aggravation was not the result of the member's misconduct or willful negligence.

h. Fit. PEB finding meaning the member is Fit to continue naval service based on evidence which establishes that the member is able to reasonably perform the duties of his or her office, grade, rank or rating, to include duties during a remaining period of Reserve obligation. Within a finding of Fit to continue naval service is the understanding that the mere presence of a diagnosis is not synonymous with a disability. It must be established that the medical disease or condition underlying the diagnosis actually significantly interferes with the member's ability to carry out the duties of his or her office, grade, rank or rating. Members found Fit to continue naval service by the PEB are eligible for appropriate assignment. However, a finding of Fit by the PEB does not preclude subsequent temporary determinations of unsuitability for deployment or PRT/PFT participation, disqualification for special duties, Temporary Limited Duty, or administrative action (including separation) resulting from such determinations.

i. Unfit. PEB finding that the member is Unfit to continue naval service based on evidence which establishes that the member cannot reasonably perform the duties of his or her office, grade, rank or rating, to include duties during a remaining period of Reserve obligation. The PEB directs that service headquarters separate or retire members found Unfit to continue naval service.

j. Existed Prior to Service (EPTS). PEB finding replacing Existed Prior to Entry (EPTE), meaning evidence which establishes that the member is Unfit to continue naval service due to a physical disability which manifested or existed prior to military service, and which has

not been aggravated permanently by military service. Members found Unfit - EPTS are not eligible for disability severance pay or disability retirement regardless of length of service, but may be eligible for severance pay or retirement under other provisions of law.

k. Presumed Fit (PFit). PEB finding applied to officers and enlisted members referred to the PEB within 12 months of mandatory or after the approval of voluntary retirement, who, therefore, are evaluated under a presumption of fitness. PFit means evidence establishes that the member's functional impairment has not caused a premature termination of a career. Members found PFit are afforded the same rights within the DES as those found Fit to continue naval service. Members found PFit are not eligible for disability retirement, but are eligible for retirement under other provisions of law, and for evaluation by the Department of Veterans Affairs for disability compensation. See paragraph 3305 for a detailed discussion of PFit.

l. Informal PEB. When a medical board report expressing a reasonable doubt of a service member's ability to perform military duties is referred to the PEB for a determination of Fitness, the medical board report is initially reviewed by the Informal PEB. This panel conducts a review of the service member's record. A member does not appear before the Informal PEB. If found Fit to continue naval service, the service member may either accept the finding or submit a written request for reconsideration to the Informal PEB. The reconsideration will include new medical information not previously available or considered supporting the service member's argument and indicate whether the member does or does not desire a Formal PEB hearing if the Fit to continue naval service finding remains unchanged. However, if the Fit to continue naval service finding is confirmed upon reconsideration, there is no right to a hearing. If found Unfit to continue naval service, the service member has the right to accept the findings, demand a formal hearing before a Formal PEB, or conditionally accept the findings.

m. Formal PEB. A member who is found Unfit to continue naval service by the Informal PEB and wishes to appeal can demand a Formal hearing, with or without personal appearance. Formal hearings are held before the Formal PEB at one of two locations - Bethesda, MD, and San Diego, CA. The Formal PEB is the member's opportunity, with the assistance of legal counsel, to present evidence, testimony, and documents in support of his case. The service member is represented by an appointed military lawyer and may appear in person and present evidence pertinent to the case. The service member may also be represented by a National Service Officer from a National Service Organization or civilian counsel of his or her choosing provided at member's own expense. The Formal PEB's recommended findings will be reviewed for administrative and legal error. The Formal PEB's recommended findings are final only after the President, PEB signs the decision. The President, PEB can choose not to accept the recommended findings or to amend the recommended findings. If the service member disagrees with the findings, he or she may submit a Petition for Relief (PFR). This PFR is separate and distinct from the Formal PEB's decision.

n. PEBLO. PEBLO counselors are tasked with the responsibilities of counseling and educating service members, undergoing a hospital medical board, on the PEB process. PEBLO counselors carefully counsel the member or, in appropriate cases, the next of kin or legal guardian

in clearly understandable terms concerning the significance of action being taken in a case, its probable effect on the member's future, and options available. Counselors also discuss such matters as estimated retired or severance pay, probable retired grade, potential veteran benefits, *post-retirement insurance programs*, the Survivor Benefit Plan, and recourse to and preparation of Petitions For Relief. Counseling shall be provided before, during, and after PEB consideration, at each stage of processing, and as questions are raised by the member.

o. Separation Authority. DIRNCPB directs disability separations and retirements. In cases where the service member also is undergoing disciplinary or administrative discharge proceedings, which result in a punitive discharge or administrative discharge for misconduct, disability separation is superceded.

