IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JEFFREY G. WALLS,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-533C<br>(Judge Sweeney) |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

Defendant, the United States, respectfully submits this reply in support of the motion dated October 1, 2007, for dismissal or judgment upon the administrative record.

INTRODUCTION

The plaintiff, Mr. Walls, admits that he was retired after 20 years of service in September 2000. Counts I and II of the Amended Complaint fail because they claim "active" or "full time" pay for the period October 2000 through May 2001, by which time Mr. Walls was retired. An enlisted service member cannot retire, enjoy the benefits of retirement pay and agency-provided healthcare and housing, and then un-retire to active status with back pay and benefits. Yet, that is precisely what Mr. Walls seeks. Tacitly acknowledging the legal deficiency of the first two counts, Mr. Walls presses the theory in Count III that his retirement would have been placed on medical hold if the Navy had followed its procedures for evaluating physical impediments. Whether judged upon the sufficiency of the pleadings or the administrative record, however, Count III fails because it is based upon mere supposition and circular logic, rather than facts.

The Government's motion should be granted.

## I. COUNTS ONE AND TWO OF THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE MR. WALLS WAS RETIRED

### A. Rule 12(b)(6) Motion

There is no dispute that the pertinent Navy regulation required that Mr. Walls be separated after 20 years of service. MILPERSMAN 1160-120. Mr. Walls alleges that he enlisted in September 1980, and retired from the Navy after 20 years of service. (Pl. Opp. Br. 7; Amend. Compl. ¶¶ 2, 39). He nevertheless argues that he his retirement was delayed "by operation of law" because he had a medical disability. By law, however, retirement cannot be delayed for medical reasons unless the member is "either hospitalized or a medical board ["MEB"] report has been accepted by the [physical disability board] PEB prior to the mandatory retirement date." MILPERSMAN 1830-030(2)(b). Mr. Walls does not allege that he was hospitalized prior to October 2000 (Amend. Compl. ¶ 4), and it does not appear that he was "hospitalized" at all, given his repeated allegations that he was living in Navy-provided barracks while receiving medical treatment. (Amend. Compl. ¶¶ 44, 67, 77-78). Mr. Walls also does not allege that an MEB report was accepted by a PEB. Mr. Walls thus was retired as a matter of law.

Mr. Walls nevertheless argues (Pl. Opp. 31-32) that MILPERSMAN 1830-40 ("Transfer to the Fleet Reserve and Release from Active Duty") is a more specific provision than MILPERSMAN 1830-30 ("Physical Examination in Connection with Retirement, Transfers to Fleet Reserve and as a Fleet Reservist"), and that MILPERSMAN 1830-40 does not require hospitalization before retirement. MILPERSMAN 1830-30 and 1830-40 are part of the same regulations, are entirely consistent with one another, and should be read harmoniously. MILPERSMAN 1830-30 and 1830-40 state, respectively, that retirement cannot be "delayed" or "deferred" for medical reasons absent hospitalization or acceptance of an MEB report by a PEB. MILPERSMAN 1830-30(2)(b) ("mandatory retirement … will not be delayed");

MILPERSMAN 1830-40 at 4 (mandatory retirement and "transfer to the Fleet Reserve … may only be deferred"). Both MILPERSMAN 1830-30 and 1830-40 refer to conditions that may exist prior to retirement, either hospitalization or acceptance of an MEB report by a PEB, which can "delay" or "defer" a change to retirement status. The suggestion by Mr. Walls that his retirement, which already had become effective on September 30, 2000, somehow could have been retroactively "delayed" or "deferred," when he began receiving medical treatment in October 2000, is without merit. In any event, MILPERSMAN 1830-30 is the more specific of the two provisions because it relates to the pre-retirement examination, which is the time when the member is evaluated to determine whether he is fit to be discharged to retirement status.

Retirement status bears directly upon the legal sufficiency of Counts I and II in the Amended Complaint, which seek "active duty" pay and "other full time duty" pay, respectively. Title 37 provides that "'active duty' means full-time duty in the active service of a uniformed service," 37 U.S.C. § 101(18), and "other full time duty … is active duty for the purposes of this section [204]." 37 U.S.C. § 204(d). Accordingly, whether the claim is characterized as one for "active duty" pay or "full time duty" pay, those terms are interchangeable for purposes of Section 204. As a retired member, Mr. Walls no longer was serving on "active duty," and therefore he is not entitled to active pay after his retirement. See 37 U.S.C. § 204(a). To the extent that Mr. Walls claims otherwise, he does so based on "[c]onclusory allegations of law and unwarranted inferences of fact[, which] do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998). Counts I and II therefore should be dismissed for failure to state a claim.

