REFERENCE

Canceled by Incorporating change 1, July 10, 2006

# Department of Defense
# INSTRUCTION

November 14, 1996
NUMBER 1332.38

ASD(FMP)

SUBJECT: Physical Disability Evaluation

References:
(a) DoD Directive 1332.18, "Separation or Retirement for Physical Disability," November 4, 1996
(b) Title 10, United States Code
(c) Sections 3502, 5532, 6303, and 18332 of title 5, United States Code
(d) Sections 206 and 502 of title 37, United States Code
(e) through (k), see enclosure 1

A. PURPOSE

This Instruction implements policy, assigns responsibilities, and prescribes procedures under references (a) and (b) for:

1. Retiring or separating Service members because of physical disability.

2. Making administrative determinations under references (c) and (d) for Service members with Service-incurred or Service aggravated conditions.

3. Authorizing a fitness determination for members of the Ready Reserve who are ineligible for benefits under reference (b) because the condition is unrelated to military status and duty.

B. APPLICABILITY

This Instruction applies to the Office of the Secretary of Defense (OSD), the Military Departments (including the Coast Guard when it is operating as a Military Service in the Navy), the Chairman of the Joint Chiefs of Staff, and the Combatant Commands (hereafter referred to collectively as "the DoD Components"). The term "Military Services," as used herein, refers to the Army, the Navy, the Air Force and the Marine Corps.

C. DEFINITIONS

Terms used in this Instruction are defined at enclosure 2.

D. POLICY

It is DoD policy under reference (a) that:

Pentagon Library (ANR-PL)
ATTN: Military Documents Section
Room 1A518, Pentagon
Washington, DC 20310-6050

1. The DoD Disability Evaluation System (DES) shall be established to conduct physical disability evaluation in a consistent and timely manner.

2. Members of the Reserve components who are not on a call to active duty of more than 30 days and who are medically disqualified for impairments unrelated to the member's military status and performance of duty shall be referred into the DES solely for a fitness determination upon the request of the member or when directed by the Secretary concerned.

3. The applicable standards for all determinations related to physical disability evaluation shall be consistently and equitably applied, in accordance with 10 U.S.C. (reference (b)), to Active component and Ready Reserve members.

E. <u>RESPONSIBILITIES</u>

1. The <u>Under Secretary of Defense for Personnel and Readiness</u> shall:

a. Exercise cognizance and oversight of the DoD DES.

b. Make the final decision on requests from the Military Departments for exceptions to the standards of this Instruction.

2. The <u>Assistant Secretary of Defense for Force Management Policy</u>, under the <u>Under Secretary of Defense for Personnel and Readiness, shall</u>:

a. Exercise cognizance of laws, policies, and regulations that effect the DES.

b. Issue guidance, as required, to further interpret, implement, and govern the policy and procedures for the four elements of the DES.

c. Establish necessary reporting requirements to monitor and assess the performance of the DES and compliance of the Military Departments with this Instruction and DoD Directive 1332.18 (reference (a)).

d. Coordinate with the Assistant Secretary of Defense for Reserve Affairs concerning the impact of laws and DoD policy on Reserve members who have conditions that are cause for medical disqualification.

e. Coordinate with the Assistant Secretary of Defense for Health Affairs in developing procedures for medical issues pertaining to physical disability evaluation.

f. Review substantive changes proposed by the Military Departments to Departmental policies and procedures for physical

disability evaluation that affect the uniformity of standards for separation or retirement for unfitness because of physical disability or separation of Ready Reserve members for medical disqualification.

g. Develop quality assurance procedures to ensure that policies are applied in a fair and consistent manner.

3. The <u>Assistant Secretary of Defense for Health Affairs</u>, under the <u>Under Secretary of Defense for Personnel and Readiness</u>, shall:

a. Make recommendations for a final decision by the Secretary of Defense on the unfit findings on all officers in pay grade O-7 or higher and medical officers in any grade who are pending nondisability retirement for age or length of service at the time of their referral into the DES.

b. Review substantive changes proposed by the Military Departments in their supplemental medical standards to enclosure 4 of this Instruction concerning medical conditions that are cause for referral of a member into the DES.

4. The <u>Assistant Secretary of Defense for Reserve Affairs</u>, under the <u>Under Secretary of Defense for Personnel and Readiness</u>, shall coordinate as necessary to ensure that procedures for the DES apply consistently and uniformly to members of the Reserve components.

5. The <u>Secretaries of the Military Departments</u> shall:

a. Ensure that members with conditions that may be cause for referral into the DES are counseled at appropriate stages on the DES process and the member's rights, entitlements, and benefits.

b. Establish a quality assurance process to ensure that policies and procedures established by DoD Directive 1332.18 (reference (a)) and this Instruction are interpreted uniformly.

c. Make determinations on unfitness because of medical disqualification or physical disability; entitlement to assignment of percentage of disability at the time of retirement or separation because of physical disability; and, except as limited by 10 U.S.C. 1216(d) (reference (b)), entitlement to and payment of disability retired and severance pay.

d. Ensure that the record of proceedings for physical disability cases supports the findings and recommendations made.

e. Ensure the Temporary Disability Retired List (TDRL) is managed to meet the requirements of 10 U.S.C. 1210 (reference (b)) for timely periodic physical examinations, suspension of retired pay, and removal from the TDRL.

f. Designate a Military Department representative to serve as the Department representative for the Disability Evaluation System.

g. Ensure all matters raising issues of fraud on the DES by members are investigated and resolved as appropriate.

F. PROCEDURES

See enclosure 3.

G. EFFECTIVE DATE

This Instruction is effective for all MEBs 120 days after the date of this Instruction.

Edwin Dorn
Under Secretary of Defense for
Personnel and Readiness

Enclosures - 5
1. References
2. Definitions
3. Procedures
4. Guidelines Regarding Medical Conditions and Physical Defects That Are Cause for Referral into the Disability Evaluation System
5. Conditions Not Constituting a Physical Disability

REFERENCES, continued

(e) DoD Directive 6130.3, "Physical Standards for Appointment, Enlistment, Induction", May 2, 1994
(f) Section 104 of title 26, United States Code
(g) DoD Directive 1332.27, "Survivor Benefit Plan", January 4, 1974
(h) DoD Directive 1332.35, "Transition Assistance for Military Personnel," December 9, 1993
(i) DoD Instruction 1332.39, "Application of the Veterans Administration Schedule for Rating Disabilities," November 14, 1996
(j) Sections 801-940 of title 10, United States Code, "Uniform Code of Military Justice"
(k) Sections 101 and 302 of title 38, United States Code

## DEFINITIONS

1. Accepted Medical Principles. Fundamental deductions, consistent with medical facts that are so reasonable and logical as to create a virtual certainty that they are correct.

2. Accession Standards. Physical standards or guidelines that establish the minimum medical conditions and physical defects acceptable for an individual to be considered eligible for appointment, enlistment or induction into the Military Services under DoD Directive 6130.3 (reference (e)).

3. Active Duty. Full-time duty in the active Military Service of the United States. It includes:

a. Full-time National Guard Duty.

b. Annual training.

c. Attendance while in active Military Service at a school designated as a Service school by law or by the Secretary of the Military Department concerned.

d. Service by a member of a Reserve component ordered to active duty (with or without his or her consent), or active duty for training (with his or her consent), with or without pay under competent orders.

