**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JEFFREY G. WALLS, | Case No. 05-00533 |
| Plaintiff, | Judge Sweeney |
| v. | |
| THE UNITED STATES OF AMERICA, | Oral Argument Requested |
| Defendant. | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS AND MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD**

With a resounding "no," the Government answered this Court's question as to the need for a remand to the BCNR to determine the Navy's obligation to convene a Medical Evaluation Board. The Government gave the right answer, but for the wrong reasons.

"Remand to the BCNR is not warranted." *See* Gov. S. Br. at 2. On this much, the parties agree. But it is not because the BCNR found no "credible evidence of [Walls'] inability to perform military duty," as the Government asserts. It is because "[t]here exists ***no authority*** to omit or postpone the disability evaluation of [Walls'] physical impairment" by an MEB on this basis. *See* Secretary of the Navy Instructions 1850.4D ("Sec.Nav.Inst.") § 3106. Navy regulations simply do not allow the BCNR to substitute its ***non-medical*** judgment as to the severity of Walls' condition for that of a properly convened MEB. Nor do these regulations give the Navy the discretion to refuse to convene an MEB in Walls' case. Because the regulations

unambiguously establish that, as a matter of law, an MEB should have been convened, remand to the BCNR for consideration of this *legal* issue is not necessary.[1]

Under the Navy's Disability Evaluation System, Walls' physician (or other appropriate Navy personnel) "***shall*** promptly identify for evaluation by Medical Boards and appropriate referral to the PEB ..., those members ... whose physical ... fitness to continue naval service is questionable." Sec.Nav.Inst. § 1005. This is a non-discretionary command, which depends solely on the questionable fitness of the service member. Section 3106 reiterates this point, noting that "[t]here exists ***no authority*** to omit or postpone disability evaluation of a physical impairment which renders questionable the ability of service members to perform reasonably [their] duties." Sec.Nav.Inst. § 3106.

The Government concedes this point, but claims that "Sections 1005 and 3106" are informed by Section 8001(g). That section states that "the presence of the condition alone is often not a criteria for ***submission of an MEB report***" to the PEB, as the "condition must be Unfitting." Gov. S. Br. 3 (quoting Sec.Nav.Inst. § 8001(g)). Referencing this section, the Government argues that, even if Walls suffered from a listed condition, "there was no basis for initiating a medical board." Gov. S. Br. at 3-4.

---

[1] The Government concedes that the BCNR attempted to "reasonably discern" the standards for convening an MEB, even if it "did not formally cite to Sections 1005, 3106, and 8001," by finding that (i) the Navy has the discretion to deny a service member an MEB evaluation if he is not actually unfit, and (ii) the BCNR has the authority to make an after-the-fact medical determination as to the severity of Walls' condition in deciding how the Navy should have exercised this discretion in the fall of 2000. Gov. S. Br. 3. Thus, the legal issues as to circumstances requiring the convening of an MEB and the BCNR's authority to substitute its medical judgment for that of a properly convened MEB were decided by the BCNR. Because the BCNR's views as to the standards for convening an MEB under Sections 1005, 3106, and 8001 are abundantly clear, erroneous, and squarely presented here, no remand on this issue is necessary.

Unless otherwise noted, all emphasis added and internal citations and quotation marks omitted.

But an MEB's obligation to submit a report to the PEB is ***not*** the same as the Navy's obligation to ***convene*** an MEB in the first place. The standards for convening an MEB are lower than the standards for submitting an MEB report to the PEB. The differing standards are necessary to ensure that patients suffering from *potentially* unfitting medical conditions and physical defects are *evaluated* by appropriately trained medical personnel, even if some of those patients do not progress to the next step in the process.

