# DISABILITY EVALUATION POLICIES

## PART 1 - INTRODUCTION AND ADMINISTRATIVE POLICIES

**3101 Objectives**. Evaluation of physical disability within the Navy DES has as its objectives:

a. The maintenance of a physically fit and combat ready Navy and Marine Corps, including Reserve components; and

b. Equitable consideration of the interests of the government and individual service members.

**3102 Summary Overview**

a. A case enters the Department of the Navy DES when a Medical Evaluation Board (MEB) is dictated for the purpose of evaluating the diagnosis and treatment of a member who is unable to return to military duty because the member's condition most likely is permanent, and/or any further period of temporary limited duty (TLD) is unlikely to return the member to full duty. A condition is considered permanent when the nature and degree of the condition render the member unable to continue naval service within a reasonable period of time (normally 12 months or less).

b. Referral of a Medical Board report to the PEB can come from two sources; i.e. Limited Duty board reports referred for PEB evaluation by service headquarters, and Medical Board reports submitted directly to the PEB by a medical treatment facility (MTF). An individual case is accepted by the PEB when all medical and non-medical information necessary to evaluate the case appropriately has been received by the PEB. Once a case has been accepted by the PEB, the Informal PEB conducts a record review of the case. The individual concerned then is notified of the preliminary findings and given 15 calendar days in which to make a decision concerning the findings. If the member accepts the preliminary findings, the case is finalized and service headquarters is requested to make an appropriate disposition (i.e., separate, retire or return to duty). If the member does not agree with the preliminary findings, the member can request reconsideration of that decision by the same Informal PEB and/or demand/request a personal appearance before a Formal PEB. If the member does not act on the preliminary findings, acceptance is presumed on the 16th day after receipt of the findings. Dependent upon certain factors later described in this enclosure, the member may or may not proceed to a personal appearance before the Formal PEB. If the Formal PEB hears a case, it makes findings, and, subsequent to legal review and/or quality assurance review findings are sent to the member via certified mail (return receipt requested). If the member accepts the findings, the case is finalized and appropriate disposition by service headquarters is requested. If a member disagrees with the findings/results of the Formal PEB, the member is given 15 calendar days from the date of receipt of the findings letter to petition the DIRNCPB. The member has the right to petition

the Board for Correction of Naval Records (BCNR) at any time subsequent to final action on his or her case. See enclosure (10) of this instruction for additional details.

**3103** **Guidance To Members**. Cases are very individual and can be very complex. Accordingly, the paragraph 3102 summary is designed just to provide a general overview. Personnel with specific problems should review more detailed sections of this and other applicable instructions or consult with a Physical Evaluation Board Liaison Officer (PEBLO) counselor or an attorney.

**3104** **Medical Board Requirements**

a. Purpose of Medical Boards. A medical board serves to report upon the present state of health of any member of the Armed Forces and as an administrative board by which the convening authority or higher authority obtains a considered clinical opinion regarding the physical status of service personnel.

b. Convening Medical Boards

(1) Medical boards may be convened by commanding officers and officers in charge of naval hospitals and other MTFs designated by the Chief, Bureau of Medicine and Surgery (CHBUMED).

(2) Convening of a medical board may be ordered by the CNO, CMC, CHNAVPERS, and the CHBUMED.

**3105** **Special Interest Cases**

a. Special interest cases are those designated by SECNAV for referral to ASN (M&RA) for final determination. As required by paragraph 1004j, all cases involving flag and general officers who are within 12 months of mandatory retirement due to age or service limitations and medical corps officers in any grade who are pending nondisibility retirement for age or length of service at the time of referral into the DES, on active or reserve duty, who are determined by the PEB to be Unfit, are designated special interest cases due to statutory or regulatory handling requirements.

b. DIRNCPB may designate a case to be of special interest.

**3106** **Prompt Identification Of Disability**. There exists no authority to omit or postpone disability evaluation of physical impairment which renders questionable the ability of service members to perform reasonably the duties of office, grade, rank, or rating. Commanding officers of MTFs and individual medical and dental officers are to identify promptly for referral to the DES those members presenting for medical care whose Fitness for active duty is questionable.

**3107** **Counseling**

a. General. A member or, in appropriate cases, the next of kin or legal guardian shall be carefully counseled in clearly understandable terms by a PEBLO or collateral duty counselor concerning the significance of action being taken in a case, its probable effect on his or her future, and options available. Counselors shall discuss such other matters as estimated retired or severance pay, probable retired grade, potential veteran benefits, post-retirement insurance programs, the Survivor Benefit Plan, and recourse to and preparation of Petitions For Relief. Counseling shall be provided before, during, and after PEB consideration, at each stage of processing, and as questions are raised by the member.

b. PEBLOs/Counselors

(1) DIRNCPB shall assign counselors to medical treatment facilities (MTFs), where the volume of cases entering the DES warrants a full-time counselor, to provide counseling for members at and near those activities. At those naval MTFs where regularly assigned PEBLO counselors are not available, the commanding officer shall designate a staff member, preferably the patient administration officer or an assistant, to provide disability counseling as a significant collateral duty. PEBLO counselors and collateral duty counselors will, in addition, provide disability counseling as necessary for members of the naval service in MTFs controlled by other services.

(2) PEBLO counselors shall be senior enlisted (E-7 or above) or equivalent civilian employees.

c. Counselor Training. The DIRNCPB, in order to ensure effective counseling prescribed under paragraph 3107a above, will provide initial training, a Counselor's Manual and annual conference training to both PEBLO and collateral duty counselors. Travel funding for collateral duty counselors shall be provided by the MTF to which assigned.

**3108 Conflict Of Interest/Recusal**

a. No officer may appear as the member being evaluated by a panel of the PEB which was convened by him or her, by anyone temporarily succeeding to his or her office, or by any subordinate in the chain of command.

b. No member of an Informal PEB who is being processed by the PEB may be evaluated by that Informal PEB. In such cases, the President, PEB, will designate another Informal PEB to consider the case. The new Informal PEB may not include any members of the original Informal PEB .

c. No member of a Formal PEB who is being processed by the PEB may be evaluated by the Formal PEB of which he or she is a member.

d. No medical corps officer shall act as a member of a panel of the PEB if he or she had either direct charge of the member's care immediately preceding evaluation by a panel, prepared medical reports under consideration by a panel, or was a member of a board of medical officers which reported on the member concerned.

e. There will be occasions when it becomes very difficult, if not impossible, for a member of the Informal PEB, Formal PEB, or other reviewing authority within the PEB process to render a decision which is not influenced in some manner by personal bias. When confronted with a situation of this nature, the individual PEB member must make the determination as to whether he/she can make a determination based solely on the facts of record, personal bias/interest aside. The individual's determination regarding his/her ability to render an unbiased decision in the case will govern their future participation. If in any doubt as to whether the appearance or reality of an ethical conflict of interest exists in a specific case, the panel member must seek an advisory opinion from DIRNCPB legal counsel.

**3109 Restriction On Communications With Members**. Except during the course of a Formal PEB, board members shall not engage in discussion with members under evaluation regarding their cases. The creation of any inference of undue influence or partiality shall be scrupulously avoided.

**3110 Reservist Participation**

a. Reserve Representation Required. Each panel of the PEB shall include at least one member who is a Navy or Marine Corps Reservist when evaluating the Fitness for active duty of a member of the Naval or Marine Corps Reserve (10 U.S.C. 12643).

b. Failure To Have Reserve Representation During Records Review. If, after referral of a Reservist's case to a Formal PEB, it is discovered that no member of the Informal PEB was a Reservist, the case will be considered by a properly constituted Formal PEB without return of the case to an Informal PEB for reconsideration. Formal PEB consideration is tantamount to a "de novo" proceeding and meets the protective requirements of 10 U.S.C. 12643.

**3111 Travel Expenses**

a. Members On The Temporary Disability Retired List. A member on the TDRL is entitled to travel and transportation allowances authorized by Joint Federal Travel Regulations (JFTR) for members in his or her retired grade for travel in connection with temporary duty while on active duty for periodic physical examinations and appearances before the PEB. See paragraph 3621.

b. Active Duty Members Appearing Before a Hearing Panel. Personal appearance before a hearing panel by active duty members is official business and shall be covered by orders providing for all of the appropriate travel expenses authorized by the JFTR.

c. Inactive-Duty Reservists With A Notice Of Eligibility (NOE). Same as b above.

d. Inactive-Duty Reservists Without A Notice Of Eligibility (NOE). Inactive-duty reservists without an NOE who desire to appear before a hearing panel must do so at no expense to the government. Reservists covered under the provisions of paragraph 3309 (b) rate travel expenses.

e. Escorts/Attendants. Certain members discussed in a, b, and c above may be incapable of traveling alone as determined by the attending physician. An accompanying escort/attendant is entitled to travel and transportation allowances as authorized by the JFTR. An escort/attendant may be a member of the Uniformed Services, a civilian employee of the U.S. government, or any other person considered suitable by the member and by the appropriate authority ordering the physical examination or appearance. Requests for an escort/attendant shall be submitted through the PEBLO with accompanying physician justification to the PEB for final approval.

**3112 Leave**

a. Members whose cases are being evaluated within the DES, if otherwise physically able to do so, shall be permitted to take earned annual leave. The command authorizing leave will notify the cognizant PEBLO of the inclusive dates and the member's leave address and phone number. Commands shall recall the member if required by the President, PEB.

b. Commands shall not charge annual leave to a member who is required to report to an MTF for treatment, examination, rehabilitation, therapy, etc., or when convalescent leave is the proper category of absence.

c. Members who have earned leave which they are unable to sell upon disability separation or retirement shall be permitted to use the additional leave before their separation date.

**3113 – 3199 Reserved**

**PART 2 - POLICIES CONCERNING REFERRAL OF CASES TO THE PHYSICAL EVALUATION BOARD**

**3201 Criteria For Referral To The Physical Evaluation Board**

a. Active Duty Members. As a general rule, an active duty member or a reservist on extended active duty will be referred for disability evaluation only by a medical board that has found the member's Fitness for continued active service questionable by reason of physical or mental impairment. A determination of questionable Fitness must be supported by objective medical data displaying the nature and degree of the impairment. In those cases where it is not practicable to have a medical board consider the case; e.g., the member being hospitalized in a non-military hospital, the case may be referred by cognizant authority to the PEB when available medical records show that the member's Fitness for continued service is questionable.

b. Inactive-Duty Reservists

(1) Refer per reference (g) for disability evaluation those inactive-duty reservist entitled to disability benefits due to a disability which occurred while serving on active duty or performing inactive-duty training.

