## PART 8 - RATING POLICIES

### 3801 Policy

a. Ratable Disabilities. Disabilities determined to be physically Unfitting and compensable under reference (c) shall be assigned a percentage rating.

b. Standard. Chapter 61 of reference (a) establishes the Department of Veterans Affairs' (DVA) Veterans Administration Schedule for Rating Disabilities (VASRD) as the standard for assigning percentage ratings. The percentage ratings represent, as far as can practicably be determined, the average impairment in civilian occupational earning capacity resulting from certain diseases and injuries, and their residual conditions. However, not all the general policy provisions in Sections 4.1 - 4.31 of the VASRD are applicable to the Military Departments. Many of these policies were written primarily for DVA rating boards, and are intended to provide guidance under laws and policies applicable only to the DVA. This instruction replaces these sections of the VASRD. The remainder of the VASRD is applicable except those portions that pertain to DVA determinations of service connection, refer to internal DVA procedures or practices, or are otherwise specifically identified in enclosure (9) as being inapplicable.

### 3802 Essentials Of Rating Disabilities

a. The VASRD primarily is used as a guide for evaluating disabilities resulting from all types of diseases and injuries encountered as a result of, or incident to, military service. Because of differences between Military Department and DVA applications of rating policies for specific cases, differences in ratings may result. Unlike the DVA, the Military Departments must first determine whether a service member is Fit to reasonably perform the duties of the member's office, grade, rank, or rating. Once a service member is determined to be physically Unfit for further military service, VASRD percentage ratings are applied to the Unfitting condition(s). Percentages are based on the severity of the condition(s).

b. Medical Treatment at the Time of Voluntary and/or Mandatory Separation and/or Retirement. Medical and surgical procedures are frequently performed near the end of a service member's military career. Those are intended to improve a service member's health. Corrective treatment and convalescence will not be considered as a valid contribution to disability unless unexpected adverse effects occur that are expected to persist after discharge from active duty and are ratable.

c. Failure to Comply with Prescribed Treatment. A service member's degree of disability may have been aggravated or increased by an unreasonable failure or refusal to submit to medical or surgical treatment or therapy, to take prescribed medications, or to observe prescribed restrictions on diet, activities, or the use of alcohol, drugs or tobacco. The compensable disability rating may be reduced to compensate for such aggravation when the

existence and degree of aggravation are ascertainable by application of accepted medical principles, and where it is clearly demonstrated that:

(1) The service member was advised clearly and understandably (documented in medical record) of the medically proper course of treatment, therapy, medication or restriction; and

(2) The service member's failure or refusal was willful or negligent, and not the result of mental disease or of physical inability to comply.

d. Illegal and/or Controlled Substances. The following applies to Unfitting Medical Disorders and/or Conditions that result from the use of substance abuse and/or chemical dependency:

(1) Illegal and/or Controlled Substances or generally known toxins; e.g., THC, cocaine, PCP, LSD, & heroin: Treat as misconduct unless use was the product of an otherwise Unfitting condition or the LODI determined that there was no misconduct.

(2) Other substances; e.g., alcohol and nicotine: Any physical disability resulting from substance post Level III or equivalent treatment will be considered as non-compliance.

e. Objective Medical Findings and Disability Ratings. Physical examination findings, laboratory tests, radiographs and other findings are not, in themselves, ratable. A rating for a disability must be based on demonstrable impairment of function to the degree that this impairment makes the member Unfit unless otherwise provided in this regulation.

f. Elective Surgery or Treatment

(1) Prior to any elective treatment by the Military Health Service System (MHSS) a service member must consult with a competent military medical authority.

(2) A service member who elects to have such treatment done by other than the MHSS at his or her own expense will not be eligible for compensation under the provisions of this Instruction for any adverse residuals resulting from the elected treatment, unless it can be shown that such election was reasonable or resulted from a significant impairment of judgment that is the product of a ratable medical condition.

(3) A record of the counseling will be made by the health benefits advisor or other designated individual to document that the member was counseled about the elective treatment and his or her subsequent risk of ineligibility for disability compensation for any adverse residuals incurred secondary to the elective treatment.

(4) To allow the PEB to make an appropriate determination in a case where the member's eligibility is in question all medical records from non-MHSS providers and all

documentation and/or a statement explaining the member's position as to why his/her choice to seek outside treatment was reasonable.

g. Disabilities Not Unfitting for Military Service. Conditions that do not themselves render a service member Unfit for military service will not be considered for determining the compensable disability rating unless those conditions contribute to the finding of Unfitness.

h. The relative contribution of Non-Compensable Medical Conditions Not Constituting Physical Disabilities To Current Industrial Impairment Of Ratable Neuropsychiatric Conditions. Personality disorder(s), impulse control disorders, or substance use and/or abuse disorder(s) are examples of conditions not constituting a physical disability that often significantly contribute to, or may be the chief cause of, any industrial and industrially related social impairment suffered by the service member who has a compensable neuropsychiatric condition. Unfitting disability resulting therefrom will not be rated. In such instances, the overall rating of psychiatric impairment will be reduced to the impairment rating that would be warranted in the absence of the influence of the non-compensable condition according to generally accepted medical principles. It is imperative that the MEB reports quantify the contribution of each medical condition to the overall industrial impairment manifested by the service member.

**3803 Use Of VASRD Codes**. The VASRD code number appearing opposite a listed disability indicates the basis of the assigned valuation. Code numbers also are used for statistical analysis upon which policy decisions may be made. Great care must be exercised in the selection of the applicable code and in its citation on the rating sheet.

a. Each rated disability is assigned a single code number unless a hyphenated code is expressly authorized. It is not proper to use additional codes as a means of further describing defects except as authorized by the VASRD (e.g., in Gulf War cases). The written diagnosis entered on the rating sheet should include any description considered necessary to indicate the extent, severity or etiology of the coded condition.

b. Injuries are generally assigned codes that reflect the residual condition on which the rating is based.

c. Diseases are generally coded directly by the number assigned to the disease itself. If the rating is determined because of residual conditions, the number appropriate to the residual condition will be added, preceded by a hyphen. Thus, atrophic (rheumatoid) arthritis rated as ankylosis of the lumbar spine would be "5002-5289." The percentage rating in such cases is reflected in the second number ("5289" in the example). In this way, the basis of each rating can be easily identified.

d. Hyphenated codes are used only:

(1) When the VASRD provides that a listed condition is to be rated as some other code; e.g., nephrolithiasis rated as hydronephrosis (7508-7509).

(2) When the VASRD provides for a "minimum rating" and the disability is being rated on residuals; e.g., multiple sclerosis rated as incomplete paralysis of all unilateral upper extremity radicular groups (8018-8513) in which case the minimal rating will be 30 percent.

(3) When an unlisted condition is rated by analogy; e.g., spondylolisthesis rated as sacroiliac injury and weakness (5299-5294). If an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the diagnostic code number will be "built-up" as follows: the first two digits will be selected from that part of the schedule most closely identifying the part, or system, of the body involved; the second two digits will be "99." The resulting four-digit number will be connected by hyphen to the code for the analogous condition. This procedure facilitates monitoring of new and unlisted conditions.

(4) The DVA has prepared special analogous ratings for "undiagnosed symptom complexes" associated with Gulf War service. See enclosure (9), attachment (a) (1).

e. In the narrative citation of disabilities on rating sheets, the diagnostic terminology may be any combination of the medical examiner's or VASRD terminology which accurately reflects the degree of disability. Residuals of diseases or therapeutic procedures will not be cited without reference to the basic disease.

**3804 <u>Rating Issues</u>**

a. <u>Higher of Two Evaluations</u>. When the circumstances of a case are such that two percentage evaluations could be applied, assign the higher percentage only if the service member's disability more nearly approximates the criteria for that rating. Otherwise, assign the lower rating. When, after careful consideration of all reasonably procurable and assembled data, their remains a reasonable doubt as to which rating should be applied, resolve the doubt in the member's favor.

b. Changes in Rating Criteria

(1) TDRL

(a) <u>Final Reevaluation</u>. Rate members on the TDRL under the VASRD criteria in effect at the time of their final reevaluation. However, since the VA periodically readjusts this schedule of ratings, in accordance with Title 38 U. S. C. section 1155, a readjustment in the VASRD will not cause a service member's disability rating in effect on the date of the VASRD readjustment to be reduced based solely on changes in verbiage or written criteria.

(b) New Conditions. Although reference (b) through (d) permit new diagnoses to be added during periodic updates, do not rate new diagnoses until the case is finalized. New diagnoses included: (1) new condition(s) caused by the medical condition for which the member was placed on the TDRL, or directly related to its treatment; or (2) new condition(s) either incurred while the member was entitled to basic pay or as a proximate result of performing duty, whichever is applicable, and was an unfitting disability at the time the member was placed on the TDRL but was not included in the Medical Board report or not rated.

(2) PLD. Rate members placed on PLD under the VASRD criteria in effect at the time of final reevaluation.

(3) Cases Terminated or Suspended by the PEB. When the case returns for final determination, the following rule applies (provided PEB determines the member remains Unfit due to an eligible condition): if a case has been suspended or has been terminated pending medical treatment or an LODI, or if the medical board is incomplete, submit a new medical board and apply the rating standards in effect at the time of the new board's date.

(4) The standards and policies (VA and military) in effect on the date the medical board report is received at the PEB will be applied for the following:

(a) Addenda.

(b) Reconsideration by the Informal PEB.

(c) Appearance before the Formal PEB.

(d) PFR.

c. Pyramiding. Pyramiding is the term used to describe the application of more than one rating to any area or system of the body when the total functional impairment of that area or system adequately is reflected under a single appropriate code. Disability from injuries to the muscles, nerves, and joints of the extremity may overlap to a great extent. Special rules for their valuation are included in appropriate sections of the VASRD and in enclosure (9) of this instruction. Merge related diagnoses for rating purposes when the VASRD provides a single code covering all manifestations. This prevents pyramiding and reduces the chance of over-rating. For example, disability from fracture of a tibia involving malunion, limitations of dorsiflexion, eversion, inversion, and subtalar motion, as well as traumatic arthritis of the ankle would be rated using one diagnostic code (5271) that reflects overall ankle function, rather than by adding separate ratings for the limitations of motion and the traumatic arthritis.

d. Amputation Rule. The combined rating for disabilities of an extremity shall not exceed the rating for the amputation at the elective level, were amputation to be performed. For example, the combined evaluations for disabilities below the knee shall not exceed the 40

percent evaluation, diagnostic code 5165. This 40 percent rating may be further combined with evaluation for disabilities above the knee but not exceed the above the knee amputation elective level. Painful neuroma of a stump after amputation shall be assigned the evaluation for the elective site of reamputation.

e. Bilateral Factor. When partial disability results from injury or disease of both arms, or both legs, or of paired skeletal muscles, the ratings for the disabilities of the right and left paired sides are first combined in the standard manner. Ten percent of the result (called the Bilateral Factor) will be added to the first combined rating before proceeding with further combinations, or converting to degree of disability. The Bilateral Factor is applied to the bilateral disability combination before final combinations with unpaired disabilities are carried out. The rating for a "Bilateral" disability (combined rating plus the Bilateral Factor) is to be treated as one disability rating when arranging multiple impairments in order of severity prior to calculating further combinations. For example, with disabilities evaluated at 60 percent, 20 percent, 10 percent and 10 percent (the two 10s representing bilateral disabilities), the order of severity would be 60, 21 and 20. The 60 and 21 combine to 68 percent and the 68 and 20 to 74 percent converted to 70 percent as the final degree of disability.

(1) The terms "arms" and "legs" refer to the whole upper and lower extremities respectively. Thus, when there is a compensable disability of the right thigh (for example, amputation), and of the left foot (for example, amputation of the great toe), the Bilateral Factor applies. Similarly, the Bilateral Factor is applied whenever there are compensable disabilities affecting use of paired extremities regardless of location or specified type of impairment, except as noted in paragraph (3), below.

