Attachment (b) to Enclosure (8)

## CONDITIONS NOT CONSTITUTING A PHYSICAL DISABILITY

1. **Purpose**. To detail conditions which do not constitute a physical disability.

2. **General Considerations**

a. Certain conditions and defects of a developmental nature designated by the Secretary of Defense do not constitute a physical disability and are not ratable in the absence of an underlying ratable causative disorder. If there is a causative disorder it will be rated in accordance with other provisions of this Instruction.

b. These conditions include but are not limited to those listed in paragraph 3 below.

c. Such conditions should be referred for appropriate administrative action under other laws and regulations.

3. **Developmental Defects And Other Specific Conditions**

a. Enuresis

b. Sleepwalking and/or Somnambulism.

c. Dyslexia and Other Learning Disorders.

d. Attention Deficit Hyperactivity Disorder.

e. Stammering or Stuttering.

f. Incapacitating fear of flying confirmed by a psychiatric evaluation.

g. Airsickness, Motion, and/or Travel Sickness.

h. Phobic fear of Air, Sea and Submarine Modes of Transportation.

i. Certain Mental Disorders including:

(1) Uncomplicated Alcoholism or other Substance Use Disorder.

(2) Personality Disorders

(3) Mental Retardation

(4) Adjustment Disorders

(5) Impulse Control Disorders

(6) Homosexuality

(7) Sexual Gender and Identity Disorders, including Sexual Dysfunctions and Paraphilias.

(8) Factitious Disorder

j. Obesity

k. Overheight

l. Psuedofolliculitis barbae of the face and/or neck.

m. Medical Contraindication to the Administration of Required Immunizations.

n. Significant allergic reaction to stinging insect venom.

o. Unsanitary habits.

p. Certain Anemias (in the absence of Unfitting sequelae) including G6PD Deficiency, other inherited Anemia Trait, and Von Willebrand's Disease.

q. Allergy to Uniformed Clothing and wool products.

r. Long sleeper syndrone.

Attachment (c) to Enclosure (8)

**SAMPLE MEB REPORT**

FOR OFFICIAL USE ONLY

SSN:

RANK: Petty Officer First Class

MOS:

UNIT:

DATE: 18 June 97

MILITARY HISTORY:

Petty Officer______________entered into active duty on ____________________________ She attended Recruit Training Command in Orlando, Florida. She then attended Yeoman A School in Meridian, Mississippi. She has been stationed at various locations and received awards for her exemplary service. She was twice named sailor of the quarter and once sailor of the year for the___________ area. She has received 3 consecutive good conduct medals and two Navy and Marine Corps achievement medals.

CHIEF COMPLAINT: Back and Foot Pain

HISTORY OF PRESENT ILLNESS:

Petty Officer ______________ back pain began in 19_____ after a motor vehicle accident. She developed worsening of her symptoms in ___ after a second motor vehicle accident. The back pain is constantly present with varying intensity. Exacerbating factors include walking or standing for greater than 2 minutes. Some palliation is noted with non-weight bearing rest. The symptoms have progressed insidiously to include plantar foot pain and arthralgias involving the hips, knees, and ankles. The plantar foot pain occurs daily and is exacerbated by any weight bearing activity. She has received a variety of health care evaluations with subsequent therapeutic recommendations. Unsuccessful treatments employed have included NSAIDS, muscle relaxants, tricyclic antidepressants to modify the pain threshold, orthotics, physical therapy, plantar and sacroiliac anesthetic injections, nighttime ankle splints, and local ultrasound

FOR OFFICIAL USE ONLY

treatment. A lumbosacral series revealed sacralization of the 5th lumbar vertebrae. She was evaluated by Physical Medicine and Rehabilitation at which time a bone scan was obtained that showed mild increased tracer uptake in both sacroiliac joints consistent with sacroiliitis. She was then referred to Rheumatology where she was initially evaluated in March 1997. Sacroiliac radiographs were suspicious for sacroiliac disease. An MRI subsequently revealed no evidence of sacroiliitis. Her symptoms have persisted despite maximal therapy and negatively impacted on her ability to perform her naval duties. She is therefore being referred to the Physical Evaluation Board for further review and disposition.

ALL: None

*MEDICATIONS: Indomethacin SR 75mg bid, Norplant*

PAST MEDICAL HISTORY: Spina bifida occulta, childhood asthma, duplicated left renal collecting system without reflux or obstruction (urology evaluation completed in 1997), perivaginal cyst, tinea versicolor

PAST SURGICAL HISTORY: None

SOCIAL HISTORY: No tobacco or alcohol

REVIEW OF SYSTEMS:
Musculoskeletal: Arthralgias involving hips, knees, and ankles, occurs with resting or ambulation, occasionally resolves with rest or spontaneously, chronicity 11 years, episodes last days to weeks; Back pain of 11 years duration with symptoms worsening since 1992, pain is worse with activity, palliation with resting and laying supine, prevents restorative sleep; Plantar foot pain with radiation into achilles tendon and gastrocnemius, pain is constantly present and worse with weight bearing and ambulation, refractory to shoe inserts and nighttime splints.
Neurologic: midline occipital headaches, occurs in the AM upon awakening, resolves with aspirin, chronicity 11 years; dizziness and fainting spells, episode duration approximately 2 minutes, chronicity 7 years, associated with gastrointestinal symptoms, no known loss of consciousness. Gastrointestinal: "knot-like" sensation with pain in the epigastrium, associated nausea and increased bowel motility, associated salivary regurgitation without acid brash, no diarrhea or bloating, onset is spontaneous and without identifiable provocative factors, chronicity 7 years.

PHYSICAL EXAMINATION:
BP 123/77 P 75 T 98.9F Wt 123lbs
HEENT- extraocular movements intact, Fundi normal, no oral ulcers, tympanic membranes clear
NECK- normal range of motion, nontender, no lymphadenopathy, no thyroid enlargement or nodules
LUNGS- clear
HEART- regular rhythm, no murmurs or gallops
ABDOMEN- no hepatosplenomegaly, nontender, bowel sounds present

PELVIC- (Ob-Gyn) normal
MUSCULOSKELETAL-, Feet: plantar pain bilaterally at the calcaneus and metatarsal heads, callus formation overlying #1, 2, 5 bilaterally at the metatarsal heads. Back: focal area of palpable low pain overlying sacrum and lumbosacral junction, presacral fat pad, Schober's test reveals 2.5 cm lumbar distraction with back flexion, straight leg raise test negative, hyperextension hips without pain provocation, flattening appearance to lumbar spine, FABERE negative, no leg length discrepancy. Joints: no synovitis
NEUROLOGIC- strength normal, deep tendon reflexes present and equal bilaterally, babinski absent, no sensory deficits elicited, muscle tone normal
DERMATOLOGIC - scar at dorsum of left wrist, acneiform lesions on back

LABORATORY:
urinalysis- SG 1.026, trace protein, 1-2 RBC/HPF, 5-9 EPI/HPF
chemistries- normal
complete blood count- normal
erythrocyte sedimentation rate- 9
C-reactive protein- <0.1
HLA-B27 negative

ELECTROCARDIOGRAM: sinus bradycardia

RADIOLOGY:
(23 May 97) chest x-ray- normal
(4 April 97) MRI pelvis - normal
(21 Mar 97) ferguson pelvis- normal
(6 Mar 97) bone scan- increased uptake in the spinous processes of L4, 5; mild increased uptake in both sacroiliac joints
(27 Feb 97) lumber spine series- sacralization of L5 vertebrae

FINAL DIAGNOSES:
(1) Plantar Fasciitis
(2) Mechanical low back pain
(3) Duplicated collecting system of left kidney without evidence of reflux or obstruction

| PHYSICAL PROFILE: | P | U | L | H | E | S |
|---|---|---|---|---|---|---|
| (Plantar Fasciitis) | 3 | 1 | 2 | 1 | 1 | 1 |

PRESENT CONDITION:
Petty Officer ______ is currently unable to successfully perform her military duties as reflected by the member and her direct supervisors. Her condition has placed an undue burden on coworkers in

her office attempting to support those duties which Petty Officer _______is unable to perform. Her current medical problems have also significantly impacted her personal life by limiting her hobbies, interrupting normal sleep patterns, and making activities of daily living difficult.

PROGNOSIS:
Petty Officer ______is likely to require ongoing therapy and medical follow-up by clinicians interested in musculoskeletal ailments.

RECOMMENDATIONS:
1. Petty Officer_______ medical condition at this time precludes her from continuation on active duty. She is therefore being referred to the Physical Evaluation Board for further evaluation and disposition.
2. Continued use of proper shoe inserts and nighttime splints on a regular basis.
3. Daily stretching exercises targeting the plantar fascia and low back.
4. Daily strengthening exercises targeting the abdominal muscles and intrinsic muscles of the feet.
5. Regular use of NSAIDS at analgesic doses.
6. Periodic formal physical therapy evaluations to document proper self-directed rehabilitation routines and to monitor progress.
7. Evaluation every 3-4 months by a physician interested in the diagnosis and treatment of musculoskeletal problems.

Rheumatology Fellow
National Naval Medical Center

Rheumatology Staff
National Naval Medical Center

Walter Reed Army Medical Center
National Naval Medical Center
Last Name/ Last Four SSN/ Date Typed

Attachment (d) to Enclosure (8)

## PLATES

### MEASUREMENT OF ANKYLOSIS AND JOINT MOTION
Upper Extremities




PLATE I

This plate provides a standardized description of ankylosis and joint motion measurement of the upper extremities. The anatomical position is considered as 0° with two major exceptions: (1) in measuring shoulder rotation, the arm is abducted to 90° and the elbow is flexed to 90° so that the forearm reflects the midpoint (0°) between internal and external rotation of the shoulder; and (2) in measuring pronation and supination, with the arm next to the body and the elbow flexed to 90°, the forearm is in mid-position (0°) between pronation and supination when the thumb is uppermost.

Attachment (d) to Enclosure (8)

# MEASUREMENT OF ANKYLOSIS AND JOINT MOTION

## Lower Extremities




PLATE II

This plate provides a standardized description of ankylosis and joint motion measurement of the lower extremities. The anatomical position is considered as 0°.

