**CHANGE 120**
**Manual of the Medical Department**
**U.S. Navy**
**NAVMED P-117**

**10 Jan 2005**

To: Holders of the Manual of the Medical Department

1. **<u>This Change</u>**

a. Incorporates revisions to SECNAVINST 1850.4E, Navy Disability Evaluation Manual.

b. Aggregates guidance on removal from full duty for medical reasons, including sick in quarters (SIQ), convalescent leave, light duty, and limited duty.

c. Incorporates Headquarters, Marine Corps (HQMC) and Chief, Bureau of Naval Personnel (BUPERS) changes to limited duty (LIMDU) initiation and reflects HQMC and BUPERS mandated changes in maximum time allowed for LIMDU.

d. Clarifies confusing and often-misapplied language regarding definitions of a "medical board," affording synchronized terminology among Navy Medicine, PERS, MMSR-4, and the Physical Evaluation Board (PEB).

e. Reflects changes in the permissible time period for submission of cases to the PEB (derived in conjunction with PEB following naval audit study) from the previous "30 days from the date of the attending physician's decision to dictate an Medical Evaluation Board Report (MEBR)" to the new standard of "30 days from date of dictation by the attending physician of an MEBR."

f. Updates procedures for submitting "Death Imminent" MEBRs to the PEB.

g. Revises the NAVMED 6100/5, Abbreviated Limited Duty Medical Board Report, to enhance medical documentation and provide increased accountability of personnel on LIMDU.

h. Clarifies whom in Navy Medicine has convening authority (CA) for initiating medical evaluation board (MEB) actions, specifically prohibiting medical treatment facilities (MTFs) without CA from unilaterally effecting MEBs, yet providing MTF commanders with CA an opportunity to allow initial MEB preparation at their respective branch medical clinics as they determine appropriate.

i. Provides expanded information of unique cases involving recruits, reservists, and General, Flag, and Medical Corps officers relative to PEB submissions.

j. Emphasizes protection of patient information privacy in the advent of HIPAA.

k. Delineates training responsibilities and suggested topics for providers, medical boards staff, and patients involved with MEBs.

l. Incorporates guidance emanating from DOD Instruction 6025.15 for reporting applicable cases to the Defense Practitioner Data Bank (DPDB).

m. Provides guidance on determining "end of career" MEB actions and elective medical care, including the definition of "fitness to separate" relative to separation physical examinations.

n. Provides enhanced references for additional research.

2. **Cancellation**. The following forms and reports are cancelled:

a. NAVMED 6100/1 (Rev. 10-83), Medical Board Report Cover Sheet, S/N 0105-LF-982-3800 and S/N 0105-LF-206-1006.

b. NAVMED 6100/2 (Rev. 1-74), Medical Board Statement of Patient, S/N 0105-LF-206-1010.

c. NAVMED 6100/3 (Rev. 3-75), Medical Board Certificate Relative to a PEB Hearing, S/N 0105-LF-206-1015.

d. NAVMED 6100/4 (11-86), Medical Board Certificate Relative to Counselling on Refusal of Surgery and/or Treatment (per NAVMEDCOMINST 6320.3B form was available from COMNAVMEDCOM (MEDCOM-33)).

e. NAVMED 6100/5 (10-89), Abbreviated Temporary Limited Duty (TLD) Medical Board Report, S/N 0105-LF-008-2800.

f. MED 6100-1 (10-83), Medical Board Report.

g. MED 6100-2 (1-80), Medical Board Report.

3. **Forms**

a. SF 600 (REV. 6-97), Chronological Record of Medical Care is available electronically at: http://contacts.gsa.gov/webforms.nsf/0/4951AF308C046D9785256A3F0005BE96/$file/sf600.pdf.

b. DD 2766 (Rev. 01-00), Adult Preventive and Chronic Care Flowsheet, S/N 0102-LF-984-8400, is available at: http://forms.daps.dla.mil/order/. This form will be used for all non-active duty outpatient records.

c. NAVMED O/P 6150/43 (3-2004), Deployment Health Record, stock number 0102-LF-128-8100, will be available through normal supply channels soon.

d. The following forms are available in the MedBOLTT software and electronically at: http://navymedicine.med.navy.mil/default.cfm?selTab=Directives at the "Forms" tab:

(1) NAVMED 6100/1 (Rev. 8-2004), Medical Board Report Cover Sheet.

(2) NAVMED 6100/2 (Rev. 8-2004), Medical Board Statement of Patient.

(3) NAVMED 6100/4 (Rev. 8-2004), Medical Board Certificate Relative to Counselling on Refusal of Surgery and/or Treatment.

(4) NAVMED 6100/5 (Rev. 8-2004), Abbreviated Medical Evaluation Board Report.

(5) NAVMED 6100/6 (8-2004), Return of a Patient to Medically Unrestricted Duty from Limited Duty.

e. The Patient Information Sheet, Sample Format, is available electronically at: http://navymedicine.med.navy.mil/default.cfm?selTab=Directives at the "Sample Format" tab.

4. **Action**. Remove entire chapter and replace with this change.

D. C. ARTHUR
Chief, Bureau of
Medicine and Surgery

# Chapter 18

# Medical Evaluation Boards



THIS PAGE INTENTIONALLY LEFT BLANK

# Chapter 18

# CURRENT VS. REVISED CONTENTS

| Old Article | Title | New Article | Title |
|---|---|---|---|
| 18-1 | Purpose | 18-1 | Overview, and Definition of MEBs and MEBRs |
| 18-2 | Convening Authority | 18-3 | MTF Convening Authority Definition and Responsibilities |
| 18-3 | Responsibilities of the Convening Authority | 18-3 | MTF Convening Authority Definition and Responsibilities |
| 18-4 | Composition | 18-6 | Medical Evaluation Board (MEB) Composition |
| 18-5 | Convening of a Medical Board | 18-4 and 18-5 | Conditions and Circumstances Requiring the Convening of an MEB and Medical Conditions Not Meriting an MEB Being Convened; Administrative Redress; and Cases Involving Legal and/or Administrative Action |
| 18-6 | Health Record Entity | 18-8 | Health Record Entries, Record Keeping Requirements, and TMU Inspections |
| 18-7 | Medical Board Report Preparations | 18-12 through 18-14 | *Various Sections,* regarding MEBR preparation to PEB, for LIMDU, and under Death Imminent conditions |
| 18-8 | Medical Board Report Cover Sheet (NAVMED 6100/1) | 18-9 | Gathering Patient Data and Completing the Patient Information Sheet |
| 18-9 | Convening Authority Actions | 18-3 | MTF Convening Authority Definition and Responsibilities |
| 18-10 | Counseling the Member and Subsequent Processing | 18-7 | Notifying and Counseling the Patient of the Decision to Convene an MEB. *(Also see article 18-28)* |

| Old Article | Title | New Article | Title |
|---|---|---|---|
| 18-11 | Notification of Parent Command | 18-10 and 18-15 through 18-17 and 18-28 | *Multiple Sections,* discussing various types of MEBRs including LIMDU and PEB cases, Non-Medical Assessments, and Cancellation of Cases at PEB |
| 18-12 | Report Routing and Disposition | 18-10 through 18-18 | *Multiple Sections,* discussing various types of MEBRs including LIMDU and PEB Cases, Non-Medical Assessments, and Cancellation of Cases at PEB. *(Also see article 18-3)* |
| 18-13 | Processing Time | 18-19 | Definition of, and Processes for Complying With, Mandated Timeframes for Completion and Submission of MEBRs |
| 18-14 | Automatic Data | 18-27 | The Medical Board OnLine Triservice Tracking (MedBOLTT) System |
| 18-15 | Departmental Review | 18-14 | Format of the MEBR prepared for Placement on Limited Duty or for Referral to Service Headquarters Requesting Limited Duty (i.e., "Departmental Review") |
| 18-16 | Medical Boards on Officers | 18-10 through 18-14 and 18-24 | *Multiple Sections,* discussing LIMDU and PEB Cases, and special consideration in Flag, General, and Medical Corps Officers |
| 18-17 | Recruit Evaluation Unit | 18-21 | Recruits: Removal from "Full Duty" Status; MEBs on Recruits and Members Within First 180 Days of Service |
| 18-18 | Determination of Fitness for Recruits for Service | 18-21 | Recruits: Removal from "Full Duty" Status; MEBs on Recruits and Members Within First 180 Days of Service |
| 18-19 | Medical Boards on Recruits | 18-21 | Recruits: Removal from "Full Duty" Status; MEBs on Recruits and Members Within First 180 Days of Service |

| Old Article | Title | New Article | Title |
|---|---|---|---|
| 18-20 | Medical Boards on Reservists | 18-23 | Reservists: Physical Disqualification and Referral to the PEB |
| 18-21 | Return to Duty-Aviation, Submarine, and Other Special Duty Personnel | 18-1 and 18-10 | Overview and Definition of MEBs and MEBRs and Limited Duty |
| 18-22 | Members Who Refuse Medical, Dental, or Surgical Treatment | 18-11 | Determining Disability Cases to be Referred to the DON PEB |
| 18-23 | Board With Disciplinary or Punitive/Misconduct Administrative Action | 18-5 | Medical Conditions Not Meriting an MEB Being Convened; Administrative Redress; and Cases Involving Legal and/or Administrative Action |
| 18-24 | Medical Boards Involving Waivers of Entry Standards | 18-21 | Recruits: Removal from "Full Duty" Status; MEBs on Recruits and Members Within First 180 Days of Service |
| 18-25 | Conditions Not Considered A Physical Disability | 18-5 | Medical Conditions Not Meriting an MEB Being Convened; Administrative Redress; and Cases Involving Legal and/or Administrative Action |
| 18-26 | Medical Boards for Members Medically Waived from the Physical Readiness Test | 18-5 | Medical Conditions Not Meriting an MEB Being Convened; Administrative Redress; and Cases Involving Legal and/or Administrative Action |
| 18-27 | EPTE Physical Defects | 18-21 | Recruits: Removal from "Full Duty" Status; MEBs on Recruits and Members Within First 180 Days of Service |
| 18-28 | Mental Competency and Incapacitation | 18-6 and 18-7 | MEB Composition and Notifying and Counseling the Patient of the Decision to Convene an MEB |
| 18-29 | Temporary Limited Duty (TLD) Medical Boards | 18-10 | Limited Duty |

| Old Article | Title | New Article | Title |
|---|---|---|---|
| 18-30 | Light Duty | 18-2 | Removal from Duty for Medical Reasons: Sick in Quarters (SIQ), Convalescent Leave, Light Duty, Limited Duty |
| 18-31 | Triservice Medical Boards | 18-3 | MTF Convening Authority Definition and Responsibilities |
| 18-32 | Medical Boards from Other than DOD Sources | 18-3 | MTF Convening Authority Definition Responsibilities |
| 18-33 | Providing Additional Medical Information and Line of Duty and Misconduct Investigation | 18-15 and 18-16 | Non-Medical Assessment (NMA); and Line of Duty/Misconduct (LOD/M) Determination |
| 18-34 | Surgical Procedures on Member in the Disability Evaluation System | 18-25 | Care at the End of Active Duty, Medical Care Subsequent to Submission of a Case to the PEB, and Fitness to Separate |
| 18-35 | Withdrawing a Medical Board from the DES | 18-28 | Rejection, Suspension, or Termination of Cases at PEB |
| 18-36 | Medical Board Quality Control Checklist | 18-26 | Checklist Elements for MEBR Being Submitted to the PEB |
| 18-37 | Cognizant MTFs for Triservice Medical Boards | 18-3 | MTF Convening Authority Definition and Responsibilities |
| 18-38 | Acronyms | N/A | Incorporated in the body of the chapter |
| | NEW ARTICLES | | |
| 18-20 | Transmission Methods, HIPAA, and Privacy Maintenance | N/A | New Article |
| 18-22 | Students and Midshipmen | N/A | New Article |
| 18-29 | Training for MTF Staff, Patient Counseling, and the Role of the PEBLOs | N/A | New Article |
| 18-30 | Reference Listing | N/A | New Article |