**1002 Applicability**. This instruction applies to all members of the active force, the reserve component, members placed on the TDRL, and former officers retired or released from active duty without pay for physical disability. Processing for punitive discharge and processing for administrative discharge for misconduct takes precedence over processing for disability. Once the PEB is formally notified that punitive action has been initiated, disability case processing is immediately suspended pending the outcome of the punitive action. When a punitive discharge or administrative discharge for misconduct does not result, disability processing shall be resumed and completed.

**1003 Policy**. Department of the Navy policy is to operate a system for disability evaluation which makes a single determination of physical fitness to continue naval service, provides for one nonautomatic appeal for members found Unfit to continue naval service, assures the rights of the member afforded by law, protects the interests of the government, and eases transition to civilian life for those found Unfit for further naval service.

a. No active duty member of the naval service, including reservists on extended active duty or reservists issued a Notice of Eligibility (NOE), may be retired or separated for physical disability without a Formal PEB if demanded under section 1214 of reference (a).

b. No member of the reserve component shall be separated for being Not Physically Qualified for continued naval service without a Formal PEB unless he or she waives the right. In this case, the member will bear the associated travel cost.

c. Inactive-duty reservists found Not Physically Qualified for continued naval service by the CHBUMED shall be separated, unless the inactive duty reservist requests referral to the PEB.

d. A reservist on extended active duty for 30 days or more who has been released from active duty and now is in an inactive duty drilling status and requests referral to the PEB for a condition which the member alleges was incurred or aggravated while on active duty shall be processed into the DES and the PEB shall determine and record whether the member is Fit or Unfit. In this instance the reservists comes under the provisions of 10 U.S.C. 1201 – 1203 and not 10 U.S.C. 1204 – 1206 (reference (a)). In such a situation, "in line of duty while entitled to basic pay"

rather than "proximate result" is the applicable statuary requirement for entitlement to disability compensation. Paragraph c of part 4 of reference (c) pertains.

e. Officers Separated For Disability Without Pay. An ad hoc Officer Disability Review Board (ODRB) is established as required by Section 1554 of reference (a). DIRNCPB will convene the ODRB when needed to review, at the request of an officer retired or released from active duty without pay for physical disability, the findings and decisions of the PEB, or of the predecessor board which made that determination. Procedures for its operation are set out in enclosure (7).

f. The TDRL will be managed to minimize the number of members awaiting final resolution of their duty status through timely reevaluation of their disabilities every 18 months, and prompt determinations of fitness for duty.

g. The number of members Unfit to continue naval service but retained in Permanent Limited Duty (PLD) status shall be maintained at the minimum level consistent with the guidance in this instruction

**1004 Procedure**. Physical evaluation proceedings shall be conducted under procedures in enclosure (1) through (12) as follows:

a. The PEB is established to act on behalf of the Secretary of the Navy (SECNAV) in making determinations of Fitness to continue naval service, entitlement to benefits, and disposition of service members referred to the Board. Excluding any case designated by the Secretary, the President, PEB, acting for the Secretary, shall issue the findings of the PEB.

b. The Informal PEB will perform record reviews in cases before it, and the President, PEB will notify the member by hand delivery or certified mail of the preliminary findings based on a preponderance of the evidence of record. The preliminary findings become the PEB final determination upon a finding of Fit to continue naval service or upon waiver of the hearing right by the member.

c. The PEB will advise the member of its preliminary findings as to Fitness to continue naval service, degree of disability, and entitlement to disability pay, and will provide an opinion as to the combat-relatedness for federal income tax purposes of any disability found. Dependent upon the nature of the case, a member has the following options:

(1) Agree with a records-only finding of Fit to continue naval service (or Physically Qualified for continued service in the Naval/Marine Corps Reserves in the case of inactive-duty reservists). In this case, there is no right to a hearing; therefore, the member is referred to his or her service headquarters for appropriate assignment or disposition.