B. Rule 52.1 Motion

Even assuming Mr. Walls has stated a claim, the United States nevertheless is entitled to judgment upon the Administrative Record. When ruling on motion for judgment upon administrative record, the Court "does not re-weigh facts as found by administrative body." Rebosky v United States, 60 Fed. Cl. 305, 310 (2004). "Rather, the court is bound by the correction board decision unless the plaintiff 'can demonstrate by cogent and clearly convincing evidence that the correction board acted arbitrarily, capriciously, contrary to law, or that its determination was unsupported by substantial evidence." Rebosky, 60 Fed. Cl. 305, 310-11 (2004) (quoting Dodson v. United States, 988 F.2d 1199, 1204-05 (Fed. Cir. 1993)). Mr. Walls presents no such evidence here, much less the "cogent and clearly convincing evidence" that would be required to overturn the agency's decision.

The Administrative Record conclusively establishes that Mr. Walls retired on September 30, 2000. AR 35 ("Certificate of Release or Discharge from Active Duty"). Indeed, within a few weeks of his retirement, Mr. Walls admitted that he was receiving "income" in the form of "retirement pay." AR34 (Nov. 13, 2000 Letter from Mr. Walls stating: "As it stands right now, I have no income other than my retirement pay."). There is no evidence that his retirement was placed on a medical hold, at any time, and Mr. Walls cites to none (Pl. Opp. 25-26). Mr. Walls has been on retirement status, not on "active" or "full time" status, since September 30, 2000.

Finally, Mr. Walls also waived his claim in Count II for full time pay by declining to respond to the agency's specific request for a statement of the military duties he allegedly performed (AR 2), given that the agency had no record of any such duties having been performed (AR4). See Doyle v. United States, 220 Ct. Cl. 285, 310, 599 F.2d 984, 1000-1001,

modified, 220 Ct. Cl. 326, 609 F.2d 990 (1979) (waiver by failure to raise argument before correction board); accord Maier v. Orr, 754 F.2d 973, 984 (Fed. Cir. 1985).

For these reasons, and to the extent not otherwise dismissed on the pleadings, judgment on the administrative record in favor of the Government is appropriate.

## II. COUNT III FAILS UPON BECAUSE MR. WALLS WAS NOT ENTITLED TO A MEDICAL HOLD

In relation to Count III of the Amended Complaint, Mr. Walls claims an entitlement to a medical hold on his retirement so that he could continue to receive active duty pay and benefits. Pl. Opp. 15-22, 28-32. To explain the absence of a medical hold, Mr. Walls argues at length that the agency violated its own regulations. As the theory goes, his primary care physician was required to request an MEB due to his disability, an MEB was required to accept his disability claim and issue a favorable report, and a PEB was required to accept the report, so that Mr. Walls could receive a medical hold on his retirement. This argument assumes its own conclusion. The question of whether Mr. Walls had a valid disability upon retirement was resolved by the agency in the negative based upon substantial evidence. The regulations governing procedures for medical review and physical disability boards were not implicated here because, as the agency found, Mr. Walls did not have a valid disability upon retirement.

Mr. Walls underwent a pre-retirement physical examination in June 2000 and reported to the medical official that he was in good health, not taking any medications, and not experiencing significant back pain. AR3, 141-42. Mr. Walls reported to a medical official on August 9, 2000, seven weeks before retirement, that he had passed a physical and had been qualified for duty as a Maryland State police officer. AR303, 313. Mr. Walls later failed to respond to agency inquiries regarding evidence that called his disability claim into question. AR2-3. In sum, although there is some record evidence that Mr. Walls experienced back pain from time to time,

the agency did not find any "credible evidence that [his] back condition was severe enough to have met the [relevant] criteria." AR4; see also SECNAVINST 1850.4D at 8-6 (relevant criteria for referral to MEB normally includes "more than mild symptoms" for scoliosis). Mr. Walls argues that his contentions were overlooked (Pl. Opp. 22-23), but in reality the agency deemed them unsupported or incredible. AR2-5.