4. Active Duty for a Period of More than 30 Days. Active duty or full-time National Guard Duty under a call or order that does not specify a period of 30 days or less.

5. Active Reserve Status. Status of all Reserves who are not on an active-duty list maintained under Section 574 or 620 of 10 U.S.C. (reference (b)), except those in the inactive National Guard, on an inactive status list or in the Retired Reserve. Reservists in an active status may train with or without pay, earn retirement points, and may earn credit for and be considered for promotion. In accordance with the Reserve Officer Personnel Management Act (ROPMA), a member in an Active Reserve status must be on the Reserve Active-Status List (RASL)(10 U.S.C. 14002 reference (b)).

6. Active Service. Service on active duty or full-time National Guard duty.

7. Compensable Disability. A medical condition determined to be unfitting by reason of physical disability and which meets the statutory criteria under Chapter 61 of reference (b) for entitlement to disability retired or severance pay.

8. Competency Board. A board consisting of at least three medical officers or physicians (including one psychiatrist) convened to determine whether a member is competent (capable of making a rational decision regarding his or her personal and financial affairs).

9. Death. A determination of death must be made in accordance with accepted medical standards and the laws of the State where the member is located or the military medical standards in effect at an overseas location.

10. Deployability. A determination that the member is free of a medical condition(s) that prevents positioning the member individually or as part of a unit, with or without prior notification to a location outside the Continental United States for an unspecified period of time.

11. Duty Related Impairments. Impairments which, in the case of a member on active duty for 30 days or less, are the proximate result of, or were incurred in line of duty after September 23, 1996, as a result of:

a. Performing active duty or inactive duty training;

b. Traveling directly to or from the place at which such duty is performed; or

c. After September 23, 1996, an injury, illness, or disease incurred or aggravated while remaining overnight, between successive periods for purposes of IDT, at or in the vicinity of the site of the IDT, if the site is outside reasonable commuting distance of the member's residence.

11. Extended Active Duty. Active duty under orders specifying a period of more than 30 days.

12. Final Reviewing Authority. The final approving authority for the findings and recommendations of the PEB.

13. Full and Fair Hearing. A hearing held by a board, before which the Service member has the right to make a personal appearance with the assistance of counsel and to present evidence in his or her behalf.

14. Impairment of Function. Any disease or residual of an injury that results in a lessening or weakening of the capacity of the body or its parts to perform normally, according to accepted medical principles.

15. Inactive Duty Training (IDT). Duty prescribed for Reservists, other than active duty or full-time National Guard Duty, under 37 U.S.C. 206 (reference (d)) or other provision of

law. It does not include work or study in connection with a correspondence course of a Uniformed Service.

16. Instrumentality of War. A vehicle, vessel, or device designed primarily for Military Service and intended for use in such Service at the time of the occurrence of the injury. It may also be a vehicle, vessel, or device not designed primarily for Military Service if use of or occurrence involving such a vehicle, vessel, or device subjects the individual to a hazard peculiar to Military Service. This use or occurrence differs from the use or occurrence under similar circumstances in civilian pursuits. There must be a direct causal relationship between the use of the instrumentality of war and the disability, and the disability must be incurred incident to a hazard or risk of the service.

17. Line of Duty Investigation. An inquiry used to determine whether an injury or disease of a member performing military duty was incurred in a duty status; if not in a duty status, whether it was aggravated by military duty; and whether incurrence or aggravation was due to the member's intentional misconduct or willful negligence.

18. Natural Progression. The worsening of a pre-Service impairment that would have occurred within the same timeframe regardless of Military Service.

19. Nonduty Related Impairments. Impairments of members of the Reserve components that were neither incurred nor aggravated while the member was performing duty, to include no incident of manifestation while performing duty which raises the question of aggravation. Members with nonduty related impairments are eligible to be referred to the PEB for solely a fitness determination but not a determination of eligibility for disability benefits.

20. Office, Grade, Rank, or Rating.

a. Office. A position of duty, trust, authority to which an individual is appointed.

b. Grade. A step or degree in a graduated scale of office or military rank that is established and designated as a grade by law or regulation.

c. Rank. The order of precedence among members of the Armed Forces.

d. Rating. The name (such as "Boatswain's Mate") prescribed for members of an Armed Force in an occupational field.

21. Optimum Hospital and Medical Treatment Benefits. The point of hospitalization or treatment when a member's progress appears

to be stabilized; or when, following administration of essential initial medical treatment, the patient's medical prognosis for being capable of performing further duty can be determined.

22. Performing Military Duty of 30 days or less. A term used to inclusively cover the categories of duty pertaining to 10 U.S.C. 1204 - 1206 (reference (b))(active duty, IDT, and travel directly to and from active duty or IDT).

23. Permanent Limited Duty. The continuation on active duty or in the Ready Reserve in a limited duty capacity of a Service member determined unfit as a result of physical disability evaluation or medical disqualification.

24. Physical Disability. Any impairment due to disease or injury, regardless of degree, that reduces or prevents an individual's actual or presumed ability to engage in gainful employment or normal activity. The term "physical disability" includes mental disease, but not such inherent defects as behavioral disorders, adjustment disorders, personality disorders, and primary mental deficiencies. A medical impairment or physical defect standing alone does not constitute a physical disability. To constitute a physical disability, the medical impairment or physical defect must be of such a nature and degree of severity as to interfere with the member's ability to adequately perform his or her duties.

25. Preponderance of Evidence. That evidence that tends to prove one side of a disputed fact by outweighing the evidence on the other side (that is, more than 50 percent). Preponderance does not necessarily mean a greater number of witnesses or a greater mass of evidence; rather, preponderance means a superiority of evidence on one side or the other of a disputed fact. It is a term that refers to the quality, rather than the quantity of the evidence.

26. Presumption. An inference of the truth of a proposition or fact, reached through a process of reasoning and based on the existence of other facts. Matters that are presumed need no proof to support them, but may be rebutted by evidence to the contrary.

27. Presumption Period. The designated time frame that requires application of the Presumption of Fitness Rule to a member's physical disability evaluation.

28. Proximate Result. A permanent disability the result of, arising from, or connected with active duty, annual training, active duty for training, or inactive duty training (IDT), (etc.) to include travel to and from such duty or remaining overnight between successive periods of inactive duty training. Proximate result is a statutory criteria for entitlement to disability compensation under Chapter 61 of reference (b) applicable to Reserve component members who incur or aggravate a disability

while performing an ordered period of military duty of 30 days or less.

29. Ready Reserve. Units and individual reservists liable for active duty as outlined in Sections 12301 (Full Mobilization) and 12302 (Partial Mobilization) of 10 U.S.C. (reference (b)). This includes members of units, members of the Active Guard Reserve Program, Individual Mobilization Augmentees, Individual Ready Reserve, and the Inactive National Guard.

30. Retention Standards. Physical standards or guidelines which establish those medical conditions or physical defects that may render a Service member unfit for further Military Service and are therefore cause for referral of the member into the DES.30.

31. Service Aggravation. The permanent worsening of a pre-Service medical condition over and above the natural progression of the condition caused by trauma or the nature of Military Service.