Not only does it make sense that there be a more lenient, less discretionary standard for convening an MEB than for referring a case to the PEB, the regulations expressly effectuate this difference. Under the regulations, an MEB must be convened if the service member's condition renders his fitness "questionable;" an MEB report, on the other hand, must be submitted to a PEB ***only*** if the condition is actually unfitting. *Compare* Sec.Nav.Inst. § 1005 (establishing "questionable" fitness standard), *with* § 8001(g) (requiring the "physician writing the MEB report to document why a certain condition is Unfitting"). Likewise, the convening of an MEB is mandatory, as evidenced by the use of the word "shall," while the MEB has discretion to refer only "appropriate" cases to the PEB. *See* Sec.Nav.Inst. § 1005.[2]

The Government reads the word "questionable" right out of the regulations when it asserts that "a listed physical condition ... must render the service member unfit for duty" in order to convene a MEB. *See* Gov. S. Br. at 4. This violates basic principles of statutory

---

[2] The Government's failure to properly distinguish between the standards for convening an MEB and the standards for submission of an MEB's report to the PEB infects all of its arguments, including its – misplaced – reliance on § 8001(a)(2). Section 8001(a)(2), notes that a "service member who has one or more of the listed conditions ... is not automatically unfit." This is no doubt true. But Section 8001(a)(2) is directed to whether a service member may ***ultimately*** qualify for "separation or retirement for disability," not whether an MEB should be convened in the first place. Similarly, the "presumption of fitness" referenced in DOD Instruction 1332.38 is also directed to the ultimate disposition the PEB may make of Walls' claims based on all of the evidence, including an MEB report. DoD Instr. 1332, Part 3, ¶¶ C, E.

interpretation. *See Astoria Fed. Savs. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) (statutes should be construed "so as to avoid rendering superfluous" any statutory language).

The Government also violates another cannon of statutory construction when it asserts that Section 8001(g) informs Sections 1005 and Section 3106, despite the fact that these provisions relate to separate steps in the evaluation process. It is well settled that, where Congress "includes particular language in one section of a statute but omits it in another, ... it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *See Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Here, the regulations do make it clear that, in the exercise of the MEB's discretion to refer only "appropriate cases," it should not view the "presence of the condition alone [as a sufficient] criteria" for referral to a PEB. Sec.Nav.Inst. § 8001(g). But there is no analogous rule governing the standards for convening an MEB.

Nor is this mere oversight. If Section 8001(g) applied – by analogy or otherwise – to Section 1005 and 3106's standard for convening an MEB then patients suffering from the types of medical conditions "which are cause for referral into the Disability Evaluation System," *see* § 8001(a), may never be evaluated by trained medical professionals. Denial of due process does not even begin to describe the problems such a regime would create, especially if – as the government contends – the failure to convene an MEB on this basis is "unreviewable." Gov. Op. Br. at 10. As such, the appropriate conclusion to draw from Section 8001(g)'s facial inapplicability to Sections 1005 and 3106 is that the "presence of the condition alone" ***is*** sufficient for convening an MEB.[3]

---

[3] *See also* Manual of the Medical Dept. 18-4(3) (Jan. 10, 2005) (medical conditions listed in Sec.Nav.Inst. §§ 8001 et seq. should "be consulted frequently by providers and patient administration staff" in "determining whether an MEB should be convened"). While the

In any event, Walls' condition in the fall of 2000 indisputably rendered his fitness "questionable." At that time, Walls was confined to a wheelchair, experienced debilitating pain, and was unable to perform simple administrative tasks. Am. Cmplt. ¶¶ 49, 50. Among other maladies, Walls suffered from paraspinous muscle spasms, lumbosacral strain, and neurological disorders. Am. Cmplt. ¶ 38; AR 54-55. He was sent for treatment to multiple physicians, including a neurology specialist, received epidural injections, and was ultimately hospitalized at the NNMC. Am. Cmplt. ¶¶ 38, 42, 50; AR 229. His own physician, Dr. Collum requested that Walls be placed on medical "hold" to delay his retirement so that an MEB could be convened.