(2) An inactive-duty reservist who has not been given an NOE and who has been determined by the CHBUMED to be "Not Physically Qualified" for active duty or retention will be referred, at the member's request, to the Informal PEB for final determination of physical condition. If the member is then found Unfit and the member demands a Formal PEB, the member will bear all associated travel, lodging, meal, and incidental costs to the Formal PEB site.

(3) A reservist who performed active duty for 30 days or more, was released from active duty, and is now in an inactive duty status and requests referral to the PEB for a condition which the member alleges was incurred or aggravated while on active duty shall be processed into the DES and the PEB shall determine and record whether the member is Fit or Unfit.

c. Specified Physical Impairments. A list of physical impairments that are normally cause for referral to the PEB is contained in enclosure (8) to this instruction.

**3202 Circumstances Not Justifying Referral To The Physical Evaluation Board**

a. Lack Of Motivation. Lack of motivation alone for performance of duty does not justify referral to the PEB.

b. Request for referral to the PEB by the service member.

c. Mere Presence Of Physical Defect. The mere presence of disease or injury alone does not justify referral. Referral should take place only when, in the opinion of a medical board, the

defect may materially interfere with the member's ability to perform reasonably the duties of his or her office, grade, rank, or rating/MOS on active duty. Also see enclosure (3), part 3.

d. Inability To Meet Initial Enlistment/Appointment Standards. Once enlisted or commissioned, the fact that a member may fall below initial entry or appointment standards, specified in the reference (f) (MANMED), does not require that the case be referred for disability evaluation.

e. Physical Disqualification For Special Duties. Physical disqualification from special duties, such as flying, serving on submarines or in a medical specialty, does not necessarily imply physical Unfitness. Referral is appropriate only in cases where the member's ability to reasonably perform active military service is in doubt.

f. Inability to Meet Physical Standards for Specific Assignment or Administrative Requirement. The inability to meet screening criteria for a specific assignment or administrative requirement; i.e., deployment, overseas or sea duty assignment, or participation in PRT/PFT cycle, does not justify referral. Referral is appropriate only in cases where the condition appears to be permanent in nature or of such a degree as to render the member unable to return to naval service within a reasonable period.

g. Members Being Processed For Separation Or Retirement For Reasons Other Than Physical Disability. Do not refer a member for disability evaluation who is being processed for separation or retirement for reasons other than physical disability, unless the member previously was found Unfit but retained on active duty in a Permanent Limited Duty (PLD) status, or the member's physical condition reasonably prompts doubt that he or she is Fit to continue to perform the duties of office, grade, rank or rating/MOS.

**3203 Deferral Or Rejection Of Cases**

a. President, PEB may reject any case in which the following specific requirements are not met:

(1) medical board report fails to indicate whether or not the medical records of the member reflect a previous determination of mental incompetence,

(2) medical board report does not include a copy of a required line of duty investigation or determination, or

(3) in the case of inactive-duty reservists, the medical board report neither includes a copy of the NOE for benefits nor affirmatively states that the member is not entitled to an NOE under reference (g).

b. President, PEB may defer acceptance of any case which lacks necessary or required information needed to determine Fitness, mental competence, eligibility for disability benefits, or an appropriate disability rating. However, in extraordinary cases, with the concurrence of the DIRNCPB, the President, PEB may accept a case and direct evaluation based upon evidence of record.

c. If the President, PEB defers acceptance of a case, he specifically shall identify case deficiencies and task the submitting medical facility, general court-martial authority, or command having cognizance over the member, as appropriate, to supply the required information by a certain date.

d. The President, PEB may reject any case (medical information submitted as a new Medical Board report, or addendum to a previous board) in which the date of the newly submitted medical information is within 6 months of the date of the PEB's Notification of Decision if, upon review by a medical officer assigned to the Informal PEB, the medical officer advises:

(1) The condition reported does not alter the subject member's previous findings; or

(2) The condition reported is not a significant deterioration of the previously reported condition; or

(3) The service member's treatment has not significantly changed; or

(4) The service member has required no significant outpatient treatment other than that required for maintenance.

e. If the member is rehospitalized but has had no surgical procedures performed within 6 months of the PEB's issuance of its Notification of Decision of the member's previously evaluated case, the convening authority of the Medical Board, with the advice of the patient affairs officer, should assess whether the outcome of the rehospitalization as reported in the proposed Medical Board report would alter the previously determined findings of the PEB. The application of this criteria is particularly important when no diagnoses other than those previously reported to, reviewed by, and finally determined by the PEB are identified, or a chronic condition is involved and no objective medical evidence indicates that a significant change in the nature and the degree of severity of the condition has occurred.

f. In all above-noted circumstances, in order to ensure a reliable medical history is preserved, maintain entries in the member's health record to document all medical procedures undergone by the member.

g. The following general rules apply to all Medical Boards:

(1) The PEB ordinarily will not add diagnoses to those referred cases except in unusual situations where objective medical evidence reveals such a diagnosis should have been made because it is supported by entries in the service members' health record. In these cases the Informal PEB will continue to process the case.

(2) Timeliness of submission of new medical information is critical to ensure PEB determinations are based on up-to-date, complete and accurate information. A service member's case before the PEB is final when Notification of Decision (En bloc) has been signed and issued to CMC (M&RA) or CHNAVPERS. Accordingly, the PEB normally will reject submission of information after Notification of Decision.

(3) The PEB normally will reject the case of a service member whose physical condition is the same for which a final decision was issued within the last 6 months, unless after medical review, the condition appears to have substantially changed.

(4) Cases before the PEB normally will not be held in abeyance, continued, or a Notification of Decision canceled because the member alleges a treating physician is submitting a note, letter, or other document allegedly presenting additional information about the service member's condition.

(5) Cases before the PEB normally will not be held in abeyance, continued or a Notification of Decision canceled based on any information other than that officially submitted by or through the MTF (convening authority).

(6) The PEB will reject all cases in which the sole diagnoses involves conditions not constituting a physical disability as defined in paragraph 2016. Such cases may be the basis of administrative separation and will be forwarded by the PEB to the appropriate service headquarters for resolution.

**3204 Suspension Or Termination Of Cases**

a. When the PEB terminates a case for the reasons cited in paragraph 3203, return the MEB report, to include all supporting documents, to the originating MTF for corrective action and resubmission, if warranted. Process as new those cases resubmitted to the PEB after termination.

b. When the PEB suspends a case for the reasons cited in paragraph 3203, hold the case in abeyance pending receipt of required documentation/information.

(1) A case will not be suspended for a period of time in excess of 60 days. After the 60-day period the case will be terminated and returned to the originating MTF.

(2) Cases suspended by the Informal PEB are usually the result of administrative deficiencies; i. e., missing LODI, missing non-medical assessments (NMA), missing MEB

physician signatures, etc.. Upon receipt of required information, these cases will be inserted back into the process at the point at which the evaluation stopped. Cases will not be suspended for administrative errors or oversights for more than 30 days.

(3) Cases suspended at the Formal PEB level are usually the result of substantial issues; i. e., new medical information pending, unplanned surgery or hospitalization, etc.. In those instances, cases will not be suspended for periods more than 60 days.

**3205 <u>Nonmedical Documentation Reports - Current Performance Of Duty</u>**

a. When a member is referred for physical disability evaluation, an assessment of the member's performance of duty by his or her chain of command may provide better evidence of the member's ability to perform his or her duties than a clinical estimate by a physician. Particularly in cases of chronic illness, non-medical documentation may be expected to reflect a member's capacity to perform accurately.

b. Provide non-medical documentation in all Medical Board reports to include:

(1) Except in situations of recent, acute, and grave illness or injury, a statement from the member's immediate commanding officer, executive officer, company commander, or command senior enlisted advisor addressing:

(a) Indicators of medical problems or absence of medical problems based on observations of the member while in-duty and off-duty situations;

(b) Description of current job assignment, including an assessment of how the medical problem has or has not affected the member's performance, ability to participate in the PRT/PFT, and ability to deploy;

(c) Recent disciplinary history of the individual, including any disciplinary action pending; and,

(d) Description of the member's rating/MOS, NEC, and/or specialty, including an estimation of how the member's condition will affect his or her ability to fulfill occupational requirements in the future.

(e) When the member has been reassigned for medical purposes, the MTF will obtain this statement from the member's former unit commander.

(f) In addition to the narrative statement described in 3205b (1) (a) - (d) above, commanders are also required to complete the non-medical documentation form and submit a narrative assessment on how the service member's medical condition impacts on his/her ability to perform military duties. Enclosure (11) contains the NMA form and an example of a narrative assessment.

(2) A copy of the line of duty determination, when required by reference (h).

(3) Official documentation identifying the next-of-kin, court appointed guardian, or trustee in the case of members who are determined incompetent.

(4) Pertinent personnel records; e.g., copies of annual evaluation reports and promotion recommendations, awards, letters of appreciation, letters of commendation, etc., may also be included, but are not required unless specifically requested by the President, PEB.

c. Regardless of the presence of illness or injury, do not consider inadequate performance of duty, by itself, as evidence of Unfitness due to physical disability unless it is established that there is a cause and effect relationship between the two factors. Further, lack of motivation for performance of duty alone does not constitute a basis to award a disability.

**3206 Hospitalization And/Or Surgery Performed After MEB Report Referral To The PEB**

a. Complete elective surgical procedures that may affect a member's physical qualification for duty before initiation of a Medical Board.

b. When hospitalization or non-elective, urgent surgery occurs or is contemplated for a service member who has a case before the PEB, the MTF shall notify the PEB by message to DIRNCPB, information copy to CHNAVPERS/CMC (M&RA) and CHBUMED, requesting PEB suspend or terminate the case. The message will include the rationale for the requested action including the urgent nature of the hospitalization or surgery.

(1) When considering a medical procedure for a member whose case has been referred to the PEB for disability evaluation, the MTF should consider whether or not the member will have sufficient time remaining on active duty for appropriate follow-up care and should not assume that the Department of Veterans Affairs (DVA) will accept responsibility for such care unless the member has already been accepted as a DVA beneficiary.

(2) The timeliness and completeness of submission of any new medical information after a case has been referred to the PEB is critical to ensure PEB determinations are based on up-to-date, complete and accurate information.

(3) If PEB is notified before the Notification of Decision (En bloc) has been issued to the service headquarters, the case will be medically reviewed to determine if the case should be suspended, or terminated. If PEB action on the case is suspended, the MTF shall submit an addendum after hospitalization or surgery and an appropriate period of convalescence has been achieved.

**3207 Periodic Physical Examinations TDRL**. See enclosure (3), part 6 to this instruction. Diagnoses centering on EPTS conditions still are not ratable.