(2) The correct procedure when applying the Bilateral Factor to disabilities affecting both upper extremities and both lower extremities is to combine the ratings of the disabilities affecting the four extremities in order of their individual severity and apply the Bilateral Factor by adding 10 percent of the result to the total combined value thus attained.

(3) The Bilateral Factor is not applicable unless there is an Unfitting disability in each of two paired extremities or paired skeletal muscles. Special instructions regarding the applicability of the Bilateral Factor are provided in various parts of the VASRD. For example, codes 7114 - 7117 and codes 8205 - 8412. The Bilateral Factor is not applicable in skin disabilities.

f. Total Disability Rating (Unemployability). Total disability will be considered to exist when the member's impairment is sufficient to render it impossible for the average person suffering the same medical condition to engage in a substantially gainful civilian occupation. Accordingly, in cases in which the VASRD does not provide a 100 percent rating under the appropriate (or analogous) code, a member may be assigned a disability rating of 100 percent if the member's impairment is sufficient to render it impossible to engage in a substantially gainful occupation.

g. Extra-Scheduling Ratings in Exceptional Cases. The requirement to use the VASRD in rating disabilities does not prevent the Secretary of the Military Department concerned from assigning ratings in unusual cases not covered by the VASRD. In such cases, extra-schedule ratings commensurate with the average earning capacity impairment due exclusively to service-connected disability may be assigned. Such cases must be rated in accordance with procedures established by the Secretary of the Military Department concerned. The basis of the conclusion that the case presents such an exceptional or unusual disability picture that the regular VASRD standards do not apply must be documented.

h. Convalescent Ratings. Under certain diagnostic codes, the VASRD provides for a convalescent rating to be awarded for specified periods without regard to the actual degree of impairment of function. SUCH RATINGS DO NOT APPLY TO THE MILITARY DEPARTMENTS. Convalescence ordinarily will have been completed by the time optimum medical improvement (for disposition purposes) has been attained. If not, rate according to the manifest impairment.

i. Observation Ratings of Malignancies. The VASRD, in cases of malignancy, has ratings applicable for a period of observation of 6 months or more. Following this period of observation residuals will be rated. Observation ratings do apply to the Military Departments. Note that members with malignancies are not automatically continued for the 5-year TDRL period. The member will be reevaluated after the observation period and if, at the time, continued treatment is deemed necessary the member will be continued on the TDRL. If there is not a recurrence of tumor, regardless of whether the member has reached a 5 years tumor free period or not, the member's case will be finalized and any rating will relate to residuals, if any.

j. Analogous Ratings. When an unlisted condition is encountered, it is permissible to rate it by analogy to a closely related disease or injury. The unlisted and analogous conditions should reflect adverse impact upon reasonably similar functions, anatomical structures, or be symptomatically similar. Conjectural analogies, analogous ratings for conditions of doubtful diagnosis, and diagnoses not fully supported by clinical/laboratory findings are not acceptable. Organic diseases or injuries will not be rated by analogy to disorders of psychiatric origin, except when directed by law; e.g., Gulf War cases.

k. Overall Effect. A member may be determined Unfit as a result of the overall effect of two or more impairments even though each of them, standing alone, would not cause the member to be referred into the DES or be found Unfit because of physical disability.

l. Zero Percent Ratings and Minimum Ratings

(1) Zero Percent Rating for Residuals. Occasionally, a medical condition that causes or contributes to Unfitness for military service is of such mild degree that it does not meet the criteria for even the lowest rating provided in the VASRD under the applicable code. A zero percent rating may be applied in such cases even though the lowest rating listed is 10 percent or

more, except when "minimum ratings" are specified. Apply the "Bilateral Factor" (see paragraph 3804e) when a disability is present in two paired extremities, even though one extremity is rated at zero percent.

(2) Minimum Rating. In some instances, the VASRD provides a "minimum rating", without qualifications as to residuals or impairment. Diagnosis alone is sufficient to justify the minimum rating. Syringomyelia, code 8024, is an example. Although higher ratings may be awarded in consonance with degree of severity, do not use a rating lower than the "minimum" if the diagnosis is satisfactorily established.

(3) Minimum Rating for Residuals. The VASRD provides a minimum rating for "residuals" in certain medical conditions. A given instruction may state, "rate residuals, minimum ___ percent," or may specify what impairment to rate and give a minimum rating for that impairment. Examples are code 8011, anterior poliomyelitis, and 6015, benign new growth of eyeball and adnexa, other than superficial. To justify the minimum rating for residuals, a functional impairment or other residual caused by the condition must exist. Otherwise, a zero percent is appropriate if the primary condition is Unfitting.

m. Rating of Medical Impairments Existing Prior to Service

(1) Permanent Service Aggravation. A medical condition manifesting itself or existing prior to entry into military service will be considered "permanently service aggravated" when military service lastingly worsens that medical condition beyond its natural progression. Use generally accepted medical principles to determine "natural progression."

(2) No Permanent Aggravation. For service members for whom no permanent service aggravation has occurred, no rating will be listed. However, the rationale will state the basis for the determination that the Unfitting condition existed prior to service (EPTS) and was not permanently aggravated by service. When the condition is considered Unfitting due to natural progression without permanent service aggravation, the accepted medical principle that supports the finding of "natural progression" will be addressed in the rationale and/or Informal PEB workcard.

(3) Aggravation and Present Degree of Disability Less than 100 Percent

(a) In cases involving service members with permanent service aggravation and a current degree of impairment less than total, the rating will reflect only the degree of disability over and above that existing at the time of entrance into active service. This requirement applies whether the particular condition was noted at the time of entrance into active service or later is determined, upon the evidence of record, to have existed at that time. It is necessary, therefore, to deduct from the present degree of disability the degree of disability, if ascertainable, that existed prior to entrance into active service. In assessing EPTS disability, the full EPTS clinical course of the impairing medical condition will be taken into consideration. Such deduction should be in terms of the rating schedule for the given condition. The deduction

will be recorded on the rating sheet. If the degree of disability at the time of entrance into the military service is not ascertainable in terms of the schedule, there will be a zero percent deduction. The rating sheet will reflect that the EPTS factor is indeterminable, and a zero percent deduction will be made.

(b) It is not uncommon that the PEB disagrees with or overrides the medical board's designation as to whether a condition is EPTS or not. The service member and the medical board members must understand that the PEB's determination of EPTS factors and how those factors do or do not contribute to other conditions and the resulting degree of impairment may be different from the views contained in the medical board report, and that the decision of the PEB is final, unless overturned by PFR decision.

(4) Aggravation and Present Degree of Disability 100 percent. When permanent service aggravation has occurred and the current degree of disability is 100 percent, the rating sheet will reflect the EPTS factor and percent, but no actual deduction will be made. However, if upon TDRL finalization, the total rating drops below 100 percent, the original EPTS deduction percentage will be applied.

(5) Congenital and Hereditary Conditions. Congenital and hereditary conditions that do not manifest symptomatology until after a member enters active duty under orders specifying a period of more than 30 days shall not be considered service-incurred. These conditions will be presumed service aggravated unless a preponderance of evidence based on accepted medical principles clearly establishes that the condition is solely the time result of the natural progression of the congenital or hereditary condition.

(6) Paired Organs Involving EPTS and Service Aggravation. No deduction for EPTS factor will be made when the member is Unfit for any of the following situations involving paired organs. However, the rating sheet will reflect the EPTS factor, and that the EPTS deduction is zero (0) percent.

(a) Blindness in one eye as a result of service-connected disability and blindness in the other eye as a result of non-service connected disability.

(b) Loss or loss of use of one kidney as a result of service-connected disability and involvement of the other kidney as a result of non-service connected disability.

(c) Total deafness in one ear as result of service-connected disability and total deafness in the other ear as a result of non-service connected disability.

(d) Permanent service-connected disability of one lung, rated 50 percent or more disabling, in combination with a non-service connected disability of the other lung.

n. Presumption of Service Aggravation. Any injury or disease discovered after a service member enters active duty -- with the exception of congenital and hereditary conditions -- is presumed to have been incurred in the line of duty. Any hereditary and/or genetic disease shall be presumed to have been incurred prior to entry into active duty. However, any aggravation of that disease, incurred in the line of duty, beyond that determined to be due to natural progression shall be deemed service aggravated. The presumption that a disease is incurred or aggravated in the line of duty only may be overcome by competent medical evidence establishing by a preponderance of evidence that the disease was clearly neither incurred nor aggravated while serving on active duty or authorized training. Such medical evidence must be based upon well-established medical principles, as distinguished from personal medical opinion alone. Preponderance of evidence is defined as that degree of proof necessary to fully satisfy the board members that there is greater than a 50 percent probability that the disease was neither incurred during nor aggravated by military service.

o. Presumption of Sound Physical and Mental Condition Upon Entry. A service member is presumed to have been in sound physical and mental condition upon entering active duty except for medical defects and physical disabilities noted and recorded at the time of entrance.

p. Conditions Presumed to be Pre-Existing. Occurrence of disease as described in paragraphs (1) and (2), below, shall be presumed to have existed prior to entry into military service.

(1) Signs or symptoms of chronic disease identified so soon after the day of entry on military service (usually within 180 days) that the disease could not have originated in that short a period will be accepted as proof that the disease manifested prior to entrance into active military service.

(2) Signs or symptoms of communicable disease within less than the medically recognized minimum incubation period after entry on active service will be accepted as evidence that the disease existed prior to military service.

(3) Congenital and hereditary conditions, even though they do not manifest symptomatology until the member enters active duty, are considered EPTS. Service aggravation of these conditions is discussed in paragraph 3084 m (5).

q. Treatment of Pre-Existing Conditions. Generally, recognized risks associated with treating preexisting conditions shall not be considered service aggravation.

r. Combined Ratings Table. When a member has more than one compensable disability, the percentages are combined rather than added (except when the VASRD modified by enclosure (3) indicates otherwise). The combined rating is based on the "whole person concept." A person without a medical impairment is considered 100 percent Fit. An Unfitting ratable medical impairment renders an individual less that 100 percent Fit. A revised Fitness level results. Subsequent impairments are calculated as a percentage basis of the new Fitness level that is

always less than 100 percent. Thus, a person having a 60 percent disability is considered to have a remaining efficiency or Fitness of 40 percent. If there is a second disability rated at 20 percent, then the person is considered to have lost 20 percent of that remaining 40 percent (20 percent x 40 percent = 8 percent). Hence, a 60 percent disability combined with a 20 percent disability results in a combined rating of 68 percent, which is rounded off to a 70 percent rating in accordance with the VASRD. The combined rating for any combination of disabilities is always determined by first arranging the disabilities in their exact order of severity and then referring to the Combined Ratings Table in the VASRD in accordance with the following Instructions:

(1) Combining Two Percentages. The higher impairment percentage is located in the left-hand column. The combined percentage is found where the row indicating the percentage of the first (higher) impairment intersects with the column headed by the percentage of the second impairment.

(2) Combining Three or More Percentages. The first two percentages are combined as indicated in subparagraph 3804r (1). The result is a new impairment percentage that can be combined with a third percentage following the same procedure as in subparagraph 3804r (1). (Example: 50 combined with 30 equals 65, 65 combined with 20 equals 72). If there are additional percentages, the procedure is repeated using the new combined value and the next percentage. Rounding off is not done until the final value has been calculated and converted as described below in paragraph 3804r (3).