Attachment (d) to Enclosure (8)

## RATING OF MULTIPLE FINGER DISABILITIES




PLATE III

Attachment (d) to Enclosure (8)

## * ESTIMATION OF BODY SURFACE AREA
(Berkow)




The diagram at the left provides the basic scheme for estimation of body surface area. The table below is for convenient conversion to actual surface area measurement, based upon application to the average 70 kgm. man with a body surface area of 2,636 sq. in. (18.3 sq. ft.).

| Body Surface | Percent of body surface | Area | |
|---|---|---|---|
| | | Square Inches | Square Feet |
| Anterior or posterior head | 3.5 | 92 | 0.64 |
| Anterior or posterior neck | 1.0 | 26 | .18 |
| Anterior or posterior trunk | 13.0 | 343 | 2.38 |
| Anterior or posterior arm | 2.0 | 53 | .37 |
| Anterior or posterior forearm | 1.5 | 40 | .27 |
| Dorsal or palmar hand & fingers | 1.25 | 33 | .23 |
| Buttock | 2.5 | 66 | .46 |
| Genitalis | 1.0 | 26 | .18 |
| Anterior or posterior thigh | 4.75 | 125 | .87 |
| Anterior or posterior calf | 3.5 | 92 | .64 |
| Dorsal foot or sole, incl toes | 1.75 | 46 | .32 |

PLATE IV

# SPECIAL INSTRUCTIONS AND EXPLANATORY NOTES, VASRD

## 9001 General

a. This enclosure is a supplement to the VASRD that contains principles for rating disabilities where additional guidance or clarification is needed for processing active duty and Reserve military disability cases. Portions requiring special comment, or that have been the cause of misunderstanding in the past, are included. Comments and rating instructions also supplement the VASRD in those instances in which recent medical advances are inadequately covered. Supplements to the VASRD published by the DVA following the effective date of this Instruction shall take precedence unless the changes included in the supplement are identified by the Assistant Secretary of Defense for Health Affairs through a published interim change to this Instruction to be inappropriate to military requirements.

b. In adjudicating cases, the VASRD is the starting point and initial guidance for an impairment rating. Because this enclosure modifies selected VASRD ratings, it is the final reference for impairment adjudication.

c. Unless otherwise directed, separate disability ratings are combined rather than mathematically summed.

## 9002 New Growths, Malignant

a. The policies contained in this paragraph apply to malignant new growths except as modified by notes for specific tumors. Special consideration must be given to determination of Fitness or Unfitness, since these diseases, their treatment, or the outcome do not disable all service members.

b. A service member with a diagnosed malignant tumor that has metastasized, and has NOT FAVORABLY responded to therapy, if Unfit, SHALL be permanently retired, at 100 percent if such rating is not expected to change within the next 5 years. In such cases, metastasis may be defined as distant spread of the tumor or as local invasion that renders treatment non-curative.

c. A service member with a diagnosed malignant tumor that has not metastasized and has responded favorably to therapy to the extent that no current evidence of the disease exists, NEED NOT BE FOUND UNFIT. A service member who is functionally Unfit because of residual conditions secondary to treatment of a malignancy (e.g., chemotherapy, radiation therapy, or surgery) may be rated using the Alphabetical Listing of Analogous Ratings (enclosure (9), attachment (a)). The code for the relevant malignancy should be listed first, followed by the

analogous code(s). For example, the code for leukemia in remission associated with fatigue secondary to chemotherapy would be "7703-6399-6354." Residuals shall be rated according to the applicable VASRD code and not necessarily according to the code for malignancy. The minimal rating for the malignancy does not apply.

d. A service member who is undergoing chemotherapy that constitutes the whole or part of definitive treatment may be retained on active duty, placed on TDRL, or permanently retired or separated, as indicated by individual circumstances.

e. When chemotherapy is used as an adjunctive treatment and no evidence of an Unfitting residual malignant tumor exists, the use of chemotherapy will not necessarily influence the disposition of the case unless adverse Unfitting effects of the chemotherapy have ensued.

f. Malignancies, including the leukemias, that require bone marrow transplantation usually result in a service member being Unfit and placed on the Temporary Disability Retired List (TDRL) to be reevaluated at 18 months, or sooner if required. A disability rating awarded after a TDRL interim evaluation shall be based on residual conditions. If recurrent tumor is found, permanent retirement at the appropriate disability rating disability is indicated.

g. An individual with minor new malignant skin growth, if found Unfit, will be rated as 'scars-disfiguring' or on the extent of constitutional symptoms, physical impairment and/or other contributing causes.

**9003 <u>Organ Transplants</u>**

a. Joint prosthetic transplants are discussed under codes 5051 through 5056.

b. Vascular system prosthetics are addressed under the 7000 code.

c. Service members requiring transplant will ordinarily be Unfit due to organ failure. The service member should be placed on the TDRL. In those cases in which a definite date has been set for transplantation, disposition shall be postponed and residuals rated after the transplantation.

d. Those cases that come to the PEB after transplantation shall be rated based on the following factors:

(1) The functional status of the transplanted organ.

(2) The need for sustained immunosuppression or its adverse effects. Adverse effects may be rated on the basis of specific infections or by analogy ( see Alphabetical Listing of Analogous Ratings (enclosure (9), attachment (a))

**9004 <u>Anticoagulant Prophylaxis Or Treatment</u>**

a. The long-term use of anticoagulants will not be the cause to increase the rating of a given medical impairment.

b. Complications arising from the use of anticoagulants should be given separate ratings.

c. Hypercoagulable states requiring chronic use of anticoagulants shall be rated either at:

(1) Zero percent if there has been no thrombophlebitis or embolus in the past year; or,

(2) At least 10 percent if there has been thrombophlebitis or embolus in the past year. However, strong consideration should be given to placement on the TDRL.

(3) A rating greater than 10 percent shall be based on Unfitting residuals due to thrombophlebitis or embolus.

**9005 <u>Human Immunodeficiency Virus Infection (HIV) And/Or Acquired Immune Deficiency Syndrome (AIDS)</u>.** Members found Unfit for HIV and/or AIDS will be rated according to the 6351 code and the rating scheme in the VASRD. The minimum rating of 30 percent, which existed prior to the establishment of the VASRD Code 6351, is no longer in effect.

**9006 <u>SWATO Cases</u>**

a. Military personnel who served in the Southwest Asia theater of operations (from August 2, 1990, through a date to be determined) and who are Unfit for a diagnosis of "undiagnosed illness" shall be rated in accordance with the VA guidance for "undiagnosed illnesses." See paragraph 8016 of enclosure (8) and attachment (a) (1) of enclosure 9.

b. A two-part hyphenated code is used to describe the Unfitting condition. The FIRST PART is composed of a prefix of "88" combined with the first two numbers of the body system to which the Unfitting symptoms most closely relate. The SECOND PART of the code is the medical condition, in the code series indicated by the second two numbers of the first part of the code, that most closely resembles the service member's circumstances. For example, the first part of the code to describe a case in which the predominant symptom is fatigue could be 8863. The second part is the medical condition in the 6300 series that most closely resembles that of the service member. In that example, the code "6354" is used. Thus, the case is rated by analogy to "Chronic Fatigue Syndrome." The resulting code is "8863-6354".

c. Two requirements must be met to justify using the coding system described in paragraph b above:

(1) The service member is suffering a symptom complex that is not reasonably definable using currently acceptable diagnostic nomenclature (an "undiagnosed symptom complex"); and,

(2) The service member is Unfit because of the "undiagnosed symptom complex."

**9007 Necrotizing Fasciitis**

a. Those cases in which the condition has a systemic effect should be rated according to the Alphabetical Listing of Analogous Ratings (attachment (a) of enclosure (9)).

b. If the systemic component has overwhelmed the service member's endogenous immune system, the disability should be rated at 100 percent and the service member placed on the TDRL. Ratings at final disposition shall be based on residuals.

**9008 Indwelling Foreign Bodies**. Service members with cardiac, vascular or neurosurgical conditions that require indwelling foreign bodies (e.g., pacemakers, defibrillators, venous umbrellas, and ventriculoperitoneal shunts) who are Unfit will be ratable at a minimum of 30 percent for an 18-month observation period followng placement of the device.

**9009 Fibromyalgia** [see VASRD code 5025 and enclosure (8)]

a. This condition shall be evaluated by a rheumatologist and meet the requirements of paragraph A5 (b), under paragraph 9011.

b. The diagnostic criteria put forth by the American College of Rheumatology must be met. Current standards shall be used for making the diagnosis.

c. If the MEB report contains fibromyalgia as a diagnosis and is not written by a rheumatologist, there must be a report of recent consultation by rheumatology.

**9010 Future Changes**. As medicine advances, new diagnoses will emerge. Those diagnoses generally accepted by the medical profession (or by a respectable minority of the profession) shall be rated by analogy until the diagnoses become incorporated in the VASRD.

**9011 Instructions For Specific VASRD Codes**

a. 5000 SERIES CODES

(1) 5000 - Osteomyelitis

(a) Saucerization or sequestrectomy does not necessarily equate with stabilization or cure.

(b) Osteomyelitis extending into a major joint is rated in accordance with the amputation rule.

(c) Note (1) following Code 5000 in the VASRD may appear to be ambiguous in its instructions concerning application of the amputation rule. The minimum rating for active osteomyelitis is 10 percent regardless of the amputation rule.

(d) Under Note (2), a rating may be assigned only when the disease is active clinically or by X-ray.

(2) 5002 - Rheumatoid Arthritis

(a) A distinction is made between active disease and chronic residuals. VASRD Codes 5002, 5004 through 5009 and 5017 will be rated by the same criteria and the VASRD guidance.

(b) Active process: The rating is based on clinical and laboratory features and coded under 5002.

(c) Chronic residuals are rated under appropriate limitation of motion codes (5200 series). Chronic residuals shall be based on clinical features plus radiographic evidence.

(d) The bilateral factor is applied when appropriate.

(e) Ratings for active disease process (5002) should not be combined with ratings for residuals (5200 series).

(f) Pulmonary involvement is rated separately under 6802.

(g) Enteropathies are rated separately under the 7300 series.

(3) 5003 - Arthritis, Degenerative, Hypertrophic, and Pain Conditions Rated by Analogy to Degenerative Arthritis

(a) Each major joint (or grouping of minor joints) with objective limitation of motion plus radiographic evidence is rated at 10 percent. (The bilateral factor applies.)

(b) Radiographic evidence of two or more major joints or groups of minor joints, when accompanied by occasional exacerbations of incapacitating symptoms, is given a total rating of 20 percent. Radiographic evidence alone without symptoms is rated at 10 percent. (No bilateral factor applies).

(c) Limitation of motion of affected joints may warrant rating under 5200 series (the bilateral factor applies) or 9905.

(d) In cases in which there is a limitation of motion not of sufficient degree to rate under the 5200 series or 9905, the rating shall be done under 5003.

(e) Arthritis Due to Direct Trauma, 5010. When an affected joint merits a rating higher than 10 percent, the analogy appropriate to the impairment must be used. Diagnosis alone is insufficient for the 10 percent rating. With an affected joint, the assignment of a 10 percent rating requires the presence of objective evidence of limitation of motion in addition to X-ray findings.

(f) For rating purposes, combinations of interphalangeal, metacarpal-phalangeal, and metatarsal-phalangeal joints are groups of minor joints equivalent to a major joint.

(g) Separate rating of specific joints or joint groups are not intended for application to the fluctuating types of impairments which tend to improve or disappear.