# Chapter 18
# TABLE OF CONTENTS


| Article | Title | Page |
|---|---|---|
| 18-1 | Overview and Definition of MEBs and MEBRs | 18-9 |
| 18-2 | Removal from Duty for Medical Reasons: Sick In Quarters (SIQ), Convalescent Leave, Light Duty, or Limited Duty | 18-12 |
| 18-3 | MTF Convening Authority Definition and Responsibilities | 18-16 |
| 18-4 | Conditions and Circumstances Requiring the Convening of an MEB | 18-19 |
| 18-5 | Medical Conditions Not Meriting an MEB Being Convened; Administrative Redress; and Cases Involving Legal and/or Administrative Action | 18-22 |
| 18-6 | Medical Evaluation Board (MEB) Composition | 18-24 |
| 18-7 | Notifying and Counseling the Patient of the Decision to Convene An MEB | 18-25 |
| 18-8 | Health Record Entries, Record Keeping Requirements, and TMU Inspections | 18-25 |
| 18-9 | Gathering Patient Data and Completing the Patient Information Sheet | 18-26 |
| 18-10 | Limited Duty | 18-33 |
| 18-11 | Determining Disability Evaluation Cases To Be Referred to the DON PEB | 18-38 |
| 18-12 | Format of the MEBR for Referral to the DON PEB | 18-41 |
| 18-13 | Format of the MEBR for Referral to the DON PEB under Death Imminent Conditions | 18-51 |
| 18-14 | Format of the MEBR Prepared for Placement on Limited Duty or for Referral to Service Headquarters Requesting Limited Duty (Departmental Review) | 18-51 |

| Article | Title | Page |
|---|---|---|
| 18-15 | Non-Medical Assessment (NMA) | 18-53 |
| 18-16 | Line of Duty/Misconduct (LOD/M) Determination | 18-55 |
| 18-17 | The Abbreviated MEBR | 18-57 |
| 18-18 | Format of the MEBR for TDRL Reevaluation | 18-59 |
| 18-19 | Definition of, and Processes for Complying With, Mandated Timeframes for Completion and Submission of MEBRs | 18-60 |
| 18-20 | Transmission Methods, HIPAA, and Privacy Maintenance | 18-62 |
| 18-21 | Recruits: Removal from “Full Duty” Status; MEBs on Recruits and Members Within First 180 Days of Service | 18-64 |
| 18-22 | Students and Midshipmen | 18-68 |
| 18-23 | Reservists: Physical Disqualification and Referral to the PEB | 18-68 |
| 18-24 | Flag, General, and Medical Corps Officers: PEB Requirements | 18-69 |
| 18-25 | Care at the End of Active Duty, Medical Care Subsequent to Submission of a Case to the PEB, and Fitness to Separate | 18-70 |
| 18-26 | Checklist Elements for MEBR Being Submitted to the PEB | 18-72 |
| 18-27 | The Medical Board OnLine Triservice Tracking (MedBOLTT) System | 18-73 |
| 18-28 | Rejection, Suspension, or Termination of Cases at PEB | 18-74 |
| 18-29 | Training for MTF Staff, Patient Counseling, and the Role of the PEBLOs | 18-75 |
| 18-30 | Reference Listing | 18-77 |

# Section I
# OVERVIEW

## Article Page

| Article | | Page |
|---|---|---|
| 18-1 | Overview and Definition of Medical Evaluation Boards (MEBs) and Medical Evaluation Board Reports (MEBRs) | 18-9 |
| 18-2 | Removal from Duty for Medical Reasons: Sick In Quarters (SIQ), Convalescent Leave, Light Duty, or Limited Duty | 18-12 |

## 18-1 Overview and Definition of Medical Evaluation Boards (MEBs) and Medical Evaluation Board Reports (MEBRs)

(1) ***This chapter of the MANMED***

(a) Reiterates that MEB and MEBR operations are significant and vital components of appropriate patient care, as well as compelling readiness issues whose appropriate execution serves as a tangible force multiplier.

(b) Defines the processes by which Navy and Marine Corps members are removed from full duty for medical reasons, including "light duty" and "limited duty (LIMDU)."

(c) Delineates the operations, responsibilities, and composition of MEBs.

(d) Identifies unique parameters of MEB evaluation of cases of recruits, reservists, and students in certain programs leading to a commission, Midshipmen, Flag and general officers, physicians, and personnel facing high year tenure or other mandatory separation or retirement proceedings.

(e) Provides processes for referral of MEB cases into the Navy Disability Evaluation System (DES), including MTF processing responsibilities, and conditions not meriting referral to the DES.

(f) Provides key references for additional research.

(2) ***Overview and Definition.*** Navy Medicine will evaluate each instance in the career of a Navy and Marine Corps active duty service member (ADSM) in which a medical condition will be responsible for the member's inability to operate in a medically unrestricted duty status. Periods of "light duty" (as defined in article 18-2(4)) may be sufficient to allow a return to duty status; failing this, Navy Medicine will conduct MEBs to determine whether the member will be placed on temporary LIMDU and/or referred into the DES. For the purpose of determining cases to be referred to MEBs, "medically unrestricted duty status" signifies that there is no medical condition prohibiting the member's ability to fully execute the duties and responsibilities of their rank, rate, specialty, or office including operational/worldwide assignability. (Pregnancy does not, by governing directive definition, automatically equate to "medically restricted duty status" for purposes of MEB referral; directives issued by the respective Service headquarters on the management of pregnant servicewomen (see OPNAVINST 6000.1 series and Marine Corps Order (MCO) P3000.13 series) should be consulted for the appropriate protocols for those patients.)

(3) ***Medical Evaluation Board (MEB).*** An MEB is a panel of providers attached to one of the medical treatment facilities (MTFs) whose commander or commanding officer (CO) has been expressly designated to hold "convening authority" (CA) for MEBs. (MANMED article 18-3 describes CA in detail; article 18-6 details MEB composition.)

(4) ***Medical Evaluation Board Report (MEBR).*** The deliberations of an MEB will result in a document of findings known as the MEBR. The MEBR will either:

(a) Recommend placement of an active duty service member on a period of temporary LIMDU.

(b) Verify that the member is "fit for duty," after being cleared from LIMDU, and should be able to execute the duties of their respective office.

(c) Refer the case to the Department of the Navy (DON) Physical Evaluation Board (PEB) for disability adjudication and determination of fitness for continued service, in accordance with SECNAVINST 1850.4 series, "Department of the Navy Disability Evaluation Manual."

(5) ***Distinguishing "Fit for Duty" from "Fitness for Continued Naval Service"***

(a) ***"Fit for Duty"*** refers to a pronouncement by a physician or by an MEB that a patient previously on light or LIMDU has healed from the injury or illness that necessitated the member's serving in a medically restricted duty status.

(b) ***"Fitness for Continued Naval Service"*** is a finding made *exclusively* by the DON PEB in determining an ADSM's ability to continue serving in the Navy or Marine Corps. This topic is explained in detail in this chapter in article 18-10 regarding LIMDU and in article 18-11 regarding referral of cases to the DON PEB.

(6) ***Distinguishing MEBs from MEBRs.*** There has historically been imprecision as to the meaning of the term "medical board." To remove the ambiguity inherent in this term, it will be superceded by the terms "Medical Evaluation Board " and "Medical Evaluation Board Report." It is imperative to distinguish between an MEB–the providers evaluating a patient, and an MEBR–the MEB's product. "Medical boards" are most appropriately referred to as MEBs, and will be identified as such throughout the remainder of this chapter and in the operations of Navy Medicine.

(7) ***Coordination.*** This chapter has been coordinated by the Bureau of Medicine and Surgery (BUMED) through the Office of the Chief of Naval Operations (OPNAV) (particularly N-1) and Headquarters, United States Marine Corps (USMC). This chapter is maintained by the BUMED Patient Administration and TRICARE Operations Branch; 2300 E Street, NW, Washington DC 20372-5300. All inquiries on, or proposed changes to, the content of this chapter should be directed to that branch. Additionally, information on "best practices" that MTF officials and other stakeholders wish to share with others to enhance the efficacy of the enterprisewide MEB operation are actively solicited by the BUMED Patient Administration and TRICARE Operations Branch for distribution to the field.

Note: The optimal use of this chapter will be derived by reading it in its entirety, and by comprehensively reading the resources referenced within. However, owing to the complexity of the subject matter, topics have been presented in sufficient detail that the articles of the chapter can "stand alone" for those requiring rapid information on a specific topic. Accordingly, much of the information in the chapter is repeated, intentionally, in a number of the articles, and information from the references is liberally imported, so that readers can still derive benefit by reference to particular articles (as depicted in the Table of Contents) if a comprehensive read of the chapter and additional references is not possible.

***REMAINDER OF PAGE INTENTIONALLY LEFT BLANK***

## REMOVAL FROM DUTY FOR MEDICAL REASONS: SICK IN QUARTERS (SIQ), CONVALESCENT LEAVE, LIGHT DUTY, LIMITED DUTY



# 18-2 Removal from Duty for Medical Reasons: Sick In Quarters (SIQ), Convalescent Leave, Light Duty, or Limited Duty

(1) ***MTF Responsibilities***. Navy MTFs will recommend Navy and Marine Corps members for periods of medically restricted duty when this is deemed clinically appropriate by properly credentialled Department of Defense (DOD) health care providers. MTF leadership will ensure an appropriate mechanism exists within their respective MTFs to notify the patient, the patient's parent command, and when possible, the patient's personnel support detachment (PSD) or administrative office, of the timeframe of this medically restricted duty period, and of the restrictions from duty recommended for the service member in each case. The following paragraphs present the categories of potential "medically restricted duty" status for Navy and Marine Corps members.

(2) ***Sick In Quarters (SIQ).*** A properly credentialled DOD health care provider may recommend a member for SIQ status following medical treatment or for the purpose of "medically directed self treatment." "SIQ," as implied in the name, is a status in which the military member is relieved of all military duties with the expectation that the member will be in his or her residence recuperating until the expiration of the SIQ period. Providers recommending members for SIQ do so in full anticipation that the member will return to a medically unrestricted duty status at the conclusion of the SIQ period. SIQ status should usually not exceed 72 hours. (MILPERSMAN articles in the 1050 series and MCO P1900.16 series may be consulted for additional information in those rare instances in which extensions of SIQ status (potentially up to 14 days) emerge as medically indicated. Respective Service headquarters instructions on the management of pregnant servicewomen should be consulted for special categories of SIQ, e.g., "OB Quarters," that may be appropriate in caring for these patients.)

(a) Health care providers recommending a service member for SIQ are responsible for ensuring, in concert with the ADSM's parent command, that the facilities to accommodate the patient's condition, and the availability of any necessary auxiliary caregivers at the member's "quarters," are entirely clinically compatible with the condition for which the member is being placed SIQ.

(b) Providers are also responsible for ensuring the patient in an SIQ status fully understands any follow-on evaluation and care requirements during and following the SIQ period.

(c) Appropriate clinical judgment is critical in successfully evaluating a patient for SIQ status, and any doubt as to the appropriateness of an SIQ placement will be resolved by foregoing SIQ status in lieu of a more comprehensive treatment protocol.

(d) The recommendation to place a member on SIQ must be communicated by the senior medical department representative or MTF to the appropriate level of the member's parent command for concurrence. MTF commanders and senior medical department representatives shall ensure an appropriate notification process exists for timely notification to an ADSM's parent command of any SIQ recommendation; a critical component of this process is verifying the timely receipt of information by the parent command. MTF business practices in this regard must carefully balance the undeniable need to provide information to the parent command with the need to protect the patient against further aggravation or discomfort from the condition that has resulted in the SIQ recommendation. In some cases, requiring the patient to physically return to his or her parent command to present an "SIQ chit" for approval may be clinically contraindicated. Here, the provider and MTF leadership need to rely on other appropriate communication methods that satisfy both the health care needs of the patient and the operational and administrative control needs of the parent command (e.g., if the patient's return to the parent command is contraindicated, the provider or another appropriate MTF official might call the patient's division officer for official notification; this would be followed by the patient's delivering the SIQ paperwork to the division officer upon the patient's return to duty).

(1) In the event of a conflict between the MTF's SIQ recommendation and the parent command's willingness to grant SIQ status, the matter should be elevated to such a level in the chain of command of the respective MTF and the parent command that an appropriate compromise is achieved

that preserves both the parent command's mission readiness posture and the patient's well-being. As in all endeavors, the member's CO bears overall and final responsibility for the well-being of the member; Navy Medicine must ensure that appropriate information is conveyed that allows COs to exactingly carry out this responsibility in medical matters.

(2) Placing a member on SIQ does not require the convening of an MEB.

(3) ***Convalescent Leave.*** A properly credentialed DOD health care provider may recommend a member be placed in convalescent leave (often referred to as "con leave") status following significant medical treatment and/or a period of inpatient hospitalization. "Convalescent leave" is a period when the member is relieved of all military duties and is in a leave status until the expiration of the leave period. (Convalescent leave is not charged as regular leave; if given medical clearance members may travel, usually at their own expense, to a location other than their residence during a convalescent leave period. Some convalescent leave travel for members medically evacuated (MEDEVAC'd) from a war zone may qualify for reimbursement.) Every health care provider recommending convalescent leave on any patient will be familiar with the provisions of, and have ready access through their patient administration officer to, MILPERSMAN article 1050-180, MCO P1900.16 series, and NAVMEDCOMINST 6320.3B, section A-4d (as modified by BUMED Notice 1300 of 3 May 1991) which detail convalescent leave policies. Providers must pay particular attention to factors such as length of convalescent leave periods and requirements for medical evaluation during and at the conclusion of convalescent leave.