(2) Disagree with a records-only finding of Fit to continue naval service (or Physically Qualified for continued service in the Naval/Marine Corps Reserves in the case of

## DISABILITY EVALUATION POLICIES

## PART 1 - INTRODUCTION AND ADMINISTRATIVE POLICIES

**3101** **Objectives**. Evaluation of physical disability within the Navy DES has as its objectives:

a. The maintenance of a physically fit and combat ready Navy and Marine Corps, including Reserve components; and

b. Equitable consideration of the interests of the government and individual service members.

**3102** **Summary Overview**

a. A case enters the Department of the Navy DES when a Medical Evaluation Board (MEB) is dictated for the purpose of evaluating the diagnosis and treatment of a member who is unable to return to military duty because the member's condition most likely is permanent, and/or any further period of temporary limited duty (TLD) is unlikely to return the member to full duty. A condition is considered permanent when the nature and degree of the condition render the member unable to continue naval service within a reasonable period of time (normally 12 months or less).

b. Referral of a Medical Board report to the PEB can come from two sources; i.e. Limited Duty board reports referred for PEB evaluation by service headquarters, and Medical Board reports submitted directly to the PEB by a medical treatment facility (MTF). An individual case is accepted by the PEB when all medical and non-medical information necessary to evaluate the case appropriately has been received by the PEB. Once a case has been accepted by the PEB, the Informal PEB conducts a record review of the case. The individual concerned then is notified of the preliminary findings and given 15 calendar days in which to make a decision concerning the findings. If the member accepts the preliminary findings, the case is finalized and service headquarters is requested to make an appropriate disposition (i.e., separate, retire or return to duty). If the member does not agree with the preliminary findings, the member can request reconsideration of that decision by the same Informal PEB and/or demand/request a personal appearance before a Formal PEB. If the member does not act on the preliminary findings, acceptance is presumed on the 16th day after receipt of the findings. Dependent upon certain factors later described in this enclosure, the member may or may not proceed to a personal appearance before the Formal PEB. If the Formal PEB hears a case, it makes findings, and, subsequent to legal review and/or quality assurance review findings are sent to the member via certified mail (return receipt requested). If the member accepts the findings, the case is finalized and appropriate disposition by service headquarters is requested. If a member disagrees with the findings/results of the Formal PEB, the member is given 15 calendar days from the date of receipt of the findings letter to petition the DIRNCPB. The member has the right to petition

the Board for Correction of Naval Records (BCNR) at any time subsequent to final action on his or her case. See enclosure (10) of this instruction for additional details.

**3103 Guidance To Members**. Cases are very individual and can be very complex. Accordingly, the paragraph 3102 summary is designed just to provide a general overview. Personnel with specific problems should review more detailed sections of this and other applicable instructions or consult with a Physical Evaluation Board Liaison Officer (PEBLO) counselor or an attorney.

**3104 Medical Board Requirements**

a. Purpose of Medical Boards. A medical board serves to report upon the present state of health of any member of the Armed Forces and as an administrative board by which the convening authority or higher authority obtains a considered clinical opinion regarding the physical status of service personnel.

b. Convening Medical Boards

(1) Medical boards may be convened by commanding officers and officers in charge of naval hospitals and other MTFs designated by the Chief, Bureau of Medicine and Surgery (CHBUMED).

(2) Convening of a medical board may be ordered by the CNO, CMC, CHNAVPERS, and the CHBUMED.

**3105 Special Interest Cases**

a. Special interest cases are those designated by SECNAV for referral to ASN (M&RA) for final determination. As required by paragraph 1004j, all cases involving flag and general officers who are within 12 months of mandatory retirement due to age or service limitations and medical corps officers in any grade who are pending nondisibility retirement for age or length of service at the time of referral into the DES, on active or reserve duty, who are determined by the PEB to be Unfit, are designated special interest cases due to statutory or regulatory handling requirements.

b. DIRNCPB may designate a case to be of special interest.

**3106 Prompt Identification Of Disability**. There exists no authority to omit or postpone disability evaluation of physical impairment which renders questionable the ability of service members to perform reasonably the duties of office, grade, rank, or rating. Commanding officers of MTFs and individual medical and dental officers are to identify promptly for referral to the DES those members presenting for medical care whose Fitness for active duty is questionable.