Mr. Walls nevertheless claims, based on a medical officer's note, that one of his doctors believed he was not fit to retire and his retirement should be placed on a medical hold. Amend. Compl. ¶ 39; AR56. Mr. Walls contends that his retirement would have been placed on medical hold if the agency had followed its regulations. Amend. Compl. ¶ 85. This assumes: (i) an MEB would have exercised its professional judgment and found Mr. Walls to have a valid disability; and (ii) a PEB would have exercised its professional judgment and accepted the MEB report. However, the agency adjudicated the disputed factual question of whether Mr. Walls actually had a valid disability upon the date of his retirement and, based on substantial evidence, found "no objective evidence of significant spinal pathology," no "credible evidence of [his] inability to perform military duty," and "no basis for initiating a medical board." AR4. At this point, the "standard of review does not permit this Court to reweigh the evidence considered by the BCNR and proscribes this Court from substituting its judgment for that of the BCNR when reasonable minds could reach different conclusions." Krauss v. United States, 40 Fed. Cl. 834, 841 (1998) (citing, inter alia, Maier, 754 F.2d at 984).

The regulations upon which Mr. Walls relies do not require an agency to convene an automatic medical board if a service member is diagnosed with scoliosis, irrespective of the severity of the symptoms that are manifest. SECNAVINST 1850.4D at 8-6 (normal for referral to MEB if scoliosis manifests "more than mild symptoms"). The regulations provide: "A

service member who has one or more of the listed conditions or physical defects is not automatically Unfit and therefore may not qualify for separation or retirement for disability." Id. at 8-1. The agency similarly was not required to convene a medical board prior to rejecting the disability claim asserted by Mr. Walls. See Krauss, 40 Fed. Cl. at 841 (finding "no merit" to argument that BCNR was required to convene a PEB prior to rejecting his petition). None of the authorities cited by Mr. Walls (Pl. Opp. 18-21) holds otherwise.

In Krauss, the service member was diagnosed as having a valid disability at his pre-retirement physical. The member therefore was placed on medical hold and later was qualified for retirement after treatment. 40 Fed. Cl. at 836. Here, in contrast, Mr. Walls reported during his pre-retirement physical that he was in good health, not taking any medications, and not experiencing significant back pain. AR3, 141-42. Even if one doctor held the opinion that Mr. Walls was not fit to retire, the agency subsequently reviewed his disability claim and found it to be unsupported and incredible. There is no legal requirement, set forth in Krauss or otherwise, that a medical board be convened for such a disability claim.

Mr. Walls next relies on Ferrell v. United States, 23 Cl. Ct. 562 (1991), where a doctor's note said, "initiate medical hold," but the service member was discharged without a physical. The court in Ferrell discussed the "catch 22" of discharging the member without a physical and then claiming there was no proof of his disability. Mr. Walls incorrectly claims to have a similar "catch 22." (Pl. Opp. 21). The agency rejected his alleged disability, not because of the absence of a physical, but rather, because the pre-retirement physical (and other substantial evidence) did not support the claim.

Finally, Mr. Walls cites to Golding v. United States, 48 Fed. Cl. 697 (2001) and Kindred v. United States, 41 Fed. Cl. 106 (1998), for the proposition that an agency's failure to abide by

its regulations may be reversible legal error. In Golding, the agency took adverse action against a service member for medical reasons while failing to include the only medical doctor in the review chain prescribed by regulations. In Kindred, the agency discharged a service member for misconduct without considering regulatory factors for retention. Under the facts of this case, in contrast, there is no regulatory violation, only Mr. Walls' disagreement with the agency's factual conclusions.

The Court should enter judgment in favor of the Government upon the administrative record.

## III. PLAINTIFF'S WAIVER ARGUMENT IS WITHOUT MERIT

Mr. Walls argues (Pl. Opp. 13-15) that the Government waived "arguments" relative to various extraneous allegations in the Amended Complaint. Mr. Walls fails to explain how these allegations, even if true, would alter his legal status as a retiree. The Government's motion and this reply address all of the pertinent claims and issues raised by the Amended Complaint.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Steven J. Gillingham
STEVEN J. GILLINGHAM
Assistant Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L. Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL

JOHN CLADY
Lieutenant
Judge Advocate General's Corps
United States Navy
Office of the Judge Advocate General
General Litigation
Washington, DC 20374

December 6, 2007

CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2007, a copy of foregoing “DEFENDANT’S REPLY IN SUPPORT OF MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas G. Edelschick