PROCEDURES
TABLE OF CONTENTS

| | Page |
|---|---|
| PART 1. OPERATIONAL STANDARDS FOR THE DES | 3-5 |
| A. Overview of the DES | 3-5 |
| B. Medical Evaluation | 3-5 |
| 1. Purpose | 3-5 |
| 2. Type of Evaluation | 3-5 |
| 3. Content | 3-5 |
| 4. Competency | 3-6 |
| 5. TDRL Periodic Examinations | 3-6 |
| 6. Physician's Guide | 3-6 |
| 7. Nonmedical Documentation | 3-6 |
| 8. Ready Reserve Nonduty-Related Impairments | 3-7 |
| C. Physical Disability Evaluation | 3-7 |
| 1. Purpose | 3-7 |
| 2. Informal PEB | 3-7 |
| 3. Formal PEB | 3-7 |
| a. Eligibility | 3-7 |
| b. Directed Formal | 3-8 |
| c. Issues | 3-8 |
| d. Submission of Informal PEB Rebuttal | 3-8 |
| e. Hearing Rights | 3-8 |
| 4. Record of Proceedings | 3-9 |
| a. Duty-Related Impairments | 3-9 |
| b. Nonduty-Related Conditions | 3-10 |
| c. Rationales | 3-10 |
| 5. Quality Assurance | 3-10 |
| D. Counseling | 3-10 |
| 1. Purpose | 3-10 |
| 2. Topics | 3-10 |
| 3. Ready Reserve Members | 3-11 |
| 4. Incompetent Members | 3-11 |
| 5. Pre-separation Counseling | 3-11 |
| E. Personnel | 3-11 |
| 1. Purpose | 3-11 |
| 2. Functions | 3-11 |
| F. Time Standards for Case Processing | 3-12 |
| 1. Referral Time Frame | 3-12 |
| 2. Medical | 3-12 |
| a. Duty Related | 3-12 |
| b. Nonduty-Related | 3-12 |
| 3. PEB | 3-12 |
| 4. Imminent Death Processing | 3-12 |
| G. Training and Education | 3-12 |
| PART 2. ELIGIBILITY FOR REFERRAL | 3-13 |
| A. Criteria for Referral | 3-13 |
| B. Duty-Related Impairments | 3-13 |
| C. Nonduty-Related Impairments | 3-14 |
| D. Ineligibility for Referral | 3-14 |
| E. Members with a Nonwaivered Pre-Existing Condition | 3-14 |
| F. Members with Medical Waivers | 3-15 |
| G. Waiver of MEB/PEB Evaluation | 3-15 |

| | | |
|---|---|---|
| PART 3. | STANDARDS FOR DETERMINING UNFITNESS DUE TO PHYSICAL DISABILITY OR MEDICAL DISQUALIFICATION | 3-16 |
| A. | Uniformity of Standards | 3-16 |
| B. | General Criteria for Making Unfitness Determinations | 3-16 |
| C. | Relevant Evidence | 3-16 |
| | 1. Referral Following Illness or Injury | 3-16 |
| | 2. Referral for Chronic Impairment | 3-16 |
| | 3. Adequate Performance Until Referral | 3-17 |
| | 4. Cause and Effect Relationship | 3-17 |
| D. | Reasonable Performance of Duties | 3-17 |
| | 1. Considerations | 3-17 |
| | a. Common Military Tasks | 3-17 |
| | b. Physical Fitness Test | 3-17 |
| | c. Deployability | 3-17 |
| | d. Special Qualifications | 3-17 |
| | 2. General, Flag, and Medical Officers | 3-18 |
| | 3. Members on Permanent Limited Duty | 3-18 |
| | 4. Overall Effect | 3-18 |
| E. | Presumption of Fitness | 3-18 |
| | 1. Application | 3-18 |
| | 2. Presumptive Period | 3-18 |
| | 3. Overcoming the Presumption | 3-19 |
| F. | Evidentiary Standards for Determining Unfitness Because of Physical Disability | 3-19 |
| | 1. Factual Finding | 3-19 |
| | 2. Preponderance of Evidence | 3-19 |
| PART 4. | STANDARDS FOR DETERMINING COMPENSABLE DISABILITIES | 3-21 |
| A. | Overview of Compensable Criteria | 3-21 |
| B. | Proximate Result | 3-22 |
| C. | Applicable Statute for Reserve Component Members | 3-22 |
| D. | Line of Duty Requirements | 3-22 |
| | 1. Uses | 3-22 |
| | 2. Relationship of Line of Duty Findings to DES Determinations | 3-23 |
| | 3. Referral Requirement | 3-23 |
| | 4. Presumptive Determinations | 3-23 |
| | 5. Required Determinations | 3-24 |
| E. | Evidentiary Standards for Determining Compensability of Unfitting Conditions | 3-24 |
| | 1. Misconduct and Negligence | 3-24 |
| | 2. Presumptions for Members on Ordered Active Duty of More Than 30 days | 3-24 |
| | a. At Time of Entry | 3-24 |
| | b. After Entry | 3-25 |
| | (1) Presumption | 3-25 |
| | (2) Hereditary and/or Genetic Diseases | 3-25 |
| | c. Presumption of Aggravation | 3-25 |
| | 3. Prior-Service Impairments | 3-25 |
| | 4. Conditions Presumed To Be Pre-existing | 3-25 |
| | 5. Medical Waivers | 3-26 |
| | 6. Treatment of Pre-Existing Conditions | 3-26 |
| F. | Rating Disabilities | 3-26 |

PART 5. ADMINISTRATIVE DETERMINATIONS 3-27
A. Administrative Determinations for Purposes of Employment under Federal Civil Service 3-27
1. Incurred in Combat with an Enemy of the United States (5 U.S.C. 8332)(Reference (c)) 3-27
2. Armed Conflict(5 U.S.C. 3502, 5532, 6303) (Reference (c)) 3-27
3. Instrumentality of War during a Period of War (5 U.S.C. 3502, 5532, 6303)(Reference (c)) 3-27
a. World War II 3-28
b. Korea 3-28
c. Vietnam 3-28
d. Persian Gulf War 3-28
B. Determinations for Federal Tax Benefits 3-28
1. Status 3-28
2. Combat Related 3-28

PART 6. TDRL Management 3-30
A. Placement on the TDRL 3-30
B. TDRL Reevaluation 3-30
1. Administrative Finality 3-30
2. New Diagnoses 3-30
3. Member Medical Records 3-30
4. Compensability of New Diagnoses 3-30
5. Current Physical Examination 3-31
6. Refusal or Failure to Report 3-31
7. Priority 3-31
8. Reports from non MTFs 3-31
9. Incarcerated Members 3-31

PART 7. FINAL DISPOSITION 3-33
A. Final Decision Authority 3-33
1. Secretary of Defense (or Secretary of Transportation) 3-33
2. Secretary of the Military Department 3-33
B. General Rules Regarding Disposition 3-33
1. Retirement 3-33
2. Fit Off the TDRL 3-34
a. Appointment and/or Enlistment 3-34
b. Recall to Active Duty 3-34
(1) Regular Component Members 3-34
(2) Reserve Component 3-34
c. Separation 3-34
d. Termination of TDRL 3-34
C. Continuance of Unfit Members on Active Duty or in the Ready Reserve 3-34
D. Transition Benefits 3-34
E. Dispositions for Unfit Members 3-35
1. Permanent Disability Retirement 3-35
2. Placement on the TDRL 3-35
3. Separation with Disability Severance Pay 3-35
a. Criteria 3-35
b. Active Service 3-35

c. Transfer to Retired Reserve 3-35

d. Ready Reserve Early Qualification for Retired Pay 3-36

4. Separation under Chapter 61 of 10 U.S.C. (Reference (b)) without Entitlement to Benefits 3-36

5. Discharge under other than Chapter 61 of 10 U.S.C. (Reference (b)) 3-36

6. Revert with Disability Benefits 3-36

PART 1
OPERATIONAL STANDARDS FOR THE DES

A. Overview of the DES. Under the supervision of the Secretary concerned, each DES shall consist of four elements:

1. Medical evaluation by Medical Evaluation Boards (MEBs), Ready Reserve physical examinations, and TDRL periodic physical examinations.