These facts are not only undisputed, but they satisfy any requirement that Walls' fitness be "questionable." As Navy regulations explain, "the primary consideration in determining whether an MEB should be convened is the professional judgment of the attending physician." *See* Manual of the Medical Dept., 18-4(3). Because Dr. Collum's recommendation satisfied this criterion, an MEB should have been convened.

The Government's argument to the contrary is based on its unsupported view that the BCNR has the authority to make an after-the-fact independent assessment of whether Walls' was "Unfit" and, therefore, whether a MEB should have been convened. The argument is substantively and procedurally flawed. Substantively, the BCNR's finding that there was "no objective evidence of significant spinal pathology" and "no credible evidence of [Wall's] inability to perform military duty," constitutes a finding as to "actual fitness," not "questionable fitness." *See* AR 4. For the reasons noted above, the finding is therefore irrelevant to the issue of whether an MEB should have been convened under Sections 1005 and 3106.

---

January 10, 2005 edition of the Manual of the Medical Department was not controlling during the relevant period, it provides guidance as to the circumstances warranting an MEB. The Government does not point to any regulation suggesting that a different practice for convening an MEB governed in the fall of 2000.

While submission of an MEB report to the PEB is certainly a necessary predicate for maintaining a service member on active duty past his mandatory retirement date, the BCNR is not entitled to second-guess what an MEB would have done had it been properly convened. This would result in an end-run around the carefully designed sequential three-step Disability Evaluation System, under which (i) a service member's medical condition (as observed by his own physician or line commanders) triggers an evaluation by the MEB; (ii) the MEB then submits its report for consideration by the PEB if it finds the condition sufficiently severe, and (iii) the PEB makes the final determination of the service member's ultimate fitness. Each of these procedures gives the service member distinct procedural rights to insure proper treatment.

The BCNR's approach – in which it may sidestep this process by making its own determination of Walls' fitness – improperly usurps the role of a PEB to make a fitness determination substantially based on an MEB's medical findings. *See Ferrell v. United States*, 23 Cl. Ct. 562, 569, 572 (1991) (board of correction's finding of fitness was arbitrary and capricious where serviceman was denied discharge physical and Medical Evaluation Board); *Patterson v. United States*, 141 Cl. Ct. 435 (1958) (corrections board acted contrary to law by relying on Army Physical Review Council opinion instead of PEB and Office of Surgeon General opinions determining member was entitled to disability pay).[4]

As such, the BCNR's belief as to what an MEB (or PEB) would have found in Walls' case is not relevant to whether the Navy complied with its regulations in failing to convene an MEB. Indeed, the Government appears to concede as much when it notes that the BCNR's

---

[4] The BCNR's view as to what the PEB would have concluded is also irrelevant for the additional reason that Walls' entitlement to record correction and back pay depends on whether Walls was hospitalized or whether the MEB submitted its report to the PEB, not on what the PEB chose to do with the MEB's report. Sec.Nav.Inst. § 3710.

discussion of the "presumption of fitness" that applies to PEB proceedings has "***no bearing*** on the underlying question of whether the Navy should have convened a medical board." Gov. S. Br. at 4-5; *see also Ferrell*, 23 Cl. Ct. at 569 (Air Force violated its own regulations by failing to place service member on medical hold to allow for convening of a MEB prior to processing member's voluntary discharge request).

The critical question here is whether Walls' condition rendered his fitness questionable. But the BCNR made no finding as to questionability. Indeed, given the low, non-discretionary standards for convening an MEB, the BCNR could not have found him "*unquestionably*" fit.

Even if the BCNR had made a questionability finding, its decision would be procedurally flawed. As a committee of non-medical civilians of the executive part of the Department of the Navy responsible for correcting military records, it has no authority or competence to assess the severity of Walls' medical condition. *See* 10 U.S.C. 1552(a). It is not an investigative body but functions to review the applications of service members for the purpose of correcting an error or removing injustice. *See id.* Nothing gives the BCNR the right to make ad hoc medical determinations or to substitute its ***non-medical*** judgment for the *medical* judgment of Walls' physician (who recommended that Walls be placed on medical hold pending review by an MEB), the *medical* judgment of the MEB as to the extent of Walls' injuries, or the judgment of the PEB as to whether those injuries warranted a finding of unfitness.