**3208 Member's Access To Medical Board Reports And Counseling**

a. Unless the information contained in the MEB report may, in the judgment of the MEB convening authority, have an adverse effect on the member's mental or physical health, the member shall:

(1) be provided a copy of the MEB report;

(2) be counseled regarding the opinions and recommendations of the medical board;

(3) be afforded the opportunity to discuss opinions and recommendations with each member of the MEB; and

(4) be afforded an opportunity to submit a statement regarding any portion of the MEB report. No precise format is prescribed. The medical board shall attach written comments to the report addressing the statements considered adverse by the member.

b. When the information contained in the MEB report may, in the judgment of the medical board convening authority, have an adverse effect on the member's mental or physical health, or when the member has been determined to be incapable of managing his or her financial affairs by a board of medical officers convened and constituted in accordance with reference (f) (MANMED), Chapter 18, the member's spouse, next of kin, or court appointed guardian will be counseled, provided with a copy of the report, and afforded the opportunity to exercise the member's rights as discussed in paragraph 3208a.

**3209 - 3299 Reserved**

## PART 3 - POLICIES CONCERNING FITNESS VERSES UNFITNESS

**3301** **Standard Used For Disability Determination**. The sole standard to be used in making determinations of physical disability as a basis for retirement or separation is Unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay. Each case is considered by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating.

**3302** **General Criteria For Making Unfitness Determinations**

a. A service member shall be considered Unfit when the evidence establishes that the member, due to physical disability, is unable to reasonably perform the duties of her office, grade, rank, or rating (hereafter called duties) to include duties during a remaining period of Reserve obligation.

b. In making a determination of a member's ability to so perform his/her duties, the following criteria may be included in the assessment:

(1) Medical condition represents a decided medical risk to the health of the member or to the welfare of other members were the member to continue on active duty or in an Active Reserve status.

(2) Medical condition imposes unreasonable requirements on the military to maintain or protect the member.

(3) Service member's established duties during any remaining period of reserve obligation.

**3303** **Relevant Evidence**. Consider all relevant evidence in assessing service member Fitness, including the circumstances of referral. To reach a finding of Unfit, the PEB must be satisfied that the information it has before it supports a finding of Unfitness.

a. Referral Following Illness or Injury. When referral for physical disability evaluation immediately follows acute, grave illness or injury, the medical evaluation may stand-alone, particularly if medical evidence establishes that continued service would be deleterious to the service member's health or is not in the best interests of the respective service.

b. Referral For Chronic Impairment. When a service member is referred for physical disability evaluation under circumstances other than as described in paragraph 3303 (a), evaluation of the member's performance of duty by supervisors as indicated, for example, by letters, efficiency reports, credential reports, status of physician medical privileges, or personal testimony may provide better evidence than a clinical estimate by a physician of the service

member's ability to perform his or her duties. Particularly in cases of chronic illness, these documents may be expected to reflect accurately a member's capacity to perform.

c. Adequate Performance Until Referral. If the evidence establishes that the service member adequately performed his or her duties until the time the service member was referred for physical evaluation, the member may be considered Fit even though medical evidence indicates questionable physical ability to continue to perform duty.

d. Cause and Effect Relationship. Regardless of the presence of illness or injury, inadequate performance of duty, by itself, shall not be considered as evidence of Unfitness due to physical disability, unless it is established that there is a cause and effect relationship between the two factors.

**3304 Reasonable Performance Of Duties**

a. Considerations. Determining whether a member can reasonably perform his or her duties includes consideration of:

(1) Common Military Tasks. The member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating (hereafter called duties) to include during a remaining period of Reserve obligation. For example, whether the member is routinely required to fire his or her weapon, perform field duty, or to wear load bearing equipment or protective gear.

(2) Physical Readiness/Fitness Tests. The PEB will consider a member's case when the MTF determines that the medical condition prohibits the member from taking all or a portion of the PRT/PFT, and permanent increased bodily harm will result from taking all or a portion of the PRT/PFT.

(a) Medical prohibition from taking all or a portion of the PRT/PFT may be used as a sole basis for a finding of Unfit to continue naval service.

(b) When a member has been found Fit to continue naval service by the PEB for a condition which subsequently is used by the member to obtain a waiver, from the local medical department representative, of all or a portion of the PRT/PFT, the waiver shall not be used as the basis for an adverse (punitive or administrative for misconduct) personnel action against the member. However, the waiver may be the basis for non-punitive administrative action according to service policies.

(3) Deployability. See definition in paragraph 2018. Inability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will not be the sole basis for a finding of Unfitness. When deployability is used by a service as a consideration to determine Fitness, the standard must be applied uniformly to both the Active and Reserve components of that service.

(4) Special Qualifications. Members whose medical condition causes loss of qualification for specialized duties, whether the specialized duties comprise the member's current duty assignment; the member has an alternate branch or specialty; or whether reclassification or reassignment is feasible, will not be the sole basis for a finding of Unfitness.

b. General, Flag, and Medical Officers. An officer in pay grade O-7 or higher or a medical officer in any grade shall not be determined Unfit because of physical disability if the member can be expected to perform satisfactorily in an assignment appropriate to his or her grade, qualifications, and experience. Thus, the inability to perform specialized duties or the fact the member has a condition which is cause for referral to a PEB is not justification for a finding of Unfitness. Medical doctors will have a review of clinical privileges with peer review required.

c. Members on Permanent Limited Duty. A member previously determined Unfit and continued in a permanent limited duty status or otherwise continued on active duty, normally will be found Unfit at the expiration of his or her period of continuation. However, the member may be determined Fit when the member's condition has healed or improved so that the member would be capable of performing his or her duties in other than a limited duty status. The member will be evaluated using current standards of Fitness and if the member remains ratable, current VASRD standards will be used.

d. Overall Effect. A member may be determined Unfit as a result of the overall effect of two or more impairments even though each of them, standing alone, would not cause the member to be referred into the DES or be found Unfit because of physical disability.

**3305 Presumption Of Fitness**

a. Application. Except for service members previously determined Unfit and continued in a permanent limited duty status, service members who are pending retirement at the time they are referred for physical disability evaluation enter the DES under a rebuttable presumption that they are physically Fit. The DES compensates disabilities when they cause or contribute to career termination. Continued performance of duty until a service member is approved for length of service retirement creates a rebuttable presumption that a service member's medical condition has not caused career termination.

b. Presumptive Period. Service members shall be considered to be pending retirement when the dictation of the member's MEB report occurs after any of the circumstances designated below:

(1) When a member's request for voluntary retirement has been approved. Revocation of voluntary retirement orders for purposes of referral into the DES does not negate application of the presumption.

(2) An officer has been approved for Selective Early Retirement.

(3) An officer is within 12 months of mandatory retirement due to age or length of service.

(4) An enlisted member is within 12 months of High Year Tenure (HYT) or expiration of active obligated service (EAOS), and will be eligible for retirement at HYT/EAOS.

c. Overcoming the Presumption

(1) The Presumption of Fitness (PFit) rule shall be overcome when it can be established by a preponderance of evidence that:

(a) Within the presumptive period an acute, grave illness or injury occurs that would prevent the member from performing further duty if he or she were not retiring. The Presumption of Fitness is considered to have been overcome for a member manifesting an otherwise Unfitting medical condition if, based on accepted medical principles, the natural progression of that condition normally results in either significant life-span reduction/death or deterioration to the point where it could warrant a permanent disability rating of 60 percent; or

(b) Within the presumptive period a serious deterioration of a previously diagnosed condition, to include a chronic condition, occurs and the deterioration would preclude further duty if the member were not retiring; or

(c) The condition for which the member is referred is a chronic condition and a preponderance of evidence establishes that the member was not performing duties befitting either his or her experience in the office, grade, rank, or rating (unless paragraph 3306 applies) before entering the presumptive period. Cases of members in a PLD status are exempt from the presumption of Fitness. Evaluate cases of members in a TLD status on the merits of each case.

(2) The PFit rule is not overcome when there has been no serious deterioration within the presumptive period. The ability to perform duty in the future as a result of presumed normal progression shall not be a consideration in overcoming PFit.

d. Application for Prisoners of War (POWs). The presumption of Fitness will not be applied, and a disability rating will be assigned, for conditions of POWs resulting from the POW experience.

**3306 Evidentiary Standards For Determining Unfitness Because Of Physical Disability**

a. Factual Finding. A factual finding that a service member is Unfit because of physical disability depends on the evidence that is available to support that finding. Quality of evidence usually is more important than quantity. All relevant evidence must be weighted in relation to all

known facts and circumstances which prompted referral for disability evaluation. Findings will be made based on objective evidence in the record as distinguished from personal opinion, speculation, or conjecture. When the evidence is not clear concerning a service member's Fitness, attempt to resolve doubt based on further objective investigation, observation, and evidence. Benefit of unresolved doubt shall be resolved in favor of the Fitness of the service member under the rebuttable presumption that the member desires to be found Fit.

b. Preponderance of Evidence. Make findings about Fitness or Unfitness for military service based on preponderance of the evidence. Thus, if a preponderance (that is, more than 50 percent) of the evidence indicates Unfitness, make a finding to that effect. If, on the other hand, a preponderance of the evidence indicates Fitness, the service member may not be separated or retired due to physical disability. The sole standard to be used in making determinations of physical disability as a basis for retirement or separation is Unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay. Each case is considered by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating.

**3307 Standards And Criteria Not Normally To Be Used As The Sole Basis For Determining Fitness Or Unfitness**

a. Deployability. Inability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will not be the sole basis for a finding of Unfitness.

b. Physical Fitness Test. Inability to take the PRT/PFT may be the sole basis for a finding of Unfitness. Use specific medical documentation as well as Navy and Marine Corps personnel policies regarding the PRT/PFT by the PEB in evaluating cases.

c. Special Qualifications. The inability to perform specialized duties or loss of special qualification, i. e., aviation, parachuting or diving qualifications, etc. (see paragraph 3304) will not be the sole basis for a finding of Unfitness.

**3308 Members Undergoing Initial Active Duty For Training**

a. Members with Medical Waivers. Provided no aggravation has occurred, service members who enter the military with a medical waiver may be separated without physical disability evaluation when the responsible medical authority designated by service regulations determines within 180 days of the member's entry into active service that the waivered condition represents a risk to the member or prejudices the best interests of the Government. Once 180 days have elapsed, or the condition is one that causes referral into the DES, refer the member for physical disability evaluation, if otherwise qualified.

b. Members without Medical Waivers. Members undergoing initial active duty for training who incur an injury or condition which was not waived for the purpose of entry into military service, who will not be returned to training in a reasonable period of time, will be referred to the PEB for disability evaluation.