(3) Converting a Combined Rating. After all percentages have been combined, the resulting combined value is converted to the nearest number divisible by 10. Combined values ending in 5 are adjusted upward. If the combined value includes a decimal fraction of 0.5 or more as a result of applying the bilateral factor (see paragraph 3804e), the fraction is converted to the next higher whole number; otherwise the decimal fraction is disregarded. (Example: If the combined value is 64.5, the fraction is rounded to a combined value of 65, which is adjusted upward to 70. If the combined value is 64.4, the decimal fraction is disregarded and the combined value of 64 is rounded off to 60.)

s. Organ Transplants

(1) Joint prosthetic transplants are discussed under codes 5051 through 5056.

(2) Vascular system prosthetics are addressed under the 7000 code.

(3) Service members requiring transplant ordinarily will be Unfit, regardless of their current ability to perform their duties, due to organ failure. This determination will be made based on the fact that the member's duties may seriously compromise his/her health or well being and may also prejudice the best interest of the government if the member were to remain in the military service. The service member should be placed on the TDRL. In those

cases in which a definite or imminent date has been set for transplantation, disposition shall be postponed and residuals rated after the transplantation.

(4) Rate cases that have not come before the PEB before transplantation on the following factors:

(a) Functional status of the transplanted organ.

(b) The need for sustained immunosuppression or its adverse effects. Adverse effects may be rated because of specific infections or by analogy (see enclosure (9), attachment (a), Table of Analogous Ratings).

(5) To encourage organ and tissue donations, NAVMEDCOMINST 6300.8 (NOTAL) authorizes military members to participate in organ donation. Loss of an organ as result of donation of an organ will not become a basis for special duty assignment and such donation by the member may result in subsequent ineligibility for disability compensation for any adverse residuals incurred secondary to organ donation.

t. Rating Principles for Specific Disabilities. Enclosure (9) provides instructions and explanatory notes for rating certain disabilities. This guidance will be followed unless a subsequent change to the VASRD makes the guidance obsolete. The VASRD is a living document and is continuously being revised. Changes to the VASRD will supersede direction contained in this instruction. Where service specific variations are necessary , change transmittals or NCPB policy letters will be generated to cover any special interpretations for new VASRD ratings.

**3805 Assignment Of Aggravation Factors When Prescribed Treatment Is Refused Or Omitted**. Although a service member would not be Fit to continue naval service, a member's degree of disability may have been aggravated or increased by, among other things, an unreasonable failure or refusal to submit to medical or surgical treatment or therapy, to take prescribed medications, or to observe prescribed restrictions on diet, alcohol, drugs, or tobacco. The compensable disability rating may be reduced to compensate for such aggravation or increase when the existence and degree of aggravation are ascertainable by application of accepted medical principles, and where it is clearly demonstrated that:

a. the member was advised clearly (with appropriate documentation) and understandably of the medically proper course of treatment, therapy, medication or restriction; and

b. the member's failure or refusal was willful or negligent, and not the result of mental disease or of physical inability to comply.

**3806-3899 Reserved**

## PART 9 - DES-RELATED SUBMISSION REQUIREMENTS

### 3901 General Requirements For Boards Being Referred For Disability Evaluation

a. Medical Evaluation. The report of the medical board shall make a clear statement of its opinion that the member's condition does or does not render the member "unable to continue naval service by reason of physical impairment." This opinion must be supported by objective medical data displaying the nature and degree of the impairment, if any. Medical board reports must include the results of a complete physical examination and comprehensively describe the physical condition of a member, the nature and extent of the physical impairments and will also include any and all SF 88 and SF 93 forms. The report must include all available information, with adequate documentation of the origin, aggravation by service, and other significant medical facts pertaining to the impairments observed including information on refusal of treatment. The report must include a NMA, see enclosure (11).

b. Explanation Of Apparent Contradictions In The Records. Apparent contradictions in the records, such as the board's disagreement with a report or consultation, should be thoroughly explained. The condition of a patient following therapy, the response thereto, the degree of severity of the disease or injury, and when appropriate, their effect on the member's functional ability must be described in detail.

c. Prohibition Of Conclusion Of Unfitness. The presence of a disease or injury does not, of itself, justify a finding of Unfit. Therefore, medical board reports shall not reflect a conclusion of Unfitness or utilize the term "Unfit" because it could be confused with the definition of Unfit or Not Physically Qualified for continued naval service used within the DES.

### 3902 Line Of Duty/Misconduct Determinations In Injury Cases

a. JAGMAN, chapter II requires line of duty/misconduct determinations for injuries which may result in permanent disability and identifies who is responsible to order and/or conduct them. A medical board convening authority that refers a member for disability evaluation shall include a copy of the line of duty/misconduct determination with the medical board report. Officers in command of MTFs and other convening authorities of medical boards shall request cognizant commands deliver needed line of duty/misconduct determinations with endorsements within 10 days of receipt of the request. Make requests as soon as practicable and not later than the date of convening the medical board.

b. When the command to which a member was attached at the time of his or her injury is unknown, is incapable of conducting a proper investigation, or if an investigation is unduly delayed or not being conducted, the medical board convening authority shall promptly request assistance from the area coordinator, or the subordinate commander authorized to convene general courts-martial (GCM) and designated by the area coordinator for this purpose. See JAGMAN 0205. The GCM authority shall provide prompt assistance to correct deficiencies.

**3903 <u>Inactive-Duty Reservists</u>**. A medical board or other authority referring an inactive-duty reservist for evaluation shall include with the medical board report a copy of the NOE for benefits or affirmatively state that the reservist is not entitled to a NOE under reference (g).

**3904 <u>Prognosis Of Imminent Death</u>**

a. When competent medical authority determines that a Service member's death is expected within 72 hours and it is determined to be in the best interests of his or her estate, the member may be referred expeditiously into the DES. To protect the interests of the Government and the Service member, disposition shall be placement on the TDRL provided all requirements under statute, legal opinions, and regulation are met.

b. In no case shall a Service member be retired after his or her death or before completion of a required Line of Duty determination.

c. Determinations of death shall be made in accordance with accepted medical standards and the laws of the State where the member is located or the military medical standards in effect at an overseas location.

d. Imminent Death medical board reports shall reference applicable State standards. Moreover, Imminent Death Medical Board reports for those members who, according to State standards, have died shall not be forwarded to the PEB for evaluation.

e. See enclosure (12) for a complete discussion of Imminent Death procedures.

**3905 <u>Mental Competency Issues</u>**

a. <u>Reporting Presence Or Absence Of A Determination Of Mental Incompetence</u>. Each medical board report shall affirmatively state whether or not records reflect the member being evaluated is or has ever been declared mentally incompetent or shows medical evidence of mental incompetence.

b. Cases In Which A Statement Concerning Competency Is Required

(1) Any MEB report listing a psychiatric diagnosis must contain a thorough psychiatric evaluation and include the signature of at least one psychiatrist (identified as such) on the MEB report signatory face sheet.

(2) MEB reports with psychiatric diagnoses must have a statement of the member's competency to handle their financial affairs and to understand the proceedings of the board.

c. Determination of Mental Competency Required. When the medical board finds under paragraph 3905 that the member is not capable of managing his/her affairs, the medical board convening authority shall cause a determination of mental incompetency to be made as described in paragraph 3414c. The medical board shall include a copy of this incapacitation evaluation or competency certification in its report.

d. JAG Reporting Requirement. The medical board convening authority shall forward one copy of the medical board report and "Incapacitation " (or competency certification) to the appropriate personnel office as provided in JAGMAN, chapter XIV.

**3906 Attempted Suicide**. In each instance of an attempted suicide, the member concerned shall undergo psychiatric examination, and the report of that examination shall be included in any medical board report submitted for disability evaluation.

**3907 Mental Illness With The Abuse Of Drugs And/ Or Alcohol**. When the abuse of drugs and/or alcohol are significant factors in describing a condition of mental illness, the medical board shall provide detailed information with regard to the type and amount of drugs and/or alcohol used by the member as well as the frequency and duration of such abuse. Moreover, the board shall provide an opinion as to whether the abuse was a consequence of the mental illness, or whether such abuse was voluntary and precipitated the condition of mental illness.

**3908 – 3999 Reserved**

# PHYSICAL EVALUATION BOARD PROCEDURES

## PART 1 - PHYSICAL EVALUATION BOARD POLICY

**4101 The President, Physical Evaluation Board**

a. Reports to the DIRNCPB and performs duties assigned by the DIRNCPB and this instruction.

b. President, PEB shall:

(1) oversee the daily workings and administration of the Informal PEB, Formal PEB, counseling offices, and DES staff;

(2) refer to an appropriate panel the cases of active duty personnel, personnel on the TDRL, inactive-duty reservists, and others referred for consideration as the result of:

(a) reports of medical boards;

(b) periodic physical examinations of TDRL members; and

(c) requests from SECNAV, CHNAVPERS, CMC (M&RA), COMNAVRESFOR, the DIRNCPB, and CHBUMED;

(3) establish and maintain for the DIRNCPB a record in each case;

(4) dispose of case files in accordance with SECNAVINST 5212.5D;

(5) protect the privacy of individuals whose records are reviewed by the PEB in accordance with SECNAVINST 5211.5C;

(6) report to OJAG the name and social security number of each incompetent member accepted for evaluation; and

(7) perform such other specific duties and exercise such other authority as set forth elsewhere in this instruction.

**4102 Legal Review**. Prior to issuing a Findings Letter, the President, PEB will ensure that the case has been reviewed for legal sufficiency:

a. by the OJAG for those cases specified in paragraph 4d(4) of the basic instruction, or

b. under the supervision of an attorney, for all other cases.

**4103 Error On Legal Review**

a. If the President, PEB concurs with the determination of the legal reviewer that there is an error, he may direct or take corrective action.

b. If the President, PEB does not concur with the legal reviewer, refer the case to the DIRNCPB for action consistent with paragraph 4c of the basic instruction.

**4104 Cancellation And Correction Of Findings Letters And Notification Of Decision Letters**

a. The President, PEB may modify or cancel Findings Letters and Notification of Decision Letters, and direct appropriate substitute disposition in those cases in which:

(1) there is determined to have occurred an administrative, clerical, legal, or mathematical error in the record of proceedings, and the correction does not affect the disposition of the individual or change the computation of disability compensation on the basis of percentage of disability;

(2) the member has been discharged under other provisions of law;

(3) the member has been rehospitalized or is pending surgery, provided retirement or separation has not occurred;

(4) a member has demanded a hearing after having previously accepted findings following an Informal PEB; or

(5) such action is directed by the SECNAV or the DIRNCPB.

b. If the correction of an error would affect the disposition or adversely change the computation of disability retirement pay, the President, PEB may modify or cancel Findings Letters and Notification of Decision Letters. The member shall be notified and given 15 days from receipt of such notice in which to submit a PFR before such correction is made.

**4105 Processing Final PEB Findings From A Formal PEB**. Following a Formal PEB and subject to legal and quality assurance review requirements discussed in this instruction, the President, PEB will issue the PEB findings.

a. In cases where the case is approved on review, the President, PEB shall issue the findings of the Formal PEB as the PEB findings.

b. In cases where an error is identified on legal review, the President, PEB shall handle the case in accordance with paragraph 4103.

c. In cases where an error is identified in a quality assurance review, the President, PEB may request the DIRNCPB invalidate the proceedings and order a de novo Formal hearing. If the DIRNCPB orders a de novo Formal PEB hearing, all records of the earlier formal hearing shall be temporarily removed from the record before forwarding to the de novo panel.

**4106** **Processing Special Interest Cases**. See paragraph 3105 Special Interest Cases, or paragraph 3704 Flag and Medical Corps Officers.