(h) The spine (5285-5295): each segment of the spine (cervical, dorsal, and lumbar) segments is regarded as a group of minor joints. Combination of sacroiliac and lumbosacral joints is regarded as a major joint. Each group of minor joints is ratable as 1 major joint only when separate ratings are justified by radiographic evidence of pathology besides limitation of motion or other evidence of painful motion of the individual segments involved.

(4) 5004 through 5024 - Arthritis, Miscellaneous. 5004 through 5009 are rated as code 5002 (Rheumatoid Arthritis). Examples are Reiter's Syndrome, Ankylosing Spondylitis, Transplantation Antigen-related Arthritis or Arthritis secondary to bowel disease. Codes 5010, 5011, 5012 have specific instructions in the VASRD regarding rating. Codes 5013 through 5024

are rated according to Arthritis, Degenerative, 5003 except the code for Gout (5017), which is rated according to code 5002.

(5) 5025 - Fibromyalgia

(a) Fibromyalgia (also called fibrositis, myofascial pain syndrome, or primary fibromyalgia syndrome), is a syndrome of chronic, and widespread musculoskeletal pain associated with multiple tender or "trigger" points, and is often accompanied by multiple somatic complaints. It is a condition for which diagnostic criteria were formally established in 1990 (and have subsequently been revised - see the VASRD for specific guidance as the it describes the specific criteria).

(b) Diagnostic criteria include the following:

1. A history of widespread pain that has been present for at least 3 months. There must be both axial skeletal pain and peripheral pain.

2. The presence of pain on digital palpation at 11 of 18 tender point sites.

3. The presence of a second clinical disorder does not exclude the diagnosis.

4. That diagnosis should have been made by or with the consultation of a rheumatologist, who will either be a signatory of the MEB report (with recent consultation report included when sent to the Informal PEB) or the author of a typed addendum.

(c) In most cases a psychiatry addendum should also be included/requested.

(6) 5051-5056 - Prosthetic Implants

(a) 5054. Total Hip/total joint Replacement. Convalescent ratings and ratings for specified periods of time will not be used. In uncomplicated cases the member is usually ambulatory and disposition is possible approximately 1- 3 month after the procedure has been performed. Assignment to the TDRL, with an appropriate rating, is usually required prior to permanent disposition. The provision that a member will be rated at 100 percent for 1 year following implantation of the prosthesis does not apply.

(b) Prosthetic implants do not necessarily render a service member Unfit.

(c) If a service member is considered to be Unfit at the time of a PEB, placement on TDRL should be considered.

(d) If the service member is still found to be Unfit at TDRL reevaluation, a permanent rating should be considered based on residual impairment. In such cases the amputation rule applies, but convalescent ratings do not apply.

(e) 5055. Knee Replacement (Prosthesis).

1. The provision that a member will be rated at 100 percent for 1 year following implantation of the prosthesis does not apply.

2. If, after maximum hospital benefit has been achieved, a member remains Unfit, rate for residual impairment. If the member's condition has not stabilized for rating purposes, placing on the TDRL should be considered.

3. The VASRD footnote to Code 5055 does not apply.

(7) 5126-5151 - Multiple Finger Disabilities. A convenient method of computation has made the difficulty often encountered in rating multiple finger disabilities simpler. An "average amputation level" for fingers involved may be calculated by assigning graded values for each finger according to the level at which it was amputated (See enclosure (8),Attachment (d), plate III). Graded values may also be assigned for the severity of a finger's ankylosis. The disability may then be rated according to the notes of instruction in the VASRD. The method is as follows:

(a) Step One. The appropriate grade value for each of the individual finger defects is selected by referring to enclosure (8), attachment (d), plate III. Match the appropriate description in enclosure (9) attachment (b), table 1, column A with the corresponding value in column C. These values are ADDED together (totaled).

(b) Step Two. The average grade value is found by dividing the totaled values for the individual fingers by the number of fingers involved. Fractions are rounded to the nearest whole number.

(c) Step Three. The category of defects (favorable ankylosis, unfavorable ankylosis, and amputation) applicable to the multiple finger disabilities taken as a whole is found in column B by matching with the previously calculated average grade value in column C.

(d) Step Four. The correct disability percentage rating is arrived at by referring to the VASRD code that addresses the category of defects found in step three and calculating for the number of fingers involved.

(e) Example: A service member has had the following amputations: thumb amputated through the middle phalanx; long and little fingers through the middle phalanges; and the entire ring finger, including more than one-half of the metacarpal.

| | |
|---|---|
| Grade value for the thumb | 2 |
| Grade value for the long finger | 2 |
| Grade value for the ring finger | 2 |
| Grade value for the little finger, including more than half of metacarpal | 4 |
| Total value | 10 |

Total value/Number of fingers involved = ratable value
10/4 = 2 1/2 = 3

Referring to table 1, grade 3 is ratable as amputation. Amputation of four fingers (thumb, long, ring, and little) is ratable under VA code 5127 at 70 percent for major hand, or 60 percent for minor hand.

(f) For rating purposes, the thumb is regarded as having no distal phalanx. Amputation of the thumb at or distal to the interphalangeal joint shall be graded as unfavorable ankylosis (grade value 2).

(8) 5171 - Amputation of Great Toe. Must be through the proximal phalanx to warrant a 10 percent rating.

(9) 5200-5295 - Rating Involving Joint Motion

(a) In measuring joint motion the medical examiner should use the standardized description portrayed in plates I and II, enclosure (8) attachment (d), of this instruction.

(b) When the reported limited range of motion falls between two points specified in the VASRD, the higher percentage of disability is applied.

(c) Ankylosis is the absence of motion of a joint. For disability rating purposes, it is complete fixation, or a limitation of motion so severe in degree that the amount of movement is negligible.

(d) Use of analogies such as "other impairment of" elbow or knee (code 5209 or 5257), is to be avoided when the actual impairment is a limitation of motion of the joint, properly ratable as limitation of flexion or extension of the part distal to the joint.

(e) In some cases of limitation, or of other abnormal joint motion, the basic cause is injury to muscle or tendon rather than to bone or joint. A careful distinction must be made for appropriate rating.

(10) 5205-5208 - Ankylosis or Limitation of Motion of Elbow and Forearm

(a) 5205. When a rating for unfavorable ankylosis is not based on the additional finding of complete loss of supination or pronation, the rating may be combined with 5213, subject to the amputation rule. If less then complete loss of supination or pronation occurs, 5205 may be combined with 5213, but the percentage must not exceed the rating for unfavorable ankylosis under 5205.

(b) 5206-5208. These codes may be combined with 5213, but the percentage must not exceed the rate for unfavorable ankylosis under 5205. If residuals exceed the maximum rating allowable under 5205 or 5209, the rating for amputation below insertion of the deltoid (5122) may be used.

(11) 5209-5212 - Other Impairments of Elbow, Radius and Ulna. These codes are not to be combined with Code 5213.

(12) 5213 - Impairment of Pronation and Supination

(a) Limitation of either pronation or supination may be rated. However, both should never be rated in the same arm. The higher rating applies.

(b) There is an inconsistency in the schedule for the ratings for the major arm, where "hand fixed near the middle of the arc or moderate pronation" is rated 20 percent, while limitation of pronation with "motion lost beyond middle of arc" is rated 30 percent. Cases in which this conflict arises shall be resolved in the member's favor.

(c) The following terminology for describing measurements of pronation and supination must be used, when assessing impairment, to facilitate uniformity of disability ratings.

1. The STARTING POINT for all motions of pronation and supination shall be zero degrees (thumb on the upper side of the hand with the hand held perpendicular to a flat surface). Supination is that motion between the starting point and palm up position. Pronation is that motion from the starting point to palm down.

2. Full supination is 80 degrees of motion from the starting point. Full pronation is 80 degrees of motion from the starting point.

3. Position of function is 20 degrees pronation (AMA guide).

4. The hand is fixed in full supination with the palm up.

5. Hyperpronation continues beyond the 80 degrees of full pronation with the thumb down.

6. The hand fixed in full pronation is fixed with palm down.

7. The VASRD term "middle of arc" is equivalent to zero degrees.

8. The VASRD term "beyond the last quarter of the arc" is equivalent to the inability to prorate beyond 40 degrees from the starting point.

(d) In some cases of limitation or other abnormal joint motion, the basic cause is injury to muscle or tendon rather than to bone or joint. A careful distinction must be made for appropriate rating.

(13) 5214 - Wrist, Ankylosis of

(a) Ankylosis of the wrist in 10 degrees to 30 degrees of dorsiflexion shall be considered favorable and rated accordingly.

(b) Wrist replacement prostheses are rated according to functional impairment.

(14) 5251-5253 - Limitation of Extension and Flexion of the Thigh Ratings. Allowable under these codes may not accurately reflect the degree of disability in circumstances where limitation of motion may reflect a more serious underlying disability of the sacroiliac region, pelvis, acetabulum, or head of the femur. The variability of residuals following injuries to these structures necessitates rating specific residuals; e.g., faulty posture, limitation of motion, muscle injury, painful motion of the lumbar spine, mild to moderate sciatic neuritis, peripheral nerve injury, or limitation of hip motion. More suitable ratings may be selected from VA code 5250 (hip, ankylosis of), VA code 5255 (femur, impairment of, with hip disability), or VA code 5294 (sacroiliac injury).

(15) 5255-5262 - Defects of Long Bones of the Lower Extremity. These codes (malunion with adjacent joint disability) should be applied when appropriate, to avoid multiple codes and ratings. When both a proximal and a distal major joint are affected, however, an additional rating may be indicated for the less disabled joint. Those codes are often appropriate when joint surfaces are included in fracture lines.

(16) 5257 - Knee, Other Impairments

(a) Patellectomy, chondromalacia, osteochondritis dissecans should be rated under 5003. Exceptions are cases in which objective findings warrant rating under code 5257.

(b) Recurrent subluxation or external instability

1. A rating of 30 percent for severe knee instability is awarded in those cases where a Lachman's test of ligament instability-to-stress test reveals a reading in excess of 3+ and where a knee brace, usually a derotation brace, is prescribed for a functional as opposed to a protective purpose. Specifically, a functional knee brace supplements or replaces the function of a major ligament or ligaments required for stability. Laxity in an affected knee must be compared to that of the unaffected knee to determine deviation caused exclusively by the medical condition.

2. A rating of 20 percent for moderate instability is awarded in those cases where the Lachman's test measures an instability reading of 2+ and physical therapy results in no improvement of the knee's lateral instability.

3. A rating of 10 percent for slight knee instability is appropriate in cases where the Lachman's test measures an instability reading between 1+ and 2+ and physical therapy does not improve the knee's lateral instability.