Note: Convalescent leave periods are not to exceed 30 days (with the exception of post-delivery maternity cases in which 42 days of convalescent leave may be recommended). Questions on any aspect of the convalescent leave program are to be referred to the MTF's patient administration officer.

(a) Health care providers recommending convalescent leave are responsible for ascertaining from the patient that the facilities to accommodate the patient's condition, and the availability of any necessary auxiliary caregivers at the member's proposed convalescent leave site, are entirely clinically compatible with the patient's condition.

(b) Appropriate clinical judgment is critical in successfully evaluating a patient for convalescent leave status, and any doubt as to the appropriateness of a convalescent leave recommendation will be resolved by foregoing the leave in lieu of a more comprehensive treatment protocol.

(c) The decision to place a member on convalescent leave generally requires concurrence of the member's parent command. (In instances where the member's parent command is geographically removed from the MTF recommending convalescent leave, the MTF CO or their designee can approve the convalescent leave without approval of the parent command.) Parent command concurrence on a convalescent leave recommendation is often obtained by having the member deliver the convalescent leave request, after medical endorsement from the provider, to the parent command. There may be cases however, in which directing the patient back to the parent command is logistically difficult or clinically contraindicated based on the condition that resulted in the convalescent leave recommendation. In these instances, MTF business practices must carefully balance the undeniable need to provide information to the parent command with the need to protect the patient against further aggravation or discomfort from the condition that has resulted in the convalescent leave recommendation. In such cases, the provider and MTF leadership need to rely on other appropriate communication methods that satisfy both the health care needs of the patient and the operational and administrative control needs of the parent command (e.g., if the patient's return to the parent command prior to starting convalescent leave is clinically contraindicated, the provider or another appropriate MTF official might call the patient's division officer for official notification; this would be followed by the patient's delivering to the division officer the convalescent leave paperwork upon the patient's return to duty. Moreover, the convalescent leave notification can be conveyed in the message traffic sent by MTFs to parent commands advising them when command members are discharged from an inpatient hospitalization.).

(d) In the event of a conflict between the MTF's convalescent leave recommendation and the parent command's granting convalescent leave, the matter should be elevated to such a level in the chain of command of the respective MTF and parent command that an appropriate compromise is achieved

that preserves both the parent command's mission readiness posture and the patient's well-being. As in all endeavors, the member's CO bears overall and final responsibility for the well-being of the member; Navy Medicine must ensure that appropriate information is conveyed that allows COs to exactingly carry out this responsibility in medical matters.

(e) Placing a member on convalescent leave does not of itself require the convening of an MEB.

(4) ***Light Duty.*** A properly credentialed DOD health care provider may recommend a Navy or Marine Corps member for light duty to evaluate the affect that an illness, injury, or disease process has on the member's ability to be in a medically unrestricted duty status. "Light duty" is a period when the member reports to their work space, but during the period the member is excused from the performance of certain aspects of military duties, as defined in their individual light duty write-up. The goal of light duty is to allow for appropriate clinical evaluation without causing further damage to the patient during the evaluation period. A provider placing a member on light duty does so only with the expectation that the member will be able to return to medically unrestricted duty status at the end of the light duty period; care must be exercised to ensure that light duty is not abused or used as an inappropriate substitute for MEB overview of a case. Accordingly, when a diagnosis is initially made of a new condition for which the provider feels light duty is appropriate, light duty is permitted. (This criterion of a "new condition" does not preclude multiple "light duty" periods over the course of a member's career; it does however preclude excessive periods of light duty consecutively for the same condition.) Light duty presumes frequent provider and patient interaction to determine whether return to medically unrestricted duty status or more intensive therapeutic intervention is appropriate in any given case. Therefore, light duty will be ordered in periods not to exceed 30 days to ensure appropriate patient clinical oversight. Consecutive light duty for any "new condition" up to 90 days may be ordered by the provider (in maximum 30-day periods), but in no case will light duty exceed 90 consecutive days, inclusive of any convalescent leave periods. At the end of the light duty period, the member will either be immediately returned to medically unrestricted duty or will be referred to an MEB.

(a) The MEB will prepare an MEBR for placing the member on temporary LIMDU and/or referring the member to the PEB for DES processing. In no case will a member reach the 90th day of light duty without the MTF having submitted an MEBR either placing the ADSM on LIMDU or referring the patient to the PEB for DES adjudication.

(b) A provider recommending a member for a light duty status will complete NAVMED 6310/1 (11-2004), Individual Sick Slip. The provider will clearly annotate the restrictions and limitations imposed upon the member's duty, as well as the time period required in a light duty status. The provider will ensure that the NAVMED 6310/1 is placed in the member's health record and that copies are provided to the member for the member to deliver to the parent command.

(c) If there is a question that the medical condition necessitating light duty is due to an injury, thereby requiring line of duty/misconduct (LOD/M) determination, the provider will ensure the member is directed to the MTF's patient administration department immediately following the determination that light duty is clinically indicated. The patient administration or medical boards office will launch (via naval message traffic) the request to the parent command for a line of duty determination/investigation (LODD/I). LOD/M determinations are discussed in more detail in article 18-16.

(d) The decision to place a member on light duty requires concurrence of the member's parent command. As light duty placement, by definition, will usually return the patient to the parent command throughout the light duty period, parent command concurrence for a light duty recommendation is most often obtained by having the member deliver the light duty recommendation to the parent command. MTF commanders shall ensure an appropriate notification process exists by which the MTF makes timely notification to the parent command of any Navy or Marine member recommended for light duty; a critical component of this process is a mechanism for positively verifying the timely receipt of information by the parent command.

(e) MTF providers and patient administration officers must maintain close liaison with parent commands of members placed on light duty, and remain mindful of the burdens placed on a command when

its members are medically restricted from performing aspects of their duty. In the event of a conflict between the MTF's light duty recommendation and the parent command's granting light duty, the matter should be elevated to such a level in the chain of command, of the respective MTF and parent command, that an appropriate compromise is achieved that preserves both the parent command's mission readiness posture and the patient's well-being. However, if a parent command indicates that it is incapable of accommodating a proposed light duty placement for a member, and the provider has conclusive clinical indications that denial of light duty will cause further harm to the patient, the provider should immediately initiate MEB proceedings for an MEBR leading to the patient's placement on temporary LIMDU. As in all endeavors, the member's CO bears overall and final responsibility for the well-being of the member; Navy Medicine must ensure that appropriate information is conveyed that allows COs to exactingly carry out this responsibility in medical matters.

(f) Placing a member on light duty does not require the convening of an MEB.

(5) ***Limited Duty.*** A properly convened MEB at an MTF may recommend that a member be placed on a documented period of medically restricted duty as a result of illness, injury, or disease process. LIMDU is a period when the member reports to their work space, but during the period the member is excused from the performance of certain aspects of military duties as defined in their individual LIMDU write-up. For this chapter, and in the actions of all MEBs throughout Navy Medicine, "limited duty" will refer to temporary limited duty (as opposed to permanent limited duty). Temporary limited duty is also known as LIMDU and or TLD; these terms are used interchangeably throughout this chapter.

(a) LIMDU is similar in many respects to light duty; major differences between the two are that, in comparison to light duty, LIMDU periods:

(1) Last longer than light duty periods.

(2) Require notification to not only the parent command, but to respective service headquarters and the servicing PSD of the member's status.

(3) May necessitate the transfer of the member from the parent command if it is a deployable unit.

(4) Do not necessarily require the consent of the member's parent command, or of the respective service headquarters. MTF commanders possessing "Convening Authority" allowing them to empanel MEBs must ensure appropriate business practices to alleviate undue burden on both the patient and the patient's parent command, and must include in all LIMDU cases appropriate notification to the patient's parent command servicing personnel/administrative office, and the respective service headquarters personnel office.

(b) Continuing care, recovery, and rehabilitation are conducted during LIMDU in an effort to return the member to medically unrestricted duty status.

(c) LIMDU may only be provided to a patient as the result of the actions of an MEB. LIMDU MEBs are addressed in detail in article 18-10.

(d) A patient whose case is referred to the PEB for DES adjudication, if the patient is not already in a LIMDU status, will be concurrently placed on LIMDU pending the PEB outcome. The Abbreviated Limited Duty Medical Evaluation Board Report detailed in article 18-17 may be used for this purpose.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

# Section II
# CONVENING MEDICAL EVALUATION BOARDS (MEBs)


| Article | | Page |
|---|---|---|
| 18-3 | MTF Convening Authority Definition and Responsibilities | 18-16 |
| 18-4 | Conditions and Circumstances Requiring the Convening of a Medical Evaluation Board (MEB) | 18-19 |
| 18-5 | Medical Conditions Not Meriting an MEB Being Convened; Administrative Redress; and Cases Involving Legal and/or Administrative Action | 18-22 |
| 18-6 | Medical Evaluation Board (MEB) Composition | 18-24 |
| 18-7 | Notifying and Counseling the Patient of the Decision to Convene An MEB | 18-25 |
| 18-8 | Health Record Entries, Record Keeping Requirements, and TMU Inspections | 18-25 |
| 18-9 | Gathering Patient Data and Completing the Patient Information Sheet | 18-26 |
| 18-10 | Limited Duty | 18-33 |
| 18-11 | Determining Disability Evaluation Cases To Be Referred to the Department of the Navy Physical Evaluation Board (DON PEB) | 18-38 |


## 18-3 MTF Convening Authority Definition and Responsibilities

(1) ***Convening Authority.*** Authority in Navy Medicine to convene MEBs is granted exclusively to the COs of naval medical centers, naval hospitals, naval medical clinics, and the naval ambulatory care centers. As such, these officers may order an MEB comprising providers under their respective command to evaluate any member of the Armed Forces. Only MTFs whose COs have "CA" can conduct MEBs. (This "authority" is not to be confused with court-martial CA pursuant to the Uniform Code of Military Justice (UCMJ).) Officers in charge (OICs) of branch medical clinics do not hold CA; neither do operational unit surgeons or ship medical officers. *Within DON, other than the MTF commanders identified in this paragraph, and those officers identified in article 18-3(2) below, no other command or officer may convene an MEB, or take unilateral action to place a member on LIMDU, or refer a member's case to the DON PEB.*

(2) ***Additional Officers Authorized to Order MEBs.*** The Chief of Naval Operations (CNO), the Commandant of the Marine Corps (CMC), the Fleet Commanders, the Chief of Naval Personnel (CHNAVPERS), the Commander, Naval Reserve Force (COMNAVRESFOR), the Chief, Bureau of Medicine and Surgery (BUMED), and the OIC, Military Medical Support Office (MMSO) may also initiate MEBs by ordering one of the CA officers identified in article 18-3(1) to convene an MEB.

(3) ***Delegation of CA Signatory Responsibility for Approving MEBRs.*** The COs defined as CAs in article 18-3(1) may delegate, in writing, signatory responsibility for acting in their behalf to approve or disapprove the findings and recommendations of an MEB convened at their respective MTFs. This delegation does not confer CA status; it allows appropriate senior clinical leaders at the MTFs to assist their MTF CA in the execution of his or her myriad responsibilities by reviewing and processing MEBRs. Deciding whether to delegate this signatory responsibility is entirely at the discretion of each MTF commander for his or her respective command. If the CA does award signatory responsibility, the following hierarchy will be followed: at Naval medical centers and naval hospitals, this signatory responsibility delegation may be granted to appropriate directors and clinical department heads; at naval medical clinics and naval ambulatory care centers, this delegation will not be granted below the level of the chief of clinical services.

(4) ***Branch Medical Clinics and Operational Units***

(a) In no circumstance will CA signatory responsibility be delegated to branch medical clinics.

(b) MTF commanders, may, however consider authorizing their respective branch clinic's clinical staffs to serve as MEB members and to initiate MEBRs which then must be forwarded to the MTF for processing and CA approval and signature before the MEBR findings or recommendations become effective. This initiative to "move paper, not patients" affords the opportunity to rapidly assess members, to assist in compliance with TRICARE access standards, and to potentially reduce travel difficulties and time away from the command for members whose conditions merit MEB referral. Evaluation of a branch medical clinic's capability to initiate MEBRs must be predicated on the availability (either internally or in conjunction with TRICARE partners) of clinically appropriate diagnostic resources and appropriate medical specialists. MTF commanders will personally render the decision on which of their respective branch clinics are authorized to initiate MEBRs, will communicate this policy in writing throughout their respective commands, and will ensure an appropriate evaluation process exists to monitor the efficacy of this program. This initiative is only available to branch medical clinics under the auspices of an MTF whose commander has CA.

(1) Shipboard and operational unit medical department representatives who are not under the direct chain of command of an MTF commander with CA, as defined in article 18-3(1) above, are not eligible to participate in this initiative and are prohibited from independently executing MEB actions and MEBRs.