**3107 Counseling**

a. General. A member or, in appropriate cases, the next of kin or legal guardian shall be carefully counseled in clearly understandable terms by a PEBLO or collateral duty counselor concerning the significance of action being taken in a case, its probable effect on his or her future, and options available. Counselors shall discuss such other matters as estimated retired or severance pay, probable retired grade, potential veteran benefits, post-retirement insurance programs, the Survivor Benefit Plan, and recourse to and preparation of Petitions For Relief. Counseling shall be provided before, during, and after PEB consideration, at each stage of processing, and as questions are raised by the member.

b. PEBLOs/Counselors

(1) DIRNCPB shall assign counselors to medical treatment facilities (MTFs), where the volume of cases entering the DES warrants a full-time counselor, to provide counseling for members at and near those activities. At those naval MTFs where regularly assigned PEBLO counselors are not available, the commanding officer shall designate a staff member, preferably the patient administration officer or an assistant, to provide disability counseling as a significant collateral duty. PEBLO counselors and collateral duty counselors will, in addition, provide disability counseling as necessary for members of the naval service in MTFs controlled by other services.

(2) PEBLO counselors shall be senior enlisted (E-7 or above) or equivalent civilian employees.

c. Counselor Training. The DIRNCPB, in order to ensure effective counseling prescribed under paragraph 3107a above, will provide initial training, a Counselor's Manual and annual conference training to both PEBLO and collateral duty counselors. Travel funding for collateral duty counselors shall be provided by the MTF to which assigned.

**3108 Conflict Of Interest/Recusal**

a. No officer may appear as the member being evaluated by a panel of the PEB which was convened by him or her, by anyone temporarily succeeding to his or her office, or by any subordinate in the chain of command.

b. No member of an Informal PEB who is being processed by the PEB may be evaluated by that Informal PEB. In such cases, the President, PEB, will designate another Informal PEB to consider the case. The new Informal PEB may not include any members of the original Informal PEB .

c. No member of a Formal PEB who is being processed by the PEB may be evaluated by the Formal PEB of which he or she is a member.

(1) The PEB ordinarily will not add diagnoses to those referred cases except in unusual situations where objective medical evidence reveals such a diagnosis should have been made because it is supported by entries in the service members' health record. In these cases the Informal PEB will continue to process the case.

(2) Timeliness of submission of new medical information is critical to ensure PEB determinations are based on up-to-date, complete and accurate information. A service member's case before the PEB is final when Notification of Decision (En bloc) has been signed and issued to CMC (M&RA) or CHNAVPERS. Accordingly, the PEB normally will reject submission of information after Notification of Decision.

(3) The PEB normally will reject the case of a service member whose physical condition is the same for which a final decision was issued within the last 6 months, unless after medical review, the condition appears to have substantially changed.

(4) Cases before the PEB normally will not be held in abeyance, continued, or a Notification of Decision canceled because the member alleges a treating physician is submitting a note, letter, or other document allegedly presenting additional information about the service member's condition.

(5) Cases before the PEB normally will not be held in abeyance, continued or a Notification of Decision canceled based on any information other than that officially submitted by or through the MTF (convening authority).

(6) The PEB will reject all cases in which the sole diagnoses involves conditions not constituting a physical disability as defined in paragraph 2016. Such cases may be the basis of administrative separation and will be forwarded by the PEB to the appropriate service headquarters for resolution.

**3204 Suspension Or Termination Of Cases**

a. When the PEB terminates a case for the reasons cited in paragraph 3203, return the MEB report, to include all supporting documents, to the originating MTF for corrective action and resubmission, if warranted. Process as new those cases resubmitted to the PEB after termination.

b. When the PEB suspends a case for the reasons cited in paragraph 3203, hold the case in abeyance pending receipt of required documentation/information.

(1) A case will not be suspended for a period of time in excess of 60 days. After the 60-day period the case will be terminated and returned to the originating MTF.

(2) Cases suspended by the Informal PEB are usually the result of administrative deficiencies; i. e., missing LODI, missing non-medical assessments (NMA), missing MEB

physician signatures, etc.. Upon receipt of required information, these cases will be inserted back into the process at the point at which the evaluation stopped. Cases will not be suspended for administrative errors or oversights for more than 30 days.

(3) Cases suspended at the Formal PEB level are usually the result of substantial issues; i. e., new medical information pending, unplanned surgery or hospitalization, etc.. In those instances, cases will not be suspended for periods more than 60 days.