2. Physical disability evaluation by Physical Evaluation Board (PEBs), to include appellate review.

3. Service member counseling.

4. Final disposition by appropriate personnel authorities.

B. Medical Evaluation

1. Purpose. The medical evaluation element of the DES shall document under departmental regulations the medical status and duty limitations of Service members referred into the DES.

2. Type of Evaluation. Medical evaluation is required for personnel undergoing a Medical Evaluation Board when:

a. The Service member is on active duty under orders specifying a period of more than 30 days.

b. The Service member is a Reserve component member referred for a duty related impairment.

c. The member is on the TDRL and due for a periodic physical examination.

Either a physical examination or a MEB is required when a Reserve component member is referred for impairments unrelated to the member's military status and performance of duty (see definition for nonduty-related impairments). Before submission to the PEB, physical examinations accomplished by other than a medical treatment facility (MTF) shall be forwarded through command channels to the medical approving authority designated by the respective Service for review and approval.

3. Content. MEBs, TDRL physical examinations, and Reserve component physical examinations shall document the full clinical information of all medical conditions the Service member has and state whether each condition is cause for referral into the DES. (See enclosure 4 of this Instruction.) Clinical information shall include a medical history, appropriate physical examination, medical tests and their results, medical and surgical consultations as necessary or indicated, diagnoses, treatment, and prognosis. MEBs shall not state a conclusion of unfitness because of physical disability, assignment of

disability percentage rating, or the appropriate disposition under Chapter 61 of 10 U.S.C. (reference (b)).

4. Competency. MEBs and TDRL periodic examinations shall include the results of a competency board when the member has a functional or organic disorder that makes questionable the member's ability to handle his or her personal affairs and to understand and cooperate in MEB and PEB proceedings.

5. TDRL Periodic Examinations. In addition to the requirements specified above, TDRL periodic examinations shall address:

a. An estimate of change since the previous examination.

b. Etiology of all medical impairments diagnosed since the member was placed on the TDRL, to include:

(1) Whether the new diagnosis was caused either by the condition for which the member was placed on the TDRL or the treatment received for such a condition.

(2) If not caused by the condition for which the member was placed on the TDRL, whether the member's medical records document incurrence or aggravation of the condition while the member was in a military duty status; and if so, whether the condition was cause for referral into the DES at the time the member was placed on the TDRL.

c. The stability of the condition. If the condition remains unstable, the report of examination shall address the progress of the disability and a suggested time frame (not to exceed 18 months) for the next examination.

d. A detailed occupational history and an indication of pertinent social and recreational activities, and activities of daily living.

6. Physician's Guide. Physicians who prepare MEBs and TDRL periodic physical examinations for referral for physical disability evaluation are encouraged to use the DVA's Physician's Guide for Disability Evaluation Examinations to describe the nature and degree of severity of the member's condition.

7. Nonmedical Documentation. For cases of members with duty-related impairments, the MTF shall forward to the PEB with the MEB documentation, the documents listed in paragraphs B.7.a through B.7.d., below.

a. A copy of the line of duty determination under subsection D.3. of Part 4.

b. Except in situations of critical illness or injury in which return to duty is not expected, a statement from the member's immediate commanding officer describing the impact of the member's medical condition on the member's ability to perform his or her normal military duties and to deploy or mobilize, as applicable. When the member has been reassigned for medical purposes (for example, to a medical holding unit) the MTF will obtain this statement from the member's former unit commander.

c. Pertinent personnel records, as required by the member's Service, to establish the member's military history.

d. Official document identifying the next-of-kin, court appointed guardian, or trustee when a Service member is determined incompetent. (See subsection B.4. of Part 1.)

8. Ready Reserve Nonduty-Related Impairments. Cases of Ready Reserve members with nonduty-related impairments (see definition) will be referred to the PEB in accordance with Service regulations.

C. Physical Disability Evaluation

1. Purpose. The physical disability evaluation element of the DES shall determine the fitness of Service members with medical impairments to perform their military duties; and for members determined unfit for duty-related impairments, their entitlement to benefits under Chapter 61 of 10 U.S.C. (reference (b)). Physical disability evaluation shall be conducted by PEBs and include the elements in subsections C.2. through C.5., below.

2. Informal PEB. The informal PEB will conduct a documentary review without the presence of the Service member for providing initial findings and recommendations.

3. Formal PEB. Eligible Service members shall be provided a minimum of one opportunity for a formal PEB to fulfill the statutory requirement of Section 1214 of reference (b) for a full and fair hearing when requested by a Service member being separated or retired for physical disability under Chapter 61 of reference (b). The Service member's declination of a formal PEB will be documented by the Physical Evaluation Board Liaison Officer (PEBLO) counselor. Appearance before a formal PEB may be in person, through a designated representative, or via video teleconferencing media.

a. Eligibility

(1) Service members determined unfit by the informal PEB shall be granted a formal PEB upon request.

(2) Active duty and Ready Reserve members determined fit do not have an entitlement to a formal PEB since a

finding of fit does not cause involuntary separation for physical disability.

(3) TDRL members determined fit shall be entitled to a formal PEB since removal from the TDRL represents a change in military status.

b. Directed Formal. A formal PEB may be directed by the final reviewing authority or appropriate designated Military Department authority without regard to the member's election concerning the informal PEB's findings.

c. Issues. At the formal hearing, the member shall be entitled to address any issue that affects the member's benefits under Chapter 61 of 10 U.S.C. (reference (b)); 5 U.S.C. 3502, 5532, 6303, and 8332 (reference (c)); and 26 U.S.C. 104 (reference (f)). Final determination of these issues shall be in accordance with Military Department regulations.

d. Submission of Informal PEB Rebuttal. Service members requesting a formal PEB should be encouraged to submit a rebuttal identifying the issues of disagreement with the informal PEB's findings and recommendations.

e. Hearing Rights. Service members shall have, at a minimum, the following rights before the formal PEB:

(1) The right to personally appear at the formal hearing, which may include video teleconferencing, unless such appearance proves impracticable because the member cannot travel (e.g., the member is incarcerated or incapacitated).

(a) If the member's conduct or statements create a potential security risk to board members and/or other personnel, local security police shall be alerted and appropriate security precautions shall be taken.

(b) Unless the formal hearing is directed by the Military Department concerned, members of the Ready Reserve with nonduty-related impairments are responsible for their personal travel and other expenses.