Indeed, the determination of the severity of a service member's condition is in the exclusive domain of the MEB. Under Navy regulations, an MEB must evaluate an injured member "to identify members whose physical and/or mental qualification to continue on full duty is in doubt," "confirm the medical diagnosis," "document the service member's current medical condition," and prepare a "medical recommendation for disposition of such members."

*See* Sec.Nav.Inst. §§ 2042, 8001(e); *see also Ferrell*, 23 Cl. Ct. at 566 (medical board identifies and details the character and extent of the service member's medical impairment).

Had this process been followed, Plaintiff Walls believes there would have been "objective evidence of significant spinal pathology" and "credible evidence of Walls' inability to perform military duty." The Navy's failure to properly convene an MEB, as required, thus, created the precise evidentiary gap the BCNR and the Government now rely upon to conclude that an MEB should not have been convened in the first place.

The Government's argument – that a lack of an MEB report finding credible evidence of unfitness justifies the Navy's failure to convene an MEB in the first place – is circular and constitutes a denial of due process. *See Ferrell*, 23 Ct.Cl. at 569 (refusal to correct medical records was arbitrary and capricious where the "very reason a determination of fitness was not made was because of the [Government's initial] failure to put [plaintiff's] discharge on medical hold," thus "confront[ing] plaintiff with a 'catch 22'").

Because the regulations are crystal clear that an MEB should have been convened, and because the Government has raised no credible argument to the contrary, remand to the BCNR on this issue is not required. *See NLRB v. Food Store Employees Union,* 417 U.S. 1, 8 (1974) ("crystal-clear Board error renders a remand an unnecessary formality"); *Hussain v. Gonzales,* 477 F.3d 153, 157-58 (4th Cir.2007) (remand unnecessary where "the result of a remand to the Board is a foregone conclusion").[5]

---

[5] Because Navy regulations indisputably required the Navy to convene an MEB, the only question remaining is how to remedy the Navy's past failure to comply with these regulations. Unfortunately, it is now too late to convene an MEB and place Walls in exactly the same position he would have been in the fall of 2000. In the interim, Mr. Walls has received substantial treatment, and as such, it would now be impossible for an MEB to conduct a physical examination as though it were almost eight years ago. Because the Navy should not be permitted to benefit from its own negligence, this Court should reverse the

Dated: March 28, 2008

Respectfully Submitted,

"s/ Rebecca A. Koch"

Rebecca A. Koch
KIRKLAND & ELLIS, LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
T: (202) 879-5248
F: (202) 879-5200

*Attorney for Plaintiff Jeffrey G. Walls.*

---

decision of the BCNR with instructions to correct Walls' military service records and award appropriate back pay. In the alternative, and at an absolute minimum, the Court should remand the case back to the BCNR with instructions to convene an MEB for purposes of determining whether it would have referred Walls' case to a PEB had it been convened in the fall of 2000. In doing so, the Court should make clear that every doubt caused by the passage of time should be resolved in Walls' favor.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Supplemental Brief In Opposition To Government's Motion To Dismiss And Motion For Judgment On The Administrative Record was electronically filed with the Clerk of the Court using CM/ECF on March 28, 2008, and a copy of the foregoing was served on counsel of record below by mail (first-class, postage prepaid) on March 28, 2008:

Douglas G. Edelschick
U.S. Department of Justice
Civil Division – Commercial Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, DC 20530
Tel: (202) 353-9303
Fax: (202) 307-0972

*Attorney for Defendant United States of America*

"s/ Rebecca A. Koch"

Rebecca A. Koch
KIRKLAND & ELLIS, LLP
655 Fifteenth Street, N.W.
Washington, DC 20005
T: (202) 879-5248
F: (202) 879-5200

*Attorney for Plaintiff Jeffrey G. Walls.*