**3309 Inactive-Duty Reservists With No Notice Of Eligibility**

a. When an inactive-duty reservist has not been granted an NOE, or does not have a service incurred injury or aggravating disease, the PEB shall normally determine and record whether the member is Physically Qualified or Not Physically Qualified.

b. A service member who has served on active duty 30 days or more, has been released from active duty and is now in an inactive duty drilling status and requests referral to the PEB for a condition alleged to have been incurred or aggravated while on active duty, shall be processed into the DES and the PEB shall determine and record whether the member is Fit or Unfit for continued reserve service. Reservists in this instance determined to be Unfit warrant disability retirement or separation pay.

**3310 - 3399 Reserved**

## PART 4 - ELIGIBILITY FOR DISABILITY BENEFITS AND RELATED POLICIES

**3401** **Conditions Not Constituting Physical Disability**. Only those conditions which constitute physical disabilities may be considered by the PEB. Enclosure (8) to this instruction lists conditions not constituting physical disability.

**3402** **Non-Military Medical Records**. A member may be processed for discharge, but the PEB may not award disability benefits for an injury or disease treated by a non-military medical doctor or facility, unless the member signs a release to allow the medical board or PEB to obtain all records relating to that treatment.

a. When a case is being processed by the PEB in which the member has refused to release all medical records, the PEB shall determine whether the member is Fit or Unfit. If the member is found Fit, see paragraph 3701. If the member is found Unfit, rate only those conditions not related to the non-military medical treatment, if any. Do not assign rating or disability benefits to conditions for which the member has refused to release non-military medical records.

b. Prior to the PEB issuance of a Notification of Decision in such a case, the President, PEB, must be satisfied that the member has been counseled that the refusal to release non-military medical records will result in the prohibition of disability rating and compensation for the injury(ies) or disease treated by the non-military medical facility.

**3403** **Disciplinary Or Misconduct Administrative Action**

a. The disability statutes do not preclude disciplinary separation. Such separations as described herein normally supersede disability separation or retirement. Whenever a member is processed for disability evaluation and, at the same time, administrative involuntary separation for misconduct, disciplinary proceedings which could result in a punitive discharge, or an unsuspended punitive discharge is pending, or is pending separation under provisions that authorize a characterization of service of Under other than Honorable conditions (UOTH), disability evaluation shall be suspended and the non-disability action monitored by the PEB. The MEB Convening Authority should forward to the PEB either a copy of the Statement of Awareness/Letter of Notification, the court-martial charges, or the Court Martial Order, as appropriate. The PEB case will remain in suspense pending the outcome of the nondisability proceedings. If the action taken does not include punitive or administrative discharge for misconduct, the PEB will continue to process the case. If the action includes either a punitive or administrative discharge for misconduct, file the medical board report in the member's terminated health record.

b. Notwithstanding paragraph (a) above, disability evaluation in an individual case may proceed if directed by the DIRNCPB or ASN (M&RA). In such a case, ultimate disposition shall be decided by the ASN (M&RA).

**3404** **Deserters**. When a member who is being evaluated within the DES is administratively declared a deserter, end the evaluation. Take no further action until appropriate disciplinary or administrative action has been completed, the member has been reexamined, and a current medical board prepared.

**3405** **Statutory Determinations To Be Made**

a. The existence of a physical defect or condition that is ratable under the VASRD does not of itself provide justification for, or entitlement to, separation or retirement from military service because of physical disability.

b. Once Unfitness has been determined, the PEB shall determine if the member is statutorily eligible to receive disability benefits before rating an individual. There must be findings that the disability is: (a) of a permanent nature or such a degree to preclude return to military duty within a reasonable period of time, and (b) not the result of intentional misconduct or willful neglect and was not incurred during a period of unauthorized absence. To warrant retirement, the length of service and degree of disability requirements prescribed in clause (3) of 10 U.S.C. 1201, must be satisfied. To warrant separation, the degree of disability requirements prescribed in clause (4) of 10 U.S.C. 1203 must be satisfied, and the member must have less than 20 years of qualifying service under the criteria of 10 U.S.C. 1208.

**3406** **Ineligibility For Disability Benefits**. A member is not eligible to receive benefits under 10 U.S.C., Chapter 61 for an Unfitting physical disability if:

a. the disease or injury was incurred while not entitled to receive basic pay (i.e., Existed Prior to Service and is not service aggravated),

b. the disease or injury was incurred while a Midshipman and is not service aggravated,

c. the disease or injury was incurred Not In Line Of Duty,

d. the disease or injury was incurred during a period of unauthorized absence,

e. the disease or injury resulted from Intentional Misconduct or Willful Neglect,

f. disease or injury incurred as a result of unreasonable refusal of medical, dental, or surgical treatment,

g. the member has not been granted a Notice Of Eligibility (applies to inactive-duty reservists only), or

h. the member refuses to release medical records (see paragraph 3402).

**3407** **Not Entitled To Receive Basic Pay**

a. A determination of Unfit while on active duty is not sufficient to entitle a member to disability retirement or severance pay. There also must be a determination that Unfitness is due to a disability, which was incurred or aggravated while entitled to receive basic pay.

b. Unless service aggravated, a disease or injury which existed prior to service (EPTS), or in other words, was incurred while a member was not entitled to basic pay, is not ratable.

c. The fact that a member was accepted physically for active duty is not conclusive that the disability was incurred after such acceptance. It is one piece of evidence to be considered with all the medical evidence. In addition to, and in conjunction with, all other pertinent medical evidence, due consideration and weight must be given to accepted medical principles, authenticated by medical authorities, in arriving at a final determination. It is not proper to exclude such accepted medical principles in making the determination, even in cases where there is no other evidence that the disability existed prior to entrance upon active duty.

d. Further guidance concerning EPTS and service aggravation is contained in the Rating Policies section of this enclosure.

e. A member on appellate or excess leave is not entitled to basic pay.

**3408 Inactive-Duty Reservist Without A Notice Of Eligibility**. An inactive-duty reservist is normally not eligible to receive disability benefits unless he or she has been granted an NOE under SECNAVINST 1770.3B, (reference (g)). See paragraph 3309 (b) for the exception to this policy.

**3409 Prior Service Impairments**. Any medical condition incurred or aggravated during one period of service or authorized training in any of the Armed Forces that recurs or is aggravated during later service or authorized training, regardless of the time between, normally should be considered incurred or aggravated in the line of duty, provided the condition or subsequent aggravation was not the result of the member's misconduct or willful negligence.

**3410 Unique Categories**. Injury or disease which was incurred by a member while not entitled to basic pay specifically is excluded from disability benefits, unless service aggravated (10 U.S.C. 1217).

a. Examples Of Individuals Not Entitled To Basic Pay:

(1) Naval Academy.

(2) NROTC.

(3) Medical School Programs (except during clinical clerkships).

(4) Excess Leave.

(5) Appellate Leave.

(6) Nursing Programs.

(7) Engineering Programs.

b. Not "In Line of Duty." Disease or injury incurred by naval personnel while in active service (see paragraph 2007) will be considered to have been incurred "in line of duty" except when incurred:

(1) as the result of the member's own misconduct,

(2) while avoiding duty by deserting the service,

(3) during a period of unauthorized absence,

(4) while confined under sentence of a court-martial which included an unremitted dishonorable discharge,

(5) while confined under sentence of a civil court following conviction for an offense which is defined as a felony by the law of the jurisdiction where convicted, or

(6) while on appellate leave.

c. Presumption of "In Line of Duty." Any disease or injury discovered after a member enters active military service, with the exception of congenital and hereditary (genetically transmitted from parent to offspring) conditions, is presumed to have been incurred "in line of duty." Clear and convincing evidence is required to overcome this presumption.

d. Intentional Misconduct or Willful Neglect. Misconduct is wrongful conduct. However, simple or ordinary negligence or carelessness, standing alone, does not constitute misconduct. To support an opinion of misconduct, it must be established by clear and convincing evidence that the injury or disease either was intentionally incurred or the proximate result of such gross negligence as to demonstrate a reckless disregard of the consequences. If a resulting injury or disease is such that it could have been reasonably foreseen from the course of conduct, it is said to be a "proximate result." The fact that the conduct violates a law, regulation, or order, -- or the fact that the conduct is engaged in while the individual is intoxicated -- does not, of itself, constitute a basis for a determination of misconduct. Such circumstances should, however, be considered along with all other facts and circumstances by the PEB in determining whether the conduct of the individual was grossly negligent, and whether the incurrence of injury

or disease was reasonably foreseeable as a probable result of such conduct. Willful neglect is defined in paragraph 2086.

e. Presumption of Not Misconduct. It is presumed that disease or injury suffered by a member of the naval service is not the result of misconduct. Clear and convincing evidence is required to overcome this presumption. The criminal evidentiary standard of beyond a reasonable doubt does not apply.

f. Applicability of Misconduct Determination

(1) An injury which was incurred as the result of misconduct may later become service aggravated.

(2) A misconduct determination disqualifies a member from disability benefits only for the particular disability to which it applies.

g. Examples of Misconduct and Not Misconduct Situations. An intentional self-inflicted injury, other than suicide attempt discussed in paragraph 3414e, is deemed to be incurred as the result of the member's own misconduct, unless lack of mental responsibility is otherwise shown.

(1) If an individual intentionally wounds himself or herself with a firearm, the injury is due to his or her own misconduct.

(2) If an individual handles a firearm in a grossly negligent manner and thereby wounds himself or herself, that injury is due to his or her own misconduct because a wound is a reasonably foreseeable result of the grossly negligent handling of firearms; e.g., Russian Roulette.

(3) If, on the other hand, an individual was standing on a sidewalk and, while handling a firearm in a grossly negligent manner, was struck by an automobile which had gone out of control, the injuries are not due to his or her own misconduct because they would not have been reasonably foreseeable or the proximate result of the wrongful conduct in which the individual was engaged. In this example, the injuries are the result of an independent intervening cause.

h. Misconduct/Line of Duty Determinations

(1) Under the laws and regulations governing the Navy DES, members entitled to basic pay who incur or aggravate medical conditions which make them Unfit to perform their military duties are eligible to receive disability retirement or separation benefits. Members are not entitled to these benefits, however, if the physical disability resulted from the member's own intentional misconduct or willful neglect or was incurred while the member was in an unauthorized absence status.

(2) Chapter II of JAGINST 5800.7C (hereinafter the JAGMAN) (reference (h)), outlines policies and procedures for making line of duty/misconduct (LOD/M) determinations. JAGMAN section 0221 details circumstances which require such determinations. JAGMAN sections 0230 and 0231 prescribe that commands record LOD/M determinations in the member's health or dental record. When a command investigation or written preliminary inquiry has been prepared per JAGMAN, chapter II, commands will provide a copy of the inquiry, or investigation with General Court-Martial Convening Authority (GCMCA) endorsement, to the Medical Evaluation Board (MEB) convening authority for inclusion in the official records of the case which are forwarded with the MEB report for PEB consideration.