**4107** **Processing TDRL Cases**. See enclosure (3), part 6.

**4108** **Processing Requests For Permanent Limited Duty (PLD) Status**. See enclosure (6).

**4109** **Processing Fit To Continue Naval Service Cases When Member Requests A Formal Hearing**

a. A member who has been found Fit to continue naval service or Physically Qualified for continued naval service from the review of the Informal PEB has no right to a hearing or a Petition for Relief by DIRNCPB.

b. The President, PEB, may grant a request for a hearing before a Formal PEB or recommend to the DIRNCPB, that the request be denied. The DIRNCPB, upon review of the case may grant the request for a hearing or deny it. The decision of the Director in any case will not be subject to appeal.

**4110** **Processing Cases Containing A Condition Not Constituting A Physical Disability**. See paragraph 2016.

a. If a medical board reports only a condition or defect not constituting a disability, the case shall be referred by the President, PEB, without findings, to CHNAVPERS or CMC (M&RA), for appropriate action.

b. If a medical board reports conditions that include both physical disabilities and conditions not constituting physical disabilities, only the former shall be considered in determining the member's Fitness to continue naval service. If the member is Fit to continue naval service, but may be unsuitable for continued military service due to a condition not constituting a physical disability, the case will be forwarded to the appropriate service headquarters for action as described in (a) above, unless the member is accorded a Formal PEB. If still found Fit at the Formal PEB, the case will then be forwarded to the service headquarters.

**4111 Categorization Of Findings**. All PEB findings should be arranged into four categories for members found Unfit to continue naval service:

a. Category I: All Unfitting Conditions

b. Category II: Those Conditions That Are Contributing to the Unfitting Condition.

c. Category III: Those Conditions That Are Not Separately Unfitting, And Do Not Contribute To The Unfitting Condition.

d. Category IV: Conditions Which Do Not Constitute A Physical Disability.

Note: only Category I conditions will be rated by the PEB.

**4112 - 4199 Reserved**

## PART 2 - INFORMAL PHYSICAL EVALUATION BOARD

**4201 General Functions Of Informal PEB**. The Informal PEB shall screen incoming cases for acceptance and, if accepted, perform the initial disability evaluation on the basis of documentary review of case records. The panel shall follow the policies and procedures set forth in this instruction.

**4202 Panel Composition**

a. An Informal PEB shall be composed of three members: two line officers (normally a Navy line officer and a Marine Corps officer), and a Medical Corps officer. All members shall be senior military officers (O-6 preferred) selected on the basis of wide military experience, proven performance and education. All Medical Corps officers assigned shall possess a wide cross-section of clinical experience.

b. One of the two line officers shall be the Presiding Officer for each Informal and Formal PEB. While not mandatory, it is preferred that the Presiding Officer be the line officer of the same service as the member being considered. The Presiding Officer shall be the principal service representative on the panel.

c. All members of a panel shall be assigned by the DIRNCPB and report to the President, PEB.

d. While not mandatory, it is strongly preferred that the Presiding Officer of a panel be a Navy line or Marine Corps officer in the grade of O-6 or above and that the Presiding Officer be of the same service as that of the member being considered. However, in every circumstance, the Presiding Officer shall be at least in the grade of O-5.

e. The composition of a panel shall be consistent and shall not be altered by reason of the grade, status or organization of a member under disability evaluation, except as specified in paragraphs 3108 and 4204 or by specific direction of the DIRNCPB.

**4203 Reserve Membership**. See paragraph 3110a.

**4204 Alternate Members**

a. In the absence of a principal member, an alternate member may sit on a panel. However, no more than one alternate member may sit on any panel and the use of alternate members shall be limited as much as possible to preserve equity and consistency.

b. Alternate members must be in the grade of 0-5 or above. An alternate line member may be of the same service as the Presiding Officer. However, one of the line officers on a panel will normally be of the same service as the member being evaluated.

c. CHNAVPERS, CMC (M&RA), and CHBUMED shall designate in advance and provide alternate panel members including funding for Navy and Marine Corps reservists, as requested by the President, PEB.

**4205** **Administrator**. A member of the PEB shall be assigned as Administrator of the Informal PEB, and is responsible to the President, PEB for the leadership and management of day-to-day panel affairs.

**4206** **Recorders**. The President, PEB shall assign to the Informal PEB at least one Recorder to assist with administrative processing. Recorders shall be Navy or Marine Corps officers. Recorders report to the Deputy President, PEB.

**4207** **Oaths**. Each panel member shall act under oath or affirmation.

**4208** **Preliminary Findings**

a. Preliminary findings shall be reached through a majority vote of panel members.

b. In arriving at preliminary findings, a panel shall comply with this instruction.

c. Each finding made, which is concurred in by a majority of a panel, shall constitute the preliminary PEB findings or action of the panel.

d. Record votes of individual members in the panel's records.

e. Any dissenting member of a panel shall make a minority report concerning those particulars in which he or she does not agree with the action of the panel. The report will become part of the record. Reference will be made to its attachment in the space provided for minority findings.

f. Preliminary findings as the result of record review shall be set forth in writing.

g. The preliminary findings in each case shall be recorded in summary form and attached to the record. Detailed case analyses or rationales shall not normally be prepared, except in specific instances. In those specific cases, as defined by the President, PEB, justification will be recorded on the Informal PEB workcard.

**4209** **Documents To Be Reviewed**. Base findings upon review of documents namely:

a. medical board reports and associated documents together with endorsements of convening authorities and statements of members referred for disability evaluation;

b. line of duty/misconduct determinations, when appropriate;

c. statements of service, when appropriate;

d. reports of periodic physical examination (TDRL), when appropriate;

e. reports of special consultations, when appropriate;

f. statements of non-medical information as to the observation by the reporting senior of performance of duty, see enclosure (11) (Non-Medical Assessment Form);

g. fitness reports and performance evaluations supplied by the CHNAVPERS or the CMC (M&RA), as they apply to disability evaluation, when appropriate;

h. NOEs, when appropriate;

i. member's health record; and

j. any other pertinent materials.

**4210 Eligibility Determinations**. Include certain eligibility determinations in the record, but they need not be published to the member in the findings. If the member is found to be Unfit to continue naval service, the determinations may be:

a. the disability (was)(was not) (incurred)(aggravated) while entitled to receive basic pay;

b. the disability (is)(is not) the result of intentional misconduct or willful neglect, and whether such disability (was)(was not) incurred during a period of unauthorized absence;

c. (select appropriate finding)

(1) the disability (is)(is not) the proximate result of active duty or inactive-duty training (because of aggravation, when applicable), or

(2) the disability (was)(was not) incurred in line of duty in time of war or national emergency, or

(3) the disability (was)(was not) (incurred)(aggravated) after 24 September 1975;

d. the disability (is)(may be) permanent; and

e. the disability is ratable in accordance with the VASRD and this instruction.

**4211 Format Of Findings**

a. Cases of Active Duty Members and Inactive-Duty Reservists who have been Issued a Notice Of Eligibility, or are referred under the provisions of paragraph 3201b(3). A panel shall find that the member is Fit to continue naval service, or Unfit to continue naval service because of physical disability:

(1) If the member is Fit to continue naval service, panel evaluation is complete.

(2) If the member is Unfit to continue naval service:

(a) The disability (was)(was not) (incurred) (aggravated) while entitled to receive basic pay;

(b) The disability (is)(is not) the result of intentional misconduct or willful neglect, and whether such disability (was)(was not) incurred during a period of unauthorized absence;

(c) The disability (is)(is not) stabilized at the present degree of impairment; and

(d) The disability is ratable at (percentage);

(e) The disability (is)(is not) combat related as defined by section 104 of the Internal Revenue Code. See paragraphs 3501 through 3507.

b. Cases Of Inactive-Duty Reservists Not Eligible For Disability Benefits. When the member is an inactive-duty Reservist who has not been issued an NOE authorizing disability benefits, the only findings to be made are:

(1) Physically Qualified, or

(2) Not Physically Qualified for active duty in the Naval or Marine Corps Reserve.

c. Cases Of Members On The TDRL Being Recommended For Administrative Removal From The TDRL. See enclosure (3), part 6.

d. Signatures. Preliminary findings following the Informal PEB shall be signed by the Deputy (PEB), the Presiding Officer of the Informal PEB, or by officers designated by the President (PEB), "By direction of the President, PEB." A copy is sufficient for delivery to the member.

**4212 Completion Of Evaluation**. Upon completion of review by a Informal PEB:

a. The Informal PEB shall refer all cases to the President, PEB for further processing.

b. President, PEB shall assign to a Formal PEB:

(1) all cases of members found Unfit to continue naval service in which the member demands a hearing,

(2) all cases in which a member having been found Fit to continue naval service, requests a hearing, and the request is granted by the President, PEB or DIRNCPB.

(3) TDRL members found Fit who demand a Formal PEB.

(4) such other cases as are deemed appropriate by the DIRNCPB;

c. President, PEB shall refer requests for PLD status in accordance with enclosure (6) of this instruction.

d. President, PEB shall process special interest cases in accordance with paragraph 4106.

e. President, PEB shall issue a Findings Letter in all other cases which are not going to a Formal PEB.

**4213** **<u>Notification To Member And Options</u>**. Findings following an Informal PEB will be transmitted to the member by certified mail, facsimile, hand delivery, or verbally, offering the following options, where applicable:

a. Fit To Continue Naval Service Findings:

(1) Accept the finding of Fit to continue naval service, or

(2) Disagree with the finding of Fit to continue naval service and request reconsideration.

(a) The member shall provide new medical information or significant non-medical assessment not previously available or considered for reconsideration.

(b) If the member fails to submit new medical information or significant non-medical assessment that would alter the case, the Presiding Officer of the Informal PEB will deny reconsideration of the case.

(c) In those instances where new medical information or significant non-medical assessment have been considered but results in no change to Informal PEB findings,

then the Presiding Officer of the Informal PEB recommends to the DIRNCPB via the President, PEB whether a Formal PEB should be granted.

(d) The criteria the Presiding Officer is to use in determining whether to grant or deny reconsideration is whether the member has provided new or additional information and whether that new or additional information is beyond that previously considered by the Informal PEB; or is new medical information provided that would materially warrant a change to the previous findings. The member must also state whether or not a hearing is desired if the Fit to continue naval service finding remains unchanged.

(e) If the finding of Fit to continue naval service finding is confirmed upon reconsideration, there is no right to a hearing.

(f) Active duty and Reserve component members, see paragraph 3701.

(g) TDRL personnel will be given the option of either returning to active duty, being discharged from the naval service, or demanding a Formal PEB, see paragraphs 3625, 3627, and 4213a (2).

(h) The President, PEB, or DIRNCPB may grant a request for a hearing when deemed necessary to preclude an error or injustice, see paragraph 4109.

(i) If a member does not request a hearing or a hearing request is denied the Informal PEB findings become final.

(j) If upon reconsideration the finding is changed to Unfit to continue naval service then the member is entitled to receive a new notification and to be presented with his/her applicable options.

b. Unfit To Continue Naval Service Findings:

(1) Accept the findings and waive the right to a hearing. In this case, the Informal PEB findings then are referred to the President, PEB, who shall issue and promulgate them.

(2) Disagree with the findings and exercise the right to demand a full and fair hearing. In this case, the President, PEB, will refer the case to a Formal PEB. If the member disagrees only with the combat-related/taxability opinion, then the member may appeal that aspect of the case to the OJAG. The limited issue of combat-related/taxability does not affect the ultimate disposition of the case within the Department of the Navy and therefore does not prevent finality. Accordingly, such cases are treated as accepted and they shall be handled as described in subparagraph (1) above.

c. Physically Qualified For Continued Naval Service Findings:

(1) Accept the finding of Physically Qualified, or

(2) Disagree with the finding of Physically Qualified for continued naval service and request reconsideration. The member must provide new medical information not previously available or considered for reconsideration. The member also must state whether a hearing is desired if the Physically Qualified for continued naval service finding remains unchanged. If Physically Qualified for continued naval service finding is confirmed upon reconsideration there is no right to a hearing and case consideration is complete unless the President, PEB, or the DIRNCPB grants a request for a hearing when deemed necessary to preclude an error or injustice, see paragraphs 3701 and 4109. If upon reconsideration, the finding is changed to Not Physically Qualified for continued naval service, then the member is entitled to receive a new notification and to be presented with his or her applicable options. If a member does not request a Formal PEB or a Formal PEB request is denied, the Informal PEB findings become final.

d. Not Physically Qualified For Continued Naval Service Findings:

(1) Accept the findings and waive the right to a hearing. In this case, the Informal PEB findings are referred to the President, PEB, who shall issue and promulgate them.