4. Knee joint replacement shall be rated according to code 5055.

(17) 5270 - Ankle prosthesis may be rated under this number. Maximum disability is 40 percent in keeping with amputation rule. Place on TDRL if appropriate and rate on residual disability after stabilization.

(18) 5272 - Subastragalar or Tarsal Joint Ankylosis. The assignment of a rating under this code is proper only in the absence of motion of the subtalar joint which is manifested by the lack of inversion or eversion of the foot.

(19) 5003-52xx - Stress Fractures

(a) Since the VASRD has no specific rating schedule for these conditions, rating shall be done, as follows:

1. If there is radiographic evidence of fracture of the femur or tibia, it should be rated as any other fracture. The Bilateral Factor would apply, if appropriate.

2. Fracture of the pubic rami confirmed by radiographic findings should be rated under 5003. That is a membranous bone that can be expected to heal quickly. Muscle action of the large thigh adductors is the main aggravating force, not weight bearing.

3. Fracture of tibial and fibular malleoli are seldom displaced, may not require surgery, and except for offering some comfort, casts are not required. The most appropriate rating would be analogous to 5262, slight.

4. Stress fracture of the tarsals or metatarsals should be rated under 5279, metatarsalgia.

5. Tibial plateau and femoral condyle stress fractures are stable unicortical defects which should be rated as analogous to 5259 because of some impairment of knee function. The use of the 5257 would be inappropriate because the lesion is extra-articular and produces pain, not knee instability.

6. Stress reaction without radiographic evidence of fracture should be rated as periostitis under 5022. When listing this VA code on a member's findings, it should be noted as 5022-5003.

7. Service members with stress fractures which are or become completed should probably be placed on the TDRL since the healing process is longer and may actually impact on the member's ability to obtain employment immediately after discharge.

(b) Radiographic Evidence. At the time of the original MEB, a service member may have pain not explained by routine radiographic examination. A bone scan, however, may reveal increased vascularity consistent with stress fracture or stress reaction. After a year, only routine radiographs are necessary to demonstrate that there is or is not evidence of a healed fracture. There is no need for a bone scan. If the service member originally had a fracture, it will be evident on the radiograph. If the current radiographic is normal, then a fracture did not exist at the time of the MEB. The most likely diagnosis was stress reaction.

(c) Service members who develop stress fractures, especially of the femoral neck, during basic training which prevents them from completing basic should be separated with appropriate rating as the injury most likely will recur when the service member is recycled.

(20) 5285-5295 - The Spine

(a) Each segment of the spine (cervical, dorsal, and lumbar) segments is regarded as a group of minor joints. Combination of sacroiliac and lumbosacral joints is

regarded as a major joint. Each group of minor joints is ratable as one major joint only when separate ratings are justified by radiographic evidence of pathology besides limitation of motion or other evidence of painful motion of the individual segments involved. Otherwise, rate as for osteoarthritis.

(b) Arthritic impingement on nerve roots produces degeneration of the nerve function or frequent, prolonged attacks of neuralgia. These attacks are to be distinguished from brief episodes of radicular pain. The arthritic impingement should be rated as one entity under codes for neurologic conditions. The exception is a case in which limitation of spinal motion justifies an additional rating.

(21) <u>5285 - Residuals of Fracture of Vertebra</u>

(a) The need for a service member to wear some type of brace to restrict lumbar or dorsolumbar movement is not similar to the requirement for a jury mast type of neck brace for abnormal mobility after cervical fracture. When no cord involvement is evident, the disability should be rated according to the degree of limited motion with brace in place.

(b) The 10 percent addition to the rating is made only for demonstrable, substantial deformity of a vertebral body (i.e., VISIBLE TO THE NAKED EYE and greater than 50 percent compression on a X-ray). It should not be added in those instances of insignificant deformity such as slight shortening of the anterior vertical dimension of the vertebral body. When a successful spinal fusion has been performed because of the deformity, the degree of instability has usually been removed, or so far reduced that the addition of 10 percent is not justified. An extensive spinal fusion may result in a ratable limitation of motion.

Example: If, as residuals of vertebral fractures, a member were to have moderate limitation of motion in cervical and lumbar segments, and substantial deformities of the bodies of C5, T12, and L1, the rating would be:

| | | |
|---|---|---|
| Line: | 1. Code 5285-5290 | 20 percent |
| | 2. Demonstrable deformity of C5 | 10 |
| | 3. (Subtotal) | 30 |
| | 4. Code 5285-5292 | 20 percent |
| | 5. Demonstrable deformity of L1 | 10 |
| | 6. (Subtotal) | 30 |
| | 7. Combining lines 3 and 6 | 51 percent |

(Since there is no associated finding, there can be no addition because of deformity in T12)

(22) <u>5286-5289 - Ankylosis of a Spinal Segment</u>

(a) A rating for ankylosis is given only when the range of motion of the whole spinal segment is absent or negligible. Ankylosis of a part of a segment may leave some

degree of useful motion for the segment as a whole. In such cases the appropriate rating would be for limitation of motion.

(b) The combination of separate ratings for ankylosis of a spinal segment shall not exceed 60 percent of the rating for complete ankylosis of the spine at a favorable angle.

(23) 5293 - Intervertebral Disc Syndrome. The intervertebral disc syndrome involves a herniation of the nucleus pulposus with impingement on the nerve root resulting in irritation and a radicular distribution of pain.

(a) Because 40 - 50 percent of the population have herniated discs which are asymptomatic, finding a herniated disk on MRI in a service member with back pain does not necessarily imply the herniated disk is the primary cause of the pain.

(b) Ratings of 40 percent - 60 percent will be predicated upon objective neurological findings supported by laboratory data, such as EMG, nerve conductive studies, flow and manometric studies for bowel and bladder involvement.

(c) The weight attached to each finding shall vary according to the co-presence of other findings. Preoperative neurological findings (e. g. absence of knee jerk) may be of less clinical and disability evaluation significance if they persist port-operatively because they may not reflect the actual severity of the current situation.

(d) Surgical excision of a disc without evidence of recurrent disc herniation at the same level or a different level precludes the application of the 5293 code.

(e) Residual cervical pain with radiculopathy, status post excision of a herniated disc should be rated for the pain (5003) or limitation of motion (5290) and for the radiculopathy under the appropriate 8500 series code.

(f) Residual lumbar pain with radiculopathy should be rated as 5295 and the relevant code for neurological impairment.

(24) 5295 - Lumbosacral Strain

(a) Zero percent rating shall be awarded for chronic low back pain of unknown etiology (mechanical low back pain).

(b) Demonstrable pain on spinal motion associated with positive radiographic findings shall warrant a 10 percent rating.

(c) If paravertebral muscle spasms are also present, a 20 percent rating may be awarded. Such paravertebral muscle spasms, however, must be chronic and evident on repeated examinations.

(25) 5296 - The Skull

(a) Area of loss where bone regeneration has taken place is not ratable. If regeneration has partially closed the defect, only the remaining area of loss is to be rated.

(b) Areas of total bone loss:

1. Total bone loss from a single area of the skull is not ratable if the defect has been successfully repaired with a prosthetic plate. Residual neurological deficit or cosmetic deformity shall be rated separately if appropriate.

2. When there is total bone loss from multiple areas, such as in trephining, the rating should not be assigned based upon "coin measurement" but on the basis of the aggregate area of loss in terms of square centimeters.

(c) The following conversion measurements shall be used in applying VASRD ratings:

1. Defect of a diagnostic burr hole approximates 1 square centimeter.

2. A 25 cent piece (quarter) = 4.6 square centimeters.

3. A 50 cent piece (half dollar) = 7.35 square centimeter.

4. ADDITIONAL MEASUREMENTS AND GUIDELINES

1 centimeter - 0.3937 inch
1 inch - 2.54 centimeters
1 square centimeter------------0.1550 square inch
2 square centimeters-----------0.3100 square inch
3 square centimeters-----------0.4650 square inch

| Diameter of Circle | Area of Circle | |
|---|---|---|
| | Square Centimeters | Square inches |
| 1 centimeter | 0.7854 | 0.1216 |
| 2 centimeters | 3.1416 | 0.4869 |
| 3 centimeters | 7.0686 | 1.0956 |
| 4 centimeters | 12.5664 | 1.9478 |

| | |
|---|---|
| ½ inch | 0.19635 |
| 1 inch | 0.7854 |
| 1 ½ inches | 1.76715 |
| 2 inches | 3.1416 |

(d) Diagnostic burr holes and other bony defects are ratable only when contiguous and when there is loss of both inner and outer tables of bone. The areas are added and the total is rated. Approximately 50 percent of diagnostic burr holes heal within 5 years.

(e) Suboccipital skull defects shall not be rated.

(26) 5297 - Removal of Ribs

(a) For removal of ribs, the VASRD requires the complete removal from the vertebral angle to the costo-cartilaginous junction. Removals of a lesser degree are rated as rib resections.

(b) The presence of certain conditions precludes the assignment of an additional rating under Code 5297; exceptions are allowed in specific situations. "Notes (1)" and "(2)" under this code in VASRD provide pertinent guidance.

(27) 5299-52xx - Dupuytren's Contracture. Rate on the basis of limitation of motion of finger movement.

(28) 5301-5326 - Muscle Injuries

(a) Pyramiding must be avoided. There are specific limits to the permissible combination of ratings of muscle injuries in the same anatomical segment, and of muscle injuries in which the movements of a single joint are affected. For example, separate ratings should not be given for an ankylosed joint and an injured muscle rating on that joint.

(b) Ratings for bone and joint impairment should not be combined with ratings for muscle and nerve impairments affecting the same joint

b. 6000 SERIES CODES

(1) 6000-6092 - Diseases of the Eye

(a) The adjudication of disabilities of the visual apparatus is difficult. In some cases involving a combination of defects, arriving at an equitable percentage rating through literal application of the terms of the VASRD may not be possible. The complexity of

those conditions does not permit the construction of a simple schedule that is adequate for the variety of defects and resulting types and degrees of impairment that may occur. Here, the concept of "visual efficiency" may be helpful. Visual efficiency is the product of the interdependent relationship of all the functions of the ocular apparatus, of which the three principal ones are central visual acuity, field of vision, and muscle function. Since the estimation of visual efficiency, as such, is not provided by the VASRD as a means of determining a degree of disability, it is useful only to determine the service member's real functional handicap so that an equitable rating in terms of the schedule can be recommended.

(b) The VASRD provides that the combined disabilities of the same eye are not to exceed the rating for total loss of vision of that eye, unless there is an enucleation or a serious cosmetic defect added to the total loss of vision. Accordingly, where there is a cosmetic defect, even though limited to the eye with the visual loss, representing a separate and distinct entity, namely, facial disfigurement, a separate rating of 10, 30, or 50 percent is permitted under 7800 to be combined with the rating for visual loss or rating for enucleation.