(2) Similar prohibitions exist on providers who are permanently assigned under the direct chain of command of an MTF commander with CA, but who are temporarily rendering care at an operational unit (e.g., on temporary additional duty (TAD) or "circuit riding" to provide specialty care). Cases these providers determine to require consideration for LIMDU or for referral to the PEB must be referred for action to an MTF whose commander or CO holds CA. (As delineated in article 18-3(4)(b) above, MTF commanders may consider authorizing these providers to serve as MEB members and initiate MEBRs which then must be forwarded to the MTF for processing and CA approval and signature before their findings and/or recommendations become effective.) Accordingly, no provider can unilaterally place a member on LIMDU or otherwise execute MEB actions in the absence of deliberation by other MEB members and the approval of an MTF CA. For shipboard/operational personnel, it is likely that a condition significant enough to merit referral to an MEB is not compatible with continued shipboard/operational unit service; providers and patient administration officers must ensure close liaison with the parent command of members in this situation to effect appropriate transfer (e.g., temporary duty (TEMDU) orders on enlisted members or permanent change of station (PCS) orders on officer members) for treatment.

(5) ***Other Service and TRICARE Provider Involvement in Navy and Marine MEBs***

(a) Paperwork on the cases of all Navy and Marine members undergoing any MEB action must be processed through a Navy MTF, even if an MTF of another branch of the Armed Forces initiated the MEB or if TRICARE network providers were engaged in the preparation of the MEBR.

(b) Previous editions of this chapter provided detailed listings of which U.S. Army and U.S.Air Force MTFs should receive and send MEB cases to Navy MTFs. In this iteration, MTF commanders are allowed discretion in determining which MTFs they will work with regarding MEB actions. Of paramount importance is the establishment of positive working relationships between respective MTF medical board services, as significant aspects of this performance of MEBs (e.g., "profiles" in other services) differ among the branches of the Armed Forces. Navy MTFs receiving MEBs from other service MTFs on Navy and Marine personnel shall ensure that the patient administration department reviews all work being forwarded from the other services' MTF; at the conclusion of this verification, the patient administration/MEB officer shall append a Navy cover sheet, bearing all signatures and designations as required for processing any board originating within a Navy MTF, to the MEBR before forwarding it to the CA.

(6) ***Responsibilities of the CA***

(a) Ensuring that patients being evaluated by an MEB are thoroughly and appropriately counseled on the process. The CA will ensure as well that patients are, as appropriate, made thoroughly familiar with LIMDU, medical holding company operations, DES processing, and the role of the PEB liaison officers (PEBLOs). A critical part of this requirement for counseling is the provision of appropriate physical plant spaces in which patients meet with providers, MTF medical boards staff, and PEBLOs such that patient privacy is protected and confidential counseling can occur.

(b) Ensuring that patients being evaluated by an MEB are made thoroughly aware of the findings of the MEB, are provided a copy of the MEBR, are afforded the opportunity to discuss opinions and recommendations with each member of the MEB, and are afforded the opportunity to submit a statement on any portion of the MEBR, which then becomes a part of the official documentation of the MEBR. If the CA determines that revealing any of the information contained in the MEBR to the patient will be harmful, deleterious, or have adverse affect on the mental and physical health of the patient, or if the patient has been determined mentally incompetent or incapacitated to handle his or her own affairs, the CA will instead ensure that the legally appropriate next of kin (or legally appointed trustee) representing the patient is provided all information and afforded all rights described in this article (see SECNAVINST 1850.4 series, Navy Disability Evaluation Manual, that offers additional information on this topic).

(c) Ensuring that only appropriately trained providers are appointed to MEBs. In addition to requisite clinical training, appropriate training, at a minimum, consists of thorough familiarity with this document and with the SECNAVINST 1850.4 series. The CA will ensure that defined criteria for MEB membership are published for their respective commands, and will ensure development of verification methods to ensure that only fully trained providers are allowed to comprise MEBs.

(d) Ensuring that MEBs are comprised of the correct number and specialties (board certified or board eligible) of providers, appointed based on the condition and status of the patient being evaluated (e.g., psychiatrists on a mental incapacitation board, or reserve representation when a reservist is being evaluated by an MEB). Article 18-6 details MEB composition.

(e) Ensuring that MEB office and patient administration staff members are appropriately trained in supporting MEBs, including the compilation and processing of MEBRs. This training, at a minimum, consists of thorough familiarity with this document and with the SECNAVINST 1850.4 series, Navy Disability Evaluation Manual. Training must also be implemented at the MTF level to ensure that the patient administration staff who will be serving and counseling patients are adequately prepared for their vital roles. Article 18-29 details MEB training requirements.

(f) Ensuring inclusion of all indicated medical tests and examinations, including a complete physical examination (PE), conducted in accordance with the Manual of the Medical Department (MANMED)

chapter 15 and as required by the SECNAVINST 1850.4 series (attachment A to enclosure (8)) for those cases being referred to the PEB, with each MEBR, and ensuring that all appropriate annotations of MEB activity are incorporated into the patient's medical record.

(g) Ensuring compliance with processing timeframes stipulated in the SECNAVINST 1850.4 series, Navy Disability Evaluation Manual, and ensuring proper entry of MEBR information in the Medical Board OnLine Triservice Tracking (MedBOLTT) System, or systems that replace it, as installed in MTFs and operated under the aegis of Naval Medical Information Management Center (NMIMC).

(h) Ensuring that appropriate liaison is maintained with the Responsible Line Commander, parent commands, and servicing personnel support activities and detachments of patients undergoing MEB processing, as well as with the NAVPERS Transient Monitoring Unit (TMU). Critical among this liaison function is ensuring that monthly meetings held by the MTF for "LIMDU coordinators" representing all commands with patients on LIMDU occur as required by the MILPERSMAN. MTFs can significantly enhance their performance in this regard by ensuring appropriate interoperability exists between their MEB offices and their Operational Forces Medical Liaison Services Office.

(i) Ensuring, in conjunction with the PEB, that indicated cases are brought to the attention of the Chief, BUMED (BUMED Risk Management) for review and possible reporting to the National Practitioner Data Bank (DPDB) as delineated in section 5.2.9. of DOD Directive 6025.13 of 4 May 2004, Medical Quality Assurance (MQA) in the Military Health System.

## 18-4 Conditions and Circumstances Requiring the Convening of an MEB

(1) ***Proposals of MEBs***. An MEB evaluates a patient and produces an MEBR on that patient's condition. MTF CAs may convene an MEB to evaluate and prepare an MEBR on any member of the military. MEBRs are used for two purposes:

(a) Placing a patient on temporary limited duty (TLD or LIMDU).

(b) Referring a patient to the PEB for a determination of the patient's fitness for continued service. The DON PEB is not under the aegis of Navy Medicine, and reports directly to the Director, Secretary of the Navy Council of Review Boards (DIRSECNAVCORB) formerly DIRNCPB. Delegated by the Secretary of the Navy (SECNAV), the PEB, under DIRSECNAVCORB, has sole authority within the DON to determine a Navy or Marine member's fitness for continued Naval service for a condition which may constitute disability.

(2) ***Circumstances Indicating Need for an MEB.*** An MEB shall be initiated when a physician trained and certified for MEB membership by the MTF CA (as defined in articles 18-3(5) and 18-6) determines that:

(a) A member has a condition that appears to significantly interfere with performance of duties appropriate to the member's office, grade, rank, or rating.

(b) A member has a condition that will prohibit returning the patient to his or her parent command in a medically unrestricted duty status following appropriate light duty as defined in article 18-2(4). Special consideration must be exercised in cases involving members assigned to operational commands which may be unable to sustain the unplanned loss of ADSMs for significant light duty periods. For these ADSMs, placement of the member on LIMDU or in a medical holding company status

may be indicated to ensure the most appropriate personnel status of the unit and allow for the parent command to effect an "unplanned loss" replacement most expeditiously; MTF staff must be in close liaison with the patient's commands in these cases to determine appropriate actions.

(c) A member has a condition that may seriously compromise the member's health or well-being if the member were to remain in the military service (e.g., continued service would likely result in extended hospitalization(s), requirements for close medical supervision, or potential aggravations of the existing condition).

(d) A member has a condition that may prejudice the best interests of the Government if the member were to remain in the military service.

(e) A member has a condition that requires assignment limitations (e.g., geographic restraints or assignment near a particular MTF with specialty services, etc.).

(f) An inactive reservist incurs or aggravates an injury or illness during a period of active service and the period of required treatment, rehabilitation, or convalescence is expected to exceed 12 weeks or require retention beyond authorized active duty service orders.

(g) A member refuses reasonable medical or dental treatment (including surgery) and the member's ability to perform medically unrestricted duty is suspect. In these cases, the CA will determine the "reasonableness" of the member's refusal to accept indicated care, predicated on appropriate clinical standards of practice, availability of reliable care, (e.g., in an outside of the Continental United States (OCONUS) setting where care is not available at an MTF and MEDEVAC is clinically contraindicated), and other factors the CA deems appropriate.

(h) A member who has "self-referred" for elective care outside the direct Military Health System (MHS) (e.g., for organ donation or corrective laser eye surgery) who sustains an untoward outcome that calls into question the member's continued fitness for service as a result of that care will be referred by an MEB to the DON PEB. The PEB will determine the member's fitness for continued Naval service and concurrently will determine whether the patient is eligible for disability benefits. Parent commands and MTFs must perform specific counseling requirements; refer to SECNAVINST 1850.4, BUMEDINST 6320.72, and BUMEDINST 6300.8 series instructions.

(i) A member whose condition indicates the need to receive an organ transplant merits referral to an MEB; close coordination between the MTF and the PEB must occur in these cases, particularly if the member is being retained in an active duty status until the completion of the transplant; refer to SECNAVINST 1850.4 series, enclosure (8), attachment A, paragraph 2s.

(3) ***Conditions Indicating Need for an MEB.*** SECNAVINST 1850.4 series, enclosure (8), provides a listing of "Medical Conditions and Physical Defects Which Normally are Cause for Referral to the Physical Evaluation Board." While the primary consideration in determining whether an MEB should be convened is the professional judgment of the attending physician, this list should be consulted frequently by providers and patient administration staff.

(4) ***Referral of Patients to an MEB.*** Uniformity throughout Navy Medicine in referring patients to MEBs is a critical issue for our MTFs, our patients, and their parent commands. Issues beyond those implicit in the care of an individual patient, such as total force personnel strengths and the maintenance of a fit force, are key and vital considerations that must be addressed concurrently with the delivery of exactingly efficacious medical care. Accordingly, the criteria for convening MEBs and preparing MEBRs must be diligently applied throughout Navy Medicine. While each unique patient's case merits scrutiny for extenuating circumstances, the operating parameter for the overwhelming majority of our patients is that if an ADSM has a medical condition which will be responsible for their inability to operate in a medically unrestricted duty status for 90 days or greater duration, the patient must be referred to an MEB for placement in a TLD/LIMDU status and/or for referral to the DON PEB.

(5) ***Guidelines for Convening MEBs.*** The following provides guidelines for convening MEBs to place patients on TLD/LIMDU and/or refer patients to the PEB: (See next page for guidelines.)

## MEB REQUIREMENTS

| ACTION SOUGHT/MEMBER STATUS | MEB REQUIRED? | ROUTE MEB TO | OTHER REQUIRED ACTION |
|---|---|---|---|
| | | | Cases where "MEB Required?" = Yes:<br>(1) Notify parent command via Naval Message traffic.<br>(2) Input to MedBOLTT or replacement system.<br>(3) Additional actions indicated below. |
| 1st period TLD ≤6 months/ USN officer | Yes | NAVPERSCOM (PERS-4821) | Provide abbreviated MEBR. |
| 1st period TLD ≤6 months/ USMC officer | Yes | HQMC (MMSR-4) | Provide abbreviated MEBR and NMA from parent command. |
| 1st career period TLD ≤6 months/ USN enlisted | Yes | File in Health Record. | Provide abbreviated LIMDU MEBR. |
| 1st career period TLD ≤6 months/ USMC enlisted | Yes | File in Health Record. | Provide abbreviated LIMDU MEBR. |
| 2nd period TLD ≤6 months/ USN officer | Yes | NAVPERSCOM (PERS-4821) | Provide abbreviated MEBR. |
| 2nd period TLD ≤6 months/ USMC officer | Yes | HQMC (MMSR-4) | Provide abbreviated MEBR and NMA from parent command. |
| 2nd period TLD ≤6 months/ USN enlisted | Yes | Not Applicable | Provide abbreviated MEBR. |
| 2nd period TLD ≤6 months/ USMC enlisted | Yes | HQMC (MMSR-4) | Provide abbreviated MEBR. |
| 3rd subsequent period TLD/ USN officer or USN enlisted | Yes | NAVPERSCOM (PERS-4821) | (1) If the TLD is sought for the condition responsible for the first and/or second TLD periods, provide dictated MEBR, NMA from parent command, and MEBR cover sheet.<br>(2) If the TLD is sought for a different condition than that responsible for the first and/or second TLD periods, provide the abbreviated MEBR. |
| 3rd subsequent period TLD/ USMC officer or USMC enlisted | Yes | HQMC (MMSR-4) | (1) If the TLD is sought for the condition responsible for the first and/or second TLD periods, provide dictated MEBR, NMA from parent command, and MEBR cover sheet.<br>(2) If the TLD is sought for a different condition than that responsible for the first and/or second TLD periods, provide the abbreviated MEBR. |
| Referral to PEB/USN officer | Yes | DON PEB | Ensure appropriate physical examination (PE), NMA from parent command, and LODD (as indicated). |
| Referral to PEB/USMC officer | Yes | DON PEB | Ensure appropriate PE, NMA, and LODD. |
| Referral to PEB/USN enlisted | Yes | DON PEB | Ensure appropriate PE, NMA, and LODD. |
| Referral to PEB/USMC enlisted | Yes | DON PEB | Ensure appropriate PE, NMA, and LODD. |
| Conditions described in article 18-5 as not meriting referral to the PEB | No | Not Applicable | Forward to parent command with copy in health record. Parent command to initiate appropriate administrative separation procedures. |
| Light Duty | No | Not Applicable | Forward to parent command with copy in health record. Ensure appropriate clinical followup and receipt of parent command concurrence. |
| Return to duty from LIMDU | No | Not Applicable | NAVMED 6100/6. Message traffic notification to parent command and PERS-4821 or MMSR-4. Ensure entry into MedBOLTT or replacement system. |
| Final findings from PEB | No | Not Applicable | Ensure entry into MedBOLTT or replacement system. |

PEB Mailing Address: President, Physical Evaluation Board, Building 36, 720 Kennon Street, SE, Washington, DC 20374-5023.