3205 <u>Nonmedical Documentation Reports - Current Performance Of Duty</u>

a. When a member is referred for physical disability evaluation, an assessment of the member's performance of duty by his or her chain of command may provide better evidence of the member's ability to perform his or her duties than a clinical estimate by a physician. Particularly in cases of chronic illness, non-medical documentation may be expected to reflect a member's capacity to perform accurately.

b. Provide non-medical documentation in all Medical Board reports to include:

(1) Except in situations of recent, acute, and grave illness or injury, a statement from the member's immediate commanding officer, executive officer, company commander, or command senior enlisted advisor addressing:

(a) Indicators of medical problems or absence of medical problems based on observations of the member while in-duty and off-duty situations;

(b) Description of current job assignment, including an assessment of how the medical problem has or has not affected the member's performance, ability to participate in the PRT/PFT, and ability to deploy;

(c) Recent disciplinary history of the individual, including any disciplinary action pending; and,

(d) Description of the member's rating/MOS, NEC, and/or specialty, including an estimation of how the member's condition will affect his or her ability to fulfill occupational requirements in the future.

(e) When the member has been reassigned for medical purposes, the MTF will obtain this statement from the member's former unit commander.

(f) In addition to the narrative statement described in 3205b (1) (a) - (d) above, commanders are also required to complete the non-medical documentation form and submit a narrative assessment on how the service member's medical condition impacts on his/her ability to perform military duties. Enclosure (11) contains the NMA form and an example of a narrative assessment.

**MEDICAL CONDITIONS AND PHYSICAL DEFECTS WHICH NORMALLY ARE CAUSE FOR REFERRAL TO THE PHYSICAL EVALUATION BOARD (PEB)**

**8001 General**

a. This enclosure provides a listing, mainly by body system, of medical conditions and physical defects which are cause for referral into the Disability Evaluation System (DES). The major objective of the list is to achieve uniform disposition under the law.

(1) This listing is not all-inclusive.

(2) A service member who has one or more of the listed conditions or physical defects is not automatically Unfit and therefore may not qualify for separation or retirement for disability.

b. In modifying these guidelines, SECNAV will consider conditions and defects not listed in this enclosure which justify referral of an individual to the PEB because the conditions or defects, individually or in combination:

(1) Significantly interfere with the reasonable fulfillment of the purpose of the individual's employment in the military service;

(2) May seriously compromise the health or well-being of the individual if he or she were to remain in the military service. This may involve dependence on certain medications, appliances, severe dietary restrictions, or frequent special treatments, or a requirement for frequent clinical monitoring;

(3) May prejudice the best interests of the Government if the individual were to remain in the military service.

c. Physicians who prepare MEB reports and TDRL periodic physical examinations for referral for physical disability evaluation are encouraged to use the DVA's Physician's Guide for Disability Evaluation Examinations to describe the nature and degree of severity of the functional impairment consequent to each of the member's conditions.

d. Any drug therapy which in and of itself presents significant medical hazards or potential significant complications and/or requires frequent monitoring may render a member Unfit even if the condition in and of itself does not. This treatment may preclude the full performance of duties.

e. Any condition that appears to significantly interfere with performance of duties appropriate to a service member's, office, grade, rank or rating will be considered for MEB evaluation. The MEB shall conform to the following general requirements.

(1) Confirm the medical diagnosis(es).

(2) Document the service member's current medical condition to include treatment status and potential for medical recovery.

(3) Review each case based on relevant facts.

(4) Contain bolded and bracketed evaluation procedures and/or data of special importance to the assessment process.

(5) Follow the suggested annotated format for the MEB report in attachment (a) of this enclosure.

(6) Refer to the PEB if optimal medical treatment has been received in accordance with service specific guidelines.

f. Whenever possible members should be placed on LIMDU for an appropriate period of time before determining that the member is Unfit to continue naval service.

g. Although not specifically mentioned after each of these illnesses/injuries, the physician should be aware that the presence of the condition alone is often not a criteria for submission of a MEB report - the member must have been tried on appropriate courses of medication (and proper use of LIMDU status), been unresponsive to them, required untoward number of visits for medical care or hospitalizations and, just as importantly, the condition must be Unfitting. The physician writing the MEB report must document why a certain condition is Unfitting.