(2) The right to the assistance of a detailed military counsel provided at no expense to the member or a personal representative provided at no expense to the Service. This right extends to Reserve component members who request a formal hearing pending separation for medical disqualification.

(3) The right to make a sworn statement or an unsworn statement.

(4) The right to remain silent. When the member exercises this right, the member may not selectively respond, but must remain silent throughout the hearing.

(5) The right to introduce witnesses, depositions, documents, sworn or unsworn statements (affidavits) or other evidence in their behalf and to question all witnesses who testify at the hearing. Witnesses who are not members or employees of the Department of Defense and members of the Department of Defense who are not deemed essential witnesses as determined by the PEB attend formal hearings at no expense to the Government.

(6) The right of access to all records and information received by the PEB before, during, and after the formal hearing which may affect the findings of the PEB or appellate review authority.

(7) The right to a written rationale explaining the findings and recommendations of the formal PEB.

(8) The right, upon written request, to a record of the hearing. The respective Service shall determine the format of the record (audio, video, or written transcript).

(9) The right to appeal the findings and recommendations of the formal PEB.

4. Record of Proceedings. A record of proceedings will be prepared to document the findings and recommendations of the PEB.

a. Duty-Related Impairments. The record of proceedings for active duty members and Ready Reserve members referred for duty-related impairments shall document at a minimum:

(1) The determination of fit or unfit. If determined fit, a determination of whether the Service member is deployable may be included if Service regulations require such a determination and deployability is defined and uniformly applied to the office, grade, rank, or rating in both the Active and Reserve components of that Service.

(2) The code and percentage rating assigned an unfitting physical disability in accordance with the VASRD.

(3) The reason an unfitting condition is not compensable.

(a) For all cases with a finding of pre-existing condition without aggravation, the specific accepted medical principle for overcoming the presumption of Service aggravation shall be cited and explained.

(b) For all cases of Reserve component members performing duty of 30 days of less with a finding of not the proximate result of performing duty, the justification shall be documented.

(4) For members being placed on the TDRL or permanently retired, a statement concerning the stability and permanent nature of the physical disability.

(5) Administrative determinations under sections A. and B. of Part 5 of this Instruction.

b. Nonduty-Related Conditions. For members of the Ready Reserve referred for nonduty-related conditions, the record of proceedings shall document only:

(1) The fitness determination.

(2) For members determined fit, a determination of whether the member is deployable if Service regulations require such a determination and deployability is defined and applied to the office, grade, rank, or rating in both the Active and Reserve components of that Service.

c. Rationales. The record of all proceedings for PEB evaluation and changes made as a result of review by subsequent reviewing authority shall include a written rationale (explanation) in support of the findings and recommendations made.

5. Quality Assurance. Quality assurance review shall be conducted as necessary to ensure compliance with the laws, directives, and regulations governing physical disability evaluation.

D. Counseling

1. Purpose. The counseling element of DES shall afford Service members undergoing evaluation by the DES the opportunity to be advised of the significance and consequences of the determinations made and the associated rights, benefits, and entitlements.

2. Topics. Counselors shall counsel on such matters as:

a. The sequence and nature of the steps in processing.

b. Statutory and regulatory rights.

c. Effect of findings and recommendations.

d. Recourse to rebuttals.

e. Estimated retired or severance pay based upon the PEB's findings and recommendations.

f. Probable retired grade.

g. Potential veterans benefits.

h. Post-retirement insurance programs and the Survivor Benefit Plan in accordance with DoD Directive 1332.27 (reference (g)) if appropriate.

i. Applicable transition benefits under DoD Directive 1332.35 (reference (h)).

j. Prior to acting on a Service member's request for a formal PEB, review with the member the applicable standard detailed in the VASRD or DoD Instruction 1332.39 (reference (i)) which would have to be recognized in order to increase the percentage of disability.

3. <u>Ready Reserve Members</u>. Ready Reserve members pending separation for physical disability should be counseled by the MTF Physical Evaluation Board Liaison Officer concerning their rights under the DES as established by section C. of Part 1 and section A. of Part 2.

4. <u>Incompetent Members</u>. When a Service member has been determined incompetent, his or her primary next of kin, or court appointed guardian shall be counseled and afforded the opportunity to assert the rights granted to the Service member, unless prohibited by law.

5. <u>Pre-Separation Counseling</u>. Service members on a call to active duty of more than 30 days shall not be separated or retired because of physical disability prior to completion of pre-separation counseling under reference (h). Though counseling is normally accomplished 90 days before separation, the date of separation or retirement of members determined unfit need not be extended to provide a minimum of 90 days between counseling and separation or retirement.

E. <u>Personnel</u>

1. <u>Purpose</u>. The personnel element of DES shall accomplish disposition of the Service member's case. Specifically, appropriate personnel authorities shall accomplish the functions listed in subsection E.2., below.

2. <u>Functions</u>. The personnel element shall:

a. Issue orders and instructions to implement the determination of the respective Service's final reviewing authority.

b. Serve as approving authority for requests by Service members determined unfit to continue on active duty or in the Ready Reserve in a permanent limited duty status.

c. Manage the TDRL under section B. of Part 6.

F. Time Standards for Case Processing

1. Referral Time Frame. It is not within the mission of the Military Departments to retain members on active duty or in the Ready Reserve to provide prolonged, definitive medical care when it is unlikely the member will return to full military duty. Service members shall be referred into the DES as soon as the probability that they will be unable to return to full duty is ascertained and optimal medical treatment benefits have been attained (see Enclosure 2, Page 2-3, Paragraph 20). All members shall be referred for evaluation within one year of the diagnosis of their medical condition if they are unable to return to military duty.

2. Medical

a. Duty-Related. When a physician initiates a MEB, the processing time should normally not exceed 30 days from the date the MEB report is dictated to the date it is received by the PEB.

b. Nonduty-Related. For cases of Reserve component members referred for solely a fitness determination on a nonduty-related condition, processing time for conduct of MEB or physical examination shall not exceed 90 calendar days.

3. PEB. Upon receipt of the MEB or physical examination report by the PEB, the processing time to the date of the determination of the final reviewing authority as prescribed by the Secretary of the Military Department should normally be no more than 40 days.

4. Imminent Death Processing. When competent medical authority determines that a Service member's death is expected within 72 hours, the member may be referred expeditiously into the DES. To protect the interests of the Government and the Service member, disposition shall be placement on the TDRL provided all requirements under statute, law, and regulation are met. In no case shall a Service member be retired after his or her death or before completion of a required line of duty determination. Determination of death shall be made under the laws of the state where the member is assigned, or under military medical standards when the member is outside the United States.

G. Training and Education. Those Service members designated by the Secretary concerned as primary participants in the DES shall be trained and educated in a timely and continuing manner concerning the policies and procedures of this Instruction. Primary participants in the DES include, but are not limited to, medical officers who prepare MEBs, patient administration officers, disability counselors, PEB and appellate review members, and judge advocates.