(3) Normally, the PEB will accept as binding the command LOD/M determination approved by the GCMCA

(a) In cases where the PEB considers an LOD/M determination endorsed by the GCMCA to be contrary to the evidence contained in the JAGMAN investigation, contrary to additional evidence obtained during the PEB review and hearing process, or predicated upon an investigation that may be deficient, the President, PEB shall forward the LOD/M determination to DIRNCPB for review and decision prior to the signing either of a Preliminary Findings Letter or a Findings Letter. The forwarding documents shall include written analyses of the LOD/M determination, and recommendations, both by the President, PEB and the PEB legal advisor.

(b) Upon receipt of a request to review a LOD/M determination, DIRNCPB shall secure a written analysis of the LOD/M determination from the NCPB legal advisor before reviewing the analyses and recommendations from the President, PEB and the PEB legal advisor. DIRNCPB shall make a final LOD/M decision and return the case to the President, PEB who shall issue a Findings Letter consistent with DIRNCPB's decision.

(4) Under chapter 18 of the reference (f) (MANMED), the convening authority of the MEB has the responsibility to review all MEB reports for completeness. Before referring a case for PEB review, the MEB convening authority shall review case records to ensure they contain required LOD/M determinations from the responsible field commander. The MEB convening authority shall process a case which fails to contain a required LOD/M determination according to the following principles:

(a) If the date of the injury giving rise to the requirement for an LOD/M determination was more than 2 years prior to the date of the MEB, the MEB convening authority shall continue to process the member's case, including forwarding the case to the PEB, without further effort to obtain the LOD/M determination or information normally required for making the determination. Consistent with the JAGMAN reference (h), the MEB will presume a finding of "in the line of duty and not due to the member's own misconduct" in processing such cases.

(b) If the date of the injury giving rise to the requirement for an LOD/M determination is less than 2 years from the date of the MEB, the MEB convening authority will

contact the responsible field commander and request that steps be taken to properly investigate the facts surrounding the injury and to document and record appropriate findings. The MEB convening authority only shall forward the MEB report to the PEB for processing if:

1. MEB convening authority obtains a copy of the LOD/M investigation and includes it as part of the MEB report;

2. MEB convening authority obtains a copy of the health/dental record entry recording the LOD/M determination, and includes it as part of the MEB report package; or

3. MEB convening authority obtains a statement from the cognizant GCMCA stating that an LOD/M determination was not required (JAGMAN section 0221) or was not able to be obtained (i.e., that diligent efforts to complete the investigation were not productive due to witness unavailability).

(5) If the PEB receives an MEB report from an MEB convening authority which fails to contain a required LOD/M determination, processing of the MEB report will be governed by the following principles:

(a) If the date of the injury giving rise to the requirement for an LOD/M determination was more than 2 years prior to the date of the MEB reporting the medical evaluation of the associated injury/disease, the PEB will continue to process the member's case without further effort to obtain the LOD/M determination or information normally required for making the determination. Consistent with the JAGMAN and this instruction, the PEB will presume the injury or disease was incurred or aggravated "in the line of duty and not due to the member's own misconduct" in these cases.

(b) If the date of the injury giving rise to the requirement for an LOD/M determination is less than 2 years from the date of the MEB reporting the medical evaluation of the associated injury/disease, the PEB will forward the case to the PEB legal advisor. Upon review of the case, if it is the legal advisor's opinion that an LOD/M determination was not necessary, the PEB shall process the case presuming an LOD/M determination favorable to the member. If it is the legal advisor's opinion that the relevant facts and directives require an LOD/M determination, and President, PEB concurs, the PEB will return the MEB report to the MEB convening authority for action as noted in subparagraph (4) above. (If the President, PEB does not concur with the recommendation of the PEB legal advisor, the provisions of paragraph 4103 (a) and (b) apply.) The PEB will advise the medical board report convening authority that prior to the PEB's acceptance of the medical board report for consideration, one of the following actions must be completed:

1. Obtain (or complete) a copy of the LOD/M investigation and include it as part of the MEB report;

2. Obtain (or complete) a copy of the health/dental record entry recording the LOD/M determination and include it as part of the MEB report; or

3. Obtain a statement from the cognizant GCMCA stating that an LOD/M determination was not required (JAGMAN section 0221) or was not able to be obtained. (In this case processing shall be made presuming the injury or disease was incurred or aggravated in the line of duty and not due to the member's own misconduct.)

(6) In the event that the member has incurred or aggravated an injury or disease while in an unauthorized absence status, JAGMAN sections 0223c(2) and 0230d require that the member's command complete an LOD/M investigation. JAGMAN section 0223 establishes separate standards regarding injury or disease incurred during a period of unauthorized absence: one standard is for JAGMAN investigations purposes and the second standard is for purposes of physical disability payments (severance/retirement) under chapter 61 of Title 10, U.S.C. Procedures set forth in the latter standard govern PEB processing of cases involving LOD/M determinations, as outlined in paragraph 3410b.

i. Passenger Misconduct. In accordance with paragraph 3410e, injuries sustained by a passenger will be presumed not to have occurred as a result of his/her own misconduct. However, subject to the criteria set forth in paragraph 3410, this presumption may be overcome where clear and convincing evidence establishes that the passenger knew or should have known that the driver was incapable of operating a motor vehicle safely due to the intemperate use of alcohol or illegal use of a drug.

**3411 Unauthorized Absence**. When a disability is incurred at any time during a period of unauthorized absence, regardless of whether the absence interfered with the member's military duties, the member is excluded from receiving disability benefits (10 U.S.C. 1207). Legally excusable mental or physical conditions may provide a bona fide defense to a charge of unauthorized absence and may be an issue addressed in the context of disability evaluation.

**3412 Substance Abuse-Related Disabilities**

a. Injury Incurred as Proximate Result of Voluntary Intoxication

(1) Subject to the discussion in paragraph 3410, an injury incurred as the proximate result of prior and specific voluntary intoxication may be incurred as the result of misconduct. However, a finding of misconduct may only be made when:

(a) it clearly can be shown that the member's physical or mental faculties were impaired;

(b) the extent of impairment clearly can be determined; and

(c) it is clear that such impairment was the proximate cause of injury.

(2) In the case of an operator of a motor vehicle, the presence in the blood stream of a BAC of 0.1 grams percent or higher, standing alone, is sufficient to establish items a (1) (a) and a (1) (b) above. The fact that the operator was intoxicated does not, however, establish a (1) (c) above. Rather, other independent evidence such as a police report or written statement must be presented to establish that the member's injuries were a direct result of intoxication.

(3) While the gross negligence of an intoxicated driver, which is the proximate cause of injury, may support a finding of misconduct with regard to the driver, injury sustained by a passenger is normally not considered the result of misconduct. Injury to a passenger is normally the result of the driver's gross negligence and not the passenger's. Accordingly, in the case of passengers in motor vehicles, this paragraph is not applicable unless:

(a) the passenger exercises control over the operation of the vehicle,

(b) the negligence of the driver, by operation of law, can be "imputed" to another person or entity, or

(c) the evidence establishes a failure as a passenger to exercise due care for one's own safety.

b. Alcohol and Drug-Induced Disease

(1) <u>General</u>. Inability to perform duty resulting from disease, which is directly attributable to a specific, prior, proximate, and related intemperate use of alcoholic liquor, or illicit and habit-forming drugs, shall be categorized as the result of misconduct. Habituation may or may not be associated with a specific inability to perform duty which is directly due to the specific and proximate use of alcohol or drugs. Controlled substances are listed in 21 C.F.R. 1308.

(2) <u>Alcohol-induced disease</u>. An alcohol-induced disease is the result of misconduct, if:

(a) according to recognized medical knowledge, it is the direct and foreseeable result of the intemperate use of alcohol; and

(b) the service member had been referred to a treatment and rehabilitation program for alcoholism at a time when the disease was preventable or treatable.

(3) Drug-induced disease

(a) If a disease, such as hepatitis, cannot be directly attributed to a specific, prior, proximate, and related intemperate use of a drug, it must be considered not due to misconduct.

(b) An individual will not be held responsible for his or her acts or their consequences if they result from mental disease. It must be determined therefore whether the drug use was a consequence of mental illness or the drug use was voluntary and brought on the mental illness. If a result of voluntary use or abuse, the findings may be misconduct and not compensable depending on the other circumstances involved; if a consequence of mental illness, no misconduct is involved. However, a determination that drug use was a consequence of mental illness would, by the same rationale, tend to establish the existence of mental illness prior to service in those cases where the member admits intemperate use of drugs prior to service. Brief experimentation with marijuana would not, in itself, meet this criterion.

**3413 <u>Unreasonable Refusal Of Medical, Dental, Or Surgical Treatment</u>**

a. If a member unreasonably refuses to submit to medical, dental, or surgical treatment, any Unfitting disability that proximately results from such refusal is incurred as a result of the member's willful neglect. However, unreasonable refusal under this section only may equate to willful neglect when the member most likely would be Fit had he or she had submitted to or complied with the treatment regimen. Additionally, a member who refuses medical treatment on a bona fide religious basis is eligible for disability benefits; refusal shall not be considered willful neglect.

b. The PEB must determine whether refusal of treatment was or was not, in fact, reasonable regardless of any opinion expressed in a medical board report. The medical board report also shall contain the following:

(1) written comments by the member regarding the member's refusal;

(2) written comments by the physician explaining why the refusal is unreasonable, supported by specific medical references. If the PEB finds that the refusal of treatment was unreasonable, the member shall, unless a MEDICAL BOARD CERTIFICATE RELATIVE TO COUNSELING ON REFUSAL OF SURGERY AND/OR TREATMENT (NAVMED 6100/4) already is contained in the record, be notified before a finding of willful neglect may be made, and advised that continued refusal will result in a finding of willful neglect and loss of disability benefits.

**3414 <u>Mental Competency And Responsibility</u>**

a. <u>Presumption of Mental Competence</u>. All persons are presumed to be mentally competent and thus responsible for their acts. Clear and convincing evidence is required to overcome this presumption.

b. Mental Responsibility Considerations. A member may not be held responsible for his or her acts and their foreseeable consequences if, at the time of commission of such acts, as a result of severe mental disease or defect, he or she was unable to appreciate the nature and quality or the wrongfulness of the acts. A member's conditions not amounting to a lack of mental responsibility as defined above does not preclude holding a member responsible for his or her acts and their foreseeable consequences. As used in this paragraph, the terms "mental disease" and "defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct. Thus, an injury which was the proximate result of acts performed while the member was mentally impaired as a result of voluntary ingestion of an hallucinogenic drug would be deemed to have been incurred as a result of the member's own misconduct since certain properties of such drugs are notorious and their use is prohibited by Article 1151, U.S. Navy Regulations.

c. Determining Mental Incompetency

(1) Where mental competency is an issue, disbursement of a member's pay and allowances to a trustee properly designated under chapter XIV, JAGMAN, can only be made after a determination of mental incapacity to manage personal and financial affairs by a board of medical officers convened and constituted in accordance with reference (f) (MANMED), chapter 18 and 37 U.S.C. 602. Such a board must consist of three members, at least one of whom must be a psychiatrist. Additionally, the members of such a board must be physicians of the Navy, Army, Air Force, or physicians employed by one of these Services, the Department of Health and Human Services, or the VA.