(2) Disagree with the Informal PEB findings and demand a full and fair hearing. In this case, the President, PEB, will refer the case to a Formal PEB.

**4214 Acceptance/Non-Acceptance Of Findings**

a. Following counseling as to available options, the member shall indicate acceptance or non-acceptance of the findings of the Informal PEB. If the member either has conditionally or unconditionally accepted the Preliminary Findings, and new medical information develops, the member can request to the President, PEB that this information be considered. The President, PEB will decide the relevancy of this new medical information and, if determined relevant, will schedule a Formal PEB. The Informal PEB will not reopen to consider this information.

b. In those instances in which the member can fully understand the findings following an Informal PEB, but due to physical impairment, is unable to accept or non-accept the findings by signing his or her name, the member's election will be valid if witnessed by a notary, or by two persons, one of whom may be the treating physician.

c. Incompetents. When the member has been determined to be incapable of managing his or her financial affairs by a board of medical officers convened and constituted in accordance with reference (f) (MANMED), Chapter 18, the member's spouse, next of kin, or court appointed guardian will be counseled and afforded the opportunity to exercise the member's options as discussed in paragraph 4213.

d. See paragraph 3414 for other special situations in which a member is mentally unable to comprehend and make elections concerning findings following records review.

e. Once a member elects to accept the findings, the PEB is authorized to issue a Notification of Decision to the appropriate service headquarters. When the Notification of Decision is issued the member's case is considered final. This finalization may occur prior to the end of those 15 calendar days depending on when the member signs the Election of Options form. If the member changes his/her mind after returning the signed Election of Options form, but before the 15 calendar days have run, action in accordance with the change of mind will be taken only if the PEB has not issued the En bloc. If the En bloc has not been issued, the most recent election of options made by the member shall be the decision upon which the PEB will proceed to process the member's case.

**4215 Conditional Acceptance**

a. If Unfit to continue naval service, notwithstanding paragraph 4214, a member may conditionally accept Informal PEB findings. Such an acceptance means that if the government does not comply with the condition requested, the findings are not accepted. The member must indicate whether he or she desires a Formal PEB if the condition is not met.

b. No conditional acceptances will be permitted after expiration of the 15-day response period allotted for members to complete their election of options form and notify the PEB via the PEBLO Counselor. Unconditional acceptances will continue to be accepted at any time prior to the conduct of the Formal PEB.

**4216 Presumed Acceptance**. If no response to the Findings Letter is received by the PEB within 15 calendar days of hand delivery or receipt of certified mail by the member or legal representative concerned, acceptance of the Informal PEB findings is presumed. Receipt by a member's attorney of the written findings constitutes receipt by the member. In the case of personnel on the TDRL only, acceptance also is presumed 15 calendar days after attempted unsuccessful delivery of certified mail to the last known address of the member. Once acceptance is presumed, the President, PEB, shall issue the findings.

**4217 Assignment Of Legal Counsel**. There is no right to legal counsel during the Informal PEB. However, a member may consult with legal counsel at no expense to the Government.

**4218 - 4299 Reserved**

## PART 3 - FORMAL PHYSICAL EVALUATION BOARD HEARINGS

### 4301 Purpose And Overview

a. No active duty or reserve member of the naval service found Unfit by the Informal PEB may be retired or separated for physical disability without the right to a Formal PEB hearing. Acceptance of the Informal PEB findings constitutes waiver of the right to a Formal PEB (10 U.S.C. 1214). As a matter of policy, although not required by statute, no member of the reserve component shall be separated for being Not Physically Qualified for continued naval service without a Formal PEB hearing unless he or she waives the right. TDRL members determined Fit shall be entitled to a Formal PEB hearing since removal from the TDRL represents a change in military status. The President, PEB shall provide such hearings when required.

b. Formal PEB hearings also may be conducted by the PEB as information gathering bodies for the development of cases when directed by the President, PEB or DIRNCPB under paragraph 4 of the basic instruction, see paragraphs 1004c (2), 4212b(2), or 4212b(4). The proceeding is non-adversarial and formal rules of evidence do not apply. Members of a hearing panel are charged with making findings concerning Fitness and eligibility for disability benefits and must protect the interests of both the member and the government.

c. A Formal PEB hearing provides an opportunity for the member to present additional material to support his or her case. Once a hearing has convened, any preliminary findings of the Informal PEB are null and void and are of no precedential value to the Formal PEB or the member.

d. Service members requesting a Formal PEB should be encouraged to submit a rebuttal identifying the issues of disagreement with the Informal PEB's findings and recommendations.

### 4302 Functions Of Formal PEB

a. To conduct formal hearings pertaining to disability evaluation of members of the naval service as required by 10 U.S.C. 1214 and this instruction;

b. To evaluate on the basis of formal hearings attended by a member and/or counsel:

(1) physical fitness (or physical qualification in the case of an inactive-duty member of the Naval or Marine Corps Reserve) of a member for active duty; and

(2) if found Unfit to continue naval service, the entitlement of the member to benefits authorized by 10 U.S.C., Chapter 61;

c. To refer Formal PEB findings to the President, PEB for review, issuance and promulgation; and

d. To protect the privacy of individuals whose records are reviewed under SECNAVINST 5211.5D.

**4303 Panel Composition**

a. A Formal PEB hearing panel normally shall be composed of three members, a Navy line officer, a Marine Corps officer, and a Medical Corps officer, all senior military officers selected on the basis of wide medical and/or military experience, proven performance and education. All Medical Corps officers assigned shall possess a wide cross-section of clinical experience.

b. All members of Formal PEB hearing panels shall be assigned by the DIRNCPB and report to the President, PEB.

c. The Presiding Officer for a Formal PEB hearing shall be a Navy line or Marine Corps officer in the grade of 0-6 or above. While not mandatory, it is preferred that the Presiding Officer be of the same service as that of the member being considered.

d. The composition of panels shall be consistent and shall not be altered by reason of the grade, status or organization of a member under disability evaluation, except as specified in paragraphs 3108 and 4305, or by specific direction of the DIRNCPB.

**4304 Reserve Membership**. See paragraph 3110a.

**4305 Alternate Members**

a. In the absence of a principal member, an alternate member may sit on a panel. However, no more than one alternate may sit on any panel and the use of alternate members shall be limited as much as possible to preserve equity and consistency.

b. Alternate members must be in the grade of 0-5 or above. An alternate line member may be of the same service as the Presiding Officer. However, one of the line officers on a panel must be of the same service as the member being evaluated.

c. CHNAVPERS, CMC (M&RA), and CHBUMED shall designate in advance and provide alternate panel members including funding for Navy and Marine Corps reservists, as requested by the President, PEB.

d. Changes in alternate member nominations shall be held to a minimum so as to retain as high a degree of expertise as practicable on the panels.

e. Alternates shall be carefully instructed in the provisions of this instruction by the Administrator. In addition, an alternate must observe at least one full hearing, including deliberations, before actually sitting as a panel member. A prospective alternate may not discuss the case or vote while observing deliberations.

**4306 Administrator**. A panel member at each hearing panel site shall be assigned as Administrator. He or she shall be responsible for the leadership and management of day-to-day panel affairs.

**4307 Counsel**. Each panel shall be assigned the continuous services of no less than two judge advocates for a period of not less than 6 months. They shall act as Counsel for members appearing before the panels. These Counsel shall be provided from the staffs of appropriate Naval Legal Service Offices, or from such other sources as may be designated by the JAG. They shall be qualified under 10 U.S.C. 827b (Article 27(b), UCMJ). The principles attendant to the use of alternate members in paragraph 4305d, apply to military lawyers as well.

**4308 Counsel For The Panel**

a. At the discretion of the Presiding Officer of a panel, an attorney who is not involved in a particular case as Counsel for the Member may be assigned as Counsel for the Panel.

b. A civilian employed by the government who is a member of the bar of a Federal court or the highest court of a state may be appointed as Counsel for a Panel.

**4309 Duties Of Counsel For The Panel**. Counsel for the Panel shall:

a. ensure that the panel has before it information to ascertain as accurately as possible:

(1) the circumstances in which the physical impairment was incurred, and

(2) the extent of the disability;

b. when requested by the Presiding Officer, present the evidence and represent the government during the hearing;

c. when requested by the Presiding Officer, question witnesses so as to impartially elicit all available evidence.

**4310 Representation By Counsel**

a. Military Counsel. In order to provide maximum pre-hearing preparation time, to minimize unnecessary travel and to avoid hearing delays, a military lawyer will be detailed as Counsel for the Member immediately subsequent to the receipt of a case by a panel. Members

appearing before a Formal PEB hearing have the right to be represented by a designated military lawyer at no expense to the member. A military lawyer, other than those regularly assigned to the panel, shall be provided upon request only if reasonably available and at no additional expense to the government.

b. Civilian Counsel. Members appearing before a Formal PEB have the right to be represented by Counsel of their own choice provided by the member and at no expense to the government. This right includes the ability of the member to choose a non-lawyer to represent him or her.

c. Associate Counsel. When a member (or legal guardian or next-of-kin in incompetent cases) elects counsel of his or her choice, the military lawyer assigned shall act as associate counsel if requested to do so.

**4311 Independence Of Military Counsel**. Formal PEB members shall not limit or interfere with Counsel's ability to fully represent their clients in any way. The scope of Counsel's representation is a matter between the member and Counsel only.

**4312 Duties Of Counsel For The Member**

a. The military lawyer assigned as Counsel for a member shall represent the member being evaluated unless the member refuses counsel or elects other counsel of his or her choice. In the case of an incompetent, the military lawyer assigned shall act in that capacity in all cases except when a duly appointed guardian, spouse or next of kin obtains or requests other counsel.

b. A lawyer who acts as Counsel for the Member shall:

(1) confer with and fully advise the member of legal and other substantive considerations in his or her case;

(2) represent the member, presenting to the panel information and arguments in support of the member's case and interests;

(3) arrange for the presence of desired witnesses and evidence in support of the member's case;

(4) interview witnesses prior to the hearing and question them during the hearing;

(5) counsel the member regarding Formal PEB findings and options open to the member, and recommend courses of action that are most favorable to the member which are consistent with the letter and intent of statutes, regulations and directives addressing disability evaluation and administration;

(6) advise the member and assist, if requested, in the submission of a request for PLD;

(7) advise the member of the requirements of a PFR;

(8) prepare or assist in the preparation of a PFR at the request of the member;

(9) prepare or assist in the preparation of an appeal of the combat-related/taxability opinion of the PEB at the request of the member; and

(10) in the case of incompetents, fully inform the court-appointed guardian, or, if no guardian has been appointed by a court, the member's spouse or next of kin, of the legal and factual issues in the case and act following the wishes of the guardian, spouse or next of kin, as appropriate, if those wishes do not conflict with the proper exercise of the responsibilities of Counsel concerning the member's interests.

**4313 Personal Appearance**. A member shall have the right to appear personally at the Formal PEB, which may include video teleconferencing, unless such appearance proves impracticable because the member cannot travel (e.g., the member is incarcerated or incapacitated).

a. If the member's conduct or statements create a potential security risk to board members and/or other personnel, local security police shall be alerted and appropriate security precautions shall be taken.

b. Unless the Formal PEB hearing is directed by SECNAV, members of the Ready Reserve with nonduty-related impairments are responsible for their personal travel and other expenses.