(c) Visual field defects must be reported according to the method prescribed in the VASRD, paragraphs 4.76 and 4.76a. Results of muscle function examinations should be reported in accordance with VASRD, paragraph 4.77. Reference to the AMA Guides to the Evaluation of Permanent Impairment (current edition) may assist in computing the extent of impairment.

(d) When computerized techniques are used to determine the extent of diplopia, visual fields, or scotomata, the results must be interpreted in relation to the standard VASRD charts to render a rating.

(2) <u>6000-6009 - Conditions Involving Structures of the Globe</u>

(a) Disabilities resulting from these conditions are rated as follows:

<u>1</u>. <u>STEP ONE</u>:

<u>a</u>. Impairment of visual acuity is rated.

<u>b</u>. Impairment of field of vision is rated.

<u>c</u>. Active pathology, if-present, is rated at 10 percent.

<u>d</u>. The higher of the first two ratings is combined with the 10% active pathology.

<u>2</u>. <u>STEP TWO</u>: Pain, rest requirements and/or episodic incapacity are rated from 10 to 100 percent. This rating, when only one eye is involved, is not necessarily limited to the 30 percent rating for total loss of vision of one eye, since pain or rest requirements

may be incapacitating to any degree, including total. This rating is assigned the code which covers the basic condition (i.e., Code 6000 through 6009). Analogy to another code is not required. It is an estimate based as nearly as possible upon the actual impairment of social and industrial function which is imposed by the pain experienced, the time lost because of the requirement for rest, the frequency of incapacitating episodes, or any combination thereof. The additional rating of 10 percent for continuance of active pathology should not be combined with this rating.

3. STEP THREE: The higher of the ratings resulting from Steps One and Two, is awarded.

(b) Retained foreign body is rated as active pathology as in Step One, above, if in a critical area or not stabilized. Otherwise, the rating is for residuals under Step Two.

(3) 6013 - Glaucoma, Simple, Primary, Noncongestive. The minimum rating is applicable if the diagnosis is satisfactorily established, whether or not visual acuity or field of vision has been affected. The rating is for the disease, rather than for functional impairment of an individual organ, and applied whether the disease progresses or not.

(4) 6029 - Aphakia. Process Involves One or Both Eyes. This condition is usually not Unfitting. However, requirements of a particular military occupational skill must be considered in making a Fitness determination. If the member is determined Unfit, the appropriate rating shall be applied. The condition, if corrected by successful prosthetic implants (pseudophakia), is not considered Unfitting or ratable unless the prosthetics are specified as too unstable to withstand duty stress.

(5) 6081 - Scotoma, Pathological. The rating is 10 percent whether unilateral or bilateral. Other ratings may be combined with the reservation that the rating for one eye may not exceed 30 percent, unless there is enucleation or a serious cosmetic defect. Central scotoma cannot, however, be combined with central visual loss.

(6) 6090-6092 - Diplopia. The VASRD uses the Goldmann Perimeter Chart to describe the location in the field of vision where diplopia occurs. The VASRD, under 6090-6092, converts the location in the field of vision where diplopia occurs to an equivalent visual acuity that then can be used in the final rating. The final rating is achieved by referring to VASRD Table V "Ratings for Central Visual Acuity Impairment". The equivalent visual acuity is substituted for the actual visual acuity of the worse eye (if visual acuity is the same in both eyes, one eye will arbitrarily be considered worse), and plotted against the actual visual acuity of the better eye. The intersecting box provides the percentage rating and the VASRD code.

(7) 6200 - Otitis Media, Suppurative, Chronic. The 10 percent rating during the continuance of the suppurative process is intended as compensation for the existence of active pathology rather than for additional impairment of the individual sense organ. This rating is therefore limited to 10 percent, whether the pathological process is unilateral or bilateral.

(8) 6207 - Deformity of Auricle. If associated with disfiguring scars of face or head, Code 7800 may be appropriate. Avoid pyramiding.

(9) 6300-6354 - Systemic Conditions: Convalescent ratings of 6 or 12 months provided under certain of these codes are not applied by the Military Departments.

(10) 6309 - Rheumatic Fever. When a member is determined to be Unfit because of recurrence of disease, the member may be rated at zero percent (see VASRD paragraph 4.31) if there is no residual functional impairment. If residual functional impairment is diagnosed, the member shall be rated accordingly under the proper code.

(11) 6350 - Lupus Erythematosus, Systemic. Some Connective-tissue diseases, such as vasculitis, collagen disease, immune complex disease, and other disseminated diseases, not elsewhere covered, are to be rated under this code. Refer to Alphabetical Listing of Analogous Ratings (enclosure (9), attachment (a))

(12) 6351 - Human Immunodeficiency Virus Infection (HIV) and Acquired Immune Deficiency Syndrome

(a) This is the only code used in rating HIV or AIDS.

(b) The rating criteria shall be according to the VASRD. The service member must be determined to be Unfit because of that condition before rating. Seropositivity alone is not Unfitting.

(c) The rating shall incorporate the service member's current CD4 count regardless of medication regimen.

(13) 6354 - Chronic Fatigue Syndrome (CFS)

(a) These cases must meet the definition put forth by the National Institutes of Health (current standards). The VASRD also lists criteria to meet the definition.

(b) The VASRD requires that six or more of the characteristics listed in paragraph 4.88a-3 (of the VASRD) must be met.

(c) Both major criteria and eight or more of the minor criteria must be met.

(d) "Incapacitation" means that the service member requires COMPLETE bed rest and FREQUENT treatment by a RHEUMATOLOGIST.

(e) In accordance with the VASRD, the diagnosis of CFS requires new onset of debilitating fatigue severe enough to reduce daily activity to less than 50 percent of the usual level for at least 6 months.

(f) An active duty service member referred to the PEB for Chronic Fatigue Syndrome must have been thoroughly evaluated. The referring MEB report shall include a psychiatric evaluation, unit commander assessment, report of observation in a hospital setting, other observer (peers, et. al.) accounts, and interpretation of the results of (at least) the following laboratory tests: blood tests, including CBC; Differential; WBC; ESR; liver function tests; albumin; globulin; calcium; phosphate; electrolytes; glucose; BUN; creatinine; thyroid studies, and urinalysis.

(g) The fatigue symptoms may be part of an underlying psychiatric disorder. In such cases, the psychiatric disorder rather than Chronic Fatigue Syndrome should be assessed as the potentially Unfitting condition. If the service member is rated separately for Chronic Fatigue Syndrome and the psychiatric disorder, pyramiding would result. However, if the service member has a psychiatric disorder that is clearly separate from a coexisting Chronic Fatigue Syndrome that is validly based on NIH diagnostic criteria, both conditions should be assessed and rated as to impact on Fitness.

(14) 6519 - Aphonia, Organic. Impairment of ability to speak may be ratable under more than one code, depending on the cause and severity of the impairment. In such instances, the highest applicable rating is awarded. This section does not apply to speech impairment due to loss of whole or part of tongue that is rated under Code 7202.

(15) 6600-6604 - Disease of the Trachea and Bronchi. Unless contraindicated, pulmonary function tests, performed both with and without medication, must confirm the clinical diagnosis and severity (see enclosure (9), attachment (b), table 2). If the service member's condition is subject to significant variation over time, a single clinical and pulmonary function evaluation may not be adequate. Response to therapy is to be considered in all cases. Pulmonary Function Tests:

(a) The pulmonary function test values listed in enclosure (9), attachment (b), table 2 should serve as guidelines in determining ratings.

(b) When an MEB is held for restrictive or obstructive pulmonary disease, rating is usually based upon pulmonary function tests (PFTs) measuring residual function. There

must be a minimum of one set of PFTs. Studies should be performed both before and after medication:

1. When the results of pre-bronchodilator PFTs are normal, post-bronchodilator studies are not required.

2. In all other cases, post-bronchodilator studies should be done unless contraindicated (because of allergy to medication, etc.) or if a patient was on bronchodilators before the test and had taken his/her medication within a few hours of the study.

a. A physician who determines that a post-bronchodilator study should not be done in a given case should provide an explanation.

b. The members of the Informal PEB shall request either the explanation when not provided or a repeat of the studies.

c. The post-bronchodilator results will be used in applying the evaluation criteria in the rating schedule. There is a small group of patients (5 percent or less) in whom there may be a paradoxical reaction to bronchodilators; i.e., the post-bronchodilator results will be poorer than the pre-bronchodilator results. When there is a paradoxical response, the better (pre-bronchodilator) values will be used in the rating.

d. When there is disparity between the results of different tests (FEV-1, FVC, etc.) so that the level of evaluation would differ depending on which test result is used, the test with the better (higher) values (i.e. that would give the lower evaluation) will be used. The reason is that these tests are effort-dependent, and the difference is usually due to the effort applied in each test. However, if there is a substantial disparity in the results, the MEB physician may be asked for an explanation and/or request that the test be repeated if there is no clear reason.

e. When the FEV-1 is greater than 100 percent, an FEV-1/FVC ration that is below normal should be considered a physiological variant rather than an abnormal value.

3. Where warranted, the member should have a methcholine challenge, especially when the original set of PFTs are "normal".

4. In cases of exercise-induced asthma, PFTs after exercise should be performed.

5. Specific rating considerations under VASRD code 6602 are as follows:

a. 30 percent rating: VASRD provides that this rating will be assigned in the presence of "daily inhalational or oral bronchodilator therapy, or; [sic] daily inhalational anti-inflammatory medication". For the proper interpretation and application of the forgoing, it is important to delineate the medical requirement for the type of medication specified. Thus, in order to qualify for the 30 percent rating, it must be shown that, by accepted medical principles, medication is required to permit normal day-to-day duty activities. The 30 percent rating is appropriate when the clinical situation is sufficiently tenuous as to not permit a day off of qualifying medication without running a significant risk that disabling symptoms would emerge. However, the 30 percent rating is not solely dependent on medication use. The PFTs must also be considered.

b. 60 percent rating: VASRD criteria include a reference to "at least monthly visits to a physician for required care of exacerbations". For disability rating purposes, interpret the term "exacerbation" as an episode requiring emergency department attention.

(16) 6701-6704: 6730 and 6732 - Active Tuberculosis. Active tuberculosis shall be rated under code 6730. All periods of time specified in the VASRD for the management of tuberculosis, active or inactive, apply only to the VA and do not apply to the military. Treatment and clinical response shall serve as the criteria for disposition. Rating for residuals shall be based on functional impairment.

(17) 6721-6724: 6731 - Inactive Pulmonary Tuberculosis

(a) Determining Inactivity. Pulmonary tuberculosis is considered to be inactive when:

1. There are no symptoms of tuberculous origin. Serial roentgenograms show stability or very slow shrinkage of the tuberculous lesion. There is no evidence of cavitation. Sputum or gastric washings show negative on culture or guinea pig inoculation. Those conditions shall have existed for at least 6 months.