# 18-5 Medical Conditions Not Meriting an MEB Being Convened; Administrative Redress; and Cases Involving Legal and/or Administrative Action

(1) MEBs convene to evaluate patients and produce MEBRs that either place a member on temporary LIMDU and/or refer a member to the PEB for disability evaluation. The Navy Disability Evaluation Manual, SECNAVINST 1850.4 series defines "disability" as "any impairment due to disease or injury, regardless of degree, that reduces or prevents an individual's actual or presumed ability to engage in gainful employment or normal activity."

(2) As stipulated in the Navy Disability Evaluation Manual *a "medical impairment or physical defect standing alone does not constitute a physical disability.* To constitute a physical disability, the medical impairment or physical defect must be of such a nature and degree of severity as to interfere with the member's ability to adequately perform his or her duties." The Navy Disability Evaluation Manual continues that "the term, "physical disability," includes mental disease, but not such inherent defects as behavioral disorders, adjustment disorders, personality disorders, and primary mental deficiencies."

(3) ***Conditions not meriting an MEB.*** *A*ccordingly, the mere presence of a physical or mental condition does not constitute a "disability" and therefore there are conditions and situations in which convening an MEB is neither appropriate nor desired. Certain conditions and defects of a developmental nature are not ratable in the absence of an underlying ratable causative disorder. These conditions, while not appropriate for MEB referral, may be referred for appropriate administrative action (for Navy, MILPERSMAN article 1900 series applies and for USMC, the Marine Corps Separation and Retirement Manual (MARCORSEPMAN), chapter 6, applies) and include, but are not limited to, the following, which are detailed in SECNAVINST 1840.4 series (in sections 2016 and 3202, and in attachment B to enclosure (8)):

(a) Enuresis.

(b) Sleepwalking and/or somnambulism.

(c) Dyslexia and other learning disorders.

(d) Attention deficit hyperactivity disorder.

(e) Stammering or stuttering.

(f) Incapacitating fear of flying confirmed by psychiatric evaluation.

(g) Airsickness, motion sickness, and/or travel sickness.

(h) Phobic fear of air, sea, and submarine modes of transportation.

(i) Uncomplicated alcoholism or other substance use disorder.

(j) Personality disorders.

(k) Mental retardation.

(l) Adjustment disorders.

(m) Impulse control disorders.

(n) Homosexuality.

(o) Sexual gender and identity disorders paraphilias.

(p) Sexual dysfunction.

(q) Factitious disorder.

(r) Obesity.

(s) Overheight.

(t) Psuedofolliculitis barbae of the face and/or neck.

(u) Medical contraindication to the administration of required immunizations.

(v) Significant allergic reaction to stinging insect venom.

(w) Unsanitary habits.

(x) Certain anemias, in the absence of unfitting sequelae, including G6PD deficiency, other inherited anemia trait, and Von Willebrand's Disease.

(y) Allergy to uniform clothing or wool.

(z) Long sleeper syndrome.

(aa) Hyperlipidemia.

(4) ***Circumstances Not Meriting an MEB for Referral to the PEB.*** In addition to the medical conditions listed above, the following circumstances also contraindicate evaluation by an MEB for referring the matter to the PEB (refer to SECNAVINST 1850.4 series, section 3202):

(a) Lack of motivation to perform duty.

(b) Request by member for referral to an MEB or PEB in the absence of appropriate diagnosis(es) meriting an MEB.

(c) Inability of member to meet initial enlistment/appointment standards.

(d) Physical disqualification for special duties.

(e) Inability to meet physical standards for specific assignment or administrative requirement. (This includes participation in physical readiness test (PRT), physical fitness tests (PFT), and physical fitness assessment (PFA) cycle. Referral to the PEB merely due to an inability to participate in PRT, PFT, and PFA is inappropriate; however, if the inability to participate in the PRT, PFT, and PFA is due to an illness or injury that is a potential disability as defined elsewhere in this chapter and in the SECNAVINST 1850.4 series, then referral to the PEB is appropriate. Close coordination with respective service headquarters and respective Service PRT, PFT, and PFA instructions is encouraged in these cases.)

(f) Members being processed for separation or retirement for reasons other than physical disability (unless the member was previously found unfit by the PEB and is in a permanent LIMDU status, or unless the member's physical condition reasonably prompts doubt that he or she is fit to continue to perform their duties pending the separation or retirement).

(5) ***Pregnancy.*** An MEB is not mandatory in cases of servicemembers temporarily unable to perform aspects of their duty due to pregnancy or complications from pregnancy; service directives (i.e., OPNAVINST 6000.1 series and MCO P3000.13 series) provide reporting requirements and amplifying information particularly related to protocols that "some servicewomen may require a significant alteration in work assignment which may adversely impact the command." Referral for administrative separation is not routinely appropriate in cases of pregnant servicewomen; the sole exception to this is recruits found to be pregnant upon reporting to their respective recruit training commands for basic training. In these cases, as conveyed for instance for Navy personnel in MILPERSMAN article 1910-112 "Separation by Reason of Convenience of the Government - Pregnancy:" "Members who are pregnant, and medical authorities certify in writing that the pregnancy existed prior to entry into the service, will be separated following MILPERSMAN article 1910-130, "Separation By Reason of Defective Enlistments and Inductions and Erroneous Inductions - Erroneous Enlistment," and shall be separated without medical benefits." OPNAVINST 6000.1 series provides guidance on the administrative management of pregnant servicewomen.

(6) ***Legal and Administrative Considerations.*** In cases in which the member is facing legal and/or involuntary administrative separation issues that may result in separation, these processes and their outcomes, as mandated by service headquarter directives, supercede MEB action, including referral to the PEB for DES processing. For this reason, it is critical that MTFs contemplating convening an MEB on a patient ascertain whether the patient is pending any legal or administrative proceeding or involuntary administrative separation (as indicated in the patient information sheet, see article 18-9). Any cases in which a legal or involuntary administrative separation concern emerges should immediately be referred to the appropriate service headquarters (PERS-4821 or HQMC MMSR-4) for LIMDU cases, or the PEB in cases submitted to the PEB, for determination on the appropriateness of continuing MEB action. MEB action in these cases should be suspended pending the resolution of the legal and/or administrative separation issues; moreover, cases should not be referred to the PEB for disability evaluation if legal or involuntary administrative separation issues are pending (SECNAVINST 1850.4 series, article 3403, provides amplifying information.). It is incumbent upon MTFs processing MEBs on patients to diligently determine, through patient interviews, non-medical assessment (NMA) review, contact with parent commands, and other appropriate avenues, whether legal or involuntary administrative separation issues are pending in any case.

# 18-6 Medical Evaluation Board (MEB) Composition

(1) ***CA Responsibility in Appointing Medical Board Members.*** The prime consideration in the composition of an MEB is ensuring that the physicians comprising the Board have sufficient professional training, specialization, and experience, and have been appropriately trained in the operations of DON LIMDU and disability evaluation processes. (At a minimum, this training should consist of a thorough understanding of this chapter, SECNAVINST 1850.4 series, and of all pertinent MTF-specific governing directives.)

(2) ***Number of Physicians Comprising an MEB.*** There are a minimum of two members required on an MEB, a junior member and a senior member; the CA may name a third member to an MEB as deemed appropriate. (A mandatory exception to this is that all MEBs convened in cases adjudicating mental incapacitation require three physician members, one of whom must be a psychiatrist, as defined in article 18-6(8) below.) MEBs will be composed of physicians who are properly credentialed and actively engaged in clinical practice on the staff of a DOD MTF.

(3) ***Senior Member Responsibilities.*** The senior member will ensure that the actions of the MEB conform to established procedures, and the MEBR prepared by the MEB conforms to sound and accepted practices and principles of medicine. The senior member will maintain close liaison with the patient administration and MEB service during the preparation of the MEBR, and will ensure compliance with all timeframes stipulated in the Disability Evaluation Manual (SECNAVINST 1850.4 series) and this chapter. The senior member should ordinarily be the department head of the specialty by which the patient is primarily being evaluated. In cases where this is not possible, (e.g., the clinical department head will be reviewing the MEB with signatory responsibility delegated by the CA as detailed in article 18-3(3)) the department head will designate another appropriate senior physician within the clinical department to serve as the senior member on the MEB.

(4) ***CA Not to Serve as an MEB Member.*** To maintain the requisite impartiality required of the final reviewer of MEBRs prepared in the MTF, the CA (i.e., CO) will not serve as an actual member of MEBs. Likewise, officers to whom the CA has provided signatory responsibility as final command review will not, on any case, serve as both a member of the MEB and the command's final reviewer of the MEBR produced by that MEB.

(5) ***Boards Convened to Evaluate Dental Conditions.*** When the basis for the board is a dental treatment matter, the senior member should be a dentist properly credentialled and actively engaged in clinical practice on the staff of a DOD MTF or dental treatment facility (DTF). Other members must be physicians as detailed in article 18-6(2). An MEB prepared on a Navy or Marine Corps active duty dental patient to determine the patient's fitness for continued Naval service will be processed through a Navy MTF for further routing as indicated to the Navy PEB.

(6) ***Boards Convened on Reservists.*** When an MEB is convened to evaluate an active or inactive Naval or Marine Corps Reserve member, the CA will direct that the MEB membership reflects the Reserve status of the patient being evaluated. The CA will expressly annotate the Reserve representation on the MEB in the MEBR; this annotation will include a distinct citation in the forwarding endorsement to the MEBR if appropriate Reserve representation was not practicable.

(7) ***Clinical Specialty Representation on MEBs.*** Specialist involvement in the preparation of MEBRs is the standard which will be achieved throughout Navy Medicine. Commanders and COs holding CA for MEBs shall ensure that, preferably all MEB members but, at a minimum, the senior member of any MEB shall be trained and either board-certified or board-eligible in the specialty most relevant to diagnosing and treating that condition which is most responsible for the patient being referred to an MEB. In cases where any of the MEB members are not specialists engaged in the active practice of that area of medicine most relevant to the diagnosis primarily responsible for referral to an MEB, the CA will ensure that the MEBR expressly indicates that key clinical information in the MEBR is predicated on specialty consultation by providers other than those comprising the MEB. The CA will also ensure in these cases that the patient is thoroughly instructed on the process

involved in obtaining, and is afforded appropriate opportunity to obtain, all pertinent findings as provided for in article 18-3.

(8) ***MEBs Established to Determine Mental Incapacitation.*** MEBs convened to establish whether a Navy or Marine Corps member is in a state of mental incapacitation (i.e., mental incapability of managing personal and financial affairs) require three physician members. The members must be active members of the Uniformed Services and/or active physicians within the Veteran's Administration and/or civilian physicians credentialled and privileged to practice in a DOD MTF. At least one of the MEB members must be a psychiatrist (refer to 37 USC 602 and the Manual of the Judge Advocate General (JAGMAN)). (The requirement for psychiatrist membership on this type of MEB cannot be satisfied by relying instead on clinical psychologists.) The psychiatrist member(s) of the MEB will be identified as such in the appropriate signature block lines of the MEBR.