**8002 Musculoskeletal System**

a. Upper Extremity

(1) The ability to pinch, grasp, or grip is prevented by disease, residuals of disease, acute injury, or chronic residuals of acute injury to the hand or fingers.

(2) Amputation of a part or whole of the upper extremity. Amputation of part or parts of an upper extremity which results in impairment equivalent to the loss of use of a hand.

(3) Recurrent dislocation (not subluxation) when not surgically correctable.

(4) Ranges of Joint Motion (ROM): Motion that is less than the measurements listed below. Measurements should be validated by three measurements that agree at the 5 percent level. The measuring instrument should be noted. Both active and passive ROM should be listed. When a normal paired extremity is present a comparison of the ROM of the normal to the impaired extremity should be included (See plate I).

(a) Shoulder: Flexion (forward elevation) or abduction to at least 90 degrees.

(b) Elbow and/or Forearm: Flexion to 100 degrees or extension to 60 degrees. Pronation and/or Supination arc to at least 80 degrees.

(c) Wrist: At least 15 degrees flexion plus extension total.

(d) Hand: The motion at each of the three finger joints, when added together, must reach 135 degrees of active flexion or 75 degrees of active extension, in two or more fingers of the same hand. The thumb must be able to be opposed to at least two fingertips.

b. Lower Extremity

(1) Disease, residual of disease, acute injury, or residual of injury that interferes with ambulation or the wearing of military shoes and/or boots for a period in excess of 180 days.

(2) Any documented condition that precludes the ability to run or walk without a perceptible limp.

(3) Shortening of an extremity that exceeds 2 inches (5 cms).

(4) Feet. Any condition that prevents walking, running, or normal weight bearing.

(a) Hallux valgus. When moderately severe, with exostosis or rigidity and pronounced symptoms; or severe with arthritic changes.

(b) Pes Planus, Symptomatic. When more than moderate, with pronation on weight bearing that prevents the wearing of a military shoe, or when associated with vascular changes.

(c) Talipes Cavus. When moderately severe, with moderate discomfort on prolonged standing and walking, metatarsalgia, that prevents the wearing of a military shoe.

(5) Knee. Internal derangement of the knee when there is residual instability following remedial measures such as surgery or physical therapy.

(6) Joint Ranges of Motion (ROM). Motion that is less than the measurements listed below. Measurements should be validated by three (3) measurements that agree at the 5 percent level. The measuring instrument should be noted. Both active and passive ROM should be listed. When a normal paired extremity is present a comparison of the ROM of the normal to the impaired extremity should be included (See plate II).

(a) Hip. Flexion to 90 degrees, or extension to 0 degrees.

(b) Knee. Flexion to 90 degrees, or extension to 15 degrees.

(c) Ankle. Dorsiflexion to 10 degrees, or plantar flexion to 10 degrees.

(7) Amputations

(a) Loss of a toe or toes which precludes the ability to run or walk without a perceptible limp, or to engage in fairly strenuous jobs.

(b) Any loss greater than that specified above to include foot, leg, or thigh.

c. Inflammatory Conditions. Any inflammatory condition involving the bones, joints, or muscles of the extremities that, after accepted therapy, prevents the military member from performing the preponderance of duties assigned.

(1) Arthritis

(a) Arthritis due to infection associated with persistent pain and marked loss of function, with X-ray evidence, and documented history of recurrent incapacity.

(b) Arthritis due to trauma. When surgical treatment fails or is contraindicated and there is functional impairment of the involved joint which precludes the satisfactory performance of duty.

(c) Osteoarthritis. When severe symptoms are associated with impairment of function, supported by X-ray evidence and documented history of recurrent incapacity for prolonged periods.

(d) Rheumatoid arthritis or rheumatoid myositis. If the history of repeated incapacitating episodes is supported by objective and subjective findings.

(2) Chondromalacia or Osteochrondritis Dessicans. Severe, manifested by frequent joint effusion, more than moderate interference with function or with severe residuals from surgery.

d. Prosthetic Replacement. Total or partial prosthetic replacement of a major joint; i.e., hip, knee, shoulder.

e. Muscles. Atrophy of, loss of substance of, direct injury to (or residuals thereof) one or more muscles or muscle groups that prevents satisfactory use of the upper or lower extremity. (Does not include muscular changes secondary to neurological disorders. Refer to section on the Nervous System.)

f. Tendon and/or Ligament Transplantation. If restoration of function is not sufficient to adequately perform the preponderance of duties required.

g. Fractures

(1) Malunion. When, after appropriate treatment, there is more than moderate malunion with marked deformity or there is more than moderate loss of function.