PART 2
ELIGIBILITY FOR REFERRAL

A. Criteria for Referral. Service members on active duty or in the Ready Reserve shall be eligible for referral into the DES when the member:

1. Has a medical condition that is cause for referral into the DES as established by enclosure 4 of this Instruction or by the respective Service's supplemental medical standards, and the member has received optimal medical treatment benefits; or

2. Will be unable to return to full military duty within one year of diagnosis of the medical condition; or

3. Was previously determined unfit, continued in a permanent limited duty status, and the period of continuation has expired; and

4. Is not disqualified under section D. of Part 2.

5. Is a member of the regular component of the Armed Forces entitled to basic pay; or any other member of the Armed Forces entitled to basic pay who has been called or ordered to active duty for more than 30 days; or any other member of the Armed Forces, after September 23, 1996, who is on active duty but is not entitled to basic pay under 37 U.S.C. 502(b) (reference (d)) due to authorized absence to participate in an educational program, or for an emergency purpose, as determined by the Secretary concerned.

B. Duty-Related Impairments

1. Service members described in section A., above, who have impairments which, in the case of a member on active duty for 30 days or less, are the proximate result of, or were incurred in line of duty after September 23, 1996, as a result of:

a. Performing active duty or inactive duty training;

b. Traveling directly to or from the place at which such duty is performed; or

c. After September 23, 1996, an injury, illness, or disease incurred or aggravated while remaining overnight, between successive periods for purposes of IDT, at or in the vicinity of the site of the IDT, if the site is outside reasonable commuting distance of the member's residence.

shall be referred into the DES except as provided in sections D. and G., below.

2. Members with duty related impairments as described in paragraphs B.1.a. through B.1.c., above, shall be referred into

the DES for a determination of fitness, and if found unfit, a determination of entitlement to separation or retirement for disability with benefits under Chapter 61 of 10 U.S.C. (reference (b)). The fact that a Service member is unfit for disabilities incurred during the periods designated in paragraphs B.1.a. through B.1.d., above, does not constitute entitlement to disability benefits. (See Part 4 for compensation entitlement criteria.)

C. Nonduty-Related Impairments. Members of the Ready Reserve with nonduty-related impairments, and who are otherwise eligible, will be referred into the DES upon the request of the member or when directed under Service regulations. Referral will be solely for a determination of fitness for duty.

D. Ineligibility for Referral. Service members are ineligible for physical disability evaluation, when:

1. The member's defect is a developmental or constitutional disorder not constituting a physical disability. (See enclosure 5 for a comprehensive listing.)

2. Except as provided under Service regulations, the member is pending an approved, unsuspended, punitive discharge or dismissal.

3. Except as provided under Service regulations, the member is pending separation under provisions that authorize a characterization of service of Under Other Than Honorable (UOTH). This restriction is based on the provisions under which the member is being separated and not on the actual characterization the member receives. For example, because separation for misconduct authorizes a UOTH, a member who is being separated for misconduct with a general characterization is ineligible for referral into the DES except as provided under the regulations of the respective Service.

4. Service regulations should normally provide for referral to the DES of those members designated in subsections D.2. and D.3., above, when the medical impairment or extenuating circumstances may be the cause of the conduct.

E. Members with a Nonwaivered Pre-Existing Condition. Service members who are identified with nonwaivered medical conditions or physical defects that existed prior to service may be administratively separated without referral into the DES when the medical condition meets all the criteria listed in subsections E.1. through E.4., below:

1. The medical impairment is identified prior to or within 180 days of the member's initial entry on active duty or active duty for training or full-time National Guard duty.

2. The medical impairment does not meet accession standards under DoD Directive 6130.3 (reference (e)).

3. The impairment is not a condition that is cause for referral to the PEB under enclosure 4 or Service supplemental medical standards.

4. Service aggravation of the impairment has not occurred. If the Service member contests the "not Service aggravated" determination by the physician recommending separation, the member may request the MEB be forwarded to the PEB for review.

F. <u>Members with Medical Waivers</u>. Provided no aggravation has occurred, Service members who enter the military with a medical waiver may be separated without physical disability evaluation when the responsible medical authority designated by Service regulations determines within 180 days of the member's entry into active service that the waivered condition represents a risk to the member or prejudices the best interests of the Government. Once 180 days have elapsed or the condition is one which causes referral into the DES, the member shall be referred for physical disability evaluation, if otherwise qualified.

G. <u>Waiver of MEB/PEB Evaluation</u>. In certain circumstances, Service members may waive referral to the PEB with the approval of the Secretary of the Military Department. The member must be counseled on the DES process; his or her right to a PEB; and the potential benefits of remaining in an active duty or Active Reserve status for purposes of completing evaluation by the DES. The member must request a waiver in writing, and such request, or an affidavit, must attest that the member has received the counseling described above and declines referral to the PEB. Waiver requests are authorized when either:

1. The MEB reflects that the member's medical condition existed prior to service and was not aggravated by service.

2. Physical disability evaluation requires extension past the date of the member's Service agreement or an approved retirement date, and the member does not consent to retention.

a. Members of a Reserve component on active duty under a call to duty of more than 30 days may continue disability evaluation upon release from active duty provided they maintain a Ready Reserve status. However, they must sign a waiver declining retention on active duty.

b. Members approved for separation under any program which incurs a Reserve obligation and who have conditions which are cause for referral into the DES are prohibited from waiving physical disability evaluation.

3. A Service member reaches the end of active obligated Service and has no remaining Service obligations.

## PART 3
## STANDARDS FOR DETERMINING UNFITNESS DUE TO PHYSICAL DISABILITY OR MEDICAL DISQUALIFICATION

A. Uniformity of Standards. The standards listed within this Instruction for determining unfitness due to physical disability shall be strictly adhered to, unless exceptions are approved by the Under Secretary of Defense for Personnel and Readiness based upon the unique needs of the respective Military Department.

B. General Criteria for Making Unfitness Determinations

1. A Service member shall be considered unfit when the evidence establishes that the member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating (hereafter called duties) to include duties during a remaining period of Reserve obligation.

2. In making a determination of a member's ability to so perform his/her duties, the following criteria may be included in the assessment:

a The medical condition represents a decided medical risk to the health of the member or to the welfare of other members were the member to continue on active duty or in an Active Reserve status.

b The medical condition imposes unreasonable requirements on the military to maintain or protect the member.

c The Service member's established duties during any remaining period of reserve obligation.

C. Relevant Evidence. All relevant evidence will be considered in assessing Service member fitness, including the circumstances of referral. To reach a finding of unfit, the PEB must be satisfied that the information it has before it supports a finding of unfitness.

1. Referral Following Illness or Injury. When referral for physical disability evaluation immediately follows acute, grave illness or injury, the medical evaluation may stand alone, particularly if medical evidence establishes that continued service would be deleterious to the Service member's health or is not in the best interests of the respective Service.

2. Referral For Chronic Impairment. When a Service member is referred for physical disability evaluation under circumstances other than as described in subsection C.1., above, evaluation of the member's performance of duty by supervisors as indicated, for example, by letters, efficiency reports, credential reports, status of physician medical privileges, or personal testimony may provide better evidence than a clinical estimate by a physician of the Service member's ability to

perform his or her duties. Particularly in cases of chronic illness, these documents may be expected to reflect accurately a member's capacity to perform.

3. Adequate Performance Until Referral. If the evidence establishes that the Service member adequately performed his or her duties until the time the Service member was referred for physical evaluation, the member may be considered fit for duty even though medical evidence indicates questionable physical ability to continue to perform duty.

4. Cause and Effect Relationship. Regardless of the presence of illness or injury, inadequate performance of duty, by itself, shall not be considered as evidence of unfitness due to physical disability unless it is established that there is a cause and effect relationship between the two factors.