(2) In the case where a member who is on the TDRL elected to receive compensation from the VA in lieu of all retired pay from the Department of the Navy, a determination of mental incompetency by a psychiatrist other than a medical officer or physician employed by one of the Services, Departments, or agencies may be accepted subject to the approval of the DFAS.

(3) Where the member's attending physician determines that the member is mentally unable to acknowledge; i.e., accept or decline, the findings of the PEB, and is not expected to live more than 72 hours, the member's guardian appointed by a court, or, if no one has been appointed, the primary next of kin, may act on his or her behalf. The member's attending physician shall annotate this determination, and the reasons therefore, in the member's medical record. Should the member survive, however, and require active duty or retired pay, then his/her mental incompetency must be determined in accordance with paragraph 3414c (1).

d. Restoration of Mental Competency. Once a determination of mental incompetency has been properly made, a finding of restoration of competency or capability to manage personal and financial affairs may be accomplished by a minimum of one medical officer, who shall be a psychiatrist. JAG liaison is required. See JAGMAN, Chapter XIV.

e Suicide Attempts. In view of the strong human instinct for self-preservation, a bona fide suicide attempt, as distinguished from other acts of intentional self-injury, shall be considered to create a strong inference of lack of mental responsibility.

**3415 - 3499 Reserved**

## PART 5 - POLICIES CONCERNING COMBAT-RELATED INJURIES

**3501 Provision Of Combat-Related Opinion**

a. Once a member has been rated, the PEB shall provide a combat-related opinion for the member which shall be binding on the appropriate finance center in the absence of guidance to the contrary from the Internal Revenue Service or from the JAG. CHNAVPERS and CMC (M&RA), as appropriate, shall communicate this opinion to the separating activity and to the appropriate finance center.

b. No combat-related opinion need be made when it is clear from the record of proceedings that the member was on active duty with the Armed Forces on 24 September 1975.

c. The PEB will state affirmatively, for contingent use in civil service matters by the JAG, if the disability is a result of an instrumentality of war or incurred as a direct result of armed conflict.

**3502 General**. Retired and severance pay awarded to members who were not a member of an armed force or under a binding contract to become such a member on 24 September 1975 is considered taxable under Section 104 of the Internal Revenue Code, found as 26 U.S.C. 104. An exception to this provision exists in Section 104(b)(1)(c) for a member receiving separation or retired pay by reason of a combat-related injury.

**3503 Combat-Related Injury**. The term "combat-related injury" as defined in 26 U.S.C. 104(b)(3) includes four separate categories. It means personal injury or sickness:

a. Incurred as a direct result of armed conflict,

b. Incurred while engaged in extra hazardous service, or

c. Incurred under conditions simulating war; or

d. Caused by an instrumentality of war.

**3504 Direct Result Of Armed Conflict**. The physical disability is a disease or injury incurred in the line of duty as a direct result of armed conflict. The fact that a member may have incurred a disability during a period of war or in an area of armed conflict, or while participating in combat operations is not sufficient to support this finding. There must be a definite causal relationship between the armed conflict and the resulting Unfitting disability.

a. Armed conflict includes a war, expedition, occupation of an area or territory, battle, skirmish, raid, invasion, rebellion, insurrection, guerrilla action, riot, or any other action in which service members are engaged with a hostile or belligerent nation, faction, force, or terrorists.

b. Armed conflict also may include such situations as incidents involving a member while interned as a prisoner of war or while detained against his or her will in custody of a hostile or belligerent force or while escaping or attempting to escape from such confinement, prisoner of war, or detained status.

**3505 Engaged In Extrahazardous Service**. Includes, but is not limited to, aerial flight duty, parachute duty, demolition duty, experimental stress duty, and diving duty.

**3506 Conditions Simulating War**. In general, this covers disabilities resulting from military training, such as war games, practice alerts, tactical exercises, airborne operations, leadership reaction courses; grenade and live fire weapons practice; bayonet training; hand-to-hand combat training; repelling, and negotiation of combat confidence and obstacle courses. It does not include physical training activities, such as calisthenics and jogging or formation running and supervised sports.

**3507 Caused By An Instrumentality Of War**. For income taxation purpose only, incurrence during a period of war is not required. A favorable determination is made if the disability was incurred during any period of service as a result of such diverse causes as wounds caused by a military weapon, accidents involving a military combat vehicle, injury, or sickness caused by fumes, gases, or explosion of military ordnance, vehicles, or material. However, there must be a direct causal relationship between the instrumentality of war and the disability. For example, an injury resulting from a service member falling on the deck of a ship while participating in a sports activity would not normally be considered an injury caused by an instrumentality of war (the ship) since the sports activity and not the ship caused the fall. The exception occurs if the operation of the ship caused the fall.

**3508 Appeals Of Combat-Related Opinions**

a. JAG shall act on behalf of the SECNAV in providing departmental appellate resolution of combat-related opinions.

b. DIRNCPB may request an opinion from the JAG as to the appropriateness of a PEB combat-related opinion. Such opinion shall be binding on and shall be issued by the PEB.

c. A determination by the PEB that a disability is not combat-related may be appealed by the member to the JAG. The appeal shall be by letter addressed to the Judge Advocate General of the Navy (Code 131), Washington Navy Yard, 1322 Patterson Ave SE, Suite 3000, Washington, DC 20374-5066 and shall set forth the reasons the member disagrees with the determination of the PEB. The member's disability evaluation proceedings will not be delayed or abated pending action on the appeal by the JAG.

d. JAG may provide a combat-related opinion upon request by a member who was not provided one during earlier DES processing.

**3509 - 3599 Reserved**

## PART 6 - POLICY GOVERNING THE TEMPORARY DISABILITY RETIRED LIST (TDRL)

**3601 Applicability**. Place service members on the TDRL when they would be qualified for permanent disability retirement but for the fact that the member's disability is not determined to be of a permanent nature and stable.

a. A disability shall be considered unstable when the preponderance of medical evidence establishes that accepted medical principles indicates the severity of the condition will change within the next 5 years so as to result in an increase or decrease of the disability rating percentage or a finding of Fit.

b. Except for cases processed under imminent death procedures, permanently retire those members with unstable conditions rated at a minimum of 60 percent and which are not expected to improve to less than an 60 percent rating. When a member is placed on the TDRL in accordance with this instruction the provisions of this part apply.

**3602 Administration**. CHNAVPERS and CMC (M&RA) are responsible for administering the TDRL for their services, in keeping with the following guidelines:

a. maintain an accurate account of authorized members;

b. designate medical facilities and direct members to undergo periodic physical examinations in accordance with the requirements of this chapter;

c. arrange and coordinate with the President, PEB, alternate means of examination when members are unable to undergo periodic physical examinations by reason of circumstances beyond their control;

d. order additional medical information when requested by the PEB;

e. monitor failures to report for periodic physical examinations and taking appropriate action in such cases as specified in paragraphs 3609, 3610, 3611 and 3612;

f. implement disposition of members whose cases are finalized by the PEB as appropriate.

**3603 Administrative Finality**. During TDRL reevaluation, previous determinations concerning application of any presumption established by this Instruction, line of duty, misconduct, proximate result, and whether a medical impairment was service incurred or preexisting and aggravated shall be considered administratively final for those conditions for which the member was placed on the TDRL unless there is evidence of fraud; a change of diagnosis that warrants the application of accepted medical principles for a preexisting condition; or correction of error in favor of the member.

**3604 Member's Responsibility To Maintain Current Mailing Address With Service**. All members on the TDRL shall keep CHNAVPERS, CMC (MMSR-4), and DFAS Cleveland Center appraised of their current address. Failure to respond to correspondence or orders issued to the address on file with the appropriate finance center either willfully or through neglect in keeping that address current may result in the suspension of disability retired pay and will be considered as showing intent on the member's part to abandon benefits. Additionally, all active duty members being placed on TDRL and those TDRL members going before a Formal PEB must fill out an Address Information Form. PEBLOs will submit this form with the members Election of Options for active duty personnel and the hearing panel Administrator will ensure that all TDRL members reporting for a hearing complete the form and include it in the PEB case file.

**3605 Time Limit For Pay Purposes**. 10 U.S.C. 1210 provides that the maximum time that a member's name can be carried on the TDRL in a pay status is 5 years.

**3606 Orders For Periodic Physical Examination**

a. General. The law requires that members on the TDRL shall be given physical examinations at least once every 18 months. This includes members who have waived retired pay, in order to receive compensation from the VA as they are still members of the naval service.

b. Issuance. CHNAVPERS or CMC (M&RA) shall issue orders (copy to PEB) to members on the TDRL to proceed and report for periodic physical examinations normally via the commanding officer of the designated examining activity. The examining facility will endorse the orders and specify the date, place, and time (giving the member a minimum of 30 days) at which the member is to report. The examination shall be conducted during the month specified in the orders or during the preceding or following month. The commanding officer of the medical facility shall notify CHNAVPERS or CMC (M&RA), as appropriate, and CHBUMED of failure to complete the examination within this time frame and the reason therefore.

**3607 Priority**. TDRL examinations, including hospitalization in connection with the conduct of the examination, shall be furnished on the same priority as given to active duty members.

**3608 Member Medical Records**. The service member shall provide to the examining physician, for submission to the PEB, copies of all medical records (civilian, VA, and all military medical records) documenting treatment since the last TDRL reevaluation.

**3609 Refusal Or Failure To Report For Periodic Physical**. As provided under chapter 61 of reference (a), when a service member on the TDRL refuses or fails to report for a required periodic physical examination, or to provide medical records in accordance with his or her disability, retired pay may be suspended. If the member later reports for the physical examination, retired pay will be resumed retroactively, to the date the examination actually was

performed. If the service member subsequently shows just cause for failure to report, disability retired pay may be paid retroactively. If the member does not undergo a periodic physical examination after disability retired pay has been terminated, he or she will be administratively removed from the TDRL on the fifth anniversary of placement on the list and separated without entitlement to any of the benefits under reference chapter 61 of 10 U.S.C. (reference (a)).