**4314 Waiver Of Personal Appearance**

a. Actual Waiver. Members have the right to waive their personal appearance before a Formal PEB. In such cases, Counsel must represent the member during the hearing.

b. Constructive Waiver. After due notification of the time and place of a hearing, failure to appear before a Formal PEB on the part of the member, his or her counsel, and, in incompetent cases, the guardian, spouse or next of kin, shall be considered as a waiver by the member of his or her right to personally appear unless it is reasonably shown that the failure was through no fault of the party failing to appear. The hearing shall proceed "in absentia" and the Presiding Officer will include in the record a statement of the circumstances as well as evidence of notification.

**4315 Late Appearances**. Late appearances, while an "in absentia" hearing is in progress, shall be heard.

**4316** **Access To Records**. Service members shall have the right of access to all records and information received by the PEB before, during, and after the formal hearing that may affect the findings of the PEB or appellate review authority.

**4317** **Scheduling Of Formal PEB Hearings**. The Administrator of each Formal PEB shall establish the date and time of each hearing, subject to the following guidance:

a. Cases Involving Incompetent Members. If, after counseling by Counsel for the member, the guardian, spouse or next of kin, does not waive the right of the member to a hearing within 15 calendar days of counseling, schedule the case for a hearing.

b. Inadequate Information

(1) Hearings will not be scheduled unless all necessary records will be available and ready for review by the Formal PEB and the member, his or her counsel, guardian, spouse or next of kin for a reasonable period prior to the commencement of the hearing.

(2) Each panel shall ensure that it has available the necessary information for competent decision.

c. Extensions

(1) An Administrator may authorize an extension of the above times upon presentation by the member or his or her counsel of substantial grounds for such extension. In such instances, the delay shall be the minimum reasonable on the basis of the grounds presented.

(2) Notwithstanding (1) above, except as specifically authorized by the President, PEB, conclude each requested hearing within 45 days following receipt of the case at the hearing site.

**4318** **Formal PEB Hearings - Presiding Officer**. Presiding Officers shall preside over all sessions of a hearing and speak for the panel in findings matters. The Presiding Officer is responsible for the accuracy and completeness of the records forwarded to the President, PEB.

**4319** **Formal PEB Hearings - Open Session And Conduct**

a. Conduct hearings in open session unless, in the opinion of the Presiding Officer, such would be prejudicial to the objective of attaining a full and fair hearing, or unless a closed hearing is requested by the member. The adjudicatory function of panel members is paramount. Members should avoid conduct which is or could be construed to be investigatory or prosecutorial.

b. Conduct hearings with dignity and decorum and with the objective of eliciting all the facts bearing on a case. Encourage witnesses to contribute to this objective.

c. If the member's conduct or statements create a potential security risk to board members and/or other personnel, alert local security police and take appropriate security precautions.

**4320** **<u>Formal PEB Hearings – Uniform</u>**. Active duty personnel and inactive-duty reservists shall appear in the site's uniform of the day for hearings unless specifically excused by the Presiding Officer from doing so.

**4321** **<u>Formal PEB Hearings – Oaths</u>**. Each panel member and Reporter shall act under oath or affirmation. Witnesses shall be sworn in by the Presiding Officer or by Counsel for the Panel if one is assigned.

**4322** **<u>Formal PEB Hearings - Interlocutory Issues</u>**. Presiding Officers shall rule on all interlocutory questions except challenges. These rulings may be objected to by other panel members, in which case, decide the matter by a majority vote of the members in closed session.

**4323** **<u>Formal PEB Hearings - Challenges</u>**

a. Any Formal PEB panel member may be challenged by an individual undergoing physical disability evaluation at any time during the hearing for cause stated to the panel. The Presiding Officer shall not receive a challenge to more than one member at a time. After disclosing grounds for a challenge, the challenging individual may examine the panel member. This examination shall be recorded verbatim. Counsel for the Panel, if assigned, may cross-examine the member who has been challenged. After all questions have been put and answered, any other evidence bearing on the panel member's Fitness to serve shall be heard.

b. The burden of sustaining a challenge is on the individual who made the challenge. The challenged panel member shall withdraw when the hearing is closed to vote upon the challenge. One vote of the remaining members is enough to sustain the challenge. The panel shall decide the challenge according to the preponderance of the evidence. When a challenge is sustained, the Presiding Officer of the panel or the remaining senior member will call alternate panel members.

**4324** **<u>Formal PEB Hearings - Recesses And Continuances</u>**

a. Presiding Officers may recess or adjourn a case where substantial reason is made apparent. However, a case may not be delayed for more than 30 days without the approval of the President, PEB.

b. Continuances of a hearing are not a matter of right, they are a matter of discretion. The decision to grant or deny a request for continuance shall be solely within the discretion of the President, PEB. Written request from the Administrator of the Formal PEB shall be submitted in writing documenting substantial reasons for the continuance and subsequent rescheduling of the case.

**4325 Formal PEB Hearings - Procedural Guide**. A procedural guide issued by the DIRNCPB shall be followed in all hearings.

**4326 Formal PEB Hearings – Objections**. Objections may be made to any action (other than a challenge) taken or proposed to be taken by a panel, as well as to the admission of testimony. Objections, when made, are recorded as part of the proceedings. The Presiding Officer must note in the record the ruling on any objections that may be offered. The Presiding Officer rules upon objections. However, if any other panel member dissents from the Presiding Officer's ruling, the entire panel rules upon the objection in closed session. The ruling is the decision of the majority of the panel and is announced on the reopening of the hearing.

**4327 Formal PEB Hearings - Admission Of Evidence And Testimony**

a. Before taking testimony, the Presiding Officer shall, for the record, officially receive all papers pertaining to the case in open session. These papers may be inspected by the member and his or her counsel during the hearing.

b. The Formal PEB shall consider all documentary evidence transmitted to it by proper authority. A panel, in addition, may require and examine records as may be in Department of the Navy files that relate to issues before the panel. All evidence having probative value as to the determination of issues may be considered. In consideration of the weight and probative value to be accorded evidence, the members of a panel are expected to utilize their background and experience, their common sense and their knowledge of human nature and behavior. In every case, the testimony of the member concerned shall be considered in connection with all the evidence adduced and given such weight, as the panel may believe it merits. When the testimony presented at the hearing indicates that the member claims to have disabilities not disclosed by the official medical records or presents evidence sharply in conflict with official medical records, and the issue thus drawn is not one that can be readily resolved by the observation of the panel, there shall be further development of the case by requesting further physical examination, special studies, or further investigation by appropriate agencies; and the hearing shall be adjourned until such development has been accomplished. Findings of a panel shall be based upon evidence consistent with a reasonable probability of truth.

c. Members undergoing disability evaluation before a Formal PEB shall be permitted to introduce witnesses, depositions, documents, sworn (affidavits) or unsworn statements or other evidence in their behalf and to question all witnesses who testify at the hearing.

d. Members may make oral or written statements.

e. Members may elect not to offer evidence or testimony.

f. Members may not be required to sign any statement touching upon circumstances surrounding the origin, incurrence or aggravation of any disease or injury (10 U.S.C. 1219).

g. Members and witnesses introduced by them may be questioned by members of the panel regarding evidence or testimony submitted by them.

h. Testimony of witnesses shall be taken under oath or affirmation unless otherwise requested by the member, his or her counsel, guardian, spouse, or next of kin.

i. Members have the right to remain silent. When the member exercises this right, the member may not selectively respond, but must remain silent throughout the hearing.

**4328 Formal PEB Hearings – Witnesses**. A panel may obtain military witnesses whose presence is requested by the member or member's counsel, if witnesses are reasonably available and if, in the opinion of the panel, their testimony is essential or contributes materially to the case. Article 49, UCMJ (10 U.S.C. 849), is used in determining reasonable availability of witnesses. The use of affidavits or depositions to obtain testimony of witnesses is encouraged. A panel may obtain military witnesses considered necessary to complete its findings and to comply with the legal requirements of a full and fair hearing. To assure the attendance of a military witness, the Administrator of a panel will request the proper commander make the necessary arrangements for the timely presence of the witness, provided the witness is reasonably available. If the commander considers that the witness is not reasonably available, he or she shall provide a statement giving the reasons therefor, and this statement shall be appended to the record.

**4329 Formal PEB Hearings - Findings**

a. Findings shall be reached through a majority vote of the panel members.

b. In arriving at findings, a panel shall comply with this instruction.

c. Each finding made, which is concurred in by a majority of a panel, shall constitute the PEB findings subsequent to legal review.

d. Record votes of individual members in the panel's records of proceedings and findings.

e. Any dissenting member of a panel shall submit a minority rationale concerning those particulars in which he or she does not agree with the action of the panel. The rationale will become part of the record.

f. Set forth findings in writing, in summary form, and attached to the record. The Presiding Officer shall sign them. Also, see paragraph 4342.

**4330 Formal PEB Hearings - Basis Of Findings**

a. Each panel shall make findings with regard to the physical fitness for active duty (or physical qualification for active duty in the case of an inactive-duty member of the Naval or Marine Corps Reserve) on the basis of a formal personal hearing conducted in the presence of the member being evaluated, unless such appearance is waived or would be injurious to health, and/or his or her counsel.

b. In connection with each formal hearing, a panel shall consider the following information when applicable:

(1) physical evidence presented;

(2) statements of the member, his or her counsel, and/or witnesses testimony;

(3) medical board reports and associated documents, together with endorsements of convening authorities and statements of members referred for disability evaluation;

(4) line of duty/misconduct determinations;

(5) statements of service;

(6) reports of periodic physical examination (TDRL);

(7) reports of special consultations;

(8) statements of non-medical information as to the observation by the reporting senior of performance of duty of the member being evaluated;

(9) fitness reports and performance evaluations supplied by the CHNAVPERS or the CMC (M&RA), as they apply to disability evaluation;

(10) NOEs; and

(11) any other pertinent matters prior to conclusion of the hearing.

**4331 Formal PEB Hearings - Eligibility Determinations.** Each panel shall determine a member's statutory eligibility for benefits as required by 10 U.S.C., Chapter 61 and enclosure (3) to this instruction. Include eligibility determinations in the record but; they need not be

published to the member in the findings. These determinations are, if Unfit to continue naval service:

a. the disability (was)(was not) (incurred)(aggravated) while entitled to receive basic pay;

b. the disability (is)(is not) the result of intentional misconduct or willful neglect, and whether such disability (was)(was not) incurred during a period of unauthorized absence;

c. (select appropriate finding)

(1) the disability (is)(is not) the proximate result of active duty or inactive duty training (because of aggravation, when applicable), or

(2) the disability (was)(was not) incurred in line of duty in time of war or national emergency, or

d. the disability (is)(may be) permanent; and

e. the disability is ratable in accordance with the VASRD and this instruction.

**4332 <u>Formal PEB Hearings - Inadequate Information</u>**. If a panel is unable to make findings because of inadequate information, the Presiding Officer shall take appropriate action to obtain the necessary information before proceeding further.

**4333 <u>Formal PEB Hearings – Deliberations</u>**. Upon completion of the presentation of a case, a panel shall be closed for deliberation. Except as provided in paragraph 4305 (e), no person, other than the voting members, shall be present during closed sessions. The voting members then arrive at the PEB findings as prescribed in this Part.