2. Established by evaluation. That is usually, but not always, at the time the patient is declared to have received the maximum benefits of hospitalization.

3. Six months have passed since surgical excision of an active lesion during which time there shall have been no evidence of tuberculous activity in any body system.

(b) Chemotherapy. Treatment by medication is frequently continued beyond the date when the disease becomes inactive according to the above criteria. The ending date of such treatment does not define the beginning of the inactive status.

(c) Rating Residuals. A rating of 100 percent for 1 year after the date of attaining inactivity shall not be used. After the condition becomes inactive, residuals (e.g., impairment of pulmonary function, surgical removal or resection of a part) should be rated under the appropriate VA Code, subject to the limitations contained in paragraphs 4.96a and b of the VASRD.

(18) 6834-6839 - Mycotic Pulmonary Infections. These diseases are rated using the criteria set forth in DC (disability code) 6839.

(19) 6838 - Aspergilloses of Lung. This code refers only to invasive aspergillosis or to aspergilloma. Active or recurrent allergic aspergillosis is rated using the criteria listed under 6839.

(20) 6810 - Pleurisy. Serofibrinous. If significant ventilatory impairment is present, use the criteria listed under Code 6845.

(21) 6843 - Pneumothorax. The "100 percent 6 months" rating should not be applied. A known underlying condition may be rated. If there is none, rating accordance with criteria listed under 6845.

(22) 6844 - Pneumonectomy. Rate in accordance with disability code 6845. If, at a later date, thoracoplasty becomes necessary for obliteration of space within the thorax, the rating for pneumonectomy shall be combined with a rating removal of the ribs.

(23) 6844 - Lobectomy. An entire lobe other than the right middle lobe must be removed for the defect to be ratable. Excision of the right middle lobe, segment resection, or lingulectomies are not ratable. Ratings are based on total body impairment and pulmonary function tests.

(24) 6846 - Sarcoidosis. This disease is difficult to rate because of its unpredictable course and the number of body systems that may be involved. Rate by the criteria listed under code number 6846 when the predominant manifestations are pulmonary. With other organ or more generalized involvement and manifestations such as lymphadenopathy, transient joint pains and occasional febrile episodes, rate under specific body system involved.

(25) 6847 - Sleep Apnea Syndromes. The VASRD lists four percentage rating options: 0 percent, 30 percent, 50 percent, and 100 percent under this code, corresponding to assessed levels of disability relative to civilian earning capacity due to Sleep Apnea. The following interpretation will apply:

| | |
|---|---|
| Total industrial impairment | 100 percent |
| Considerable industrial impairment | 50 percent |
| Definite industrial impairment | 30 percent |

Mild industrial impairment 0 percent

(26) Pulmonary function tests requirement. In general, the conditions listed under the following ratings must have pulmonary tests submitted with the board. Ensure that PFT testing is performed in accordance with the PEB's requirements prior to submission of the board.

(a) 6520. Stenosis of the Larynx.

(b) 6600-6604. Diseases of the Trachea and Bronchi.

(c) 6825-6833. Interstitial Lung Disease.

(d) 6840-6845. Restrictive Lung Disease.

c. 7000 SERIES CODES

(1) General

(a) Evaluation and reporting of cardiovascular function should be in accordance with the 1998 VASRD standards (to be upgraded as the VASRD is). These standards refer to evaluations in terms of METs of energy expended to produce a certain level of symptoms.

1. Objective measurements of the level of physical activity, expressed as METs (metabolic equivalents), at which cardiac symptoms develop is the main method of evaluating cardiovascular entities now.

2. The exercise capacity of skeletal muscle depends on the ability of the cardiovascular system to deliver oxygen to the muscle, and measuring exercise capacity can, therefore, also measure cardiovascular function. The most accurate measure of exercise capacity is the maximal oxygen uptake, which is the amount of oxygen, in liters per minute, transported from the lungs and skeletal muscle at peak effort. Because measurement of the maximal oxygen uptake is impractical, multiples of resting oxygen consumption (or METs) are used to calculate the energy cost of physical activity. One MET is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. The calculation of work activities in multiples of METs is a useful measurement for assessing disability and standardizing the reporting of exercise workloads when different exercise protocols are used.

3. Alternative methods of evaluating function are provided for situations where treadmill stress testing is medically contraindicated – the examiner's estimation of the level of activity, expressed in METs and supported by examples of specific activities, such as

slow stair climbing or shoveling snow that results in dyspnea, fatigue, angina, dizziness or syncope is acceptable.

a. Other objective criteria which can be used as alternatives to the METs-based criteria for valvular heart disease include whether there is heart failure; the extent of any Left ventricular dysfunction; the presence of cardiac hypertrophy or dilatation; and the need for continuous medication.

b. Left ventricular ejection fraction of less than 30 percent or chronic congestive heart failure for a 100 percent evaluation

c. Left ventricular ejection fraction of 30 to 50 percent or more than one episode of acute congestive heart failure in the past year for a 60 percent evaluation.

d. Evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray for 30 percent evaluation

e. Requirement for continuous medication for 10 percent evaluation.

(b) General guidance for various percentage ratings using METs for valvular heart disease (7000) as well as most of the cardiovascular disorders:

1. 100 percent. If a workload of three METs or less produces dyspnea, fatigue angina, dizziness or syncope. A workload of three METs represents such activities as level walking, driving and very light calisthenics.

2. 60 percent. If a workload of greater than three METs but not greater than five METs results in cardiac symptoms. Activities that fall into this range include walking 2 ½ miles per hour, social dancing, light carpentry, etc.

3. 30 percent. If a workload of greater than five METs but not greater than seven METs produces symptoms. Activities that fall into this range include slow stair climbing, gardening, shoveling light earth, skating, bicycling at a speed of 9 to 10 miles per hour, carpentry, and swimming.

4. 10 percent. If a workload of greater than 7 METs but not greater than 10 METs produces symptoms. Activities that fall into this range include jogging, playing basketball, digging ditches, and sawing hardwood. When symptoms develop only during such activities, there may be some impairment of earning capacity, but it is likely to be slight. The alternative criterion for 10 percent evaluation is the need for consistent medication.

(c) Other specific Items:

1. The 30 percent minimum evaluation for arteriosclerotic heart disease and myocardial infarction (7005 and 7006) is NO longer warranted.

2. Placement of a cardiac pacemaker no longer warrants a 30 percent minimum rating in the VASRD but in accordance with paragraph 9008 the member generally will be put on the TDRL for at least one period of evaluation.

3. Placement of an AICD (Automatic Implantable Cardioverter-Defibrillator) should be sufficient to place a member on the TDRL (the convalescent rating of 100 percent does not apply) since the use of AICDs is associated with the potential for serious complications such as myocardial infarction, stroke, cardiogenic shock, and complications associated with the thoracotomy required for its insertion.

(2) 7000 Series - Cardiovascular Disease. (Tables 3 and 3a provide guidance for rating cardiac functional status.)

(a) Pyramiding Must be Avoided. Only one rating should be given for all manifestations of cardiovascular or renal disease when, according to accepted medical principles, the conditions have the same origin or cause. For example, hypertension and end organ nephropathy due to arteriosclerosis are related etiologically and may be regarded as one clinical entity. The disability should be rated under the code representing the predominant signs and symptoms. In some cases, the related manifestations in another body system will be so severe as to increase the service member's overall impairment to the point that the next higher percentage under the selected code shall be justified. The note in the VASRD under code 7507 is pertinent.

(b) A specific determination correlating energy/effort expended (METs) with clinical symptoms is required.

(c) Additional Guidelines for interpreting ratings under these codes are *(intended to amplify but not substitute for VASRD description)*:

1. The 100 percent rating. When more than sedentary employment is precluded. New York Heart Association Functional Therapeutic Class IV (NYHA FTC IV).

2. The 60 percent rating. When more than light manual labor is precluded as indicated by a NYHA FTC III heart or by congestive heart failure as established by a left ventricular ejection fraction reading in the low 20's.

3. The 30 percent rating. When more than ordinary manual labor is prevented, for instance, by NYHA FTC IIb heart.

(d) Types of employment used for rating purposes are:

1. Sedentary Employment. Work that is not time dependent. This work involves low energy expenditure and minimal body movement.

2. Light Manual Labor. "Bench work" equivalents.

3. Ordinary Manual Labor. Leg, back, and arm effort; time dependent. This includes work not involving sustained heavy energy expenditure, and includes most skilled laborers, mechanics, and drivers.

4. Strenuous Labor. Repetitive and rapid combined arm, leg and trunk effort.

(e) Do not award convalescent ratings.

(3) Valvular Heart Disease. Valvular heart disease not of arteriosclerotic or hypertensive origin should be rated as rheumatic heart disease, code 7000 if the predominant symptoms are due to valvular pathology.

(4) Rheumatic Heart Disease

(a) A determination of existed prior to service for rheumatic heart disease may be justified even though its presence was not previously recorded. Such a determination shall depend upon the medical history and findings in the light of accepted medical principles. A stenotic valvular lesion, discovered early in military service, is an example.

(b) A "definitely" enlarged heart is one in which there is positive evidence of enlargement beyond the "doubtful" or "borderline" enlargement that is sometimes reported when the presence of enlargement is uncertain. Voltage criteria alone are not acceptable as electrocardiographic evidence of definite enlargement. Enlargement of the heart shall be determined by objective evidence using appropriate measures other the electrocardiogram.

(c) The 100 percent rating for active rheumatic heart disease for 6 months is not applicable.

(5) 7005-7006 - Arteriosclerotic Heart Disease, Myocardial Infarction

(a) Do not combine a rating for arteriosclerotic heart disease with one for hypertensive heart or hypertensive vascular disease (Code 7007 or 7101).

(b) Rating of 100 percent under this code solely on the basis of the acute attack occurring within a three month period will not be applied.

(c) When an infarction or other acute conditions evaluated under these codes has occurred within approximately 6 months preceding evaluation or when the member's condition does not appear to have stabilized sufficiently to permit evaluation, place on the Temporary Disability Retired List (TDRL) and remove as soon as clinically stabilized.

(6) 7005-7017 - Disease of the Coronary Arteries. Surgical Procedures, and Trauma

(a) For service members on active duty, to include those active duty for less than 31 days, myocardial infarction incurred during such periods shall be presumed "aggravated" by performing such duty. This presumption may be overcome when it can be shown by a preponderance of evidence that the condition was not aggravated by military service.

(b) Coronary bypass surgery, valve prosthesis, or other cardiac surgery shall be rated on the extent of residual functional impairment when the condition is stable. If stability cannot be established, a period of TDRL should be considered.