## 18-7 Notifying and Counseling the Patient of the Decision to Convene An MEB

(1) Immediately upon determining that a patient is to be referred to an MEB, the attending physician determining the need for the patient's referral, will personally inform the patient. In cases where a patient is not deemed competent to handle personal and financial matters, or in cases where full disclosure is deemed to have a deleterious effect on the patient, the physician will inform the duly authorized next of kin or guardian of the decision to refer a patient to an MEB (see SECNAVINST 1850.4 series, sections 2035, 2049, 2083, 3414, 4214d, and 12000 for cases being referred to the PEB). MTF Staff JAG Corps officers will be immediately consulted if questions arise over appropriate notification to patients.

(2) During this notification to the patient, the physician will identify whether the intended referral is for LIMDU or for having the DON PEB determine the patient's fitness for continued Naval service. The referring physician will address all clinical and other concerns to the maximum extent practicable.

(3) Finally, the physician will ensure that the patient immediately reports to the patient administration/MEB section for additional counseling and administrative processing. (This step is crucial in that numerous critical elements of information are gathered at this juncture to protect the patient's rights, to ensure appropriate notifications are made to the patient's parent command, and to ensure the MTF complies with timeliness and completion factors for processing the MEBR.)

(4) In those cases in which an MEB will result in a patient's referral to the DON PEB for a determination of fitness for continued Naval service, MTF representatives should expressly refrain from offering their opinions on whether the PEB will render a decision of "fit" or "unfit" for continued Naval service, and should equally refrain from offering opinions on disability percentage ratings which may be offered. These determinations are exclusively within the purview of the PEB, and speculation on the part of MTF staff often only produces negative affects on our patients when the speculations proffered by MTF staff are not in fact the determinations rendered by the PEB.

(5) The physician counseling the patient about his or her referral to any MEB will appropriately annotate this counseling in the patient's medical record as described in MANMED article 18-8.

## 18-8 Health Record Entries, Record Keeping Requirements, and Transient Monitoring Unit (TMU) Inspections

(1) ***Health Record Entries***

(a) Immediately upon concluding that a patient is to be referred to an MEB, the attending physician determining the need for the patient's referral, will personally annotate this decision in the patient's medical record.

(b) Entries in the health record to appropriately document a patient's being referred to an MEB, must include the date of the evaluation resulting in an MEB referral, the diagnosis, and the recommended disposition and must appear at:

(1) SF 600, Chronological Record of Medical Care.

(2) DD 2766, Adult Preventive and Chronic Care Flowsheet, (which replaced the "Summary of Care" and "Problem Summary List") at page 1, section 4, under "Hospitalizations/Surgeries" or the NAVMED O/P 6150/43 (3-2004), Deployment Health Record.

(c) In addition to these entries, health record entries are also required pursuant to investigations and preliminary inquiries in cases requiring LOD/M determinations; refer to article 18-16 for amplifying information.

(d) Additionally, a complete copy of the MEBR and all supporting documentation must be maintained permanently in the patient's health record. This requirement includes the NAVMED 6100/5, Abbreviated Medical Evaluation Board Report, if this form is used to place an enlisted Sailor or Marine on LIMDU. (Refer to articles 18-10 and 18-17 for information on this process). This requirement also includes the NAVMED 6100/6, Return of a Patient to Duty from Limited Duty. (Refer to article 18-10 for information relative to returning patients from LIMDU.)

(e) In addition to health record entries, information on each patient referred to an MEB must be entered into the MedBOLTT system (or any system that should replace it), as described in detail in article 18-27.

(2) ***Record Keeping Requirements.*** All MTFs will maintain all records on MEB cases for a minimum of 2 years, prior to retiring the records. Retirement requirements appear in MANMED chapter 16.

(3) ***TMU Inspections.*** In recognition of the force readiness issues represented by patients undergoing MEB review, The Chief, Naval Personnel (NAVPERS) and Commander, Enlisted Personnel Management Center (EPMAC) through the OIC TMU, evaluate MTF performance in the execution of MEB processing. The TMU evaluates MTF efficiency in support of the Transients Patients Prisoners Holdees (TPPH) pipeline. The TMU will communicate directly to the MTFs their anticipated inspection schedules, and direct liaison between the MTFs and the TMU pursuant to TMU TPPH inspections is authorized. Excellence in the effective management of the MEB process is recognized by TMUs awarding the "Certified Pipeline Mover's Award" to deserving MTFs. Inspection criteria are available directly from the TMU at: http://www.epmac.nola.navy.mil/tmu.

## 18-9 Gathering Patient Data and Completing the Patient Information Sheet

(1) Immediately after being notified by their attending physician of being referred to an MEB, patients will be directed by their physician to report to the MTFs patient administration/MEBs office.

(2) The information contained in an MEBR plays a critical role in determining the rights of the member to potential benefits (e.g., compensation, promotion, medical separation or retirement, income tax exemptions, etc.) should the case be referred to the PEB. Accordingly, the CA, MEB members, and the MEB staff at each MTF must ensure that all appropriate information is adequately captured. This information includes data on the clinical presentation of the patient's case, as well as vital administrative facts. An essential first step in the appropriate collecting of the administrative information vital to processing an MEBR is the patient information sheet.

(3) The patient information sheet appears in MedBOLTT, (and systems that may replace it) and may be locally developed at each MTF where a CA is present. A comprehensive patient information sheet will obtain information from the patient on at least the following:

(a) Patient's full first, middle, and last name.

(b) Patient's social security number.

(c) Patient's date of birth.

(d) Patient's parent command and patient's present duty location, including complete mailing

addresses, telephone numbers, plain language address for routing naval message traffic, and name of division officer, leading chief petty officer (LCPO), or direct supervisor.

---

Note: These will not necessarily be identical in the case of, for example, deployed aviation squadrons. It is vital that complete information be obtained so that all appropriate elements of the chain of command receive the initial and update naval message traffic relative to their servicemembers in the MEB process, and so that the appropriate command can be queried for NMA and LODD/I documentation. This information is also vital in determining appropriate MTF Operational Forces Medical Liaison Services Office and/or medical holding company actions.

---

(e) Patient's home address and telephone number.

(f) Patient's marital status and status or location of dependent family members (again, this information is vital in determining how MTF patient administration and operational liaison officers can best serve our patients and their family members at the time the patient enters the MEB process).

(g) Patient's branch of service (i.e., USN, USMC, USNR, USMCR, USA, USAR, USAF, USAFR, USCG, PHS, or NOAA).

(h) Patient's status (e.g., active duty, active reservist, inactive reservist, etc.). The designation "-R" must appear when the patient is an inactive reservist (e.g., USNR-R).

(i) Patient's pay grade and rank (and, for USN and USCG enlisted personnel, rate).

(j) Patient's Navy enlisted classification (NEC) (enlisted), or designator and Naval officer billet classification (NOBC) (officer), or military occupational specialty (MOS) (Marine Corps, Army, and Air Force officer and enlisted, as practical).

(k) Patient's end of obligated service (EAOS) or end of service (EOS). This information is critical to appropriately notify service headquarters of conflicts between an impending discharge and a medical condition necessitating referral to a medical board.

(l) Patient's length of service, reported in terms of years and months (i.e., YY (years), MM (months)). This figure must match the length of service data presented in the MEB.

(m) Patient's retirement or separation date for patients who have a mandatory retirement or separation date (e.g., for high year tenure) or who have requested retirement and have received a retirement or Fleet/Marine Corps Reserve date from service headquarters.

(n) Patient's attending physician.

(o) Patient's primary care manager/TRICARE prime enrollment site.

(p) Patient's diagnosis/diagnoses (as indicated in health record, per physician).

(q) Patient's limitations, if any, regarding physical activity and/or needed proximity to an MTF (as indicated in health record, per physician).

(r) Identification of whether patient has ever been referred to an MEB for either temporary LIMDU or adjudication by the PEB, and if so, dates, MTF's convening the board(s), and outcomes. Space for any additional information patient wants to provide may be attached to the sample patient information sheet on the next page.

(s) The following is an example of a comprehensive patient information sheet developed by the National Naval Medical Center.

---

***REMAINDER OF PAGE INTENTIONALLY LEFT BLANK***

---

## SAMPLE FORMAT
## PATIENT INFORMATION SHEET

**MEDICAL EVALUATION BOARDS SERVICE**
NAVAL MEDICAL CENTER/HOSPITAL________________
ADDRESS ________________________________________
CITY, ST ________________________________________
TELEPHONE: ______________________ DSN: __________
FAX: ______________________________

Date: ________________________

Case Manager: ______________________________________________

REVISED: JANUARY 2004

**FOR MEDICAL EVALUATION BOARDS SERVICE OFFICE USE ONLY**

Select Military Service: ☐ USN ☐ USA ☐ USAF ☐ USMC ☐USCG ☐ MILITARY ACADEMY__________________
☐ OTHER: ______________________________________________________________
RESERVIST: ☐ YES ☐ NO

Required messages:
☐ INITIATE NOTIFICATION MESSAGE
☐ INITIATE A HOLD SEPARATION MESSAGE
☐ RETIREMENT IN ABEYANCE MESSAGE
☐ LINE OF DUTY INVESTIGATION/DETERMINATION (LODI/LODD) MESSAGE
☐ NON MEDICAL ASSESSMENT MESSAGE

Type of Medical Evaluation Board:
☐ FIRST PERIOD OF LIMITED DUTY (FPLD): ≤6 MONTHS
☐ SECOND PERIOD OF LIMITED DUTY: ≤6 MONTHS
NOTE: FIRST AND SECOND PERIODS OF TLD CANNOT EXCEED 12 TOTAL MONTHS FROM THE DATE OF THE START OF THE FIRST LIMITED DUTY PERIOD
☐ THIRD OR GREATER PERIOD OF LIMITED DUTY (=DEPARTMENTAL REVIEW TO SERVICE HQ)
☐ PHYSICAL EVALUATION BOARD (PEB)

Additional requirements:
☐ NON-MEDICAL ASSESSMENT
☐ SINGLE SIDED COPY OF HEALTH RECORD
☐ PROFESSIONAL AFFAIRS LETTER
☐ PHYSICAL EXAMINATION
☐ NOTICE OF ELIGIBILITY (NOE)
☐ COPY OF MOBILIZATION ORDERS

☐ ALL PREVIOUS LIMDU AND PEB MEDICAL EVALUATION BOARD (S) (Enter date: dd/mmm/yyyy)

_______________________/_______________________/__________________________

**ADDENDUM / ADDENDA REQUIRED:**

| | | |
|---|---|---|
| ☐ ALLERGY | ☐ GENERAL/PLASTIC SURGERY | ☐ ORTHOPEDICS |
| ☐ CARDIOTHORAIC/CARDIOLOGY | ☐ HEMA/ONCOLOGY | ☐ PAIN CLINIC |
| ☐ CHIROPRACTIC | ☐ INFECTIOUS DISEASE | ☐ PODIATRY |
| ☐ DERMATOLOGY | ☐ INTERNAL MEDICINE | ☐ PSYCHIATRY/PSYCHOLOGY |
| ☐ DENTAL SURGERY | ☐ NEPHROLOGY | ☐ PULMONARY |
| ☐ EENT | ☐ NEUROLOGY | ☐ RAD/ONCOLOGY |
| ☐ ENDOCRINOLOGY | ☐ NEUROSURGERY | ☐ RHEUMATOLOGY |
| ☐ GASTROENTEROLOGY | ☐ OB/GYN | ☐ UROLOGY |
| ☐ GENERAL MEDICINE | ☐ OPTHALMOLOGY | ☐ VASCULAR SURGERY |

Instructions: The information requested below is vital in processing your Medical Evaluation Board. Please answer all questions. Please **DO NOT** use abbreviations. All information requested on these pages is for use of the MEB Service Office and the Disability Evaluation System Counselors. If you are uncertain of any question or need assistance in completing the form, please ask for assistance. The Privacy Act of 1974 protects this information.