(2) Nonunion. When it persists after an appropriate healing period with more than moderate loss of function.

(3) Bone fusion defect. When manifested by more than moderate pain or loss of function.

(4) Callus, excessive, following fracture. When functional impairment precludes satisfactory performance of duty and the callus does not respond to adequate treatment.

h. Joints

(1) Arthroplasty with severe pain, limitation of motion and limitation of function, joint prosthesis or total joint replacement.

(2) Bony or fibrous ankylosis with severe pain involving major joints or spinal segments, or ankylosis in unfavorable position, or ankylosis with marked loss of function.

(3) Contracture of a joint with marked loss of function and the condition is not remediable by surgery.

(4) Loose bodies within a joint with marked functional impairment complicated by arthritis to such a degree as to preclude favorable results of treatment.

i. Miscellaneous

(1) Myotonia Congenita. Significantly symptomatic and precluding the satisfactory performance of duty.

(2) Osteitis Deformans. Involvement of single or multiple bones with resultant deformities, or symptoms severely interfering with function.

(3) Osteoarthropathy, Hypertrophic, Secondary. More than moderate pain present in one or multiple joints and with at least moderate loss of function.

(4) Osteomyelitis, Chronic. Recurrent episodes not responsive to treatment, and involving the bone to a degree which interferes with stability and function.

j. Spine

(1) Congenital Disorders. When more than mild symptoms cause a deterioration in performance of required duties or if fusion is required, resulting in loss of mobility. Examples are Spina Bifida, Coxa Vara, Spondylolysis, Spondylolisthesis, Kyphosis, Scoliosis.

(2) Acquired Disorders

(a) Fractures requiring spinal cord decompression with residual neurological deficit or loss of mobility due to fusion.

(b) Spondylolysis and/or Spondylolisthesis requiring fusion with loss of mobility.

(c) Herniated nucleus pulposus when more than mildly symptomatic with demonstrated neurological involvement; or subsequent surgical treatment does not provide symptomatic relief sufficient for performance of duties.

(d) When reporting on compression (or other) fractures that have "demonstrable deformity" the medical board must realize that this refers to a physical deformity, not a radiological one.

(e) Deviation or Curvature of Spine. More than moderate, or interfering with function, or causing unmilitary appearance.

k. Skull. Significant loss of substance without prosthetic replacement, or with prosthetic replacement in the presence of significant residuals.

l. Fibromyalgia. This condition must meet the criteria as put forth by the American College of Rheumatology (current edition). The diagnosis must be made by a rheumatologist and it is preferable that the MEB report be dictated by a rheumatologist when Fibromyalgia is the diagnosis.

m. Tendon/Ligament Transplant. Unsatisfactory restoration of function, significantly interfering with the satisfactory performance of duty.

n. Muscles. Flaccid paralysis, spastic paralysis, or loss of substance of one or more muscles producing loss of function that precludes satisfactory performance of duty. Atrophy of, loss of substance of, direct injury to (or residuals) one or more muscles or muscle groups that prevents satisfactory use of the upper or lower extremity. Does not include muscular changes secondary to neurological disorders. Refer to section on the Nervous System.

**8003 Organs Of Special Senses**

a. Eyes

(1) Eye Disease. Active eye disease or any progressive organic disease or degeneration, regardless of the stage of activity, that is resistant to treatment and affects the distant visual acuity or visual fields such that distant visual acuity is significantly affected or the field of vision of the better eye is less than 40 degrees. (See "Visual Acuity" below.)

(2) Visual Acuity

(a) Visual acuity that cannot be corrected with ORDINARY SPECTACLE LENSES, to at least 20/40 in one eye and 20/100 in the other eye, or 20/20 in one eye and 20/400 in the other eye, or

(b) Eye has been enucleated,

(c) When vision is correctable only by the use of contact lenses or other specified corrective devices (telescopic lenses, etc.).

(3) Aniseikonia. With subjective eye discomfort, neurologic symptoms, sensations of motion sickness, functional difficulties and difficulties in distinguishing forms, and not corrected by standard optical lenses.