D. Reasonable Performance of Duties

1. Considerations. Determining whether a member can reasonably perform his or her duties includes consideration of:

a. Common Military Tasks. The member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating (hereafter called duties) to include during a remaining period of Reserve obligation. For example, whether the member is routinely required to fire his or her weapon, perform field duty, or to wear load bearing equipment or protective gear.

b. Physical Fitness Test. Whether the member is medically prohibited from taking the respective Service's required physical fitness test. When an individual has been found fit by a PEB for a condition which prevents the member from taking the Service physical fitness test, the inability to take the physical fitness test shall not form the basis for an adverse personnel action against the member.

c. Deployability. When a Service member's office, grade, rank or rating requires deployability, whether a member's medical condition(s) prevents positioning the member individually or as part of a unit with or without prior notification to a location outside the Continental United States. Inability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will not be the sole basis for a finding of unfitness. When deployability is used by a Service as a consideration to determine fitness, the standard must be applied uniformly to both the Active and Reserve components of that Service.

d. Special Qualifications. For members whose medical condition causes loss of qualification for specialized duties, whether the specialized duties comprise the member's current duty

assignment; or the member has an alternate branch or specialty; or whether reclassification or reassignment is feasible.

2. General, Flag, and Medical Officers. An officer in pay grade O-7 or higher or a medical officer in any grade shall not be determined unfit because of physical disability if the member can be expected to perform satisfactorily in an assignment appropriate to his or her grade, qualifications, and experience. Thus, the inability to perform specialized duties or the fact the member has a condition which is cause for referral to a PEB is not justification for a finding of unfitness.

3. Members on Permanent Limited Duty. A member previously determined unfit and continued in a permanent limited duty status or otherwise continued on active duty, will normally be found unfit at the expiration of his or her period of continuation. However, the member may be determined fit when the member's condition has healed or improved so that the member would be capable of performing his or her duties in other than a limited duty status.

4. Overall Effect. A member may be determined unfit as a result of the overall effect of two or more impairments even though each of them, standing alone, would not cause the member to be referred into the DES or be found unfit because of physical disability.

E. Presumption of Fitness

1. Application. Except for Service members previously determined unfit and continued in a permanent limited duty status, Service members who are pending retirement at the time they are referred for physical disability evaluation enter the DES under a rebuttable presumption that they are physically fit. The DES compensates disabilities when they cause or contribute to career termination. Continued performance of duty until a Service member is approved for length of service retirement creates a rebuttable presumption that a Service member's medical conditions have not caused career termination.

2. Presumptive Period. Service members shall be considered to be pending retirement when the dictation of the member's MEB occurs after any of the circumstances designated in paragraphs E.2.a. through E.2.d., below.

a. When a member's request for voluntary retirement has been approved. Revocation of voluntary retirement orders for purposes of referral into the DES does not negate application of the presumption.

b. An officer has been approved for Selective Early Retirement.

c. An officer is within 12 months of mandatory retirement due to age or length of service.

d. An enlisted member is within 12 months of his or her retention control point (RCP)or expiration of active obligated service (EAOS) but will be eligible for retirement at his or her RCP/EAOS.

3. Overcoming the Presumption. The presumption of fitness rule shall be overcome when:

a. Within the presumptive period an acute, grave illness or injury occurs that would prevent the member from performing further duty if he or she were not retiring; or

b. Within the presumptive period a serious deterioration of a previously diagnosed condition, to include a chronic condition, occurs and the deterioration would preclude further duty if the member were not retiring; or

c. The condition for which the member is referred is a chronic condition and a preponderance of evidence establishes that the member was not performing duties befitting either his or her experience in the office, grade, rank, or rating before entering the presumptive period. When there has been no serious deterioration within the presumptive period, the ability to perform duty in the future shall not be a consideration.

F. Evidentiary Standards for Determining Unfitness Because of Physical Disability

1. Factual Finding. A factual finding that a Service member is unfit because of physical disability depends on the evidence that is available to support that finding. The quality of evidence is usually more important than quantity. All relevant evidence must be weighted in relation to all known facts and circumstances which prompted referral for disability evaluation. Findings will be made on the basis of objective evidence in the record as distinguished from personal opinion, speculation, or conjecture. When the evidence is not clear concerning a Service member's fitness, an attempt will be made to resolve doubt on the basis of further objective investigation, observation, and evidence. Benefit of unresolved doubt shall be resolved in favor of the fitness of the Service member under the rebuttable presumption that the member desires to be found fit for duty.

2. Preponderance of Evidence. Findings about fitness or unfitness for Military Service shall be made on the basis of preponderance of the evidence. Thus, if a preponderance (that is, more than 50 percent) of the evidence indicates unfitness, a finding to that effect will be made. If, on the other hand, a preponderance of the evidence indicates fitness, the Service

member may not be separated or retired by reason of physical disability.

PART 4
STANDARDS FOR DETERMINING COMPENSABLE DISABILITIES

A. Overview of Compensable Criteria. Members who are determined unfit under the standards of Part 3 shall be retired or separated with disability benefits when:

1. The physical disability is not the result of the member's intentional misconduct or willful neglect and was not incurred during a period of unauthorized absence or excess leave; and, either:

a. The physical disability was incurred or aggravated while:

(1) A member of a regular component of the armed forces entitled to basic pay.

(2) Any other member of the armed forces entitled to basic pay who has been called or ordered to active duty (other than for training under 10 U.S.C 10148(a)(reference (b)) for a period of more than 30 days.

(3) Any other member of the armed forces, after September 23, 1996, who is on active duty but is not entitled to basic pay by reason of 37 U.S.C. 502(b) (reference (d)) due to authorized absence to participate in an educational program, or for an emergency purpose, as determined by the Secretary concerned; or

b. The physical disability was the proximate result of, or was incurred in line of duty after September 23, 1996, as a result of:

(1) Performing active duty, annual training, active duty for training, or other full time duty under a call or order that specifies a period of 30 days or less.

(2) Performing IDT, to include IDT for points only, other than work or study in connection with a correspondence course of a Uniformed Service.

(3) Traveling directly to or from the place of active duty or IDT.

(4) After September 23, 1996, an injury, illness, or disease incurred or aggravated while remaining overnight, between successive periods of inactive duty training, at or in the vicinity of the site of the inactive duty training if the site is outside reasonable commuting distance from the member's residence.

B. Proximate Result

1. The DES shall make a determination of proximate result on Reserve component cases when:

a. The member is not currently on a call to active duty of more than 30 days; and

b. The unfitting disability was not incurred or aggravated while the member was on an a call to active duty of more than 30 days; and

c. The unfitting disability may have been incurred or aggravated while the member was performing duty of 30 days or less as specified in subsection A.3., above.

2. A disability shall be deemed the proximate result of performing duty when it is a direct consequence of an occurrence during any of the periods of duty specified in subsection A.3., above. All facts, circumstances, and laws on a particular case must be considered.