**3610** **<u>Reports From Non-MTFs</u>**. MTFs designated to conduct TDRL periodic physical examinations may use reports of medical examinations from medical facilities of another service, the DVA, other Government Agencies, and authorized civilian medical facilities and physicians to complete the examination. The designated MTF remains responsible for the adequacy of the examination and the completeness of the report. The report must include the information specified in paragraph 3616, if applicable.

**3611** **<u>Incarcerated Members</u>**. A report of medical examination shall be requested from the appropriate authorities in the case of a service member imprisoned by civil authorities. In the event no report or an inadequate report is received, make documented efforts to obtain an acceptable report. If an examination is not received, disposition of the case shall be in accordance with paragraph 3609 above. Advise the member of the disposition, and that remedy rests with the Board for Correction of Naval Records.

**3612** **<u>Action Required By Examining Medical Facility When Member Fails To Report For Periodic Physical Examination</u>**. Send notice of appointments for periodic physical examinations by certified mail (or by an equivalent form of notice if such service by U.S. Mail is not available for delivery at an address outside the United States) to the member's address of record. If the member fails to appear for the scheduled appointment without contacting the medical facility for rescheduling, and the member either signed for or failed to claim the certified notice of appointment, the medical facility shall forward a copy of the certified mail receipt to the member's records, and a signed statement documenting the member's failure to appear for the periodic physical examination to CHNAVPERS or CMC (MMSR) and President, PEB. If the certified notice of appointment is returned due to the member not being at that address, contact CHNAVPERS or CMC (MMSR) for a new address. If none exists, return all records to CHNAVPERS/CMC (MMSR).

**3613** **<u>Admission For Inpatient Observation</u>**. Whenever inpatient observation is desirable or necessary for a proper evaluation, admission and retention as an inpatient for a period of as much as 10 days are authorized. This length of inpatient observation may be extended upon authorization of CHNAVPERS or CMC (MMSR), as appropriate. It is particularly important that admission as an inpatient be considered for proper evaluation of psychiatric (neuropsychiatric) cases.

**3614** **<u>Report Of Periodic Physical Examination</u>**

a. <u>Format</u>. The report may be prepared in medical board report, letter or narrative format.

b. Content. The report shall contain:

(1) the current address and contact telephone number of the member;

(2) an interval history since the last examination with particular reference to the member's employment and time lost therefrom due to the disability for which retired;

(3) a comprehensive physical examination, reporting all physical impairments, degree of impairment, and the examiner's findings associated with each impairment. Included will be any impairment from which the member has recovered and new ones acquired while on the TDRL. Advice of consultants should be obtained if the examining physician(s) are in doubt as to an actual physical condition or diagnosis;

(4) all clinical evaluations and laboratory studies necessary to document the member's physical condition;

(5) information regarding the member's current condition and prognosis including current stability and the likelihood of significant change within the remaining statutory time the member might remain on the TDRL and a comparative estimate of changes relative to the member's previous condition;

(6) in the case of psychiatric disabilities a statement as to the current degree of impairment of industrial and social adaptability. Also see paragraph 3619; and

(7) a statement as to whether disclosure to the member of information relative to his or her physical or mental condition, or a personal appearance before the PEB would be detrimental to the member's physical or mental health.

(8) All members who served in Southwest Asia Theater of Operations (SWATO) must have either a CCEP evaluation or a waiver if the medical diagnosis included in the MEB report are assessed to be related to illnesses that are directly or causally related to service in this theater. If this was not done before the original MEB, it must be included with the periodic examination.

**3615 TDRL Periodic Examinations**. In addition to the requirements specified above, TDRL periodic examinations shall address:

a. An estimate of change since the previous examination.

b. All medical impairments diagnosed since the member was placed on the TDRL, to include:

(1) Whether the new diagnosis was caused either by the condition for which the member was placed on the TDRL or the treatment received for such a condition.

(2) If not caused by the condition for which the member was placed on the TDRL, whether the member's medical records document incurrence or aggravation of the condition while the member was in a military duty status; and if so, whether the condition was cause for referral into the DES at the time the member was placed on the TDRL.

c. The stability of the condition. If the condition remains unstable, the report of examination shall address the progress of the disability and a suggested period (not to exceed 18 months) for the next examination.

d. A detailed occupational history and an indication of pertinent social and recreational activities, and activities of daily living.

**3616 Competency**. TDRL periodic examinations shall include the results of a competency board when the member has a functional or organic disorder that makes questionable the member's ability to handle personal affairs and to understand and cooperate in MEB and PEB proceedings. All TDRL cases with a previously rated psychiatric diagnosis must have a statement of competency by a psychiatrist.

**3617 New Diagnoses**. A Fitness and compensable determination shall be made on all diagnoses presenting during the period of TDRL evaluation. When a member is determined Fit for the condition for which he or she was placed on the TDRL, but Unfit for a noncompensable condition incurred while on the TDRL, separate the member from the TDRL without entitlement to disability benefits.

**3618 TDRL Reevaluation With Regard To Compensability Of New Diagnoses**. Conditions newly diagnosed during TDRL periodic physical examinations shall be compensable upon finalization when:

a. The condition is Unfitting; and

b. The condition was caused by the condition for which the member was placed on the TDRL, or directly related to its treatment; or

c. The evidence of record establishes that the condition either was incurred while the member was entitled to basic pay, or as the proximate result of performing duty, whichever is applicable, and was an Unfitting disability at the time the member was placed on the TDRL. Otherwise, such conditions shall be deemed Unfitting due to the natural progression of the condition and noncompensable under chapter 61 of 10 U.S.C. (reference (a)), although the member may be eligible for benefits for these conditions under the DVA.

**3619 Periodic Physical Examination Reports In Cases In Which Mental Competency Was Or Is An Issue**

a. In addition to the paragraph 3614 requirements above, whenever a member on the TDRL was earlier found mentally incompetent or incapable of managing his or her affairs, the report shall contain either a statement that the member continues to be incompetent, or a finding of restoration of competency.

b. If a member was not earlier declared incompetent and his or her mental condition has deteriorated such that mental competency is an issue, a competency board shall be convened in accordance with paragraph 3905 of enclosure (3) of this instruction.

**3620 Disposition Of The Report Of Periodic Physical Examination By The Examining Facility**

a. Copy of Report To Member. Unless disclosure of the information contained therein would adversely affect his or her physical or mental health, provide the member a copy of the report by mail with instructions to send any comments directly to the President, Physical Evaluation Board, Building 36 Washington Navy Yard, 901 M Street SE, Washington DC 20374-5023. If the member is incompetent, provide the report to the guardian.

b. Forwarding To President, PEB. The commanding officer shall forward the report, together with the medical records within 30 days following completion of the examination to the President, Physical Evaluation Board (TDRL), Building 36 Washington Navy Yard, 901 M Street SE, Washington DC 20374-5023.

c. Copy to CHNAVPERS/CMC (MMSR-4). The commanding officer shall forward a copy of the report to CHNAVPERS/CMC (MMSR-4) for historical record.

**3621 Travel Expenses**

a. General. A member on the TDRL is entitled to travel and transportation allowances authorized for members in his or her retired grade traveling in connection with temporary duty while on active duty, by the JFTR for periodic physical, examinations and any appearances before the PEB. (10 U.S.C. 1210(g)).

b. Escorts/Attendants. The discussion in paragraph 3111e concerning an accompanying attendant is applicable to TDRL personnel also.

c. Reimbursement. To obtain reimbursement, a travel claim and properly endorsed orders showing travel actually performed are required. Submit them to the nearest Personnel Support Detachment for Navy members or, for Marine Corps members, submit in accordance with the instructions included with the orders.

**3622 Action On Cases By The Physical Evaluation Board Following Periodic Physical Examination**. Upon acceptance of a report of a periodic physical examination or a report of other current medical examination, the PEB shall evaluate such report and take one of the following actions:

a. For Conditions Not Stabilized And Not Near 5 Years On The TDRL:

(1) Members on the TDRL for less than 5 years whose conditions have not stabilized will be retained on the TDRL.

(2) A member's disability rating will not be reduced during the period a member is assigned to the TDRL.

(3) A member who is continued on the TDRL does not have the right to demand a formal hearing.

b. For Conditions Which Have Stabilized Or Are Near 5 Years On The TDRL:

*(1) Members on the TDRL for 5 years or whose conditions have stabilized or* become permanent at the time of the periodic physical evaluation will be processed as follows:

(a) Fit

(b) Unfit, separate with benefits

(c) Unfit, retired to the PDRL

(2) Rate members on the TDRL under the VASRD criteria in effect at the time of *their final reevaluation.*

**3623 Removal From The TDRL**. Remove a member's name from the TDRL when:

a. The PEB determines that:

(1) The member is Fit to continue naval service. TDRL members determined Fit to continue naval service shall be entitled to a Formal PEB since removal from the TDRL represents a change in military status; or

(2) Maximum improvement has been achieved or the disability is permanent. (In any event, a member's case should be finalized by the fifth anniversary of placement on the TDRL.)

b. The member is administratively removed by CHNAVPERS/CMC (M&RA) on the fifth anniversary of placement on the TDRL for failure to report for periodic examination and separated without entitlement to any benefits under Chapter 61 of 10 U. S. C. (reference (a)). See paragraph 3609.

**3624 Disposition After Processing By The Physical Evaluation Board**

a. Retention On The TDRL. The member maintains the status on the TDRL until evaluation by the PEB following the next periodic physical examination, or until administratively removed.

b. Removal From The TDRL

(1) Administrative Removal. See paragraph 3609.

(2) Fit to continue naval service. See paragraphs 3623 and 3625.

(3) Separation. See paragraph 3627.

(4) Retirement. See paragraph 3628.

**3625 Fit To Continue Naval Service Following Evaluation Of Periodic Physical Examination - Reenlistment Or Reappointment**. Assignment to the TDRL and disability retirement payments will terminate upon a determination by the PEB that a member is Fit to perform military duties. The member will be afforded the opportunity to re-enter military service if the member seeks reentry:

a. Members Of Regular Components

(1) Enlisted Members. An enlisted member of a regular component may be allowed to reenlist in his or her regular component provided he or she otherwise is qualified for reenlistment. An enlisted member of a regular component shall have either his or her status on the TDRL and disability retired pay terminated on the date preceding reenlistment in the regular component of which he or she was a member before being placed on the TDRL. Any such reappointment or reenlistment shall be in a rank, grade, or rating not lower than the rank, grade or rating permanently held by the member at the time his or her name was placed on the TDRL, and may be in the rank, grade, or rating immediately above the rank, grade or rating permanently held. For the purpose of being placed on a lineal list, promotion list, etc., the member will be given such seniority in rank, grade, or rating, or will be credited with such years of service as the SECNAV may authorize. In this connection, consider the probable opportunities for advancement and promotion to which the member might reasonably have been entitled had it not been for the placement of his or her name on the TDRL.