**4334 <u>Format Of Findings</u>**

a. <u>Cases Of Active Duty Members And Inactive-Duty Reservists Who Have Been Issued An NOE</u>. The Formal PEB shall determine that the member is Fit to continue naval service or Unfit to continue naval service; and

(1) If the member is Fit to continue naval service, Formal PEB evaluation is complete; or

(2) If the member is Unfit to continue naval service:

(a) The disability (was)(was not) (incurred) (aggravated) while entitled to receive basic pay;

(b) The disability (is)(is not) the result of intentional misconduct or willful neglect, and whether such disability (was)(was not) incurred during a period of unauthorized absence;

(c) The disability (is)(is not) stabilized at the present degree of impairment;

(d) The disability is ratable at (percentage); and, if applicable,

(e) The disability (is)(is not) combat related as defined by section 104 of the Internal Revenue Code. See paragraphs 3501 - 3507.

b. Cases Of Inactive-Duty Reservists Not Eligible For Disability Benefits. When the member is an inactive-duty reservist who is not eligible for disability benefits, under 10 U.S.C., Chapter 61; i.e., under SECNAVINST 1770.3B and reference (b), the member has not been issued an NOE, or the member is not referred under the provisions of paragraph 3201b(3), the only findings to be made are:

(1) Physically Qualified for continued naval service in the Naval or Marine Corps Reserve, or

(2) Not Physically Qualified for continued naval service in the Naval or Marine Corps Reserve.

**4335 Categorization Of Findings.** See paragraph 4111.

**4336 Notification To Member**

a. When practical, every member appearing before a Formal PEB will be notified orally of the findings of that panel either in open session or by his or her Counsel in person prior to leaving the site. Note oral notification in the record of proceedings by the Presiding Officer.

b. The member should be specifically advised that:

(1) the Formal PEB's findings are subject to an automatic review for administrative and legal sufficiency before issuance by the President, PEB. PEB findings only can be challenged by means of a PFR or by Petition to the BCNR filed in accordance with enclosure (5) to this instruction.

(2) the member will receive the final PEB findings and rationale from the President, PEB after review, and

(3) the member has 15 calendar days from the date of receipt of the final PEB findings and rationale to submit a PFR, if desired, before the case is finalized and CHNAVPERS or CMC (M&RA) is notified of the disposition by means of a Notification of Decision Letter.

**4337** **Permanent Limited Duty (PLD) Requests**. See paragraph 4312b(6) and enclosure (6) to this instruction.

**4338** **Disagreement With Formal PEB Findings**. If a member disagrees with the findings after the hearing panel stage of disability processing, he or she may submit a PFR to the DIRNCPB or after discharge from active duty submit a petition to the BCNR. See enclosure (5) of this instruction. It is recommended that a member consult with Counsel.

**4339** **Final PEB Findings**. See paragraph 4105.

**4340** **Rationale**. Since it is essential that the record clearly reflects facts sufficient to form the basis for the findings, prepare a rationale which states the basis for the findings reached.

**4341** **Transcripts**

a. A verbatim transcript of a hearing shall be prepared and forwarded to the President, PEB only when:

(1) a finding of misconduct is to be issued;

(2) there is not a unanimous decision by the panel;

(3) the case is a Special Interest case; or,

(4) a transcript is specifically requested by the President, PEB or DIRNCPB.

b. A verbatim transcript is defined to include any oral mechanical recording, such as a cassette recording, of the proceedings from the time the proceedings are convened to the time they are adjourned. A typewritten transcript of the oral mechanical recording will be made only upon the approval and direction of the President, PEB. A duplicate copy of the oral mechanical recording will be made available upon the request of the member or designated counsel. It is the responsibility of the requester to provide a receptor, such as a blank cassette. PEB has the discretion to waive the requirement that the requester provide a duplication receptor.

**4342** **Disposition Of Records**

a. Forwarded to President, PEB all records considered by a hearing panel, the panel's findings, rationale, transcript when required, and a proposed final PEB findings letter with proposed rationale as an enclosure thereto.

b. A verbatim record on magnetic tape shall be kept of all hearings and retained at the hearing panel site for 7 years.

**4343 – 4399** **<u>Reserved</u>**

# PETITIONS FOR RELIEF (PFR)

## 5001 Bases For PFR Within The Disability Evaluation System

a. Following a Formal PEB, when the findings of the PEB become final, and the member has exhausted all of the available options with the PEB, members who have not been discharged or separated, and TDRL personnel, may PFR to DIRNCPB. Members who have been separated or permanently retired may Petition the Board for Correction of Naval Records (BCNR). The only bases for relief by means of PFR are:

(1) New Or Newly Discovered Evidence. Upon the presentation of new or newly discovered evidence which by due diligence could not have been presented prior to the effective date of disposition of the individual concerned, which related to a fact in existence at the time of such disposition, which is not merely cumulative or corroborative and not such as to merely affect the weight of evidence or credibility of witnesses or records; and which would have warranted a different finding or action had it been presented; new or newly discovered medical evidence to be accepted must be corroborated by competent medical authority;

(2) Fraud, Misrepresentation, Or Other Misconduct. Upon a showing that the directed disposition of an individual was based upon fraud, misrepresentation of material fact, or other misconduct of such nature that in the absence thereof a different finding would have been made or a different action taken; and

(3) Mistake Of Law. Mistake of law is a basis for relief; e.g., failure to accord an individual found Unfit the opportunity for a formal hearing; a directed disposition which was without authority; a decision which is contrary to the great weight of evidence of record.

b. Appeals. Appeals concerning Notice of Eligibility (NOE) and combat- related determinations will not be addressed in the PFR.

(1) For appeals concerning NOEs, contact the appropriate service headquarters.

(2) Appeals concerning combat-related determinations should be directed to the Judge Advocate General of the Navy (Code 13), Washington Navy Yard, 1322 Patterson Ave SE, Suite 3000, Washington DC 20374-5066.

c. PFRs that cite to the basis for relief in a (1) through a (3) above, without justification or additional supporting evidence in the PFR, will not be considered to have met threshold

requirements for consideration. Members are encouraged to consult with their Physical Evaluation Board Liaison Officer (PEBLO) or military counsel for assistance in filing a PFR.

d. When a PFR appeals a LOD/M determination, the DIRNCPB may make a final LOD/M decision in the matter, or, when appropriate, designate the matter as a special interest case, under paragraph 3105 for referral to ASN (M&RA).

**5002 Who May Petition**. Requests for relief on the grounds set forth in paragraph 5001 above may be made by the individual concerned, by legal representative or counsel, or by any cognizant authority of the naval establishment, excluding the DIRNCPB.

**5003 Format**. No particular format is required. However, a petition must be in writing, set forth the grounds for requesting relief, and state the relief desired. If a petition is based upon evidence which is not on record in the Department of the Navy, forward the evidence upon which it is based as an enclosure.

**5004 Where To File**

a. For Members Who Have Not Been Discharged Or Separated. Make requests for relief by Petition For Relief to the Director, Naval Council of Personnel Boards, Building 36, Washington Navy Yard, 901 M Street SE, Suite 309, Washington, DC 20077-5513.

b. For Members Who Have Been Discharged Or Separated. Make requests for relief by Petition, using form DD 149, to the Board for Correction of Naval Records (BCNR), 2 Navy Annex Washington, DC 20370-5100.

**5005 Time Constraints**

a. File a Petition For Relief within 15 calendar days of the receipt of a Findings Letter. In that members are normally separated within 4 – 6 weeks of the date the President, PEB, issues the Notification of Decision, members should not delay in preparing and filing such a petition. Submit all requests for extensions for submitting PFRs in writing directly to the DIRNCPB. Include a statement detailing the reason an extension is necessary, the length of the extension, the date the Formal PEB hearing was held, and the date the member received the findings.

b. File Petitions to the BCNR in accordance with time limitations issued by that Board.

c. DIRNCPB will adjudicate the case within 45 days of PFR receipt.

**5006 Principles Employed When Acting On A PFR**. Action taken on PFRs by the DIRNCPB submitted in accordance with paragraph 5001 are subject to the following guidance:

a. The final physical disability percentage rating assigned by the PEB under the Informal PEB/ Formal PEB process is final and cannot be reduced unless the member/former member is

offered an additional appearance before a Formal PEB whose members have not previously ruled on the case. PFRs whose content contains demonstrable fraud will be referred to the NCIS at DIRNCPB's option.

b. A determination that material error has occurred during the PEB process cannot be used to reduce the member's assigned physical disability percentage rating, but the error will be noted and can be used to offset any increase in the physical disability rating which might result from the presentation of new evidence, fraud, or mistake of law submitted by the member in the PFR. Material error must be established by the great weight of evidence (substantial evidence) considered.

c. Realignment of diagnosis, or a finding of Fit/physically qualified (not to include PRESUMPTION OF FITNESS) is not an adverse finding/determination.

**5007 – 5099 <u>Reserved</u>**

# PERMANENT LIMITED DUTY (PLD) PROCEDURES

**6001 <u>Continuance On Active Duty Of Physically Unfit</u>**

a. General policy is that any service member found to be Unfit to continue naval service by reason of physical disability to perform the duties of office, grade, rank, or rating will be retired or separated. However, as an exception to this general policy, and consistent with the guidance in this enclosure, when CHNAVPERS or CMC (M&RA) determine that a need for a service member's skill or experience justifies the continuance of that service member on active duty or in active status in a limited assignment, the service member may be retained on active duty or in active status for a specified period of time. Such status is known as Permanent Limited Duty (PLD).

b. A service member who is continued on active duty or in active status in accordance with this enclosure, will be granted disability benefits upon final retirement or separation if eligible and if the disability is still present to a disabling degree.

**6002 <u>Limited Assignment</u>**. The term "limited assignment" means assignment with appropriate limitations based on the specific disabilities in each case. Specific limitations on duty assignments for members classified as PLD are contained in the Navy and Marine Corps personnel manuals.

**6003 <u>Authority To Retain</u>**

a. PPEB can grant up to a maximum of 90 days of PLD for Sailors and up to a maximum of 60 days of PLD for Marines for administrative purposes in those instances when the member was found Unfit to continue naval service and the member has agreed to conditionally accept the Informal PEB findings on the PLD conditions.

b. CHNAVPERS and CMC (M&RA) may retain on active duty in a PLD status Unfit to continue naval service members who meet the following criteria. Each case shall be individually considered. The Unfit to continue naval service member's length of service is not controlling in PLD decisions.

(1) Subject to the limitations in subparagraphs (e) and (f), the disabling physical condition must basically be stabilized or one in which accepted medical principles indicate a slow progression of the disabling impairment. The member also must be able to maintain himself or herself in a normal military environment, without adversely affecting his or her health or the health of other members.

(2) Unfit to continue naval service members may be retained to complete service obligations for education or training. See paragraph 6006.

(3) Unfit to continue naval service members may be retained to meet shortages against authorized strength in an enlisted skill, competitive category, designator or specialty, or a military occupational field or specialty, provided they can perform required duties in an authorized billet for that skill.

(4) Unfit to continue naval service members may be retained to complete a current tour of duty or to provide continuity in key billets pending relief.

(5) Unfit to continue naval service members may be retained in a PLD status for a specified period of time, at the request of a commanding officer of a medical treatment facility (MTF), to meet the need for that specific type of condition in a graduate medical education program at a specific MTF that cannot be met at that MTF by other authorized means and is essential to maintaining program accreditation. Unfit to continue naval service members may also be retained for MTF-specific medical research protocols. In each case, the request for retention must be documented fully to demonstrate the essentiality and must be approved by the CHBUMED and the CHNAVPERS or CMC (M&RA), as applicable.

(6) CHNAVPERS or CMC (M&RA) shall establish the termination date of the PLD period when authorizing PLD.

**6004 Retirement Eligible Members**. Members with over 20 years of active service shall not be continued on active duty solely to increase their monetary benefits, nor shall they be continued unless their employment is justified as being of value to the naval service under the criteria in paragraph 6003.