(7) 7007-7101 - Hypertensive Heart Disease and Hypertensive Vascular Disease

(a) Obtain blood pressure reading, to be used in determining disability rating percentages, under normal circumstances and during usual activities. When antihypertensive medication is required for control, base the rating on the pressures obtained during usual activities, while under medication. Hypertension brought under control through optimum conditions (that is, during hospitalization under a regimen of medication and enforced rest) will not be used as a basis for evaluation, unless it is established that such control continues upon resumption of normal activity. Similarly, readings obtained during periods when indicated medication is withheld for purposes of medical observation, diagnostic study, etc., are not used as the basis for evaluation. A minimum of 10 readings taken on at least 5 days, on treatment, and under conditions as close as possible to normal duty performance, will be necessary. Also, correlate blood pressure levels with other evidence of end organ change; e.g., eyegrounds, neurologic exam, etc. The member, while in a hospital status, may be engaged in activities which for adjudicative purposes, are considered as unrestricted and comparable to "outside of the hospital environment." For example, he/she is ambulatory to the mess hall, receives weekend passes, engages in ward housekeeping duties. The level of hypertension is not to be determined by an average of all readings, but rather the predominant readings are to be the basis for determination of the level of hypertension.

(b) When a combination of 7007 or 7101 exists with 7005, rate the individual under the code that most accurately reflects the disability. The presence of stigmata of hypertensive disease does not warrant rating at a higher level, unless there is clinically significant secondary organ involvement, such as renal impairment. When significant changes are present, consider raising the rating one step.

(c) Careful evaluation is necessary in making the frequently tenuous distinction between hypertensive heart disease and hypertensive vascular disease, especially for the minor degrees of severity. Generally, to justify the 30 percent rating for hypertensive heart disease, all of the criteria mentioned in the VASRD for that rating shall be met. "Definite enlargement of the heart" means certain left ventricular hypertrophy by EKG criteria, other than voltage alone, with allowance for T-wave changes which may reflect medication more than pressure. The X ray appearance of the heart is deceptive in concentric hypertrophy, but must be at least consistent with that diagnosis.

(8) 7015-7017; 7110 - Surgical Procedures Associated with AV Block, Heart Valve Replacement, Aneurysms. Convalescent ratings and ratings for specified periods of time following surgery do not apply. Ratings are based on the degree of functional impairment. However, maximum ratings do apply.

(9) 7100 - Arteriosclerosis, general. The 20 percent rating under that code is rarely appropriate. It is preferable to rate impairment of the body system most involved by the disease.

(10) 7114-7117 - Peripheral Vascular Diseases

(a) The symptoms and signs of these conditions should be considered as manifestations of a systemic disease entity, wherein bilateral involvement of extremities is natural and expected. They are distinct from local mechanisms affecting peripheral circulation (for example, varicose veins or phlebitis) in which bilateral involvement is more nearly equivalent to coincidental duplication of the disease, rather than its direct extension.

(b) When manifestations are limited to the extremities, the percentage of disability is based on the most severely affected extremity unless each of the two or more extremities separately meets the requirements for valuation in excess of 20 percent. In the latter case, 10 percent shall be added to (not combined with) the valuation for the more severely affected extremity, except where the disease has resulted in amputation. When both upper and lower extremities are involved, the above rating procedures are first applied to the upper extremities, then to the lower extremities. Ratings shall be combined if each group has a total rating in excess of 20 percent.

(c) The bilateral factor applies in all cases of an amputation of one extremity with any compensable degree of disability of the other extremity.

(d) A rating of 20 percent or less for a peripheral vascular disease should not be combined with any other peripheral vascular disease rating.

(e) Peripheral vascular disease ratings for codes 7114 through 7117 are listed in table 4.

(11) 7120 (7199-7120) - Hypercoagulable states requiring chronic anticoagulation

(a) At least 10 percent (but with strong consideration of placement on the TDRL) is given if there have been episodes of thrombophlebitis or emboli in the past year.

(b) A zero percent rating is given if there have been no episodes of thrombophlebitis or embolus in the past year.

(c) Higher ratings are based on residuals to emboli or thrombophlebitis

d. 7300 SERIES CODES

(1) 7305 - Ulcer, Duodenal. Medical and surgical management have been increasingly effective. Cases refractory to accepted medical therapy may be determined Unfit for continued active duty.

(2) 7307 - Gastritis, Hypertrophic. That diagnosis must be made by endoscopy. It should not be rated separately, however, if other conditions are present that produce a common impairment. A single valuation shall be assigned under the diagnostic code that reflects the predominant disability with elevation to the next higher rating if the severity of the overall disability warrants.

(3) 7308 - Postgastrectomy Syndrome. In evaluating and rating, care must be taken to differentiate between nondisabling symptoms or minor discomfort which sometimes result from overindulgence, such as that experienced from overeating by a person without a gastrectomy, and discomfort symptomatic of a true postgastrectomy syndrome. Circulatory or comparable symptoms, even though mild or intermittent, such as a need for rest after meals, are indicative of impairment that may be a basis for rating.

(4) 7328-7329 - Intestinal Resections. When portions of both large and small intestines have been removed, the rating should be done using the code that is most representative of the clinical manifestations.

(5) 7332-7336 - Ano-Rectal Conditions. Pilonidal cyst or sinus is primarily a disorder of ectoderm and shall be rated as a skin condition. However, when an active process is present the rating is by analogy to Code 5000.

(6) 7338 - Hernia, Inguinal. If correctable and there are no contraindications to surgery, hernia is not ratable if surgery if refused.

(7) 7345 - Hepatitis

(a) Acute infectious hepatitis will usually resolve without residual impairment. Liver function tests should return to normal. Although not generally considered Unfitting, there may be instances where the member should be placed on the TDRL to see what course their disease takes.

(b) Chronic persistent hepatitis is a condition with minimally disturbed histology and liver function tests. There is no persistent disability or progression, and both time and supporting evidence confirm that. Rating for residuals is seldom justified. Placement on the TDRL may be proper when the clinical and laboratory course (particularly in the presence of persistent antigenemia) indicates a need for continued observation to rule out chronic active hepatitis.

(c) Chronic active hepatitis is a frequently progressive condition that may or may not be associated with a demonstrable antigen. Since the course of the disease is often difficult to predict, placement on the TDRL may be proper before permanent disposition is made.

(d) Other forms of inflammatory liver disease will be rated by analogy to infectious hepatitis or to other specific VASRD codes if applicable.

(8) 7347 - Pancreatitis. If diabetes is present, the predominant disease should be rated, with consideration given to the other, under a single code, to avoid pyramiding.

e. 7500 SERIES CODES

(1) 7500-7542 - The Genitourinary System. The VASRD has published a new rating scheme for disabilities related to the genitourinary system based on renal or voiding dysfunctions, infections, or a combination of these. The major areas of rating are as follows:

(a) Renal dysfunction

(b) Voiding dysfunction

1. Urinary frequency

2. Obstructed voiding

(c) Urinary tract infection

(2) 7500-7542 - The Genitourinary System. Sterility and impotence are NOT ratable entities. Anatomical loss of procreative organs shall not be rated.

(3) 7500-7509; 7531-7541 - Upper urinary tract. In assessing impairment of the upper urinary tract, the endogenous creatinine clearance tests serve as guidelines for evaluating renal function. Normal creatinine clearance is 80-139 milliliters (ml)/minute in men and 80-125 ml/minute in women. (See table 5). The criteria under renal function lists further numerical laboratory guidelines to be used in conjunction with table 5.

(4) 7512, 7516, 7542 - Total Incontinence. Incontinence may be rated as bladder fistula, 100 percent, when use of an appliance is unsatisfactory or not feasible.

(5) 7527 - Prostate Resection. In order to be ratable, if the member is Unfit, there must be symptoms and objective evidence of impairment.

(6) 7528 - New growths, Malignant. Any specified part of genitourinary system. Some malignant tumors of the genitourinary tract are subject to cure, even if widespread metastases have taken place. Completion of treatment and follow-up on active duty are desirable. If adverse reaction to treatment or persistent evidence of tumor activity interfere with duty, TDRL may be considered. In those instances when specific tumors are refractory to all treatment, final disposition should be made.

(7) 7542 - Neurogenic Bladder. The number of required catheterizations or number of changes of absorbent pads per day should be listed to ascertain the functional impairment.

f. 7600 SERIES CODES

(1) 7600-7627 - Gynecological Conditions. The VASRD has rating criteria for unfitting gynecological conditions that include endometriosis and removal of the mammary gland(s) or segments of the mammary gland.

(2) 7617, 7618, 7619 - Procreative Organs. Loss of procreative organs is not ratable. Only significant disqualifying and Unfitting residuals should be rated.

(3) 7626-7627 - Mammary Gland Removal. Not all service members who have had mastectomies for malignancy are Unfit. After the observation period has expired, unfitness is based on residual impairment of the arm or chest wall or effects of radiation or other treatment.

g. 7700 SERIES CODES

(1) 7703 - Leukemia. Leukemia requiring the use of chemotherapeutic agents is rated analogous to leukemia requiring irradiation or transfusion. Although some prolonged remissions and "cures" are being achieved with acute leukemia, temporary retirement should be considered in most cases at a maximum rating. Service members with chronic leukemia who require treatment are often Fit for prolonged periods of time with few performance restrictions. Such cases must be individually judged on their merits. The principles noted below under 7709 should be considered in leukemia cases.

(2) 7705-7706 - Purpura Hemorrhagica: Splenectomy. Only residuals, if any, of the basic condition leading to the splenectomy should be rated.

(3) 7709 - Lymphogranulomatosis (Hodgkin's Disease). Staging is the basis for clinical management of Hodgkin's Disease under treatment.

(a) Clinical staging serves as a general guide for treatment, rating, and disposition of Hodgkin's Disease. Table 6 can be used with the understanding that many advances in treatment that may permit exceptions are taking place. Hodgkin's Disease ratings and disposition may be carried out according to the following guide:

| Stage | (Stage A) Rating | (Stage B) Rating | Disposition (if Unfit) |
|---|---|---|---|
| I | 30 | 60 | TDRL |
| II | 30 | 60 | TDRL |
| III | 60 | -- | TDRL |
| III | -- | 100 | TDRL |
| IV | 100 | 100 | TDRL |

Note:

1. Fitness or Unfitness is not determined, as a rule, until response to initial treatment has been assessed.

(b) Prolonged remissions and cures, even with salvage treatment, are becoming more commonplace. Regardless of the pretreatment stage of the disease, retention on active duty during treatment, or return to active duty after treatment on the TDRL may be possible. Intensive treatment, however, may be extremely traumatic. Degradation of both physical and mental functions may be disabling for varying periods of time. Final disposition must be individualized according to both subjective and objective residuals.

(4) 7714 - Sickle Cell Anemia. The VASRD rates all the manifestations of sickle cell disease and its variants. Individuals with the more severe hemoglobinopathies are not acceptable for entry into the military services. Policies concerning line of duty and service aggravation apply.