**SECTION 1: PATIENT INFORMATION**

NAME ____________________________________________________________ SSN: _________/_________/_________ RACE: _____________________
LAST FIRST MI

DESIG/MOS/AFSC/NEC: _______________________ JOB TITLE: ______________________________________________ BRANCH OF SERVICE:________________
(e.g., Infantry, Med Tech, Boatswain Mate)

RANK/GRADE: ____________ RATE: _____________ DATE OF BIRTH: ______________ (dd/mmm/yyyy) SEX: ☐ FEMALE ☐ MALE

LOCAL MAILING ADDRESS: ______________________________________________

PERMANENT HOME ADDRESS: ______________________________________________

LOCAL TELEPHONE NUMBER: ______________________________________________

PERMANENT TELEPHONE NUMBER: ______________________________________________

E-MAIL: ___________________________________________________
(List only official military/.mil e-mail address)

page 1 of 3

**SECTION 2: MILITARY SERVICE INFORMATION**

LENGTH OF SERVICE: ________YRS. ________MOS. HIGH YEAR TENURE DATE: ________________________ (dd/mmm/yyyy)

EAOS/EAS: ______________________________________________ END OF ACTIVE OBLIGATED SERVICE (dd/mmm/yyyy)

PEBD: ______________________________________ PAY ENTRY BASE DATE (dd/mmm/yyyy)

DO YOU HAVE A VOLUNTARY RETIREMENT DATE? ☐ YES ☐ NO PROVIDE DATE: ________________________________(dd/mmm/yyyy)

DO YOU HAVE A MANDATORY RETIREMENT DATE? ☐ YES ☐ NO PROVIDE DATE: ________________________________(dd/mmm/yyyy)

ARE YOU AN ACTIVE RESERVIST? ☐ YES ☐ NO ARE YOU A DRILLING RESERVIST? ☐ YES ☐ NO

ARE YOU IN THE USNR/FTS(formerly TAR?) ☐ YES ☐ NO ARE YOU ON ADSW? ☐ YES ☐ NO

ARE YOU AN OFFICER CANDIDATE? ☐ YES ☐ NO

**For Reserve Component Members:** HAS A NOTICE OF ELIGIBILITY (NOE) BEEN ISSUED/REQUESTED? ☐YES ☐ NO NOE DATE:____________ (dd/mmm/yyyy)

**SECTION 3: COMMAND INFORMATION**

YOUR PERMANENT COMMAND/SHIP/DUTY STATION (INCLUDE CITY/STATE/NAME OF BASE WHERE COMMAND IS LOCATED) and any command to which you are currently TAD/TEMDU/ADDU: ______________________________________________

DEPARTMENT NAME OR CODE IN WHICH YOU WORK: ______________________________________________

IMMEDIATE SUPERVISOR'S NAME/TELEPHONE NUMBER: ______________________________________________

DUTY TELEPHONE NUMBER: (_______)______________________ DSN PREFIX: _____________ UIC/RUC____________________________

COMMAND'S PLAIN LANGUAGE ADDRESS (PLAD): ______________________________________________

ARE YOU IN RECEIPT OF ORDERS? : ☐YES ☐NO IF YES, TO WHAT COMMAND? ______________________________________________

PERSUPPDET'S ADDRESS/ADMIN SHOP: ________________________________________ PSD UIC or S1 Shop:________________________

**SECTION 4: PATIENT RECORDS INFORMATION**

WHERE IS YOUR SERVICE RECORD/BOOK MAINTAINED? ______________________________________________

WHERE IS YOUR HEALTH RECORD MAINTAINED? ______________________________________________

WHERE IS YOUR DENTAL RECORD MAINTAINED? ______________________________________________

**SECTION 5: MEDICAL CONDITION INFORMATION**

WHAT IS YOUR DIAGNOSIS? ______________________________________________

WHAT IS THE CAUSE OF YOUR MEDICAL PROBLEM? (PLEASE SELECT ONE OF THE ITEMS LISTED BELOW):

☐ BATTLE CASUALTY ☐ ACCIDENT ☐ MOTOR VEHICLE ACCIDENT
☐ SPORT/PT INJURY ☐ DISEASE ☐ ASSAULT BY ANOTHER
☐ FALL ☐ OTHER: (Please explain below)

______________________________________________

______________________________________________

IF THE PROBLEM WAS DUE TO TRAUMA, INJURY OR AN ACCIDENT, PLEASE PROVIDE A BRIEF STATEMENT WITH DATE AND CIRCUMSTANCES BELOW:

______________________________________________

______________________________________________

WHAT COMMAND WERE YOU ATTACHED TO AT THE TIME OF YOUR ACCIDENT/INJURY? ______________________________________________

WAS A LINE OF DUTY INVESTIGATION (LODI) CONDUCTED? ☐ YES ☐ NO

IF YES, WHAT COMMAND CONDUCTED THE LODI? ______________________________________________

______________________________________________

______________________________________________

page 2 of 3

**SECTION 6: MEDICAL BOARD INFORMATION AND HISTORY**

WHAT TYPE OF MEDICAL EVALUATION BOARD IS YOUR HEALTH CARE PROVIDER RECOMMENDING? (Please select one item below)

☐ FIRST PERIOD OF LIMITED DUTY
☐ SECOND PERIOD OF LIMDU
☐ THIRD OR SUBSEQUENT PERIOD OF LIMDU (=DEPARTMENTAL REVIEW)
☐ PHYSICAL EVALUATION BOARD (PEB)
☐ RETURN TO MEDICALLY UNRESTRICTED DUTY
☐ OTHER:

HAVE YOU EVER HAD A MEDICAL EVALUATION BOARD (PEB/LIMDU) BEFORE? ☐ YES ☐ NO IF YES, PLEASE LIST THE DATE (S) AND LOCATION (MTF THAT CONVENED THE MEB) BELOW:

(1) ______________________________

(2) ______________________________

(3) ______________________________

IS THIS MEDICAL TREATMENT FACILITY (MTF) YOUR PRIMARY CARE MANAGER (PCM) MTF? ☐ YES ☐ NO
IF NOT, WHICH MTF IS YOUR PCM PROVIDER? ______________________________

WHO IS YOUR PRIMARY CARE PROVIDER (PCP)? ______________________________

WHO IS YOUR ATTENDING HEALTH CARE PROVIDER/SPECIALIST AT THIS MTF? ______________________________

WHICH SPECIALTY CLINIC IS FOLLOWING YOUR CASE? ______________________________

WHAT OTHER CLINICS/PHYSICIANS ARE TREATING YOU AND FOR WHAT CONDITION?

CLINIC: ____________ PHYSICIAN: ____________ CONDITION: ____________

CLINIC: ____________ PHYSICIAN: ____________ CONDITION: ____________

CLINIC: ____________ PHYSICIAN: ____________ CONDIITON: ____________

DO YOU HAVE ANY PENDING SURGERY? DATE: ____________ PROCEDURE: ____________ MTF____________

☐ YES ☐ NO DATE: ____________ PROCEDURE: ____________ MTF____________

**SECTION 7: DISCPLINARY ACTION INFORMATION**

ARE YOU CURRENTLY PENDING ANY DISCIPLINARY ACTION? ☐ YES ☐ NO

**SECTION 8: GENERAL INFORMATION**

**DISABILITY TRANSITION ASSISTANCE PROGRAM:** I have been informed that if I am being referred to the Physical Evaluation Board I must call and reserve a seat in the Disability Transition Assistance Program (DTAP) Class. @ xxx-xxx-xxxx. I understand that I must be scheduled to attend the next class and it is to my advantage to attend this class. I also understand that failure to attend may result in administrative action being taken. Member's Initials: _______

**PHYSICAL EXAMINATION:** If I am being referred to the Physical Evaluation Board I must schedule a Physical Examination within 72 hours of completing this form. Member's Initials: _______

**MEDICAL RECORD:** If I am undergoing a Physical Evaluation Board, I understand that I am to work with the Medical Evaluation Boards Service Office to ensure they receive a complete copy of my health record within 5 working days of completion of this form. Medical record is due by ______________ (dd/mmm/yyyy). Member's Initials: _______

**NON-MEDICAL ASSESSMENT AND NARRATIVE SUMMARY:** I am aware that my commanding officer or his/her designated representative has the responsibility to complete and submit a Non-Medical Assessment (NMA) and Narrative Summary within the time frame as specified by the Secretary of the Navy directive 1850.4 series. (NOTE: For PEB and Marine Departmental Review cases only.) Member's Initials: ______

**MEDICAL HOLDING COMPANY:** I understand that if I am currently stationed in some OCONUS location overseas or attached to a deployable unit that I may be required to check-in to the Medical Holding Company, Bldg. xxx. In some rare instances, if I am required to receive frequent care at NAVHOSP______ on an ongoing/ weekly basis and I am at a shore facility located greater than 50 miles from NAVHOSP I may be required to check-into the Medical Holding Company IAW BUPERSINST1360.72 series Member's Initials: ______

**REBUTTAL:** I understand that I am required to review and sign my Medical Evaluation Board Report when it has been prepared. If I desire I may submit a rebuttal to the MEBR; however, I understand that I have 5 working days to submit the rebuttal or my acceptance of the findings of the Medical Evaluation Board Report will be presumed and the MEBR and all accompanying documentation will be forwarded to higher authority without my rebuttal. Member's Initials: _______

**CONVALESCENT/REGULAR LEAVE:** I understand that if I am going on convalescent/ regular leave that I must provide the Medical Evaluation Boards Services Office with a leave address and telephone number where I may be reached during the leave period. Member's Initials: _______

**SURGICAL PROCEDURES:** I understand that I am to notify the MEBs Services Office prior to undergoing any planned (i.e., not emergency) surgical procedures as such procedure(s) may have a critical impact on my MEB process. Member's Initials: _______

I hereby certify that the above information is accurate, correct, and complete to the best of my knowledge.

PATIENT'S SIGNATURE: ______________________________ DATE: ____________

MEDICAL EVALUATION BOARDS SERVICE ACCEPTING OFFICIAL'S SIGNATURE:____________ DATE: ____________

PRINTED LAST NAME OF ACCEPTING OFFICIAL:______________________________

page 3 of 3

## OVERVIEW OF LIMITED DUTY



**OVERVIEW OF LIMITED DUTY**
**(CONTINUED)**



# 18-10 Limited Duty

(1) ***Limited Duty (LIMDU).*** As defined in article 18-2, LIMDU is a documented period of medically restricted duty, in consideration of a patient's illness, injury, or disease process. LIMDU may only be provided a patient as the result of the actions of an MEB properly convened at an MTF. LIMDU is a period when the member reports to their workspace, but during the period the member is excused from the performance of certain aspects of military duties, as defined in their individual LIMDU write-up. During LIMDU, the patient undergoes continuing care, recovery, and rehabilitation aimed at returning the member to a medically unrestricted duty status. For this chapter, and in the actions of all MEBs throughout Navy Medicine, "limited duty" will refer to temporary limited duty. Temporary limited duty is also known as LIMDU and/or TLD; these terms are used interchangeably throughout this chapter.

(a) ***Placement on LIMDU*** is most appropriate only for those patients for whom a return to medically unrestricted status is anticipated. (The exception to this policy is those cases in which a significant illness or injury necessitates ongoing patient care to maximize the therapeutic benefit derived by the patient prior to the patient's referral to the PEB pursuant to the SECNAVINST 1850.4 series.) Additionally, a patient whose case is referred to the PEB for DES adjudication, if the patient is not already in a LIMDU status, will be concurrently placed on LIMDU pending the PEB outcome. The Abbreviated Limited Duty MEBR detailed in article 18-17 may be used for this purpose.

(b) ***LIMDU is a Personnel and a Medical Function.*** The respective service headquarters (i.e., NAVPERSCOM and HQMC) sets LIMDU policy and provides program oversight for members on LIMDU status. For Navy personnel, the controlling agency for LIMDU is PERS-4821; for Marine Corps personnel, it is MMSR-4. These service headquarters publish directives for the operation of LIMDU programs in: for Navy, the MILPERSMAN, and for Marine Corps, the Marine Corps Separation and Retirement Manual (MARCORSEPMAN).

(2) ***Temporary vs. Permanent LIMDU.*** This chapter of MANMED deals exclusively with temporary LIMDU. Programs for permanent LIMDU are exclusively under the purview of HQMC and NAVPERSCOM, and members are only eligible to request consideration for permanent LIMDU for medical conditions after a finding of "unfit for continued Naval service" has been rendered by the PEB per SECNAVINST 1850.4 series. For this chapter, and in the actions of all MEBs throughout Navy Medicine, "limited duty" will refer to TLD. TLD is also known as LIMDU; these terms are used interchangeably throughout this chapter.

(3) ***Light Duty vs. Limited Duty.*** Article 18-2 thoroughly delineates the various categories of removal from duty for medical reasons of a Navy or Marine Corps ADSM and should be reviewed for a more comprehensive discussion of light duty policy. LIMDU is similar in many respects to light duty; major differences between the two are that LIMDU periods:

(a) Last longer than light duty periods.

(b) Require notification to not only the parent command, but to the supporting personnel support detachment (PSD) or administrative office and to the respective service headquarters of the member's status.

(c) May necessitate the transfer of the member from the parent command if it is a deployable unit.