(4) Binocular Diplopia. Which is severe, constant, and in zone less than 20 degrees from the primary position and not surgically or optically correctable.

(2) Heat Stroke. Hyperpyrexia (core temperature >106 degrees Fahrenheit), collapse, encephalopathy and organ damage and/or systemic inflammatory activation during the episode. In the absence of encephalopathy, exertional rhabdomyolysis and myoglobinuria are sufficient. A trial of duty may be recommended if complicating factors have been identified and there are no residuals.

n. Malignant Hyperthermia

**8012 Nervous System**

a. General. To better measure conditions involving the nervous system, it is mandatory that certain yardsticks be employed:

(1) Dementia And Head Trauma. Neuropsychologic or neuropsychiatric measurements should be performed as early as possible. There should also be a set of current neuropsychologic or neuropsychiatric measurements submitted with the MEB report. Current here means within 6 weeks of submission of the board.

(2) Migraine Headaches. The number of incapacitating episodes (those that require the individual to stop the activity in which engaged and seek medical treatment) per week, month or year should be noted and verified by a physician.

(3) Seizure Disorders. The evaluation will be done by a neurologist. An EEG, MRI/CT will be included in the initial examination. When subsequent seizure episodes occur while on medical therapy, blood levels of prescribed medication(s) will be determined. The date of the most recent seizure and seizure frequency must be recorded.

(4) Neuropathies. EMG and nerve conduction studies will be performed.

(5) Multiple Sclerosis. All cases will have an MRI of the head or spinal cord.

(6) Impairment Estimate. Estimation of the degree of industrial and (industrially related) social impairment incurred by the service member due to migraine and seizure disorder should be included.

b. Neurogenic Muscular Atrophy

(1) Amyotrophic Lateral Sclerosis

(2) All Primary Muscle Disorders

(a) Facioscapulohumeral Dystrophy

(b) Limb Girdle Dystrophy

(c) Myotonia Dystrophy

(d) Myelopathic Muscular Atrophy

(3) Myasthenia Gravis. Other than solely ocular.

(4) Polio

(5) Progressive Muscular Atrophy

c. Progressive Degenerative Disorders

(1) Parkinson's Disease. Paralysis Agitans.

(2) Huntington's Chorea

(3) Hepatolenticular Degeneration

(4) Friedreich's Ataxia

d. Demyelinating Disorders

(1) Multiple Sclerosis

(2) Optic Neuritis. Recurrent or with residuals.

(3) Transverse Myelitis/Myelopathy

e. Cerebrovascular Accidents, Residuals

f. Traumatic Brain Injuries, Residuals

g. Headaches. Headaches, Migraine, Tension, Vascular, Cluster Types When manifested by documented frequent incapacitating (e.g., lasting for several consecutive days, and unrelieved by treatment) attacks.

h. Seizure disorders

i. Narcolepsy. Documented with sleep clinic workup

j. Sleep Apnea Syndrome, when complicated by requirement for an appliance such as CPAP for control.

k. Peripheral Nerve Dysfunctions

(1) Neuralgia. When severe, persistent, and not responsive to therapy.

(2) Neuritis. When manifested by more than moderate, permanent functional impairment.

(3) Paralysis due to Peripheral Nerve Injury. When manifested by more than moderate, permanent functional impairment.

l. Syringomyelia

m. General Neurological Disorders. Any other neurological condition, regardless of etiology, when, after adequate treatment, residual symptoms prevent the satisfactory performance of duty.

**8013 Psychiatric Disorders**

a. General

(1) The terminology and diagnostic concepts used in this section are in consonance with the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV). As the DSM is updated, appropriate revisions in the disability system will be made in conjunction with VA approval of use of any new editions.

(2) The Multiaxial System of Diagnosis will be used for all psychiatric conditions that are the subject of an MEB:

AXIS I. Clinical Psychiatric Disorders and Other Psychiatric conditions that may be a focus of clinical attention.

AXIS II. Personality Disorders; Mental Retardation.

AXIS III. General Medical Disorders.

AXIS IV. Psychosocial and Environmental problems.

AXIS V. Global Assessment of Function (GAF).

(3) All AXIS I and II diagnoses will be assessed as to the impairment for military duty as well as the impairment for social and industrial functioning. This applies even though