C. Applicable Statute for Reserve Component Members. A Reserve component member shall be adjudicated under the statutory provisions applicable to his or her duty status at the time of onset or aggravation of the condition for which the member is determined unfit. This means a Ready Reserve member not on extended active duty at the time of his or her referral into the DES, but who is determined unfit for a disability incurred or aggravated while the member was on a call to active duty of more than 30 days, comes under the provisions of 10 U.S.C. 1201 - 10 U.S.C. 1203 and not 10 U.S.C. 1204 - 1206 (reference (b)). In such a situation, "in line of duty while entitled to basic pay" rather than "proximate result" is the applicable statutory requirement for entitlement to disability compensation.

D. Line of Duty Requirements. In the DES, line of duty determinations assist the PEB and appellate review authority in meeting the statutory requirements under Chapter 61 of reference (b) for separation or retirement for physical disability

1. Uses. Line of duty determinations, when required, shall be used during physical disability evaluation to establish the following:

a. Whether the disability was incurred or aggravated while the member was in a duty status.

b. Whether the disability of a Reserve component member was incurred or aggravated while the member was on extended active duty or performing active duty of 30 days or less, while traveling directly to or from the place of active duty or IDT or while remaining overnight, between successive

periods of IDT, at or in the vicinity of the site of the IDT if the site is outside reasonable commuting distance from the member's residence.

c. Relationship of the Line of Duty (LOD) determinations shall be made in accordance with the regulations of the respective Military Department. When an LOD determination is required, the PEB shall consider the findings made for those issues mutually applicable to the LOD and PEB determinations. These issues include whether a condition is pre-existing and whether it is aggravated by Service and any issues of misconduct or negligence. If the PEB determines the LOD determination is contradictory to the evidence, physical disability evaluation may be suspended for a review of the LOD in accordance with Service regulations.

d. Whether the disability is the result of the member's intentional misconduct or willful neglect, or was incurred during a period of unauthorized absence.

2. <u>Relationship of Line of Duty Findings to DES Determinations</u>

a. Line of duty determinations shall be made under the regulations of the respective Military Department. When a line of duty determination is required, the DES shall consider the finding made for those issues mutually applicable to line of duty and DES determinations.

b. When the DES has reasonable cause to believe a line of duty finding appears to be contrary to the evidence, physical disability evaluation shall be suspended for review of the line of duty determination according to Service regulations. The PEB or appellate review authority shall forward the case to the final line of duty reviewing authority designated by the Secretary of the Military Department with a memorandum documenting the reasons for questioning the line of duty finding.

c. The facts recorded in a line of duty investigation shall be considered in making the proximate result determination when applicable to Reserve component cases. However, the DES, not line of duty investigations, determines proximate result.

3. <u>Referral Requirement</u>. When a line of duty determination is required, it shall be accomplished before the forwarding of a Service member's case to the PEB. However, when the case is being processed under imminent death procedures and a line of duty is required, the PEB may commence adjudication of the case pending receipt of the completed line of duty. (Refer to Part 1, subsection F.4.)

4. <u>Presumptive Determinations</u>. The line of duty determination is presumed to be in the line of duty without an investigation in the case of:

a. Disease, except as described in paragraphs E.5.a. and e., below.

b. Injuries clearly incurred as a result of enemy action or attack by terrorists.

c. Injuries while a passenger in common commercial or military carriers.

5. Required Determinations. At a minimum, line of duty determinations shall be required in the circumstances listed in paragraphs D.5.a. through D.5.e., below.

a. Injury, disease, or medical condition that occurs under strange or doubtful circumstances or may be due to the member's intentional misconduct or willful negligence; e.g., motor vehicle accidents.

b. Injury involving the abuse of alcohol or other drugs.

c. Self-inflicted injury.

d. Injury or disease possibly incurred during a period of unauthorized absence.

e. Injury or disease is apparently incurred during a course of conduct for which charges have been preferred under the Uniform Code of Military Justice (UCMJ) (reference (j)).

f. Injury, illness, or disease of a Ready Reserve member while performing duty of 30 days or less or while traveling directly to or from the place at which such duty is performed or while remaining overnight, between successive periods of IDT, at or in the vicinity of the site of the IDT if the site is outside reasonable commuting distance from the member's residence.

E. Evidentiary Standards for Determining Compensability of Unfitting Conditions

1. Misconduct and Negligence. Line of duty determinations concerning intentional misconduct and willful negligence shall continue to be judged by the evidentiary standards established by the Secretary of the Military Department.

2. Presumptions for Members on Ordered Active Duty of More Than 30 days. The presumptions listed in paragraphs E.2.a. through E.2.c. ,below, apply to members on orders to active duty of more than 30 days for purposes of determining whether an impairment was incurred or aggravated while a member was entitled to basic pay.

a. <u>At Time of Entry</u>. A Service member is presumed to have been in sound physical and mental condition upon entering active duty except for medical defects and physical disabilities noted and recorded at the time of entrance.

b. <u>After Entry</u>

(1) <u>Presumption</u>. Any injury or disease discovered after a Service member enters active duty -- with the exception of congenital and hereditary conditions -- is presumed to have been incurred in the line of duty;

(2) <u>Hereditary and/or Genetic Diseases</u>. Any hereditary and/or genetic disease shall be presumed to have been incurred prior to entry into active duty. However, any aggravation of that disease, incurred in the line of duty, beyond that determined to be due to natural progression shall be deemed service aggravated.

c. <u>Presumption of Aggravation</u>. The presumption that a disease is incurred or aggravated in the line of duty may only be overcome by competent medical evidence establishing by a preponderance of evidence that the disease was clearly neither incurred nor aggravated while serving on active duty or authorized training. Such medical evidence must be based upon well-established medical principles, as distinguished from personal medical opinion alone. Preponderance of evidence is defined as that degree of proof necessary to fully satisfy the board members that there is greater than a 50% probability that the disease was neither incurred during nor aggravated by military service.

3. <u>Prior Service Impairments</u>. Any medical condition incurred or aggravated during one period of service or authorized training in any of the Armed Forces that recurs or is aggravated during later service or authorized training, regardless of the time between, should normally be considered incurred in the line of duty provided the condition or subsequent aggravation was not the result of the member's misconduct or willful negligence. In those cases in which the service member reverts to a civilian status after the condition is incurred, the service member must prove by a preponderance of evidence that the medical condition was incurred or aggravated in the line of duty and was not due to intentional misconduct or willful negligence.

4. <u>Conditions Presumed to be Pre-Existing</u>. Occurrence of disease as described in paragraphs E.4.a. and E.4.b., below, shall be presumed to have existed prior to entry into Military Service.

a. Signs or symptoms of chronic disease identified so soon after the day of entry on Military Service (usually within 180 days) that the disease could not have originated in that

short a period will be accepted as proof that the disease manifested prior to entrance into active Military Service.

b. Signs or symptoms of communicable disease within less than the medically recognized minimum incubation period after entry on active Service will be accepted as evidence that the disease existed prior to Military Service.

5. Medical waivers. Members who entered the Service with a medical waiver for a pre-existing condition and who are subsequently determined unfit for the condition shall not be entitled to disability separation or retired pay unless Military Service permanently aggravated the condition or hastened the condition's rate of natural progression. Members granted medical waivers shall be advised of this provision at the time the waiver is granted.

6. Treatment of Pre-Existing Conditions. Generally recognized risks associated with treating preexisting conditions shall not be considered service aggravation.

F. Rating disabilities. When a disability is established as compensable, the disability shall be rated according to the VASRD, as implemented by DoD Instruction 1332.39 (reference (i)) and federal law.