(2) Officers. With his consent, an officer of a regular component shall be recalled to active duty and, as soon as practicable, be reappointed to the active list of a regular component, even if this means that there will be a temporary increase in the number of officers authorized for his grade. Any such reappointment shall be in a rank or grade not lower than the rank or grade permanently held by the member at the time his or her name was placed on the TDRL, and may be in the rank or grade immediately above the rank or grade permanently held. For the purpose of being placed on a lineal list, promotion list, etc., the member will be given such seniority in rank or grade, or will be credited with such years of service as SECNAV may authorize. In this connection, consideration will be given to the probable opportunities for advancement and promotion to which the member might reasonably have been entitled had it not been for the placement of his or her name on the TDRL. An officer in a regular component shall have disability retired pay terminated on the date preceding recall to active duty.

b. Members Of Reserve Components. A member of a reserve component may be reappointed or reenlisted as the case may be, in the reserve component. A member of a reserve component, whether officer or enlisted, shall have his or her status on the TDRL and disability retired pay terminated on the date preceding reappointment or reenlistment in a reserve component.

c. Members Of The Fleet Reserve Or Fleet Marine Corps Reserve. A member of the Fleet Reserve or Fleet Marine Corps Reserve, found Fit to continue naval service with less than 30 years in service, shall resume his or her status in the Fleet Reserve or Fleet Marine Corps Reserve in the grade held when placed on the TDRL, or the next higher grade if considered qualified therefor in view of 10 U.S.C. 1210. Members of the Fleet Reserve or the Fleet Marine Corps Reserve found Fit to continue naval service who have 30 or more years in service will be permanently retired.

**3626 Current Periodic Examination**. Service members on the TDRL shall not be entitled to permanent retirement or separation with disability severance pay without a current TDRL or DVA periodic examination acceptable to the service Secretary.

**3627 Disability Less Than 30 Percent Following Evaluation Of Periodic Physical Examination**

a. Separation. A member on the TDRL who has less than 20 years of active service computed under 10 U.S.C. 1208 and a physical disability ratable at less than 30 percent disability (but continues to render him or her Unfit to continue naval service) under the VASRD in use at the time of determination shall be removed from the TDRL and may be separated under 10 U.S.C. 1203 or 1206, whichever applies in accordance with 10 U.S.C. 1210(e).

b. Severance Pay. If the disability is ratable at less than 30 percent but continues to render the member Unfit to continue naval service, and if the member has served at least six months, but less than 20 years of active duty (and will not be entitled to retired pay or retainer

pay by other provisions of law), he or she will be discharged with severance pay computed in accordance with 10 U.S.C. 1212.

c. Exceptions To Separation With Severance Pay

(1) Reversion To Former Status - Members Of The Fleet Reserve Or Fleet Marine Corps Reserve. A member of the Fleet Reserve or Fleet Marine Corps Reserve on the TDRL who has 20 years service computed under 10 U.S.C. 1208 and who, as a result of a periodic physical examination, will become entitled to severance pay under 10 U.S.C., Chapter 61, shall be given an opportunity to request that his or her name be removed from the TDRL and that his or her status in the Fleet Reserve or Fleet Marine Corps Reserve be resumed.

(2) Transfer To Fleet Reserve Or Fleet Marine Corps Reserve. Members having completed 20 years or more of active service under 10 U.S.C. 6330. A member on the TDRL who has 20 years service computed under 10 U.S.C. 1208 and who, as a result of a periodic physical examination, will become entitled to severance pay under 10 U.S.C., Chapter 61, shall be given the opportunity to request transfer to the Fleet Reserve or Fleet Marine Corps Reserve if the member is eligible for transfer under 10 U.S.C. 6330.

(3) Transfer To Inactive Status List. Officers and enlisted members of the Naval and Marine Corps Reserve on the TDRL who have at least 20 years of service computed under 10 U.S.C. 127321 and who, as a result of a periodic physical examination, are determined to be entitled to severance pay under 10 U.S.C., Chapter 61, shall be given an election, instead of being separated, to request transfer to the inactive status list under 10 U.S.C. 1209 and 1335, to receive retired pay at age 60.

**3628 Permanent Retirement**

a. Members With 20 Years Or More Of Service Computed Under 10 U.S.C. 1208. If, as a result of a periodic examination or upon final determination, it is determined that a member's physical disability is of a permanent nature, and if he or she has at least 20 years of service computed under 10 U.S.C. 1208, remove the member's name from the TDRL and retire him or her under 10 U.S.C. 1201 or 1204, whichever applies, with retired pay computed under 10 U.S.C. 1401.

b. Members With Less Than 20 Years Of Service Computed Under 10 U.S.C. 1208. If, as a result of a periodic examination, or upon final determination, it is determined that the member's physical disability is of a permanent nature, and is at least 30 percent under the VASRD (as modified by this instruction) in use at the time of the determination, remove the member's name from the TDRL and retire him or her under 10 U.S.C. 1201 or 1204 whichever applies.

**3629 – 3699 Reserved**

**PART 7 - *DISPOSITION POLICIES***

**3701** **Fit (Or Physically Qualified) Following Disability Evaluation**. If the PEB determines that an active duty member is Fit or an inactive duty reservist is Physically Qualified, return the member to his or her normal duty or reserve status unless separated or retired on some other non-disability basis. However, for personnel on the TDRL, see paragraphs 3625 and 4213a.

**3702** **Unfit Following Disability Evaluation**. Except in the cases of Unfit members being retained on active duty in a PLD status, any member on active duty or in active status who is found to be physically disabled will be retired, if eligible for retirement, or, if not so eligible, separated.

**3703** ***Not Physically Qualified***. An inactive-duty reservist who is found Not Physically Qualified, subject to paragraph 6005, shall be honorably discharged or retired if eligible (10 U.S.C. 126434).

**3704** **Flag And Medical Corps Officers**

a. Officers in grade 0-7 or higher who are within 12 months of mandatory retirement due to age or service limitations or medical officers in any grade who are pending nondisibility retirement for age or length of service at the time of referral into the DES, who are on active or reserve duty, may not be retired for physical disability unless the initial Unfitness determination is approved by the Secretary of Defense on the recommendation of the Assistant Secretary of Defense (Health Affairs) (ASD(HA)).

b. CHNAVPERS and CMC (M&RA) shall submit to the ASD (HA) via the ASN (M&RA) one copy of all retirement orders issued in the case of each general/flag officer (grades 0-7 through 0-10) retired because of physical disability.

c. All medical boards involving medical officers as patients forwarded to the PEB for consideration will be accompanied by a separate command evaluation to include the medical officer's current overall level of function, and a Peer Review delineating clinical privileges (SECNAVINST 6320.23 applies).

d. Officers in grade O-7 or above or medical officers in any grade shall not be determined Unfit because of physical disability if the member can be expected to perform satisfactorily in an assignment appropriate to his or her grade, qualifications, and experience. Thus, the inability to perform specialized duties or the fact the member has a condition which is cause for referral to a PEB is not justification for a finding of Unfitness.

**3705** ***Permanent Disability Retirement***. If otherwise eligible, a member who is to be retired because of physical disability shall be placed on the permanent disability retired list if within 5 years of the initial determination under 10 U.S.C. 1201 or 1204:

a. based upon accepted medical principles, the member cannot reasonably be expected to recover so as to be physically Fit to perform the duties of his or her office, grade, rank or rating; and

b. the disability rating, as established under the VASRD, in use at the time of the initial determination that the member is Unfit because of physical disability, cannot reasonably be expected to increase or decrease so as to change the amount of disability retired pay to which the member would be entitled.

**3706 Temporary Disability Retirement**

a. If a member's nature of disability does not meet the criteria for permanent retirement set forth in paragraph 3705 and 10 U.S.C 1202, place the member on the TDRL in accordance with 10 U.S.C. 1202 or 1205, as appropriate. Also, place members whose disabilities are unstable on the TDRL, if otherwise qualified.

b. Once a member's name has been placed on the TDRL, special rules and procedures become applicable. In addition, there are special disposition rules following later removal from the TDRL. Both sets of rules are set forth in part 6 of this enclosure.

**3707 Effective Date Of Retirement/Separation**. The effective date of retirement/separation because of physical disability (either permanent or temporary) normally shall be within 4-6 weeks, on the average, after issuance of the "Notification of Decision." The 4-6 weeks average elapsed time standard, however, is a guideline, not an inflexible rule. It may be exceeded by CHNAVPERS and CMC (M&RA) in such circumstances as severe hardship on the member, taking earned leave when the member is unable to sell it, infeasibility, such as when there is longer lead-time for properly vacating government quarters or arranging movement of household effects, and adverse effect on the service such as when it would preclude contact relief of officers in command or other key billets. These guidelines do not supersede service-unique transition rights and the Uniform Retirement Date requirement of 5 U.S.C. 8301, but rather provide for reasonable exercise of the Secretary's authority in 10 U.S.C. 1221.

**3708 Permanent Limited Duty Exception To Continue On Active Duty, Members Otherwise Unfit Because Of Physical Disability**. See enclosure (6) to this instruction.

**3709 Waiver Of Disability Retirement/Separation**

a. Members Qualified For Retirement For Other Reasons May Request Non-Disability Retirement/Separation. A member who meets all prerequisites for retirement or separation because of physical disability, but who also is qualified for retirement for other reasons, or transfer to the Fleet Reserve or Fleet Marine Corps Reserve, may request that he or she be separated for reasons other than disability.

(1) A member who wants non-disability retirement must submit a request to ASN (M&RA) in a timely manner prior to the effective date of his or her disability retirement, stating the reason for the request. Forward the request via CHNAVPERS or CMC (M&RA), who will make a specific recommendation with supporting rationale.

(2) A member who wants non-disability transfer to the Fleet Reserve or the Fleet Marine Corps Reserve, must submit a Request for Transfer to the Fleet Reserve (NAVPERS 1830/1) or Fleet Marine Corps Reserve Application (via Naval Message or AA Form). Along with the application, the member must forward a signed waiver of rights to a formal hearing and to disability pay under MILPERSMAN 3855180.9 or MARCORPSEPMAN (MCO P1900.16), Chapter 8, as appropriate, and request an effective date of not more than 60 days from date of application. A copy of the waiver is to be provided to the DIRNCPB for finalization of the member's case.

b. Authority To Waive Disability Retirement/Separation. At the request of the member, the DIRNCPB, is authorized to waive disability retirement/separation where consistent with the law and this enclosure.

**3710 Deferment Of Mandatory Retirement Or Separation**. If a member is pending mandatory separation or retirement, such retirement or separation may only be deferred if the member is hospitalized or a medical board report has been accepted by the President, PEB for disability evaluation processing. 10 U.S.C. 640 applies.

**3711 - 3799 Reserved**