**6005 Inactive-Duty Reservists**

a. There is no PLD status for inactive-duty reservists.

b. Those inactive-duty reservists who have been found Not Physically Qualified for continued naval service and who have 18 but less than 20 satisfactory years for retirement may be retained in the Individual Ready Reserve (IRR). While in the IRR, the member may complete correspondence courses until attaining 20 qualifying years for retirement or reaching age 63, whichever occurs first.

**6006 Retention In PLD Status To Complete Service Obligation**. CHNAVPERS and CMC (M&RA) may retain Unfit to continue naval service members on active duty in a PLD status for the period required to complete their active service obligation for:

a. Enlisted education and training, including Enlisted Education Advancement Program, initial and advanced skill training schools which require obligation beyond initial enlistment

contract, nuclear power field, advanced electronic field, and advanced technical field programs and similar programs. CHNAVPERS or CMC (M&RA) may waive this requirement on a case by case basis when, as the result of a disabling condition, there is no billet in which disabled members can adequately perform the required duties.

b. Funded education programs including Naval Academy, NROTC, Armed Forces Health Professions Scholarships, Uniformed Services University of Health Sciences and equivalent funded education programs; advanced education or technical training requiring additional obligated service, including postgraduate education, service school or college, law school, medical residency (including fellowships), flight training, naval flight officer training, and equivalent programs. ASN (M&RA), or CHNAVPERS or CMC (M&RA) as delegated by ASN (M&RA), may waive the requirement in cases in which, as a result of the disabling condition, there is no billet in which the disabled officer can adequately perform the required duties.

**6007 Voluntary Retention**. CHNAVPERS and CMC (M&RA) also may, upon a member's request, particularly from a member with over 18 years but less than 20 years of active service, retain Unfit to continue naval service members in PLD status when such retention is consistent with the guidance in paragraph 6003 and is in the best interests of the service and the individual.

**6008 Requesting PLD Status**

a. Unfit members, who desire continuation on active duty in PLD status, have one opportunity to submit a request in writing to the President, PEB. The request may be in the form of a brief signed statement appended to the Election of Options form, typed on the Election of Options form itself, or submitted by a PEBLO Counselor or Counsel for a Member. If PLD status is a condition of accepting a finding of Unfit to continue naval service as provided in paragraph 1004c (4) of the basic instruction and paragraph 4215, the member also must indicate whether he or she desires a formal hearing if the PLD condition is not met.

b. CHNAVPERS and CMC (M&RA) may retain on active duty in PLD status Unfit for Continued Naval Service members as identified in paragraphs 6003 and 6006. Service headquarters will submit, in writing, to President, PEB notification of obligated service of those members determined to be Unfit by the PEB and request determination as to whether or not subject members retention in a PLD status will jeopardize members health and safety or that of others.

**6009 Action By President, PEB Following Decision Concerning PLD Status**

a. PLD Authorized. When CHNAVPERS or CMC (M&RA) authorizes PLD for Unfit to continue naval service members, the President, PEB, shall take the following actions:

(1) For PLD of 6 months or less: the President, PEB, shall, in the Notification of Decision letter, direct the PLD authorized, and effective the day following the last day of the PLD, the appropriate separation and the percentage of disability from the Findings Letter.

(2) For PLD of more than 6 months: the President, PEB, shall, in the Notification of Decision letter, direct the authorized period of PLD, advise that disability separation and disability rating will be deferred until the end of the period of PLD, and require that the member be again referred to the DES for reevaluation as set forth in paragraph 6011.

b. PLD Not Authorized. If CHNAVPERS or CMC (M&RA) does not authorize PLD, the President, PEB shall complete normal processing of the case.

**6010 Monitoring Members Retained On PLD**. An Unfit to continue naval service member continued in a PLD status shall be closely observed to assure that further continuance, or conversely separation, is consonant with the best interests of the service and the member. When, in the opinion of a member's commanding officer, the member has become unable to perform his or her duties in the limited assignment, the member shall be referred to a MTF for observation, treatment, and appropriate disposition. Unless the disqualifying condition has progressed to a point at which the member is no longer able to perform duty with limitations, the member shall complete the PLD period.

**6011 Expiration Of PLD Status**. All members continued in PLD status for a period in excess of 6 months shall be currently examined and again referred to the DES for reevaluation a minimum of 4 months before the completion of the PLD period or at such time as the PLD is otherwise terminated. Evaluate any new condition(s) and submit addenda with the final reevaluation. Rate members under the VASRD criteria in effect at the time of their final reevaluation.

**6012 – 6099 Reserved**

# OFFICER DISABILITY REVIEW BOARD (ODRB) PROCEDURES

## PART 1 - DOCUMENTARY REVIEWS AND GENERAL BOARD REQUIREMENTS

**7001 Introduction And Establishment**

a. 10 U.S.C. 1554 empowers and directs the Secretary of the Navy (SECNAV) to establish a board to review a limited class of disability cases wherein **officers were retired or released from active duty without pay for physical disability**. The Officer Disability Review Board (ODRB) hereby is established by the SECNAV as that statutory board to render opinions in such cases in which an affected officer requests review of the findings and decisions of a retiring board, board of medical survey, or disposition board. Forward ODRB advisory opinions and recommendations to SECNAV for final decision.

b. In performing its responsibility, the ODRB shall be guided by the Navy disability evaluation instructions effective at the time of the contested action as well as by statutes and directives of higher authority.

**7002 Oversight**. The ODRB shall function as an element of the Naval Council of Personnel Boards. The DIRNCPB shall exercise oversight and administrative control of the ODRB.

**7003 Functions**

a. To meet on an ad hoc basis, under 10 U.S.C. 1554, to review the cases of officers who have been retired or released from active service without pay for physical disability and to provide recommended findings regarding their Fitness and disposition;

b. To evaluate on the basis of documentary review, or formal hearing attended by a petitioner and/or his or her Counsel:

(1) the physical fitness of an officer petitioner for active duty;

(2) if found Unfit, the percentage of disability of the petitioner at the time of the officer's separation from active duty, or at the time of removal from the Temporary Disability Retired List (TDRL); and

(3) the entitlement to disability severance or retired pay of a petitioner at the time of separation from active duty, or at the time of removal from the TDRL.

**7004** **Board Composition**. The Board constituted to act in a given case shall be composed of five career military officers, selected on the basis of wide medical and/or military experience, proven performance and education.

a. President, ODRB shall be a Navy or Marine Corps line officer in the grade of 0-6 or above.

b. Two of the remaining officers shall be of the Medical Corps in the grade of 0-5 or 0-6 with preference given to the latter.

c. Individual membership may vary within the limitations of the prescribed composition.

d. When the petitioner is or was a member of the Navy or Marine Corps Reserve, at least one member of the Board shall be a member of the Navy or Marine Corps Reserve.

**7005** **Appointment Of Officers**. Officers to constitute the ODRB, if not available at the Naval Council of Personnel Boards, shall be made available by CHNAVPERS, CMC (M&RA), and CHBUMED.

**7006** **Convening**

a. Upon petition to the DIRNCPB by an officer retired or released from active duty without pay for physical disability, DIRNCPB shall designate and appoint the membership of the ODRB.

b. The petition for review shall contain a request for a documentary or formal hearing; a statement identifying the Board whose error is sought to be corrected; a statement identifying the error(s) in the finding or decision; and the relief requested.

**7007** **Recorder**. A Recorder for a board shall be designated by the DIRNCPB in the convening order. The Recorder may be a commissioned officer or a civilian employee of the government.

**7008** **Conflict Of Interest/Recusal**. No member or counsel of the Board may have a personal interest in or have been a member of another Board that ever considered the case under consideration. See paragraph 3108 for further guidance.

**7009** **Adequate Information**. The Board shall ensure that it has before it, within a reasonable time frame, all information necessary for competent review and opinion. The CHBUMED shall provide medical assistance upon request of the Board. The Board shall afford a petitioner a reasonable amount of time to provide evidence outside Navy possession.

**7010** **Scheduling**. Hold documentary reviews or hearings within 30 days, and issue a report within 45 days of receipt of the case for review. Issue notification of formal hearings by mail to all concerned at least 30 days in advance of the hearing.

**7011** **<u>Types Of Board Meetings</u>**. ODRB shall provide advisory opinions on the basis of formal, personal appearance hearings, unless waived by the petitioner, in which case a documentary review shall be conducted.

**7012** **<u>Content Of Opinions</u>**. The Board shall render advisory opinions, in a letter report, as to whether:

a. the petitioner was, at the time of separation or retirement from the naval service, Fit to continue naval service or Unfit to continue naval service because of physical disability;

b. if the petitioner was Unfit, such disability (was) (was not) (incurred) (aggravated) while the petitioner was entitled to receive basic pay;

c. such disability (was) (was not) the result of intentional misconduct or willful neglect, and whether such disability (was) (was not) incurred during a period of unauthorized absence;

d. whether:

(1) such disability (was) (was not) the proximate result of active duty (because of aggravation, when applicable), or

(2) such disability (was) (was not) incurred in line of duty, in time of war or national emergency, or

e. accepted medical principles indicate that such disability (is) (may be) permanent; and

f. such disability was ratable at (percentage) in accordance with the Veterans Administration Schedule for Rating Disabilities (VASRD) in effect at the time of retirement or separation.

g. If a prior Navy board (PEB, BCNR, etc...) is being reviewed as part of a case, a statement as to whether the decisions or recommendations of the Board being reviewed are affirmed or reversed.

**7013** **<u>Basis Of Opinions</u>**. In arriving at its opinions, the Board shall comply with:

a. applicable statutes and directives in effect at the time of the contested separation or retirement without disability benefits; and

b. the VASRD in effect at the time of the contested separation or retirement without disability benefits.

**7014 Majority Vote**. Advisory opinions shall be formulated by vote of a simple majority of the five members.

**7015 Signatures**. Advisory opinions of the Board shall be signed by the President, ODRB and the Recorder. See paragraph 7016.

**7016 Minority Opinions**. If there is a minority vote, include a minority rationale in the record of proceedings. A minority rationale shall be signed by the member or members so voting.

**7017 Documentary Reviews**. In connection with each review, the shall consider:

a. medical board reports and associated documents, together with endorsements of convening authorities and statements and medical evidence of petitioners;

b. line of duty/misconduct investigations, when applicable;

c. statements of service supplied by CHNAVPERS or CMC (M&RA);

d. reports of physical examination;

e. reports of special consultations, when applicable;

f. fitness reports;

g. statements of the petitioner, his or her counsel, guardian, or other witnesses (formal hearings); and

h. any other pertinent matters.

**7018 Oaths**

a. Members. Members of the Board shall be sworn as follows:

"Do you ________, ________, ________, ________, and ________ solemnly swear (or affirm) that you will honestly and impartially review and report upon the case(s) now before the Board and about to be reviewed. (So help you God)."

b. Recorder. The Recorder shall be sworn as follows:

"Do you ________ solemnly swear (or affirm) that you will keep a true record of the proceedings of this Board in the case(s) before the Board and about to be reviewed."

c. Reporter. The Reporter shall be sworn as follows:

"Do you ________ solemnly swear (or affirm) that you will faithfully perform the duties of reporter in aiding the recorder to take and record the proceedings of the Board."

d. Witnesses. A witness to be sworn appearing before the Board shall be sworn as follows:

"Do you ________ solemnly swear (or affirm) that you will make true answers to such questions as may be put to you in the case of ________ now before the Board."

e. Challenged Member. Any member of a board who is challenged shall be sworn by Counsel for the Board as follows:

"Do you ________ solemnly swear (or affirm) that you will answer truthfully to the questions touching upon your competency to serve as a member of the Board in this case. So help you God."

**7019 Recording The Proceedings Of Documentary Reviews**. Record the proceedings in summary form.

**7020 – 7099 Reserved**