(5) 7716 - Aplastic Anemia

(a) A service member scheduled for transplantation shall be rated after the transplant.

(b) When the MTF has opted to retain the member for a transplant, the MTF will place the member on a LIMDU status pending transplant. MEB referral to the PEB should be delayed until the procedure and maximum benefit of treatment has been achieved.

h. 7800 SERIES CODES

(1) 7801-7802 - Scars, Burns. When calculating burn areas, enclosure (8), attachment (d) (1), plate IV, enclosure (9), attachment (b), table 7 and the following measurements may be of assistance:

Avg 70 kg (150 lbs.) male body surface = 1.7m2
2636 in2 = 18.3 ft2
1 meter2= 39.375 inches
1 meter2 = 1550.4 in2

(a) These instructions supplement the criteria in the VASRD to permit a realistic rating of actual impairment of function:

1. Rate third degree burn scars, which cause limitation of function of underlying structure, by analogy to other codes which reflect the functional impairment.

2. Rate unsuccessful healed or grafted areas according to Code 7801. Footnotes to code 7901 in the VASRD apply.

3. Rate successfully grafted third degree burn areas as second degree burns under Code 7802. The footnote to code 7802 in the VASRD applies.

(b) Use of photographs submitted by the MTF's medical photo department should be standard practice to assist with estimation of percentages.

(2) 7802 - Scars, Burns, Second Degree. VA Code 7802 limits rating to 10 percent of second degree burns affecting an area or areas approximately 1 square foot. When there are widely separated areas and each area is approximately 1 square foot or more, 10 percent may be assigned for each scar.

(3) 7804 - Scars, Superficial, Tender and Painful. This rating of 10 percent may be assigned whenever the requirements are met for the area of involvement even though the rating may exceed the amputation rating, but only if the amputation rating is 0 percent. Do not combine a rating assigned for a scar under these circumstances, with any other rating for disability which involves the same area or digit.

i. 7900 SERIES CODES. 7913 - Diabetes Mellitus

(1) The format published by the National Diabetes Group shall serve as the basis for classifying diabetes mellitus (DM). The severity of each case should be individualized taking into consideration the expected natural course of the disease variants. Insulin dosage is not a good indicator of severity and is only one factor to consider in the overall evaluation of the disease. Response to specific therapy, diet, activity, compliance, and time are all important. With adequate compliance, many diabetics are Fit with minimum restrictions. Young adults with type I DM (insulin dependent) are not a good risk for retention.

(2) If Unfitness derives, in part, from documented noncompliance with prescribed treatment, including diet and weight control, the assigned rating should not be higher than the disease would warrant if under prescribed treatment.

(3) DM controlled by diet and oral medication, without a need for daily insulin, and that does not impair health or vigor, or cause significant limitation of activity, is considered to be mild, if unfitting.

(4) Ratings must reflect the severity of the DM, as such. Undue importance should not be given to early or questionable complications. That is particularly true in considering ratings of 60 percent or above. In most instances, a lower rating should be given. Complications such as vascular insufficiency, visual defects, pruritis, and neuropathies should be rated separately. The presence of early or questionable complications in otherwise less than severe DM does not automatically warrant a higher rating.

j. 8000 SERIES CODES

(1) 8000-8412 - Organic Disease of the Central Nervous System. Careful correlation of the footnote under 8046 with the italicized introduction to 8000-8046 should enable Boards to select the proper rating approach. In some of those conditions, the minimum rating may be warded on the basis of the diagnosis alone, whether or not there are residuals. In others, the minimum rating may be awarded only if there are residuals. If such cases have neither residuals capable of objective verification nor subjective residuals which are credible,

consistent with the disease, and are not more likely attributable to other disease, the condition should be ratable at zero percent, if the service member is Unfit.

(2) 8007-8009 - Brain Vessels. The 6-month convalescent rating does not apply. In many of these cases, the danger of disastrous recurrences justifies a rating (of residuals) sufficiently liberal to provide temporary retirement and subsequent reevaluation.

(3) 8017-8018, 8023-8025 - Degenerative Disorders of the Central Nervous System. Combined ratings may be assigned under those codes with the bilateral factor added.

(4) 8100 - Migraine. "Prostrating" means that the service member must stop what he or she is doing and seek medical attention and is incapacitated.

(a) The number of prostrating attacks per time period (day, week, month) should be recorded by a neurologist for diagnostic confirmation.

(b) Documentation of these visits to the medical department representatives must be available in the medical record. Estimation of the social and industrial impairment due to migrainous attacks should be made.

(c) The Medical Board report must contain the types of medications that the member has tried, both prophylactically and abortive and the results of each medicine.

(5) 8108 - Narcolepsy. The VASRD defers the determination of disability ratings to code 8911 (epilepsy, petit mal). The latter code lists five percentage rating options for minor seizures: 10 percent, 20 percent, 40 percent, 60 percent, and 80 percent corresponding to assessed levels of disability relative to civilian earning capacity due to subject condition. The following interpretation will apply:

| | |
|---|---|
| Profound industrial impairment | 80 percent |
| Severe industrial impairment | 60 percent |
| Considerable industrial impairment | 40 percent |
| Definite industrial impairment | 20 percent |
| Mild industrial impairment | 10 percent |

(6) 8205-8412 - Diseases of the Cranial Nerves. There is provision for combined ratings under these codes when there is bilateral involvement, but without the addition of the bilateral factor.

(7) 8510-8730 - Disease of the Peripheral Nerves

(a) Cases that are rated based on residuals should be adjudicated on the basis of impairment of function rather than on anatomical diagnosis. For example, a complete paralysis of the circumflex nerve of the major extremity carries a 50 percent rating under 8518. In many cases, however, abduction of the arm when the circumflex nerve is paralyzed is possible because other muscles take over the function of the paralyzed muscles. To warrant the 50 percent rating, the service member's residual loss of function must actually include all the defects listed under 8518. When other muscles have taken over the function of the circumflex-innervated deltoid, the residual loss of function is properly ratable under 5201, "limitation of arm motion," or 5303, "muscle injury, Group III," whichever better reflects the predominant impairment. Careful documentation of evaluations are required before assigning a rating for paralysis that would equal that for amputation of the innervated area. For example, cases of "paralysis of the common peroneal nerve with foot drop," 8521, should be rated in terms of loss of function. "Amputation below the knee," 5165, is ratable at 40 percent. In order to warrant a similar rating for peroneal palsies, there must be sufficiently severe symptoms, such as trophic and circulatory changes and other concomitants, to make the functional impairment reasonably equivalent to loss of foot.

(b) Service members with paralysis of an extremity or hemiparesis shall be rated according to the Table of Analogous Ratings. Codes are as follows:

1. 8599 - 8513 - Paralysis of upper extremity

2. 8599 - 8520 - 8526 - Paralysis of lower extremity

(c) 8599 - Scalenus Anticus Syndrome. That syndrome is rated by analogy with the lower radicular group (8512), or less commonly, with either erythromelalgia (7119) or Raynaud's Disease (7117), depending upon predominant symptoms and overall functional impairment

(8) 8910-8914 - Epilepsies

(a) Service member must be evaluated and the diagnosis made by a neurologist.

(b) The number of seizures each time frame (day, week, and month) must be recorded.

(c) Attacks following omission of prescribed medication or the ingestion of alcoholic beverages are not indicative of the controllability of the disease and are not relevant to the determination of seizure frequency for rating purposes.

(d) Estimation of the social and industrial impairment due to the seizure activity should be made.

(e) Seizures that occur during sleep ("nocturnal seizure") are not relevant to the determination of seizure frequency and shall not be included in the determination of the disability rating unless they can be shown to significantly impair industrial adaptability.

k. 9000 SERIES CODES

(1) 9200-9521 - Mental Disorders. General factors to be considered in evaluating the degree of a member's disability are listed below. These are descriptive, not all inclusive, and are meant to be amplifications, not substitutions for the VASRD criteria.

(a) Functional Impairment. Loss of function is the principal criterion for establishing the level of impairment resulting from mental illness. Loss of function is reflected in impaired social and industrial adaptability. Psychoses specifically include disorders manifesting disturbances of perception, thinking, emotional control, and behavior, severe enough to hinder economic adjustment, that is, hinder the service member's capacity to perform military duties or to earn a living. Even psychosis, however, may resolve such that the impact on economic adjustment is minimal to none.

1. In rating impairment of social and industrial capability, if any, a comparison must be made between pre- and post-illness adjustment.

2. Assessing the degree of permanent impairment resulting from a psychotic process is often difficult during the weeks immediately following an acute episode. Sometimes a service member's period of intensive in-hospital treatment has not been completed at the time of the initial MEB. With the passage of time, the clinical picture often becomes stable. The degree of permanent impairment may then be estimated more accurately.

(b) Vocational functional impairment. Since the 30% rating in the VASRD requires "...intermittent periods of inability to perform occupational tasks," the following definition of vocational functional impairment is provided: Symptoms of a psychiatric condition causing a period or periods of "inability to perform occupational tasks" should be of such severity as to result in a pattern of job loss, demotion, disqualification from obtaining employment, or inability to engage in or maintain reasonable employment. "Reasonable employment" is determined, in part, by considering the service member's premorbid vocational adjustment, education, and accomplishments.

(c) Social impairment. The degree of social impairment should be considered in regard to industrial impairment, not just social interactions. Information that relates to social impairment includes, but is not limited to, the following:

1. Living arrangements (by oneself, with parents and siblings, or with wife and children).

2. Marital status (single, married, separated, or divorced, and the *type of relationship* (harmony or strife)).

3. Leisure activity (sports, hobbies, TV, reading, sleeping).

4. Acquaintances (male, female, both sexes, many, few).

5. Substance use or abuse (alcohol and/or illicit drugs).

6. Police record.

(d) Industrial Impairment. Information that relates to industrial impairment includes, but is not limited to, the following:

1. Job stability (unemployed, part-time work, full-time job, quit, fired, or promoted).

2. Type of job (menial, responsible, OJT, technical, for a relative, or for a private employer).

3. Schooling (grade, technical, academic, high school, college, or postgraduate).

(e) Additional Factors. Other factors that bear on social and industrial adaptability include, but are not limited to, the following:

1. Mental Competency. The MEB reports should include a statement by a psychiatrist as to whether the service member is competent to handle his or her financial affairs, and to participate in Board proceedings.

2. Level of Supervision. There are several levels of supervision. The most disabling is constant hospitalization. Constant supervision at home or intermittent and repeated hospitalizations are disabling factors to be considered. Being placed in one's own custody suggests that a lower level of supervision, if any, is required.

3. Contact with Reality. Certain service members have lost all contact with reality and cannot tell fact from fantasy. Dreams, imaginations, delusions, and hallucinations are just as real to certain service member as actual events. The quality of loss of contact with reality as well as quantity of time that the service member is not in contact with reality are factors to be considered.