(d) Do not necessarily require the consent of the member's parent command, or of the respective service headquarters. Certain MTF commanders possess, by virtue of their position, "convening authority (CA)" allowing them to empanel MEBs. Should such an empanelled MEB recommend LIMDU for a patient it evaluates, the MTF commander or CA can concur with the MEBR and, provided the LIMDU period is scheduled for no more than 6 months and will be the first LIMDU in an enlisted Sailor or Marine's career, place the patient on LIMDU without further referral to the parent command or to service headquarters for concurrence. Second TLD periods for enlisted Sailors and Marines also may be ordered by the MTF CA without referral to service headquarters so long as the total time of the first and second periods does not exceed 12 total cumulative months from the date of the first TLD period. All

TLD for officers must be requested and approved by the respective service headquarters. All third or greater, or other TLD period requests resulting from additional medical conditions arising in the member's career, must be submitted for approval to PERS-4821 or HQMC MMSR-4. The CA must ensure in all LIMDU cases that there are appropriate business practices to alleviate undue burden on both the patient and the patient's parent command. As detailed in article 18-2(4), light duty may be most clinically appropriate prior to referral to an MEB for LIMDU placement. Light duty presumes frequent provider and patient interaction to determine whether return to medically unrestricted duty status or more intensive therapeutic intervention is appropriate in any given case. Therefore, if used, light duty will be ordered in periods not to exceed 30 days to ensure appropriate patient oversight. Consecutive light duty for any "new condition" up to 90 days may be ordered by the provider (in maximum 30-day periods) but ***in no case*** will light duty exceed 90 consecutive days, inclusive of any convalescent leave periods. At the end of the light duty period, the member will either be immediately returned to medically unrestricted duty or will be referred to an MEB placing the member on TLD and/or referring the member to the PEB for DES processing.

(4) ***Convening an MEB for Placement on LIMDU.*** An MEB must be convened to place or recommend to the service headquarters placement of a member on LIMDU. (Article 18-3 guidance on convening MEBs must be complied with; as defined there, only MTFs with CA, (i.e., the naval medical centers, naval hospitals, naval medical clinics, and naval ambulatory care centers) may execute MEBs.) Branch medical clinics, by definition, do not have a CA; neither do surgeons of operational units or medical officers of ships. Accordingly, these organizations and their providers cannot unilaterally dictate LIMDU MEBRs or unilaterally place a service member on LIMDU. Only MTFs with CA can effect a LIMDU placement. (See article 18-3(4) for discussion of the initiation of MEBRs for placement on LIMDU by branch clinics.)

(5) ***Length of LIMDU Periods***. Length is established by the respective service headquarters at a maximum of 6 months for any LIMDU period.

(6) ***Number of LIMDU Periods Per a Career*** that can be granted to an ADSM by an MTF CA, without referral to service headquarters, is set at a maximum of two periods not to exceed 12 months cumulatively. Any additional TLD period requests must be forwarded by the MTF to service headquarters (for Navy personnel, PERS-4821 or for Marine Corps, MMSR-4) for approval. The underlying logic of establishing a career maximum for LIMDU periods is to ensure that, rather than undergoing multiple consecutive periods of LIMDU for the same or closely interrelated diagnoses, patients are either returned to medically unrestricted duty or referred for DES adjudication as clinical circumstances dictate. MTFs are to ascertain information on the number of previous LIMDU periods through interviews of patients (see article 18-9), medical records reviews, and queries to the MedBOLTT, or systems that may replace it (see article 18-27).

(7) ***Abbreviated MEBRs for LIMDU Periods.*** To facilitate appropriate clinical and administrative case management while curtailing overly burdensome paperwork requirements, MTFs can rely on the NAVMED 6100/5, "Abbreviated Limited Duty Medical Board Report" for the following LIMDU actions:

(a) First periods of LIMDU in the career of enlisted Sailors or Marines that are < 6 months (no referral to service headquarters necessary).

(b) Second LIMDU periods for enlisted Sailors and Marines that are < 6 months (no referral to service headquarters necessary). Note that the first and second TLD periods cannot exceed 12 months cumulatively from the date of the first TLD period.

(c) First and second LIMDU periods for Navy and Marine Corps officers (for referral to service headquarters for "departmental review").

(d) Third or subsequent LIMDU periods on Navy and Marine Corps ADSM involving a distinctly different condition than that responsible for the first and/or second TLD periods (for referral to service headquarters for "departmental review").

(e) Placement on LIMDU, if the patient is not already in a LIMDU status, at the same time the patient's case is referred to the PEB for adjudication.

Any other LIMDU requires a dictated MEBR to be sent to respective service headquarters. Use of any editions before NAVMED 6100/5 (Rev. 8-2004) are immediately prohibited. MTFs using the "Abbreviated MEBR" for LIMDU are reminded that the MTF's LIMDU recommendation is not deemed final until the CA of the MTF has signed the MEBR. MTFs must be mindful that, given the nature of LIMDU as both a medical and personnel function, specificity of information necessary for the appropriate clinical and administrative case management of patients entered into LIMDU status is vital. Patients placed on LIMDU via the abbreviated MEBR must be recorded into MedBOLTT (or systems that replace it; see article 18-27). Use the approved NAVMED 6100/5 (Rev. 8-2004) in article 18-17.

(8) ***Dictated MEBRs*** are required for LIMDU situations not discussed in the preceding paragraph which require referral to service headquarters for "departmental review." A sample of the dictation report format appears in article 18-14. It is the prerogative of service headquarters in these and all cases referred for departmental review to deny "LIMDU" status and order instead referral of the case to the PEB for adjudication. Cases in which service headquarters deny an MTF's LIMDU recommendation and order instead the patient's referral to the PEB will be returned for appropriate action to the MTF originating the LIMDU request to convert the MEBR into a PEB case. The CA and the patient administration or MEBs officer will ensure all appropriate patient counseling (as defined in article 18-7 and other applicable directives) occurs, and will ensure that appropriate reporting via naval message traffic to the patient's parent command, servicing personnel headquarters, and service headquarters is completed.

(9) ***Contents of the MEBR Package Submitted to Service Headquarters.*** Cases defined in article 18-10(8) as those being referred to service headquarters will take the following format:

(a) For USMC Members: (case referred to MMSR-4).

(1) Dictated or Abbreviated MEBR (as appropriate).

(2) MEBR Cover Sheet, NAVMED 6100/1 (Rev. 8-2004).

(3) NMA following the format contained in SECNAVINST 1850.4 series.

(b) For Navy Members: (case referred to PERS-4821).

(1) Dictated or Abbreviated MEBR (as appropriate).

(2) MEBR Cover Sheet, NAVMED 6100/1 (Rev. 8-2004).

(3) NMA following the format contained in SECNAVINST 1850.4 series.

*Note: This requirement differs from previous guidelines in that complete medical record copies and all other supporting documentation (i.e., the contents of a case referred to the PEB) are no longer required by service headquarters to evaluate LIMDU case decisions.*

(10) ***Patients in LIMDU Status Following Failure of Suitability Screening.*** BUMEDINST 1300.2 series details the process for the suitability screening processes. For patients that have been placed on a LIMDU period subsequent to failing a suitability screening, the follow-up requirements are more frequent than those for patients otherwise entered into LIMDU. In general, patients on LIMDU pursuant to BUMEDINST 1300.2 series provisions will be evaluated at recurring intervals not to exceed 2 months until a final resolution of the case is determined. Consult BUMEDINST 1300.2 series for additional information.

(11) ***Returning a Patient To Duty From LIMDU Status***

(a) The attending physician may clear a patient from LIMDU at any clinically appropriate point during the course of LIMDU (i.e., the return to duty does not have to be deferred until the originally scheduled end of the LIMDU period). A return to duty from LIMDU status does not necessitate the convening of an MEB, but does require the approval of the CA (or his or her designee for signatory responsibility, as defined in article 18-3) prior to becoming effective.

(b) The attending physician shall record the information relevant to the return to medically unrestricted duty in the patient's medical record using the NAVMED 6100/6 (8-2004), Return of a Patient to Medically Unrestricted Duty from Limited Duty. A note merely stating "returned to duty," "fit for

duty," or using similar language is clinically insufficient and not appropriate. The NAVMED 6100/6 (Rev. 8-2004) appears at the end of article 18-10. The NAVMED 6100/6 (8-2004) note must depict the findings, prognosis, and any residual effects that may be apparent; additionally, clinically appropriate information must be annotated on the patient's DD 2766 (Adult Preventive and Chronic Care Flow Sheet) at page 1, section 4, under "Hospitalizations/Surgeries."

(c) The physician will counsel the patient of the return to duty status. The physician will ensure that the patient–with the completed NAVMED 6100/6 (Rev. 8-2004) and the medical record–presents immediately following the determination that a return to medically unrestricted duty is clinically appropriate to the MTF patient administration/MEBs office for appropriate counseling, and to ensure appropriate notification processes are completed. The patient administration/MEBs office will ensure that the NAVMED 6100/6 (Rev. 8-2004) is expeditiously delivered to the CA for signature. All MTF personnel involved with returning patients to medically unrestricted duty from LIMDU must ensure that all stakeholders are aware that the return to medically unrestricted duty is not effective until signature by the CA, and that this action will be reported to the member, the member's parent command, and the service headquarters via message traffic.

(d) The MTF clearing a patient from LIMDU status will ensure via naval message traffic that the patient's parent command, any command to which the patient may be TAD for treatment, the supporting PSD or administrative office, the TMU, and the respective service headquarters are notified of the return to medically unrestricted duty status within 3 working days of the determination. For Marines, the return to duty message will include as an addressee MMSR-4; for Navy members, the message will include as addressees COMNAVPERSCOM-4 and COMNAVPERSCOM-4821.

(e) A return to duty from LIMDU is not an adverse action, and accordingly does not automatically confer rights of appeal to the patient. There may be cases, however, where patients wish to contest a return to duty from LIMDU. In such cases, resolution should first be attempted between the attending physician, the attending's department head or director, and the patient, in accordance with avenues prescribed for resolving any difference of opinion about a course of medical care. Should this review uphold the return to medically unrestricted duty status, the servicemember will be "made available" to the service headquarters, and message notification as described in the preceding paragraph will be initiated. The member will be advised of this action, as well as of the opportunity to submit to the CO of the MTF, via the member's CO, written appeal to the "return to duty" determination. The appeal package should include objective statements from the member regarding the basis of the appeal, as well as copies of all pertinent medical documentation. The package should also include the NMA prepared by the member's CO pursuant to the LIMDU board. (If an NMA was not previously prepared, information from the member's CO following the format of an NMA (as defined in SECNAVINST 1850.4 series) must be included in the appeals package.) Should the appeal process yield a determination that the return to duty from LIMDU is clinically appropriate, the MTF will report this information to the patient and the patient's parent command, as well as to the appropriate Service headquarters, for their resolution of the matter as a personnel vice a medical issue.

(12) ***The MTF LIMDU Coordinator.*** To comport to the requirements of MILPERSMAN articles 1306-1200 and 1301-225 (for Navy enlisted and officer personnel, respectively) and to ensure appropriate service from the MTFs to the parent commands of members placed on LIMDU, each MTF with CA will appoint, in writing, a LIMDU coordinator, preferably at least holding the rank of chief petty officer or equivalent. While the management of members in LIMDU remains the responsibility of those members' respective COs, and not the MTFs, the MTFs can and must contribute significantly to the successful administration of this population through appropriate liaison by MTF personnel with those commands who have LIMDU members. Monthly LIMDU coordinators meetings, timely evaluation appointment scheduling, and appropriate contact with regional commands are among the responsibilities envisioned for the LIMDU coordinators. The effectiveness of the LIMDU coordinators is one of the key areas evaluated by the TMU relative to their site visits and consideration of awarding of the "Certified Pipeline Movers Award" in the Transient, Patient, Prisoner, Holdee (TPPH) and student pipelines. Each MTF with CA will ensure the placement and effectiveness of a representative into this key role as a vital liaison with the Fleet regarding patients in a medically restricted status.

## RETURN OF A PATIENT TO MEDICALLY UNRESTRICTED DUTY FROM LIMITED DUTY

**SECTION 1: CLINICAL INFORMATION - TO BE COMPLETED BY MEDICAL OFFICER**

Date: ____________ Patient Name: ________________________________ Patient SSN: ____________

(Last, First, MI)

Diagnosis: (1) ________________________________ ICD-9 CM Code ____________

(2) ________________________________ ICD-9 CM Code ____________

Notes on return to duty, including findings, prognosis, and any residual effects:

Effective date (Proposed) of return to Unrestricted Duty: ____________

Printed physician name/signature/date

Returned to duty (select one):

☐ Disapproved

☐ Approved Effective date: ____________

Printed physician name/signature/date

**SECTION 2: PATIENT INFORMATION - TO BE COMPLETED BY PATIENT**

I have received full information on my "return to duty." I understand that my return to duty becomes effective once approved by the MTF convening authority. The MTF will report my return to medically unrestricted duty to my parent command and I will personally notify my immediate chain of command.

Patient signature/date

**SECTION 3: PATIENT ADMINISTRATION/MEDICAL EVALUATION BOARDS OFFICIAL**

The following actions have been completed (the completing official will initial and date next to each entry):

____________ Entry into MedBOLTT

____________ Briefing to patient on limited duty/MEBs

____________ Notification to MTF LIMDU coordinator

____________ Notification to parent command

____________ Notifications to PSD/personnel office

Printed patient administration/medical evaluation boards official name, signature, and date

**ROUTING:** Original to patient health record;copies to patient, parent command, PSD, MEBR case file, PERS-4821 or MMSR-4.

NAVMED 6100/6 (8-2004)